**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

LULA WILLIAMS, GLORIA TURNAGE,
GEORGE HENGLE, DOWIN COFFY, and          Civil Case No. 3:17-cv-00461-REP
FELIX GILLISON, JR., *on behalf of themselves
and all individuals similarly situated*,

               Plaintiffs,

v.

BIG PICTURE LOANS, LLC; MATT MARTORELLO;
ASCENSION TECHNOLOGIES, INC.;
DANIEL GRAVEL; JAMES WILLIAMS, JR.;
GERTRUDE MCGESHICK; SUSAN MCGESHICK;
and GIIWEGIIZHIGOOKWAY MARTIN,

               Defendants.

_____ /


**BIG PICTURE LOANS, LLC, ASCENSION TECHNOLOGY, LLC, JAMES WILLIAMS,
JR., GERTRUDE MCGESHICK, SUSAN MCGESHICK, AND
GIIWEGIIZHIGOOKWAY MARTIN  BRIEF IN SUPPORT
OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

FACTS ................................................................................................................................ 2

    The Lac Vieux Desert Band of Lake Superior Chippewa Indians.................................... 2

    LVD enacted law to regulate its lending.......................................................................... 2

    Big Picture Loans................................................................................................................ 4

    Big Picture Loans' Loan Agreement. ............................................................................... 4

ARGUMENT ....................................................................................................................... 6

    I.    Legal Standard under Fed. R. Civ. P. 12(b)(6). ............................................... 6

    II.    Plaintiffs have failed to state a claim upon which relief may be granted because the choice-of-law and forum selection clauses in the loan agreements are enforceable. ................. 8

        A.    Plaintiffs have not alleged a substantial controversy between the parties.................... 8

        B.    Plaintiffs reliance on Virginia public policy against usury does not support their declaratory action. ........................................................................................................... 13

CONCLUSION ................................................................................................................... 14

i

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................................. 6, 7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 555 (2007) ............................................................................................ 7

*Chapin v. Knight-Ridder, Inc.*
993 F.2d 1087 (4th Cir. 1993) ..................................................................................... 6

*Conley v. Gibson*
355 U.S. 41 (1957) ...................................................................................................... 6

*Hayes v. Delbert Servs. Corp.*
811 F.3d 666 (4th Cir. 2016) ......................................................................... 1, 11, 12

*Jordan v. Alternative Resources Corp.*
458 F.3d 332 (4th Cir. 2006) ....................................................................................... 6

*Labram v. Havel*
43 F.3d 918 (4th Cir. 1995) ......................................................................................... 7

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*
312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ...................................................... 8

*Settlement Funding, LLC v. Von Neuman-Lillie*
274 Va. 76 (2007) ............................................................................................... 13, 14

*Westmoreland v. Brown*
883 F.Supp. 67 (E.D. Va. 1995) .................................................................................. 7

*Young v. City of Mt. Ranier*
238 F.3d 567 (4th Cir. 2001) ....................................................................................... 7

**<u>Statutes</u>**

12 U.S.C. § 5481 .......................................................................................................... 3
12 U.S.C. § 5481(27) .................................................................................................... 3
12 U.S.C. § 5495 .......................................................................................................... 3
12 U.S.C. § 5551 .......................................................................................................... 3
12 U.S.C. § 5552 .......................................................................................................... 3
25 U.S.C. § 1300h ........................................................................................................ 2
25 U.S.C. § 1300h-2(a) ................................................................................................ 2
25 U.S.C. § 461 ............................................................................................................ 2
28 U.S.C. § 2201 .......................................................................................................... 7

**Rules**

Fed. R. Civ. P. 10(c) ................................................................................................. 1
Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 2, 6, 15

