**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

LULA WILLIAMS, GLORIA TURNAGE,
GEORGE HENGLE, DOWIN COFFY, and
FELIX GILLISON, JR., *on behalf of themselves
and all individuals similarly situated*,

              Plaintiffs,

v.

BIG PICTURE LOANS, LLC; MATT MARTORELLO;
ASCENSION TECHNOLOGIES, INC.;
DANIEL GRAVEL; JAMES WILLIAMS, JR.;
GERTRUDE MCGESHICK; SUSAN MCGESHICK;
and GIIWEGIIZHIGOOKWAY MARTIN,

              Defendants.

_____ /

Civil Case No. 3:17-cv-00461-REP

**DEFENDANT BIG PICTURE LOANS, LLC'S BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS FOR FAILURE TO EXHAUST TRIBAL REMEDIES
AND UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

FACTS ................................................................................................................................ 2

    The Lac Vieux Desert Band of Lake Superior Chippewa Indians.............................. 2

    LVD has authorized online lending from its Reservation. ........................................ 3

    Big Picture ................................................................................................................. 4

    LVD's Dispute Resolution Procedures ...................................................................... 5

    Plaintiffs' choice of law and forum provisions. ........................................................ 8

ARGUMENT ..................................................................................................................... 9

    I.    Under the doctrine of tribal exhaustion, the Court should dismiss this case and require Plaintiffs to exhaust tribal remedies. ........................................................................ 9

        A.    Legal standard for tribal exhaustion. ............................................................ 9

        B.    Tribal Exhaustion is a core component of tribal sovereignty. .................... 10

        C.    A "colorable" claim of tribal jurisdiction requires dismissal or abeyance. ............... 12

        D.    Big Picture has made a colorable claim that the TFSRA and the LVD Court have jurisdiction over Plaintiffs' claims. ...................................................... 13

            1.    Plaintiffs have entered into a consensual contractual relationship. ....................... 14

            2.    The contract occurred on Indian lands. ................................................ 14

    II.    The Court should dismiss Plaintiffs' claims under the doctrine of *forum non conveniens* because Plaintiffs are bound by their contracts. ................................................. 17

        A.    Legal Standard for *forum non conveniens*. .............................................. 17

        B.    Here, the forum selection clause is valid. .................................................. 18

i

1.      Plaintiffs do not allege fraud...................................................................................... 18

2.      The forum selection clause guarantees Plaintiffs a "day in court." ........................ 19

3.      Plaintiffs' forum selection clause allows for remedies if Plaintiffs' disputes have

merit. 21

4.      Plaintiffs' forum selection clauses is consistent with Virginia's public policy. ..... 21

C.      The Court should enforce the forum selection clause and dismiss the case. .............. 23

1.      The Plaintiffs' choice of forum here merits no weight as the forum selection clause

in Plaintiffs' loan agreements are valid. ......................................................................... 24

2.      The Plaintiffs and Big Picture's private interest should not be considered. ........... 25

3.      The case should be heard according to the loan agreements' choice of law

provisions. ....................................................................................................................... 25

4.      As the parties' chosen forum is a tribal forum, public policy favors dismissal. ...... 26

CONCLUSION ..................................................................................................................... 27

## TABLE OF AUTHORITIES

<u>Cases</u>

*Albemarle Corp. v. AstraZeneca UK Ltd.*
628 F.3d 643 (4th Cir. 2010) ................................................................................... 17, 18

*Allen v. Lloyd's of London*
94 F.3d 923 (4th Cir. 1996) ............................................................................................. 18

*Altheimer & Gray v. Sioux Mfg. Corp.*
983 F.2d 803 (7th Cir. 1993), cert. denied, 510 U.S. 1019 (1993) ............................... 10

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*
134 S. Ct. 568 (2013) ........................................................................................... passim

*Bell v. Hood*
327 U.S. 678 (1946) ......................................................................................................... 13

*Bowen v. Doyle*
230 F.3d 525 (2d Cir. 2000) ............................................................................................ 10

*Brown v. Western Sky Financial, LLC*
84 F. Supp. 3d 467 (M.D.N.C. 2015) ........................................................................ 12, 16

*Buchanan v. Sokaogon Chippewa Tribe*
40 F. Supp. 2d 1043 (E.D. Wis. 1999) ........................................................................... 10

*Com., State Lottery Dep't v. Settlement Funding, LLC*
75 Va. Cir. 248, 2008 WL 6759945 (2008) .................................................................... 22

*Dolgencorp, Inc. v. Mississippi Band of Choctaw Indians*
746 F.3d 167 (5th Cir 2014), aff'd, Dollar General Corp., 136 S.Ct. 2159 ................... 14

*Dollar General Corp. v. Miss. Band of Choctaw Indians*
-- U.S. --, 136 S.Ct. 2159 (2016) ................................................................................... 10

*Egboh v. United States*
672 F. App'x 284 (4th Cir. 2017) ................................................................................... 12

*El Paso Natural Gas Co. v. Neztsosie*
526 U.S. 473 (1999) ......................................................................................................... 12

*Essex Ins. Co. v. Y&J Constr., Inc.*
E.D. Va. No. 1:15-CV-1597, 2016 WL 8254921 (E.D. Va. Dec. 30, 2016) ................. 15

*Ferens v. John Deere Co.*
494 U.S. 516 (1990) ................................................................................................ 25


*FTC v. Payday Fin.*
935 F. Supp. 2d 926 (D.S.D. 2013) ................................................................. 15, 16

*Hayes v. Delbert Services Corp.*
E.D. Va. No. 3:14-CV-258, 2015 WL 269483 (E.D. Va. Jan. 21, 2015), rev'd and remanded on
   other grounds, 811 F.3d 666 (4th Cir. 2016) .............................................. 9, 19, 20

*Heldt v. Payday Financial, LLC*
12 F. Supp. 3d 1170 (D.S.D. 2014) ........................................................................ 15

*Holloway v. Schweiker*
724 F.2d 1102 (4th Cir. 1984), cert. denied, 467 U.S. 1217 (1984) ......................... 13

*Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*
227 F. Supp. 2d 581 (E.D. Va. 2002) ..................................................................... 17

*Iowa Mut. Ins. Co. v. LaPlante*
480 U.S. 9 (1987) ................................................................................... 10, 11, 14, 25

*Jackson v. Payday Fin., LLC*
764 F.3d 765 (7th Cir. 2014) .................................................................................... 9

*Jensen v. Schweiker*
709 F.2d 1227 (8th Cir. 1983) ................................................................................ 13

*Jian Pan v. Gonzales*
489 F.3d 80 (1st Cir. 2007) ..................................................................................... 12

*Lumataw v. Holder*
582 F.3d 78 (1st Cir. 2009) ..................................................................................... 12

*Madewell v. Harrah's Cherokee Smokey Mountains Casino*
730 F.Supp.2d 485 (W.D.N.C. 2010) ..................................................................... 13

*Medrano v. Lynch*
673 F. App'x 320 (4th Cir. 2017) ............................................................................ 12

*Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*
E.D. Va. No. 1:17-CV-186, 2017 WL 1491134 (E.D. Va. Apr. 25, 2017) ................ 17