**Regulations**

12 CFR 1040 ............................................................................................................ 6
12 CFR 1040.3 (b)(2)(ii) .......................................................................................... 6
12 CFR 1040.4(a)(2)(vi) .......................................................................................... 6
Tribal Consumer Financial Services Regulatory Code § (e) ................................. 10
Tribal Consumer Financial Services Regulatory Code § (g) ................................. 10
Tribal Consumer Financial Services Regulatory Code § 1.1(a) ............................... 3
Tribal Consumer Financial Services Regulatory Code § 1.1(c) ............................. 10
Tribal Consumer Financial Services Regulatory Code § 1.1(d) ............................... 3
Tribal Consumer Financial Services Regulatory Code § 1.1(i) ................................ 3
Tribal Consumer Financial Services Regulatory Code § 1.3 .................................... 3
Tribal Consumer Financial Services Regulatory Code § 1.3(d) ............................... 3
Tribal Consumer Financial Services Regulatory Code § 2.4 ................................. 10
Tribal Consumer Financial Services Regulatory Code § 4.13 .................................. 3
Tribal Consumer Financial Services Regulatory Code § 4.14 .................................. 3
Tribal Consumer Financial Services Regulatory Code § 4.15 .................................. 3
Tribal Consumer Financial Services Regulatory Code § 4.16.2 ............................... 3
Tribal Consumer Financial Services Regulatory Code § 4.18 .................................. 3
Tribal Consumer Financial Services Regulatory Code § 5 ....................................... 3
Tribal Consumer Financial Services Regulatory Code § 5.1(c) ............................. 10
Tribal Consumer Financial Services Regulatory Code § 5.2(b)(8) ........................... 3
Tribal Consumer Financial Services Regulatory Code § 6 ....................................... 3
Tribal Consumer Financial Services Regulatory Code § 7 ....................................... 3
Tribal Consumer Financial Services Regulatory Code § 7.2(a) ............................. 10
Tribal Consumer Financial Services Regulatory Code § 8.1 ................................. 10
Tribal Consumer Financial Services Regulatory Code § 9.3 .................................... 3
Tribal Consumer Financial Services Regulatory Code § 9.4(b) ............................... 4
Tribal Consumer Financial Services Regulatory Code § 9.4(f) ................................ 4
Tribal Consumer Financial Services Regulatory Code § 9.4(g) ............................... 4

32898833v1

Defendants, Big Picture Loans, LLC ("Big Picture"), Ascension Technology, LLC ("Ascension"), James Williams, Jr., Gertrude McGeshick, Susan McGeshick, and Giiwegiizhigookway Martin, by counsel, hereby move to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiffs' loan agreements include a choice of law provision that selects the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD") and "applicable federal law" and a forum selection provision that puts any disputes related to their loans before an LVD administrative agency and LVD's Tribal Court.  (See Complaint ¶ 70 (quoting Document 1-1 p 5.))  Despite a recent decision by the Supreme Court of Virginia honoring a choice of law provision substantively similar to the one at issue here, Plaintiffs allege that their agreements are invalid because they violate Virginia's public policy.

Rather than honor their loan agreements and the terms to which they agreed, Plaintiffs have relied on inapposite cases and conclusory legal allegations to preemptively attack these choice of law and forum selection provisions.  For the large part, Plaintiffs' allegations are defeated by the language of the loan agreement they have incorporated into their pleading.  Fed. R. Civ. P. 10(c). As to the allegations that are not self-defeating, they are based solely on *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666 (4th Cir. 2016), which is factually and legally distinguishable in every regard.

Additionally, as to Defendants James Williams, Jr., Gertrude McGeshick, Susan McGeshick, and Giiwegiizhigookway Martin (collectively "LVD Officers"), Plaintiffs have not made any substantive allegations against them.  To be precise, only 4 allegations and 3 footnotes actually identify the LVD Officers with any specificity.

For the reasons below, Big Picture Loans, LLC, Ascension, James Williams, Jr., Gertrude McGeshick, Susan McGeshick, and Giiwegiizhigookway Martin respectfully request that this Court grant their motion and dismiss this matter under Fed. R. Civ. P. 12(b)(6).