*Merrion v. Jicarilla Apache Tribe*
455 U.S. 130, 102 S.Ct. 894 (1982) ........................................................................ 25

iv

*Montana v. United States*
450 U.S. 544 (1981)......................................................................................... 11, 14

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*
471 U.S. 845 (1985)................................................................................. 9, 10, 12, 13

*New Mexico v. Mescalero Apache Tribe*
462 U.S. 324, 103 S. Ct. 2378 (1983)...................................................................... 26

*Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*
207 F.3d 21 (1st Cir. 2000)................................................................................... 12

*Plains Commerce Bank v. Long Family Land & Cattle Co.*
554 U.S. 316 (2008)............................................................................................ 14

*Pro Football Inc. v. Paul*
39 Va. App. 1 (2002) .......................................................................................... 15

*Rahmani v. Resorts Int'l Hotel, Inc.*
20 F. Supp. 2d 938 (E.D. Va. 1998), aff'd, 182 F.3d 909 (4th Cir. 1999) ................... 15

*Settlement Funding, LLC v. Von Neumann-Lillie*
274 Va. 76 (2007) ..................................................................................... 21, 22, 25

*Stewart Org., Inc. v. Ricoh Corp.*
487 U.S. 22 (1988).............................................................................................. 24

*Stock W. Corp. v. Taylor*
942 F.2d 655 (9th Cir. 1991), on reh'g, 964 F.2d 912 (9th Cir. 1992) ........................ 11

*Three Affiliated Tribes v. Wold Engineering*
476 U.S. 877, 106 S.Ct. 2305 (1986)....................................................................... 25

*United States Steel Corp., Gary Works v. Indus. Com. of Illinois*
161 Ill. App. 3d 437 (1987) .................................................................................. 15

*United States v. Wheeler*
435 U.S. 313 (1978)............................................................................................. 10

*Williams v. Lee*
358 U.S. 217, 79 S.Ct. 269 (1959)........................................................................... 25

## **Statutes**

12 U.S.C. § 5481.................................................................................................. 4
12 U.S.C. § 5481(12) ....................................................................................... 4, 21
12 U.S.C. § 5481(27) ....................................................................................... 4, 21

v

12 U.S.C. § 5495 ................................................................................................ 4, 21
12 U.S.C. § 5551 ................................................................................................ 4, 21
12 U.S.C. § 5552 ................................................................................................ 4, 21
25 U.S.C. § 1300h ................................................................................................... 2

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................... 18

**Regulations**

12 CFR 1040 ............................................................................................................ 9
12 CFR 1040.3 (b)(2)(ii) ......................................................................................... 9
12 CFR 1040.4(a)(2)(vi) ......................................................................................... 9
82 Fed. Reg. 4915 ................................................................................................... 2
82 Fed. Reg. 4917 ................................................................................................... 2
Tribal Consumer Financial Services Regulatory Code § 1.1 (d) ........................... 3
Tribal Consumer Financial Services Regulatory Code § 1.1(a) ............................. 3
Tribal Consumer Financial Services Regulatory Code § 1.2(e) ........................... 21
Tribal Consumer Financial Services Regulatory Code § 1.2(f) ............................ 21
Tribal Consumer Financial Services Regulatory Code § 4.1 ................................ 21
Tribal Consumer Financial Services Regulatory Code § 4.13 ................................ 6
Tribal Consumer Financial Services Regulatory Code § 4.13(c) ......................... 21
Tribal Consumer Financial Services Regulatory Code § 4.14 ................................ 6
Tribal Consumer Financial Services Regulatory Code § 4.8(c) ............................. 5
Tribal Consumer Financial Services Regulatory Code § 6.2 ................................ 21
Tribal Consumer Financial Services Regulatory Code § 9 .................................... 5
Tribal Consumer Financial Services Regulatory Code § 9.3 ................................. 6
Tribal Consumer Financial Services Regulatory Code § 9.3(a) ............................. 6
Tribal Consumer Financial Services Regulatory Code § 9.3(c) ............................. 7
Tribal Consumer Financial Services Regulatory Code § 9.3(d) ............................. 6
Tribal Consumer Financial Services Regulatory Code § 9.3(e)(i) ......................... 7
Tribal Consumer Financial Services Regulatory Code § 9.3(e)(ii) ........................ 7
Tribal Consumer Financial Services Regulatory Code § 9.3(f) .............................. 7
Tribal Consumer Financial Services Regulatory Code § 9.3(h) ............................. 7
Tribal Consumer Financial Services Regulatory Code § 9.4 ................................. 7
Tribal Consumer Financial Services Regulatory Code § 9.4(b) ............................. 7
Tribal Consumer Financial Services Regulatory Code § 9.4(f) .............................. 7
Tribal Consumer Financial Services Regulatory Code § 9.4(g) ............................. 7

**Other Sources**

Black's Law Dictionary (10th ed. 2014) ............................................................... 13

Defendant, Big Picture Loans, LLC ("Big Picture"), by counsel, hereby moves the Court to dismiss Plaintiffs' Complaint on the bases of: (1) failure to exhaust tribal remedies; and (2) under the doctrine of *forum non conveniens*.

## INTRODUCTION

Plaintiffs sued Big Picture in this Court in an attempt to avoid the choice of law and forum selection provisions in their loan agreements.  However, Plaintiffs' speculative and unsupported allegations that the Lac Vieux Desert Band of Lake Superior Chippewa Indians' ("LVD's") dispute resolution procedures and Tribal Court are a "sham" are insufficient to support their forum-shopping.  (Plaintiffs' Compl., ¶ 79.)

This Court presumes that forum selection and choice of law clauses are valid and enforceable (unless proven otherwise). *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013).  Significantly, the forum selection clause in Plaintiffs' loan agreements is unlike a typical forum selection clause in that the chosen forum is a tribal governmental regulator and tribal court.   That ensures a robust and fair dispute resolution process, and it places this case into the innumerable instances where a forum selection clause has been honored and enforced by a federal court.   Hence, the forum selection clause is valid and enforceable, and Plaintiffs' counsel's boilerplate allegations from each of their many pending like cases that the chosen forum is a "sham" are wholly unsupportable under these facts and insufficient to show the forum selection and choice of law provisions are unenforceable.

At bottom, Plaintiffs entered into consensual contractual relationships with an arm of LVD, a relationship that is wholly within LVD's jurisdiction, which, under the long-standing doctrine of tribal exhaustion, requires the Court to dismiss this matter until Plaintiffs have exhausted tribal remedies, which they indisputably have not done.  Moreover, due to the valid and enforceable

forum selection clauses, this Court should dismiss this matter under the doctrine of *forum non conveniens.*

## FACTS

### The Lac Vieux Desert Band of Lake Superior Chippewa Indians.

LVD is a federally recognized Indian tribe with reservation lands near Watersmeet, Michigan ("Reservation"). 25 U.S.C. § 1300h; 82 Fed. Reg. 4915, 4917 (Jan. 17, 2017).  On May 14, 1992, LVD adopted its Constitution ("LVD Constitution") "to govern [] under [its] own laws and customs, to maintain and foster [its] tribal culture, to protect [its] homeland" and "for the government, protection and common welfare of [LVD]." (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #1, LVD's Const., Preamble).  Under the LVD Constitution, LVD's jurisdiction shall be exercised to the full extent of [LVD]'s sovereign power." (*Id.* at Art. I § 2).