## FACTS

### The Lac Vieux Desert Band of Lake Superior Chippewa Indians.

LVD is a federally recognized Indian tribe whose members continue to reside close to their ancestral homeland near Watersmeet, Michigan (the "Reservation").  25 U.S.C. § 1300h.  LVD has always governed itself according to its own laws, regulations, and cultural norms.  As a federally recognized Indian tribe, LVD inherently possesses all the attributes of sovereignty. In 1988, under the Indian Reorganization Act, 25 U.S.C. § 461 *et seq*., Congress recognized LVD "as an independent tribal entity."  25 U.S.C. § 1300h-2(a).

On May 14, 1992, "to govern [] under [its] own laws and customs, to maintain and foster [its] tribal culture, to protect [its] homeland . . . and to ensure [its] rights guaranteed by treaty with the Federal Government," LVD adopted its current Constitution ("LVD Constitution") "for the government, protection and common welfare of [LVD]." (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #1, LVD Const., Preamble).

The LVD Constitution establishes its tribal council ("LVD Council") as the governing body of LVD with enumerated authority, in part, to enact law and manage the economic affairs of LVD to "promote and protect the health, safety, education, and general welfare of the Band and its members."  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, #1, Art. IV, §§ 1(a), (b), (f), (j); 2).

### LVD enacted law to regulate its lending.

On July 8, 2011, LVD enacted the Tribal Consumer Financial Services Regulatory Code ("Regulatory Code"), which authorized wholly-owned online consumer lending entities to operate

from the Reservation exclusively to help "improve [LVD's] economic self-sufficiency, to enable [LVD] to better serve the social, economic, educational, and health and safety needs of its members and visitors, and to provide its members with opportunities to improve their own economic circumstances." (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #3, Resolution # 2011-053; Attach. #4, Regulatory Code, § 1.1(a), (d); 1.3).

The Regulatory Code requires all people and entities engaged in tribal consumer financial services to be licensed and to comply with the Regulatory Code and all applicable federal laws. (*Id.*, §§ 1.3(d), 5, 6, 7, 5.2(b)(8); 6).  To regulate licensees and enforce the Regulatory Code, LVD created the Tribal Financial Services Regulatory Authority ("TFSRA").  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #5, Resolution 2011-030; Attach. #4, §§ 1.1(i), 4.16.2).  Considered by the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5481 *et seq.* ("CFPA"), as a co-regulator alongside the Consumer Financial Protection Bureau ("CFPB") and state regulatory agencies,[1] the TFSRA is empowered by the Regulatory Code to focus on three key areas: (1) licensing and regulating entities engaged in tribal consumer financial services authorized by the Regulatory Code and applicable federal laws and regulations; (2) protecting consumers by receiving and investigating complaints; and (3) providing a quasi-judicial and judicial forum to hear and adjudicate licensee enforcement actions and consumer complaints.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #4, §§ 4.13, 4.14, 4.15, 4.18, 9.3).

---

[1] *See* 12 U.S.C. § 5481(27) (including federally recognized Indian tribes within the definition of "State."); 12 U.S.C. § 5495 (requiring the CFPB to coordinate with State regulators); 12 U.S.C. §§ 5551-5552 (allowing a State attorney general or regulator to bring a civil action to enforce the CFPA in State court over State licensed entities).

To protect consumers, the Regulatory Code contains a comprehensive consumer dispute resolution process that mirrors federal and state administrative procedures by empowering the TFSRA to serve in a quasi-judicial capacity and preside over consumer dispute hearings.  After an administrative hearing, an aggrieved consumer may appeal by filing a petition for review with the LVD Court, and the LVD Court may review the TFSRA's administrative record and decisions according to the codified standards.  (*Id*., § 9.4(b), (f)).  The LVD Court is required to issue an opinion and order as a final decision in the matter.  (*Id.*, § 9.4(g)).