LVD's Constitution establishes a Tribal Court ("LVD Court") that is "independent from the legislative and executive functions of the tribal government." (*Id.* at Art V § 6).  The LVD Court is empowered with general jurisdiction over "all cases, matters or controversies arising under th[e] [LVD] Constitution and the laws, ordinances, regulations, customs, and judicial decisions of [LVD] [which] shall be exercised to the fullest extent consistent with self-determination." (*Id.* at Art. V § 2(a)).

On December 27, 1994, the LVD Court adopted its court rules to "govern all proceedings[,] . . . practice and procedure in all courts established by the Constitution and [LVD]" and has kept its court rules updated to manage the evolving practice of litigation.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #41, Lac Vieux Desert Band of Lake Superior Chippewa Indians Court Rules of 2008, LVD 2008-1.003.  *See also*

Attach. #1, Art V § 7).  The Tribal Court has a strong relationship with Michigan's courts and has worked with the Michigan State Court Administrator to establish a clear avenue for comity and reciprocity for the recognition of Tribal Court judgments by Michigan, and vice versa.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #42, LVD Court Admin. Ord. 2013-002).[1]

Since its inception, the Tribal Court has heard approximately 1,151 criminal cases, 2,248 civil cases, 324 juvenile cases, and 410 custody cases, and has overseen 20 adoptions.   The Tribal Court was recently remodeled and equipped with Polycom video conference capability to allow remote parties to participate in judicial proceedings.  Chief Judge Mark S. Esqueda currently presides over the LVD Court and oversees the Court Clerk, Probation Officer/Bailiff, and Receptionist/File Clerk.

### LVD has authorized online lending from its Reservation.

As fully briefed by Defendant Big Picture Loans, LLC ("Big Picture"), LVD enacted the Tribal Consumer Financial Services Regulatory Code ("Regulatory Code") to authorize online consumer lending to help "improve the Tribe's economic self-sufficiency, to enable the Tribe to better serve the social, economic, educational, and health and safety needs of its members and visitors, and to provide its members with opportunities to improve their own economic circumstances."  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #3, Resolution # 2011-053; Attach. #4, Regulatory Code, § 1.1(a), (d), as amended).

The Regulatory Code governs every aspect of tribal consumer financial services with strict oversight over licensees' operations to ensure that consumers are protected by the Regulatory Code

---

[1] *Available at* http://courts.mi.gov/Courts/tribalCourts/Pages/default.aspx

and all applicable federal laws.  (*Id.* at §§ 1.2(h); 1.3(d), 2.4; 5.1; 5.2(b)(8); 6; 7.2).  LVD created the Tribal Financial Services Regulatory Authority ("TFSRA"), a government subdivision, to protect consumers, enforce the law,[2] and to regulate all consumer financial services occurring within LVD's jurisdiction.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #5, Resolution 2011-030; Attach. #4, §§ 1.1(i), 4.16.2)).

Significant here is the TFSRA's capacity to investigate consumer complaints and preside over an administrative dispute resolution procedure to address and resolve consumer complaints and grievances.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #4, § 9).

## Big Picture

LVD created Big Picture as its premiere lending entity.  Big Picture is organized under LVD law, and headquartered and operating on LVD's reservation.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #10, Resolution T2014-066; Attach. #12, Big Picture First Amended Articles).  Big Picture's websites are hosted on servers that are located on the Reservation.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #2, Affd. Michelle Hazen, ¶30(a)).  With Big Picture's business model, consumers apply for loans on Big Picture's website and Big Picture evaluates the application.  If the applicant meets Big Picture's criteria, Big Picture informs

---

[2] The Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481 *et seq.*, authorizes tribal regulators to enforce any of the enumerated federal consumer protection laws in the same manner as their state and federal counterparts.  *See* 12 U.S.C. § 5481(12) (listing the "enumerated consumer laws" enforceable under the CFPA); 12 U.S.C. § 5481(27) (including federally recognized Indian tribes within the definition of "State."); 12 U.S.C. § 5495 (requiring the CFPB to coordinate with State regulators); 12 U.S.C. §§ 5551-52 (allowing a State attorney general or regulator to bring a civil action to enforce the CFPA in State court over State licensed entities).

the applicant of the available terms and interest rates.  If the applicant proceeds to take the loan, they execute the loan agreement and submit it to Big Picture for approval or denial.  If approved, Big Picture then executes the agreement and originates the loan from the Reservation.  (Attach. #2, ¶30(c)(8)).

Significantly, before an applicant is able to electronically sign a loan agreement, the applicant is required to review and acknowledge several disclosures, including disclosures related to the dispute resolution procedure available should any dispute arise related to the loan.

### LVD's Dispute Resolution Procedures

LVD's consumer dispute resolution procedures are codified in Section 9 of the Regulatory Code,[3] much of which is repeated in Big Picture's loan agreements.  (*See* Compl., ¶ 70, Document 1-1 pp. 4-5).  The dispute resolution procedure mirrors federal and state administrative procedures by empowering an administrative executive body—the TFSRA—to sit in a quasi-judicial capacity and preside over consumer dispute hearings with ultimate oversight through an administrative appeal to a court—the LVD Court.  The LVD law entitles consumers to a three-step process.

The first step allows a dissatisfied consumer to raise their concerns with the lender (or any licensee) to allow the lender an opportunity to resolve the dispute.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #4, § 9.2). Essentially, this requires the parties to attempt to resolve the matter amicably.  It is much simpler than requiring formal arbitration or mediation procedures.

If the consumer is dissatisfied with the lender's attempt to resolve the dispute, the consumer may elevate the matter and rely on the formal dispute resolution procedure—*i.e*., an administrative procedure—and request that the TFSRA review the complaint and the lender's proposed

---

[3]  http://www.lvdtribal.com/tfsra.html .

resolution. (*Id.*, § 9.3). The TFSRA is comprised of two appointed agents that are LVD tribal members and qualified as required by the Regulatory Code. (*Id., §* 4.8(c)). The TFSRA's responsibilities are detailed thoroughly in the Regulatory Code and primarily focus on licensure, including oversight of licensees, and consumer protection. (*See generally Id.,* § 4).

Significant here are the codified steps the TFSRA follows to resolve consumer disputes. Under the Regulatory Code, the TFSRA is empowered to investigate any consumer complaint and has the authority to compel licensees to produce records and testify, and, if necessary, hold a hearing on the matter. (*Id.*, § 9.3. *See also* §§ 4.13, 4.14).

The Regulatory Code details a very specific "Formal Dispute Procedure" that is available to every consumer to take action against anyone within the TFSRA's jurisdiction. (*Id., §* 9.3). The procedure first requires that an aggrieved consumer demonstrate they have attempted to resolve their dispute directly with their lender and requires the consumer to submit a written request to invoke the Formal Dispute Resolution Procedure that includes the consumer's identify and contact information, a copy of the consumer's loan agreement, information explaining their lender's determination, a summary of the complaint, and whether the consumer is requesting a hearing. (*Id., §* 9.3(a)).