### Big Picture Loans.

In August 2014, to further its economic development efforts, LVD formed Big Picture as a wholly owned arm of the tribe to become LVD's sole tribally owned lending business.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #10, Resolution T2014-066; Attach #11, Resolution T2015-09; Attach. #12, First Amended Big Picture Articles of Organization ("Big Picture First Amended Articles")).  Later, in February 2015, LVD created Tribal Economic Development Holdings, LLC ("TED"), as a wholly owned arm of the tribe organized to "promote the economic development of [LVD] through the development of business opportunities . . ." and to oversee all future tribal lending operations as a holding company.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #13, LVD Council Resolution T2015-08; Attach. #14, TED First Amended Articles of Organization ("TED Amended Articles"); T2016-047).

### Big Picture Loans' Loan Agreement.

Big Picture uses a standard loan agreement for all consumers that is typical within the consumer lending industry.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #38, RA Form Approving SIL Consumer Loan Agreement

(Jan. 19 2017)).  The loan agreement clearly explains that the contract is formed with Big Picture, a duly licensed Financial Services Licensee by the TFSRA.  (Compl., Ex.1, pp. 1, 2).  As the contract is formed with Big Picture, the loan agreement cautions borrowers that the loan is intended for short-term financial needs and in a large graphic on the loan agreement[2], states the loan's annual percentage rate.  (Compl., Ex. 1, pp. 2)  The loan agreement explains that when the consumer electronically signs and consents to the terms, it is treated as if the consumer physically signs the loan agreement on LVD's Reservation.  (Compl., Ex. 1, pp. 2, 6).

Significantly, the loan agreement contains two pages explaining the applicable law and the consumer's right to redress of any disputes or complaints, which states:

> GOVERNING LAW AND FORUM SELECTION:  This Agreement will be governed by the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("Tribal law"), including but not limited to the Code as well as applicable federal law.  All disputes shall be solely and exclusively resolved pursuant to the Tribal Dispute Resolution Procedure set forth in Section 9 of the Code and summarized below for your convenience.
> …
> TRIBAL DISPUTE RESOLUTION PROCEDURE:  The Tribe has established a Tribal Dispute Resolution Procedure (the "Procedure") to review and consider any and all types of complaints made by You or on Your behalf relating to or arising from this Agreement.  The Procedure is found at Section 9 of the Code . . . .  The Tribe and Lender intent and require, the extent permitted by Tribal law, that any complaint lodged, filed or otherwise submitted by You or on Your behalf to follw the Procedure.  Under the procedure, a consumer who, in the course of his otherwise lawful and proper use of Lender's business believes himself to be harmed by some aspect of the operation of any part of Lender's business, shall direct his concerns or disputes to Lender in writing.  A person's complaint to the Lender shall be considered similar in nature to a petition for redress submitted to a sovereign government, without waiver of sovereign immunity and exclusive jurisdiction, and does not create any binding procedural or substantive rights for a petitioner.  The Lender will investigate the complaint and respond as soon as practicable, but no

---

[2] The graphic is a Truth in Lending disclosure box compliant with the Regulatory Code § 6.2, 15 U.S. Code § 1632, and 12 CFR §1026.18.

> later than thirty (30) days from the receipt of the written complaint.
> In the event the consumer is dissatisfied with the lender's
> determination, he may initiate Formal Dispute Resolution by
> requesting an administrative review of Lender's determination by
> submitting such request in writing to the Tribal Financial Services
> Regulatory Authority ("Authority"), P.O. Box 249, Watersmeet, MI
> 49969, no later than ninety (90) days after receiving Lender's
> determination.

Immediately after the governing law section, there are two sections explaining that Big Picture is

shielded from unconsented suit by tribal sovereign immunity. (Compl., Ex. 1, pp. 4–5).

Finally, the loan agreement expressly limits the consumer's "right to file suit against [Big Picture]

for any claim or dispute arising from or relating to th[e] Agreement" by precluding jury trials,

arbitration,[3] and class action suits. (Compl., Ex. 1, p. 5). Instead, the loan agreement contains a

detailed dispute resolution process. (*Id.*).

## ARGUMENT

### I.      Legal Standard under Fed. R. Civ. P. 12(b)(6).

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint.

*Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). Under Rule 12(b)(6),

a court must take three steps:

*First*, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The allegations of a complaint are to be liberally construed

---

[3] On July 10, 2017, Part 12 CFR Part 1040 was added to Chapter X in Title 12 of the Code of Federal Regulations regulating Arbitration Agreements. Significantly, Section 1040.3 (b)(2)(ii) exempts "Any State, Tribe, or other person to the extent such person qualifies as an "arm" of a State or Tribe under Federal sovereign immunity law and the person's immunities have not been abrogated by Congress. In addition to the 1040.3 (b)(2)(ii) exemption, the new regulation addresses concerns regarding unintended waivers by adding 1040.4(a)(2)(vi) related to required disclosure/notice provisions and provides language to alleviate any waiver of sovereign immunity questions.

in favor of the plaintiffs. *Conley v. Gibson*, 355 U.S. 41, 44 (1957); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993).

*Second*, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. While the court must consider all "factual allegations in the complaint to be true and accord[] all reasonable inferences to the plaintiff," *Westmoreland v. Brown*, 883 F.Supp. 67, 70 (E.D. Va. 1995), the court need not accept "conclusory allegations regarding the legal effect of the facts alleged." *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Indeed, the "presence … of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability]." *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

*Third*, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* A claimant's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citation omitted). Plaintiffs must offer enough facts to "nudge[ ] their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has "shown" that he is entitled to relief. *Iqbal*, 556 U.S. at 679.

## II.    Plaintiffs have failed to state a claim upon which relief may be granted because the choice-of-law and forum selection clauses in the loan agreements are enforceable.

Plaintiffs rely on 28 U.S.C. § 2201, which authorizes a federal court to exercise jurisdiction over declaratory judgment claim when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuances of a declaratory judgment."   (Complaint ¶ 93); *Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).   However, Plaintiffs have not alleged facts to show there is a substantial controversy sufficient to support issuance of a declaratory judgment. (*See* Complaint ¶ 94.)

### A.    Plaintiffs have not alleged a substantial controversy between the parties.

Faced with the reality that the forum selection clauses doom their claims, Plaintiffs preemptively ask this Court to declare "that the choice of law and forum-selection provisions [in Plaintiffs' loan agreements] are void and unenforceable under Va. Code. [sic] § 6.2-1541(A) and as a matter of Virginia's well-established public policy." (Compl. ¶¶ 83, 94).

To support the requested relief, Plaintiffs allege that the forum selection clause is also unenforceable "because it seeks to deprive consumers of a remedy and their day in court." (Compl. ¶ 77).  But Plaintiffs' allegations are not based on Plaintiffs' efforts to rely on the choice of law and forum selection provisions.  Instead, Plaintiffs' allegations are based on their selective reading and misconstruction of the provisions at issue.

Plaintiffs rely largely on limited portions of their loan agreements and limited portions of applicable law and regulations.  First, Plaintiffs' quote a portion of the Tribal Dispute Resolution Procedure provision from their loan agreements, supplied above.  However, Plaintiffs conveniently omit the portion that includes:

At a hearing, You may be represented by legal counsel at Your own expense. The administrative review hearing will occur within sixty (60) days after the Authority receives Your written request. The Authority will send notice to You and Us when a request for a hearing is granted or denied.

A consumer may appeal an Authority decision and order by filing a written petition for review with the Tribal Court within ninety (90) days after the Authority issued its decision. (Compl., Ex. 1, p. 5)

Plaintiffs cannot affix a copy of their loan agreements to their pleading then deny the language in their loan agreements by simply omitting it from their allegations. Plaintiffs argue that the forum selection clause "seeks to deprive consumers of a remedy and their day in court." Yet, the very language Plaintiffs have chosen to ignore clearly shows that heir argument is directly contradicted Plaintiffs' own factual allegations.