With a documented complaint, the TFSRA has broad powers to investigate the complaint detailed by the Regulatory Code and is the only regulatory entity that does not face the jurisdictional bar of a licensee's sovereign immunity—licensees accept the TFSRA's jurisdiction by virtue of their license.

At an administrative hearing, any party may be represented by legal counsel and the TFSRA has broad authority to establish pretrial procedures, motion practice, and discovery as appropriate for each particular complaint. (*Id., §* 9.3(d)). As to the hearing itself, the TFSRA is

empowered to preside or designate a presiding officer, and the parties are given the opportunity to make opening and closing statements, present witnesses and evidence, testify and cross-examine testimony. On its own or by request, the parties may be allowed to file post-hearing briefs. Significantly, unlike any other jurisdiction, under the Regulatory Code a lender is required to appear and provide records or the lender will be defaulted. *(Id., §§* 9.3(e)(i)-(ii), 9.3(h)). The TFSRA is empowered to resolve a consumer's complaint without a hearing in situations where the law and appropriate resolution are clear and a hearing would be unnecessary. *(Id., §* 9.3(c)).

To conclude the formal procedure, the TFSRA will issue a written decision and order that is binding on a licensee and includes the TFSRA's factual findings, conclusions of law, its decision on the compliant, and a notice of the right to appeal to the LVD Court. (*Id.*, § 9.3(f)).

To ensure as much protection as possible to consumers, LVD has made any TFSRA decision appealable to the LVD Court *(Id., §* 9.4). In the dispute resolution process, a consumer is afforded every opportunity to build a record and make legal arguments to support their position. On appeal to the LVD Court, that administrative record and the TFSRA's decision are scrutinized by a sitting judge presiding over LVD's judiciary branch. As described above, the LVD Court is well established and beyond reproach.

The LVD Court must allow oral argument over any appeal, and reviews the administrative record and decision according to the codified standards. In a written decision and order, the LVD Court may affirm, reverse, or remand the TFSRA's decision upon a finding that the TFSRA's decision is arbitrary, capricious, not supported by evidence, or conflicts with the applicable law or the LVD Constitution. (*Id*., §§ 9.4(b), (f), (g)). Outside the Regulatory Code, the LVD Court is free to manage the appeal according to its rules and as otherwise necessary to ensure a just

disposition of the matter.  The LVD Court is required to issue an opinion and order as a final

decision in the matter which exhausts a consumer's administrative remedies.  (*Id.*, § 9.4(g)).

**Plaintiffs' choice of law and forum provisions.**

Plaintiffs correctly allege that their loan agreements all contain "virtually identical

governing law and forum selection clauses," which reads as follows:

> GOVERNING   LAW   AND   FORUM   SELECTION:   This
> Agreement will be governed by the laws of the Lac Vieux Desert
> Band of Lake Superior Chippewa Indians ("Tribal law"), including
> but not limited to the Code *as well as applicable federal law*. All
> disputes shall be solely and exclusively resolved pursuant to the
> Tribal Dispute Resolution Procedure set forth in Section 9 of the
> Code and summarized below for your convenience.
>
>          \*      \*      \*
>
> TRIBAL DISPUTE RESOLUTION PROCEDURE: The Tribe has
> established a Tribal Dispute Resolution Procedure (the "Procedure")
> to review and consider any and all types of complaints made by you
> or on your behalf relating to or arising from this Agreement. . . . The
> Tribe and Enterprise intend and require, to the extent permitted by
> Tribal law, that any complaint lodged, filed, or otherwise submitted
> by you or on your behalf to follow the Procedure.   Under the
> Procedure, a consumer . . .  shall direct his concerns or dispute to
> Enterprise  in  writing.   . . .   In the event that the consumer is
> dissatisfied with Enterprise's determination, he may initiate Formal
> Dispute Resolution by requesting an administrative review . . . by
> submitting such request in writing to the Tribal Financial Services
> Regulatory Authority ("Authority") . . . .  [See Compl., ¶¶ 70-71;
> emphasis added.]

Plaintiffs do not allege that they have ever attempted to rely on the choice of law and forum

selection provisions in their agreements, nor do they allege that they have exhausted the remedies

available to them under their loan agreements.

Moreover, all solicitations, Big Picture's website, and Plaintiffs' loan agreements clearly

explain that the contract is formed with Big Picture, a duly licensed Financial Services Licensee

by the TFSRA. (Compl., Doc. 1-1, pp 1, 2, 4-5; 1-2; Big Picture Loans, www. bigpictureloans.com

(2017)[4]).  The loan agreement also makes it clear that when the consumer consents to the terms of the agreement electronically it is the same as if the consumer physically signs the document on LVD's Reservation, and that Big Picture is shielded from unconsented suit by tribal sovereign immunity.  (Compl., Doc. 1-1, pp. 1, 2, 4-5).  Finally, the loan agreements contain clear waivers of any right to a jury trial, to arbitration,[5] and to class action litigation related to the loan.  (Compl., Ex. 1, p. 5).

## ARGUMENT

**I.      Under the doctrine of tribal exhaustion, the Court should dismiss this case and require Plaintiffs to exhaust tribal remedies.**

### A.      Legal standard for tribal exhaustion.

Under the doctrine of tribal exhaustion, "[u]ntil petitioners have exhausted the remedies available to them in the Tribal Court system, it would be premature for a federal court to consider any relief." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 857 (1985). This Court in *Hayes v. Delbert Services Corp.*, has acknowledged that, "[t]he tribal exhaustion doctrine requires federal courts to abstain from 'hearing certain claims relating to Indian tribes until the plaintiff has first exhausted those claims in tribal court.'"  *Hayes v. Delbert Services*

---

[4] "If Big Picture Loans approves your loan it will be governed by Tribal law, applicable federal law and your loan agreement. The laws of your resident state may have interest rate limits and other protective laws that are more favorable. If you wish to have your resident state law apply, you should consider taking a loan from a licensed lender in your state. Availability of installment loans are subject to change from time to time as determined by Big Picture Loans."

[5] On July 10, 2017, Part 12 CFR Part 1040 was added to Chapter X in Title 12 of the Code of Federal Regulations regulating Arbitration Agreements.  Significantly, Section 1040.3 (b)(2)(ii) exempts "[a]ny State, Tribe, or other person to the extent such person qualifies as an 'arm' of a State or Tribe under Federal sovereign immunity law and the person's immunities have not been abrogated by Congress."  In addition to the 1040.3 (b)(2)(ii) exemption, the new regulation addresses concerns regarding unintended waivers by adding 1040.4(a)(2)(vi) related to required disclosure/notice provisions and provides language to alleviate any waiver of sovereign immunity questions.

*Corp.*, E.D. Va. No. 3:14-CV-258, 2015 WL 269483, at *2 (E.D. Va. Jan. 21, 2015), *rev'd and remanded on other grounds*, 811 F.3d 666 (4th Cir. 2016) (quoting *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 784 (7th Cir. 2014)).