To be clear, Plaintiffs' proffered factual support shows that under the forum selection clause, Plaintiffs have the ability to file a complaint directly with the lender, Big Picture, to which Big Picture must respond within thirty (30) days. (Compl., Ex. 1, p. 5) If left unsatisfied after Big Picture responds, Plaintiffs may file a formal complaint with the TFSRA, who must provide notice to Plaintiffs and Big Picture if a hearing was granted or denied. (Compl., Ex. 1, p. 5) If a hearing is granted, it must be held within sixty (60) days after receiving Plaintiffs complaints. (Compl., Ex. 1, p. 5) If a hearing is granted, the TFSRA must issue a decision within ninety (90) days after a hearing is held. (Compl., Ex. 1, p. 5) According to the forum selection, any decision or order by the TFSRA may be appealed to the LVD Tribal Court, where Tribal Court Rules will apply. (Compl., Ex. 1, p. 5)

Plaintiffs have been provided an entire administrative agency and a LVD Tribal Court review process to address any complaints they have related to their loan. Thus, Plaintiffs have failed to allege that there is a substantial controversy between the parties related to the forum

9

selection clause because there can be no dispute over the language of the clause, when read in its entirety, and such language directly contradicts Plaintiffs allegations that the clause deprives Plaintiffs of their day in court.

Plaintiffs also rely on TFSRA Regulation 1.1 § 4 in an attempt to support their claims that the forum selection clause deprives Plaintiffs of their day in court.  Plaintiffs allege that under TFSRA Regulation 1.1 § 4(i) the TFSRA does not have jurisdiction; (ii) that the TFSRA will not "grant the consumer an opportunity be heard" if the only allegation is that the loan "is illegal in a jurisdiction outside the jurisdiction of [LVD];" and, (iii) that the TFSRA may "resolve the dispute in favor of the consumer upon a finding that the [tribal entity] *violated a law or regulation of the Tribe*." (Compl. ¶¶ 69, 76, 79, 80, 81).  But again, Plaintiffs' selective reading devalues the entirety of the applicable law and misrepresents the facts.

To begin, nothing in TFSRA Regulation 1.1 § 4 supports Plaintiffs' contention that the TFSRA does not have jurisdiction. In fact, nothing anywhere supports Plaintiffs' contention that LVD, through the TFSRA and LVD Court, does not have jurisdiction.   Indeed, the Regulatory Code explains that any consumer financial services offered by any tribally owned licensee are within the jurisdiction of the Tribe, and by extension the TFSRA.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #4, §§ 1.1(c), (e), (g), 2.4, 5.1(c), 7.2(a), (g), 8.1).  Moreover, the Regulatory Code was enacted by LVD under its constitutional authority to enact laws that control activity within LVD's jurisdiction.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss,  Attach. #1, Art I § 2.)  Second, while Plaintiffs rely on TFSRA Regulation 1.1 § 4[4]  to argue that the TFSRA *could* deny a customer's request for a hearing if customer's only complaint is based on

---

[4] TFSRA Regulation 1.1 § 4 has since been superseded by amendments to the Regulatory Code.

state law, Regulation 1.1 does not predetermine that Plaintiffs will "lose" on their dispute—it created a situation where the TFSRA may decline to conduct a hearing.  Moreover, *arguendo,* if the TFSRA were to decline to conduct a hearing, that decision, pursuant to the Regulatory Code and the tribal dispute resolution procedure provision in the loan agreements, is appealable to the LVD Tribal Court.  *See* Compl., Ex. 1, p. 5.  Finally, any issue that Plaintiffs take with the TFSRA Regulations is a dispute between Plaintiffs and the TFSRA, not the present parties to this case.

Without factual support, Plaintiffs also allege that the choice of law clause at issue is actually "a choice of no law clause," and thus are unenforceable.  (Compl. ¶ 82, citing *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016)).  Presumably, Plaintiffs' reliance on *Hayes* in their complaint is to analogize the non-tribal defendant's attempt to enforce an untenable arbitration clause to Plaintiffs' loan agreements here.  But again, Plaintiffs allegations are directly contradicted by the facts they supply as the language of the choice of law provision clearly states: "This Agreement will be governed by the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("Tribal law"), ***including but not limited to the Code as well as applicable federal law***."  Compl. ¶ 70 (emphasis added).