The application of the tribal exhaustion doctrine requires that before a federal court adjudicate a case, in the first instance a tribal court should conduct "a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes" to determine its jurisdiction over a plaintiff's claims. *Nat'l Farmers Union Ins. Cos.*, 471 U.S. at 855–56. If, after a tribal court determines its jurisdiction, there is a question over whether the tribal court has exceeded its jurisdiction, only then is a motion under 28 U.S.C. § 1331 appropriate to challenge "whether a tribal court has exceeded the lawful limits of its jurisdiction." *Id.* at 857.

### B.    Tribal Exhaustion is a core component of tribal sovereignty.

"Tribal courts play a vital role in tribal self-government . . . and the Federal Government has consistently encouraged their development." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14–15 (1987) (citing *United States v. Wheeler,* 435 U.S. 313, 332 (1978)). "[T]he Seventh Circuit has explained that the exhaustion doctrine is meant to implement Congress's policy of promoting tribal self-government and self-determination." *Buchanan v. Sokaogon Chippewa Tribe*, 40 F. Supp. 2d 1043, 1048 (E.D. Wis. 1999) (citing *Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 815 (7th Cir. 1993), *cert. denied*, 510 U.S. 1019 (1993).

Respecting tribal sovereignty, the Supreme Court has long recognized that when there is a "question whether a tribal court has the power to exercise civil subject-matter jurisdiction over non-Indians" that the "examination should be conducted in the first instance in the Tribal Court itself." *Nat'l Farmers Union Ins. Cos.*, 471 U.S. at 855–56. *See also Dollar General Corp. v.*

*Miss. Band of Choctaw Indians,* -- U.S. --, 136 S.Ct. 2159 (2016); *Bowen v. Doyle*, 230 F.3d 525, 529–30 (2d Cir. 2000) ("The tribal exhaustion rule . . . bars federal courts from exercising jurisdiction over matters pending in tribal courts.  Even when the jurisdiction of the tribal court is challenged, 'the Tribal Court itself' must be permitted to determine the issue 'in the first instance.'" (internal citations omitted)).  "This exhaustion requirement, then, serves to ensure that the tribal court may protect its own jurisdiction, thereby promoting the tribe's 'authority over reservation affairs' and preventing infringement upon tribal law-making authority." *Stock W. Corp. v. Taylor*, 942 F.2d 655, 660 (9th Cir. 1991), *on reh'g,* 964 F.2d 912 (9th Cir. 1992) (quoting *Iowa Mut. Ins. Co.,* 480 U.S. at 16).

Courts recognize two instances in which tribal jurisdiction may reach non-members: (1) when non-members enter into consensual commercial dealings such as contracts or leases with the tribe or its members; or (2) when non-member conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana v. United States,* 450 U.S. 544, 566 (1981).  "Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty.  Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *Iowa Mut. Ins. Co.*, 480 U.S. at 18 (internal citations omitted).

Here, it is clear that Plaintiffs have entered into consensual commercial dealings—*i.e.*, loan agreements—with Big Picture.  It is also clear that Plaintiffs loan agreements contain specific dispute resolution procedures requiring that disputes are to be heard by the TFSRA and if necessary, the LVD Court.  Plaintiffs have not honored the choice of law and forum selection provisions in their loan agreements.  Given the importance of Big Picture's revenues are essential tribal government programs and services, there is no question that Plaintiffs' lawsuit threatens

LVD's political integrity, economic security, and welfare by challenging the integrity of LVD's economic arms and instrumentalities and its online consumer lending operations.  As both *Montana* situations are present here, this Court should dismiss this lawsuit and require Plaintiffs to exhaust tribal remedies.

### C.    A "colorable" claim of tribal jurisdiction requires dismissal or abeyance.

Recognizing that they have failed to exhaust the dispute resolution procedures required under the loan agreements, Plaintiffs have pled a preemptive attack to the tribal exhaustion doctrine by alleging that the choice of law and forum selection provisions in their loan agreements are a "sham" because the TFSRA and LVD Court lack subject matter jurisdiction.  (Compl., ¶ 79).  Those claims lack merit.

The doctrine of tribal exhaustion dictates that federal courts "give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims" when a "*colorable claim* of tribal court jurisdiction" can be asserted.  *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 31 (1st Cir. 2000) (citing *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 483 (1999) and *Nat'l Farmers,* 471 U.S. at 856–57) (emphasis added)).

Neither the Supreme Court nor the Fourth Circuit have addressed the question of what constitutes a *colorable claim* of jurisdiction for purposes of tribal exhaustion.  *Brown v. Western Sky Financial, LLC*, 84 F. Supp. 3d 467, 476 (M.D.N.C. 2015).  However, the Fourth Circuit has often relied upon the First Circuit to state that an underlying constitutional or legal question must be colorable, "that is, the argument advanced must, at the very least, have some potential validity." *Medrano v. Lynch*, 673 F. App'x 320, 321 (4th Cir. 2017) *(per curiam)* (citing *Jian Pan v. Gonzales*, 489 F.3d 80, 84 (1st Cir. 2007)).  *See also, Egboh v. United States*, 672 F. App'x 284,

284 (4th Cir. 2017) (per curiam) (citing *Lumataw v. Holder*, 582 F.3d 78, 84 (1st Cir. 2009)).  In another context, the Fourth Circuit has held that a putative constitutional claim should be dismissed if it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous."  *Holloway v. Schweiker*, 724 F.2d 1102, 1105 (4th Cir. 1984), *cert. denied,* 467 U.S. 1217 (1984) (quoting *Bell v. Hood,* 327 U.S. 678, 682–83 (1946) (internal quotation marks omitted)).

Black's Law defines a colorable claim as "[a] claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)."  Black's Law Dictionary (10th ed. 2014).  The Eight Circuit has held that a colorable claim is one that is "not without some merit" and that has some possible validity.  *Jensen v. Schweiker*, 709 F.2d 1227, 1230 n. 2 (8th Cir. 1983).

Consistent with this authority, the Court should consider whether it is plausible that the tribal court *could* have jurisdiction over the matter, not *whether* the tribal court actually has jurisdiction.  *See Madewell v. Harrah's Cherokee Smokey Mountains Casino*, 730 F.Supp.2d 485, 488–89 (W.D.N.C. 2010).  The question is not whether the underlying allegations have merit.  *See Nat'l Farmers Union Ins. Cos.*, 471 U.S. at 856 ("Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed.").  If the tribal court *could* have jurisdiction, exhaustion is appropriate.  That is plainly true here.

### D.    Big Picture has made a colorable claim that the TFSRA and the LVD Court have jurisdiction over Plaintiffs' claims.

Big Picture has made a colorable claim for tribal jurisdiction over Plaintiffs' claims. Plaintiffs' allegations all arose from their consensual contractual relationship with Big Picture and Plaintiffs' on-reservation conduct.  Whether or not Plaintiffs' claims have merit is irrelevant

to the analysis.  As courts have consistently held, tribal jurisdiction is present here on two independent grounds because Plaintiffs entered into a contractual relationship with a tribal business and because the contract was consummated on tribal lands.