Plaintiffs' use of *Hayes* in an attempt to impute the result in that case to the case at hand fails for three reasons as the circumstances in *Hayes* are irreconcilably different from those present in this case.  First, *Hayes* was a plaintiff's case against a non-tribal servicer.  The non-tribal service provider attempted to dismiss the case based on an arbitration provision in the loan agreement. In *Hayes*, the loan agreement was between plaintiffs and a non-party online lender issuing loans from within the bounds of a tribal reservation but who was not tribally owned.  *Hayes,* 811 F.3d at 675. The Fourth Circuit held that the arbitration provision could not be enforced by the non-lender, non-tribal service provider.

Next, the arbitration procedure contained in the *Hayes* loan agreements imposed procedure and oversight by the Cheyenne River Sioux Tribe—but the procedure and oversight simply did not exist. *Hayes*, 811 F.3d at 672. Quite the opposite is present here as Plaintiffs have demonstrated by the very existence of TFSRA regulations, the TFSRA, and the LVD Court. What is more, the Regulatory Code establishes legitimate informal and formal dispute resolution processes and details how those processes work, all applicable laws are available to Plaintiffs at any time, and the LVD Court is open every business day for Plaintiffs' inspection. Regulatory Code, Chapter 9.

Finally, in *Hayes,* the arbitration provision in the loan agreement "renounce[d] wholesale the application of any federal law to the plaintiffs' federal claims." *Hayes*, 811 F.3d at 673. Specifically, the provision stated that the agreement "shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies []." *Id.* at 670. The choice of law provision at issue here is quite distinguishable from that in *Hayes*. Plaintiffs actually quote in their Complaint the choice of law provision from Plaintiffs' loan agreements, which clearly states that the loan agreement will be governed by LVD law "as well as applicable federal law." (Compl. ¶ 70.) Moreover, under Regulatory Code § 6.2, LVD law requires compliance with federal consumer protection laws. So there is no "sham" process, and Plaintiffs' reliance on the dissimilar process and loan agreements in *Hayes* to impute culpability here is baseless.

Because Plaintiffs' factual allegations contradict their cause for a declaration and prove the loan agreement contains a meaningful dispute resolution process and an enforceable choice of law provision, Plaintiffs' have failed to state a declaratory action upon which relief can be granted and Count 1 must be dismissed, which necessarily precipitates dismissal of Plaintiffs' Complaint.

### B.     Plaintiffs reliance on Virginia public policy against usury does not support their declaratory action.

Plaintiffs seek a declaratory judgment and other forms of relief with an appeal to emotion based on "Virginia's well-established public policy" against high interest loans.  Compl. ¶ 94. Plaintiffs' Complaint discusses *ad nauseam* Virginia's "longstanding" public policy against "excessive" interest rates.  Compl. ¶¶ 1, 21-25.  All of the allegations in the Complaint hinge on that assertion.  While Virginia's public policies have no bearing on whether Defendants' sovereign immunity bars Plaintiffs' claims or on whether Plaintiffs' have properly pled a declaratory action, relevant here is the simple fact that Virginia also has a long history of public policy supporting valid forum selection and choice of law provisions such as those present in the relevant loan agreements.

Virginia jurisprudence clearly permits parties to a loan agreement to designate jurisdictions and laws other than Virginia as laws to govern their transaction.  This remains true even if the chosen jurisdiction has no usury law whatsoever, such as in *Settlement Funding, LLC v. Von Neuman-Lillie*, 274 Va. 76 (2007).