### 1. Plaintiffs have entered into a consensual contractual relationship.

When a nonmember enters into a commercial transaction with a tribal member or reservation-based tribal business, receives a benefit coming from the reservation as a result, and consents in a written contract to tribal jurisdiction, that nonmember has engaged in the sort of "consensual relationship[] with the tribe or its members, through commercial dealing" that subjects the nonmember to tribal jurisdiction.  *Montana,* 450 U.S. at 565. *See also Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337 (2008); *Iowa Mut. Ins. Co.,* 480 U.S. at 18 ("Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty."); *Dolgencorp, Inc. v. Mississippi Band of Choctaw Indians*, 746 F.3d 167 (5th Cir 2014), *aff'd, Dollar General Corp.*, 136 S.Ct. 2159 (upholding tribal jurisdiction over non-Indian company lessee that employed unpaid Indian interns, which constituted a relationship of a commercial nature under *Montana*).

The existence of a consensual relationship and a contract here requires very little analysis. Plaintiffs have pled the relationship and contracts exist.  Thus, the analysis could end here.

### 2. The contract occurred on Indian lands.

In addition to the tribal nature of the transaction, under the laws applicable in the loan agreement, and even under Virginia law, it is clear that the activity here occurred on the Reservation.  Under the Regulatory Code and as explained in the Plaintiffs' loan agreements, the contract is formed on the Reservation, which is where the application is either approved or denied.

Regulatory Code § 2.4 defines consumer financial services as conduct that occurs on the Reservation or within LVD's jurisdiction.

The requirements in the Regulatory Code are in accord with Virginia law, which recognizes that "[t]he place where the last act necessary to give validity to the contract occurs is the place where the contract was made." *Pro Football Inc. v. Paul*, 39 Va. App. 1, 9 (2002) (quoting *United States Steel Corp., Gary Works v. Indus. Com. of Illinois*, 161 Ill. App. 3d 437, 455 (1987)) (internal quotation marks omitted). Additionally, other federal courts recognize the last act rule as well. In fact, at least one federal court has already determined that a borrower's contract with a tribal online lending company is formed on the tribe's reservation:

> But, in cases involving a contract formed on the reservation in which the parties agree to tribal jurisdiction, treating the nonmember's physical presence as determinative ignores the realities of our modern world that a defendant, through the internet or phone, can conduct business on the reservation and can affect the Tribe and tribal members without physically entering the reservation. [*FTC v. Payday Fin.,* 935 F. Supp. 2d 926, 939 (D.S.D. 2013).]

The *FTC v. Payday Fin.* court concluded that "the contract between the Borrowers and Lending Companies appears to be formed on the Reservation in South Dakota." *FTC v. Payday Fin.,* 935 F. Supp. 2d at 938; *see also Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 934 (E.D. Va. 1998), *aff'd,* 182 F.3d 909 (4th Cir. 1999) ("Under the traditional First Restatement rule, the place of contracting is determined by the location of the last act necessary to complete the contract."); *Essex Ins. Co. v. Y&J Constr., Inc.*, E.D. Va. No. 1:15-CV-1597, 2016 WL 8254921, at *6 (E.D. Va. Dec. 30, 2016) ("In this respect, '[u]nder Virginia law, a contract is made when the last act to complete it is performed . . . .'").

Also applying the last-act rule to online contracting, a South Dakota District Court stated: "The borrower certainly does not enter onto a reservation, but in today's modern world of business

transactions through internet or telephone, requiring physical entry on the reservation particularly in a case of a business transaction with a consent to jurisdiction clause, seems to be requiring too much." *Heldt v. Payday Financial, LLC*, 12 F. Supp. 3d 1170, 1186 (D.S.D. 2014). The Middle District of North Carolina followed the *Heldt* reasoning and also applied the doctrine of tribal exhaustion to online contracts. *Brown v. W. Sky Fin., LLC*, 84 F. Supp. 3d 467, 479 (M.D.N.C. 2015). Thus, the location of the borrower is irrelevant to the analysis and application of the tribal exhaustion doctrine. *See FTC v. Payday Fin., LLC*, 935 F. Supp. 2d 926 at 940 (D.S.D. 2013) ("Reducing the *Montana* jurisdictional analysis from a thorough investigation of the nonmember's course of conduct and contact with the reservation, to a mere determination of the nonmember's physical location is improper and would render *Montana's* jurisdictional inquiry inapplicable to many modern-day contracts involving a reservation-based business.");

As described above, Plaintiffs' loan agreements bearing their electronic signature were submitted via Big Picture's website for final review, verification, and approval or denial. The loan agreements themselves say this much: "There will be no binding contract formed between You and Us until this Agreement is electronically signed by You and then is received and verified by Us on the Lac Vieux Desert Reservation." (Complaint Exhibit 1-1 p. 2).

The Big Picture employees that review, verify, and make the final act to approve each tendered loan agreements are located on the Reservation. No contract is formed unless and until a Big Picture employee, located on the Reservation, verifies and approves the loan agreements after the loan agreements are executed by the customer.

Because the final act necessary to consummate each of Plaintiffs' Agreements occurred on the Reservation, the Reservation is the place of contracting. Therefore, the commercial conduct underlying Plaintiffs' claims all occurred on the Reservation.

For these reasons, it is clear that there is a colorable claim here requiring dismissal based on the doctrine of tribal exhaustion.  Plaintiffs' on-Reservation consensual contractual relationship with Big Picture undoubtedly creates *at minimum* a colorable claim that the LVD Court's has jurisdiction, if not removing any doubt that the matter, in the first instance is properly heard by the TFSRA and, if appealed— the LVD Court.

## II.       The Court should dismiss Plaintiffs' claims under the doctrine of *forum non conveniens* because Plaintiffs are bound by their contracts.

Courts presume parties' forum selection provisions should be honored.  As the Supreme Court has held, "a forum clause should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

The Court's review of Plaintiffs' forum selection provisions is a two-step process: first, the Court should find that the forum-selection provisions are reasonable; second, that dismissal is appropriate under the doctrine of *forum non conveniens*.

### A.       Legal Standard for *forum non conveniens.*

The appropriate way to enforce a forum-selection clause requiring adjudication in a state or foreign forum is through the doctrine of *forum non conveniens,* which requires dismissal.  *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 580; *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, E.D. Va. No. 1:17-CV-186, 2017 WL 1491134, at *1 (E.D. Va. Apr. 25, 2017); *Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002).  When a valid forum-selection clause applies, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 581.  The Supreme Court has held that a forum selection clause should control "absent a strong showing [by a plaintiff] that it should be set aside.  The correct approach would have been to enforce the forum clause specifically unless [plaintiff] could clearly show that enforcement

17

would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 649–50 (4th Cir. 2010) (quoting *M/S Bremen*, 407 U.S. at 15).

### B.      Here, the forum selection clause is valid.

A forum selection clause is presumptively valid and enforceable unless the party wishing to avoid such clause can "clearly show that enforcement would be unreasonable" under the circumstances. *M/S Bremen*, 407 U.S. at 15 (1972). *See also Albemarle Corp*, 628 F.3d at 650 ("Even though *The Bremen* was an admiralty case, its rationale is applicable to forum selection clauses generally."). A forum selection clause is unreasonable if (1) it was "induced by fraud or overreaching;" (2) the party wishing to avoid the clause will be "deprived of his day in court because of the grave inconvenience or unfairness of the selected forum;" (3) "the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy;" or (4) enforcement of the clause "would contravene a strong public policy of the forum state." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996).