In *Settlement Funding*, a Virginia resident took out a loan for $29,000 plus interest, which she secured with her monthly lottery payments.  *Id.* at 78.  The loan agreement contained a choice-of-law provision, which stated that disputes would be decided according to Utah law.  *Id.*  When the Virginia resident stopped making loan payments, Settlement Funding (the noteholder) sough to enforce its security interest in the lottery payments.  *Id.* at 79.  The Virginia resident objected, claiming that the security interest in the lottery payments was unenforceable because the underlying loan was usurious.  *Id.*

The Supreme Court of Virginia rejected the Virginia resident's argument and allowed collection despite interest rates in excess of those allowed by Virginia law.  The court held that

"[i]f a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *Id.* at 80. The court acknowledge that "Utah has not established any limits on maximum rates of interest for consumer loans," but nonetheless concluded that the choice-of-law clause was enforceable. *Id.*

Therefore, it is clear that Virginia's public policy in enforcing the mutually agreed to provisions of a contract between parties outweighs, if not wholly supplants, Virginia's public policy against usury. As such, Plaintiffs' public policy arguments supporting their declaratory action may be disregarded because Virginia's public policy against usury is trumped by Virginia's policy to uphold contractual provisions.

## III. Plaintiffs do not make any allegations against the LVD Officers and thus have failed to state a claim upon which relief can be granted.

Out of 139 allegations, Plaintiffs only make four substantive allegations against the LVD Officers that simply describe the LVD Officers by name and official capacity. (*See* Compl., ¶¶ 17–20). The only other instances where Plaintiffs discuss the LVD Officers by identifying them with specificity are in footnotes stating that they should be enjoined from violating federal law and excluding them from certain causes of action or types of relief. (*See* Compl., ¶¶ 5 n. 3; 95 n. 8; 119 n. 9). Finally, a careful reading of several allegations that refer to "Defendants" show that the term is either used generically or later qualified to mean either Big Picture, Ascension, Martorello, or Gravel. (*See, e.g.*, Compl., ¶ 4 ("This lawsuit challenges the legality of Defendants' loans"), ¶ 56 ("In order to qualify for Defendants' loan product, consumers were required to electronically sign a form contract created by Defendants—not the Tribe.")).

Plaintiffs' pleading is bare as LVD's executive officers and there are no pled facts to show that the LVD Officers created loan agreements, directed any activity into Virginia, had individual control over any of the alleged enterprise, were involved in collection of any debt, that they had

14

any contact with the Plaintiffs, or that they individually received any benefit from any alleged conduct.  (*See* Compl., ¶¶ 27–32, 33–42, 54–60.  *See also, e.g.*, Compl., ¶¶ 66, 69–70).  None of the evidence connects the LVD Officers to the alleged unlawful conduct.  Moreover, the LVD Officers are either the improper parties for the relief sought or are expressly excluded from the relief sought.  (Compl. ¶¶ 95 n. 8, 84–94, 110–18, 119–28).

As Plaintiffs have not alleged any facts sufficient to support any continuing action against the LVD Officers and have not stated a plausible basis for relief from the LVD Officers, the Court should dismiss the Complaint as to the LVD Officers under Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For these reasons, Plaintiffs allegations and supporting facts are self-defeating as when read in its entirety, Plaintiffs' loan agreements disprove their conclusory allegations, even if the Court accepts the allegations as true.

Defendants Big Picture, Ascension, and the LVD Officers respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice.

**BIG PICTURE LOANS, LLC, ASCENSION
TECHNOLOGIES, INC., JAMES WILLIAMS,
JR., GERTRUDE MCGESHICK, SUSAN
MCGESHICK, AND
GIIWEGIIZHIGOOKWAY MARTIN**

By:/s/David N. Anthony_____
David N. Anthony
Virginia State Bar No. 31696
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com

Karrie Sue Wichtman (admitted *pro hac vice*)
Justin A. Gray (admitted *pro hac vice*)
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: kwichtman@rosettelaw.com
Email: jgray@rosettelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA  23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
*Counsel for Plaintiffs*

David F. Herman
Jonathan P. Boughrum
Richard L. Scheff
MONTGOMERY MCCRACKEN WALKER
& RHOADS LLP
123 S Broad Street
Philadelphia, PA 19109
Telephone: 215-772-1500
Facsimile: 215-772-7620
Email: dherman@mmwr.com
Email: jboughrum@mmwr.com
Email: rscheff@mmwr.com
*Counsel for Defendant Matt Martorello*

/s/ David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
*Counsel for Defendants*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com