### 1.      Plaintiffs do not allege fraud.

First, Plaintiffs did not allege fraud in their Complaint and there is no basis to support any such allegation.[6] Plaintiffs sought out Big Picture's website and applied for a loan without inducement by Big Picture. As described above, every critical aspect of Big Picture and its lending is disclosed to any interested consumer before, during, and after the loan application process.

---

[6] Although the Complaint alleges that the governing law clause in Plaintiffs' loan agreements "was procured by fraud and misrepresentations," none of Plaintiffs counts mention fraud. (Compl. ¶¶ 73-74). Furthermore, no allegations meet the heightened pleading standards that require fraud to be pled with specificity. *See* Fed. R. Civ. P. 9(b).

Big Picture's website clearly explains that Big Picture is an arm of LVD and operates from the Reservation.  Plaintiffs' were forced to review disclosures explaining that when Plaintiffs' executed the agreements, the parties agreed that "all disputes [would] be solely and exclusively resolved pursuant to the Tribal Dispute Resolution Procedure set forth in Section 9 of the [Regulatory] Code . . . ."  (Compl., Ex. 1, p. 9).  Plaintiffs cannot claim that they were deceived about Big Picture's status as an arm of LVD.

### 2. The forum selection clause guarantees Plaintiffs a "day in court."

"[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.  Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain."  *M/S Bremen*, 407 U.S. at 18.  Plaintiffs are wrong to rely on *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016), to argue that the forum selection clause will deprive them of their day in court.  (*See* Compl., ¶¶ 76, 82).  The case has no application to the facts here.

*Hayes* considered the validity of an online lender's arbitration provision.  The online lender operated from an Indian reservation but was not a tribally-owned business.  Plaintiff sued a non-tribal servicer who attempted to have the case dismissed and sent to arbitration.

*Hayes* held that the arbitration provision in the plaintiff's loan agreement was not enforceable by the non-tribal defendant-servicer.  *Hayes*, 811 F.3d at 675.  *Hayes* also held that choice of law and forum selection provisions that explicitly disclaimed all applicable law were impermissible.  *Id.* at 669, 673, 676.  Plaintiffs' reliance on *Hayes* in their Complaint is a straw man.

Here, the forum selection clause in Plaintiffs' loan agreements are with Big Picture, an economic arm and instrumentality of LVD—a significantly different type of entity than the online lender and the non-tribal servicer defendant in *Hayes*.   Next, as described above, LVD has established a clear and consumer-friendly dispute resolution process that begins with an amicable approach between a borrower and a lender, then allows a full administrative review and hearing before the TFSRA, meticulously controlled by the Regulatory Code, but significantly, the process is ultimately accountable to the LVD Court, an independent constitutionally established judiciary with clear authority to ensure any consumer dispute is resolved according to the applicable law. This is not an arbitration provision designed "to avoid state and federal law and to game the entire system" like examined in *Hayes*.  *Id.* at 676.  In fact, this is the type of forum selection agreement that is on "the up-and-up and avoid[s] the kind of mess that Delbert" faced in *Hayes*.  *Id.*  To compare the LVD Court to the faux procedure in *Hayes* insults the integrity of all tribal courts.

Finally, both LVD's laws and the loan agreement specifically require that any dispute is governed by LVD law and "applicable federal law," which is nothing like the arbitration agreement in *Hayes*, which specifically excluded federal law, and which was *the factor* that served as the basis for the Court's decision.  (*Cf.* Compl., ¶ 70) ("This Agreement will be governed by the laws of [LVD] . . . including but not limited to the Code as well as applicable federal law."); *Hayes*, 811 F. 3d at 673 ("This arbitration agreement fails for the fundamental reason that it purports to renounce wholesale the application of any federal law to the plaintiffs' federal claims.")  As such, Plaintiffs have not clearly shown that the forum selection clause contained in their loan agreements deprives them of their day in court.  Plaintiffs' Complaint proves otherwise.

### 3.     Plaintiffs' forum selection clause allows for remedies if Plaintiffs' disputes have merit.

Plaintiffs also have not supplied facts to show that the tribal dispute resolution process deprives them of a remedy.  As stated above, Plaintiffs' loan agreements provide that tribal and applicable federal law shall govern, thus allowing Plaintiffs to seek appropriate redress under both bodies of law.  To be direct, Plaintiffs are simply wrong to allege that the TFSRA "does not have subject matter jurisdiction to consider: (1) any claims brought under state or federal law or (2) claims regarding the legality of debt."  (Complaint ¶ 79.)  As noted above, when Congress enacted the CFPA, it empowered tribal regulators with the exact same authority as their state counterparts—*i.e.*, the TFSRA has the exact same jurisdiction to enforce federal consumer protection laws as, *e.g.*, the Virginia Attorney General or the Virginia State Corporations Commission.  *See* 12 U.S.C. §§ 5481(12), (27); 5495; 5551–52.

Moreover, the TFSRA is empowered under the Regulatory Code to assess the legality of the Plaintiffs' debts and whether the debts violate the law.  (See, e.g., Regulatory Code §§ 1.2(e)-(f); 4.1; 4.13(c), (i); 6.2; see also 12 USC § 5481(12); 12 USC § 5481(27); 12 USC § 5495; 12 USC §§ 5551-52.)  Additionally, Big Picture, as a licensee, has submitted solely to the jurisdiction of the TFSRA and the LVD Court and no other jurisdiction.  Big Picture is therefore susceptible to an order from the TFSRA or the LVD Court granting Plaintiffs' relief through the process outlined in Section 9 of the Regulatory Code.

### 4.     Plaintiffs' forum selection clauses is consistent with Virginia's public policy.

The Supreme Court of Virginia has also recognized the state's strong public policy favoring valid forum selection and choice of law provisions, mutually agreed to by the parties, even when

the enforcement of the provisions may be incompatible with Virginia public policy against usury. *Supra*.

The Virginia Supreme Court has ruled that Virginia's usury policy can be set aside by contracting parties that agree to the application of other substantive law—even laws wholly inapposite to Virginia's usury policy. *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76 (2007). In *Settlement Funding*, on remand, the circuit court adhered to the Virginia Supreme Court's decision and held that the plaintiff's "usury defense must be determined under Utah state law [and] Utah does not have an affirmative claim for usury" so the "[l]oan [a]greement is not usurious and Settlement Funding may collect both the principal sum of [plaintiff's] loan and all interest owed thereon." *Com., State Lottery Dep't v. Settlement Funding, LLC,* 75 Va. Cir. 248, 2008 WL 6759945, at *2 (2008).

Just like the parties in *Settlement Funding*, Big Picture and Plaintiffs agreed to a substantive law of another jurisdiction that authorizes interest rates in excess of Virginia's usury laws as well as the selection of the dispute resolution process contained in the Regulatory Code for all disputes arising between them. As such, enforcement of the forum selection clause in the instant case is fully compatible with recent Virginia Supreme Court's holding that the state's usury laws do not overcome mutually agreed upon provisions regarding what law and where a dispute must be brought. So, regardless of Plaintiffs' assertion that "Virginia's usury laws 'are founded upon considerations of public policy,'" the Virginia Supreme Court respects valid choice of law provisions despite that policy.

Because Plaintiffs have not pled nor can they argue that the forum-selection clause within their loan agreements is unreasonable, the provisions are valid and enforceable.

22

### C.      The Court should enforce the forum selection clause and dismiss the case.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," and not under Section 1404(a). *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 580 ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer.").

Typically, just as with a motion to dismiss under § 1404(a), a district court considering a *forum non conveniens* motion to dismiss must evaluate both the convenience of the parties and various public-interest considerations:

> *Factors relating to the parties' private interests* include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."    *Public-interest factors* may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *The Court must also give some weight to the plaintiffs' choice of forum.*    [*Id.* at 581 n. 6 (internal citations omitted; emphasis added).]

The court balances these relevant factors, and decides if a transfer would serve the convenience of the parties and witnesses and otherwise promote the "the interest of justice." *Id.* at 581.

However, unlike a typical motion under § 1404(a), with a valid forum selection clause, "the calculus [under a *forum non conveniens* analysis] changes" in that:

- First, "the plaintiff's choice of forum merits no weight," and instead, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id.* at

574.  *See also Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 845 (E.D. Va. 2014)

- Second, the Court is not to "consider arguments about the parties' private interests;" because when parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 582.  *See also Kettler Int'l, Inc.*, 55 F. Supp. 3d at 845; and

- Third, the district court's review is limited to only the public-interest factors and "transfer of venue will not carry with it the original venue's choice-of-law rules" to prevent the parties from invoking the laws of another jurisdiction. *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 582.  *See also Kettler Int'l, Inc.*, 55 F. Supp. 3d at 845.

Here, weighing only the public interest factors, it is clear this Complaint should be dismissed.

> **1.      The Plaintiffs' choice of forum here merits no weight as the forum selection clause in Plaintiffs' loan agreements are valid.**

A forum-selection clause "represents the parties' agreement as to the most proper forum." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).  The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Id.* at 33 (Kennedy, J., concurring).  As such "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."  *Id.* at 33.

Here, as the Supreme Court has explained, Plaintiffs' choice of this forum in this district is given no weight.  The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 581 (internal quotations omitted) (quoting *Stewart Org.*, 487 U.S. at

33 (Kennedy, J., concurring)).  Without considering the Plaintiffs' choice, the interests of justice

here are best served honoring the parties' agreements, which requires dismissal.

### 2.  The Plaintiffs and Big Picture's private interest should not be considered.

Next, Plaintiffs have "waive[d] the right to challenge the preselected forum as inconvenient

or less convenient for themselves or their witnesses, or for their pursuit of the litigation," which

requires the court to "deem the private-interest factors to weigh entirely in favor of the preselected

forum." *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 582.  Moreover, the Plaintiffs' have not

identified any private interests to challenge the forum-selection clause other than that it is invalid,

which, as described above, is unsupported and incorrect.  Collectively, the parties' interests are

memorialized in their agreements.

### 3.  The case should be heard according to the loan agreements' choice of law provisions.

Finally, just as Plaintiffs are bound to bring their action in the forum they agreed to, they

are similarly bound to the choice of law in their agreement: "If a contract specifies that the

substantive law of another jurisdiction governs its interpretation or application, the parties' choice

of substantive law should be applied." *Settlement Funding, LLC*, 274 Va. at 80.

Under Plaintiffs' loan agreements, the matter will be decided by LVD's laws and all

applicable federal laws.  To allow Plaintiff to avoid the choice of law provision "[n]ot only would

it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer,

but it would also encourage gamesmanship." *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 583

(quoting *Ferens v. John Deere Co.,* 494 U.S. 516, 523 (1990)).  Simply put, venue transfer and

*forum non conveniens* "should not create or multiply opportunities for forum shopping," *See id.*

Even if, *arguendo*, this Court declined to follow the doctrine of tribal exhaustion and the doctrine of *forum non conveniens,* under *Settlement Funding*, the Court must still follow the loan agreements' choice of law provision.

> **4.   As the parties' chosen forum is a tribal forum, public policy favors dismissal.**

Finally, the public interests favoring dismissal here are best identified by the federal government's policy on encouraging tribal self-sufficiency. "We have repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14, 107 S. Ct. 971, 975, 94 L. Ed. 2d 10 (1987); *see also, e.g., Three Affiliated Tribes v. Wold Engineering*, 476 U.S. 877, 890, 106 S.Ct. 2305 (1986); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 138, n. 5, 102 S.Ct. 894 (1982); *Williams v. Lee*, 358 U.S. 217, 220–221, 79 S.Ct. 269 (1959).  The Supreme Court has "stressed that Congress' objective of furthering tribal self-government encompasses far more than encouraging tribal management of disputes between members, but includes Congress' overriding goal of encouraging 'tribal self-sufficiency and economic development.'"  *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 335, 103 S. Ct. 2378 (1983).

The public interests are best served by adhering to federal Indian policy and recognizing that respecting tribal governance includes respecting tribal courts and tribal law.  Federal Indian policy coupled with the federal and Virginia interests of enforcing valid choice of law and forum selection provisions outweigh Plaintiff's interests in Virginia's usury laws.  And, as the selected forum here is a tribal forum, transfer is unavailable and dismissal is the only viable option for the Court.

Plaintiffs' choice of law and forum selection provisions are not invalid simply because the arbitration provision in *Hayes* was invalid.  Plaintiffs have not made sufficient allegations to justify

breaching their loan agreements and continuing this matter in this district.   Plaintiffs' loan agreements are valid and enforceable and therefore, because the forum selection clauses rely on another jurisdiction, the Complaint must be dismissed under the doctrine of *forum non conveniens.*

## CONCLUSION

For the reasons above, there is a colorable claim that the LVD Court has jurisdiction over Plaintiffs' claims and under the doctrine of tribal exhaustion, the Court must dismiss this Complaint until the LVD Court makes a determination over its jurisdiction.

Additionally, Plaintiffs' Complaint must be dismissed under the doctrine of *forum non conveniens* because there are valid and enforceable forum-selection provisions in Plaintiffs' loan agreements.

**BIG PICTURE LOANS, LLC**

By:/s/David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com

Karrie Sue Wichtman (admitted *pro hac vice*)
Justin A. Gray (admitted *pro hac vice*)
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: kwichtman@rosettelaw.com
Email: jgray@rosettelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of September, 2017, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System which will then send a notification of such

filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA 23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
*Counsel for Plaintiffs*

David F. Herman
Jonathan P. Boughrum
Richard L. Scheff
MONTGOMERY MCCRACKEN WALKER
& RHOADS LLP
123 S Broad Street
Philadelphia, PA 19109
Telephone: 215-772-1500
Facsimile: 215-772-7620
Email: dherman@mmwr.com
Email: jboughrum@mmwr.com
Email: rscheff@mmwr.com
*Counsel for Defendant Matt Martorello*

/s/ David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
*Counsel for Defendants*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com