**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LULA WILLIAMS, GLORIA TURNAGE,
GEORGE HENGLE, DOWIN COFFY, and          Civil Case No. 3:17-cv-00461-REP
FELIX GILLISON, JR., *on behalf of themselves*
*and all individuals similarly situated*,

          Plaintiffs,

v.

BIG PICTURE LOANS, LLC; MATT MARTORELLO;
ASCENSION TECHNOLOGIES, INC.;
DANIEL GRAVEL; JAMES WILLIAMS, JR.;
GERTRUDE MCGESHICK; SUSAN MCGESHICK;
and GIIWEGIIZHIGOOKWAY MARTIN,

          Defendants.

_____ /

**DEFENDANTS JAMES WILLIAMS, JR., GERTRUDE MCGESHICK,**
**SUSAN MCGESHICK, AND GIIWEGIIZHIGOOKWAY MARTIN'S**
**BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT**
**MATTER JURISDICTION, PERSONAL JURISDICTION, AND ARTICLE III**
**STANDING**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

FACTS ................................................................................................................................... 1

    The Lac Vieux Desert Band of Lake Superior Chippewa Indians Tribal Council. ................... 1

    Plaintiffs' Complaint does not make substantive allegations against the LVD Officers. ........... 3

ARGUMENT ......................................................................................................................... 4

    I.    As tribal officials acting in their official capacities at all times alleged, the LVD Officers are immune from Plaintiffs' lawsuit. ............................................................................. 4

        A.    Legal Standard under Fed. R. Civ. P. 12(b)(1). ................................................ 5

        B.    Tribal sovereign immunity precludes Plaintiffs' claims against the LVD Officers. .... 5

        C.    Congress has not abrogated the LVD Officers' tribal sovereign immunity. ............... 8

        D.    LVD has not waived the LVD Officers' tribal sovereign immunity. .......................... 9

    II.    Plaintiffs lack standing to sue the LVD Officials. ........................................................ 10

        A.    Legal Standard for Article III standing. ........................................................ 10

        B.    Plaintiffs' alleged injuries are not traceable to the LVD Officers. ........................... 11

        C.    The LVD Officers are unable to redress Plaintiffs' alleged injury. ........................... 13

    IV.    This Court lacks Personal Jurisdiction over the LVD Officers ...................................... 14

        A.    Standard of Review under Fed. R. Civ. P. 12(b)(2). ................................................ 15

        B.    Because the LVD Officers are immune from unconsented suit, *in personam* jurisdiction over the LVD Officers is not compatible with due process as Plaintiffs' claims are immaterial and insubstantial ........................................................ 15

        C.    Forcing the LVD Officers to defend claims in this forum would    be unfair and inconvenient. ............................................................................. 19

i

V.      Venue is improper in this District requiring dismissal.................................................... 24

VI.     LVD Officers join and incorporate Big Picture and Ascension's motion    to dismiss.  25

CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Ala. v. PCI Gaming Auth.*
801 F.3d 1278 (11th Cir. 2015) .................................................... 7

*Albemarle Corp. v. AstraZeneca UK Ltd.*
628 F.3d 643 (4th Cir. 2010) ..................................................... 24

*Allen v. Wright*
468 U.S. 737 (1984) ............................................................ 10

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*
134 S. Ct. 568 (2013) ....................................................... 23, 25

*Baker Elec. Co-op, Inc. v. Chaske*
28 F.3d 1466 (8th Cir. 1994) ...................................................... 7

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*
975 F.Supp. 562 (S.D.N.Y.1997) ................................................ 16

*Berger v. Pierce*
933 F.2d 393 (6th Cir. 1991) ...................................................... 9

*Botany Mills v. U.S.*
278 U.S. 282 (1929) ............................................................ 14

*Buchanan v. Sokaogon Chippewa Tribe*
40 F. Supp. 2d 1043 (E.D. Wis. 1999) ............................................. 8

*CGM, LLC v. BellSouth Telecomms., Inc.*
664 F.3d 46 (4th Cir. 2011) ...................................................... 10

*Chayoon v. Chao*
355 F.3d 141 (2d Cir. 2004) ....................................................... 6

*Combs v. Bakker*
886 F.2d 673 (4th Cir. 1989) ..................................................... 15

*Cook v. AVI Casino Enter., Inc.*
548 F.3d 718 (9th Cir. 2008) ...................................................... 7

*Cory v. Aztec Steel Bldg., Inc.*
468 F.3d 1226 (10th Cir. 2006) .................................................. 17

*DaimlerChrysler v. Cuno*
547 U.S. 332 (2006) .................................................................................................... 11

*Dan River v. Icahn*
701 F.2d 278 (4th Cir. 1983) ...................................................................................... 14

*Davis v. Federal Election Commission*
554 U.S. 734 (2008) .................................................................................................... 11

*Doe v. Virginia Dept. of State Police*
713 F.3d 745 (4th Cir. 2013) ...................................................................................... 13

*Equity in Athletics, Inc. v. Dep't of Educ.*
639 F.3d 91 (4th Cir. 2011) ........................................................................................ 13

*ESAB Group, Inc. v. Centricut, Inc.*
126 F.3d 617 (4th Cir. 1997) ........................................................................... 16, 17, 19

*FC Inv. Grp. LC v. IFX Markets, Ltd.*
529 F.3d 1087 (D.C. Cir. 2008) .................................................................................. 17

*Fletcher v. U.S.*
116 F.3d 1315 (10th Cir.1997) ................................................................................. 6, 7
*Friends for Ferrell Parkway, LLC v. Stasko*
282 F.3d 315 (4th Cir. 2002) ...................................................................................... 11

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*
204 F.3d 149 (4th Cir. 2000) ........................................................................... 10, 11, 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
528 U.S. 167 (2000) .................................................................................................... 13

*Garcia v. Copenhaver, Bell & Assocs.*
104 F.3d 1256 (11th Cir.1997) ................................................................................... 17

*Genty v. Resolution Trust Corp.*
937 F.2d 899 (3rd Cir. 1991) ........................................................................................ 9

*Global Mail Ltd. v. U.S. Postal Serv.*
142 F.3d 208 (1998) ...................................................................................................... 5

*Holloway v. Brush*
220 F.3d 767 (6th Cir. 2000) ........................................................................................ 5

*Imperial Granite Co. v. Pala Band of Missouri Indians*
940 F.2d 1269 (9th Cir. 1991) ................................................................................. 6, 12

iv

*Int'l Shoe Co. v. State of Wash. Office of Unemp't Comp. & Placement*
326 U.S. 310 (1945)................................................................................................ 20

*IUE AFL–CIO Pension Fund v. Herrmann*
9 F.3d 1049 (2d Cir.1993)...................................................................................... 17

*Linneen v. Gila River Indian Cmty.*
276 F.3d 489 (9th Cir. 2002) .................................................................................... 7

*Los Angeles v. Lyons*
461 U.S. 95 (1983).................................................................................................. 11

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)................................................................................................ 11

*McNeily v. United States*
6 F.3d 343 (5th Cir. 1993) ........................................................................................ 9

*Memphis Biofuels, LLC v. Chickasaw Nation Inds.*
585 F.3d 917 (6th Cir. 2009) .................................................................................... 9

*Mich. v. Bay Mills Indian Cmty.*
572 U.S. __, 134 S. Ct. 2024 (2014)................................................................... 5, 8, 9

*Miller v. Brown*
462 F.3d 312 (4th Cir. 2006) .................................................................................. 10

*Mont. v. Blackfeet Tribe of Indians*
471 U.S. 759 (1985).................................................................................................. 8

*Mylan Labs, Inc. v. Akzo, N.V.*
2 F.3d 56 (4th Cir. 1993) ........................................................................................ 15

*Narragansett Indian Tribe v. R.I.*
449 F.3d 16 (1st Cir. 2006)....................................................................................... 6

*Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*
546 F.3d 1288 (10th Cir. 2008) ............................................................................. 6, 9

*Noble Sec., Inc. v. MIZ Eng'g, Ltd.*
611 F. Supp. 2d 513 (E.D. Va. 2009) ............................................................. 5, 16, 17

*Nutrimost, LLC v. Werfel*
No. 2:15-cv-531, 2016 WL 5107730 (W.D. Pa. Mar. 2, 2016).................................. 17

v

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*
498 U.S. 505 (1991) ....................................................................................................... 6

*Pettus v. Servicing Co., LLC*
E.D. Va. No. 3:15CV479(HEH), 2016 WL 7234106 (E.D. Va. Feb. 9, 2016) ............................. 6

*Protype Productions, Inc. v. Reset, Inc.*
844 F.Supp.2d 691 (E.D. Va. 2012) ........................................................................... 16

*PT United Can Co. v. Crown Cork & Seal Co.*
138 F.3d 65 (2d Cir. 1998) ......................................................................................... 17

*Puyallup Tribe v. Dep't of Game of Wash.*
433 U.S. 165 (1977) ................................................................................................ 6, 9

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A*
119 F.3d 935 (11th Cir. 1997) ........................................................................... passim

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*
945 F.2d 765 (4th Cir. 1991) ....................................................................................... 5

*Rolls-Royce Corp. v. Heros, Inc.*
576 F. Supp. 2d 765 (N.D. Tex. 2008) ...................................................................... 17

*Santa Clara Pueblo v. Martinez*
436 U.S. 49 (1978) ............................................................................................. 6, 8, 9

*Sedima, S.P.R.L. v. Imrex Co., Inc.*
473 U.S. 479 (1985) .......................................................................................... 21, 22

*Sedima, S.P.R.L. v. Imrex Co., Inc.*
741 F.2d 482 (2d Cir. 1984) ..................................................................................... 22

*Simon v. Eastern Ky. Welfare Rights Org.*
426 U.S. 26 (1976) .................................................................................................. 11

*Steel Co. v. Citizens for a Better Env't*
523 U.S. 83 (1998) .................................................................................................. 11

*Stewart Org., Inc. v. Ricoh Corp.*
487 U.S. 22 (1988) .................................................................................................. 23

*Tenney v. Brandhove*
341 U.S. 367, 71 S. Ct. 783, 95 L. Ed. 1019 (1951) ................................................ 12

vi

*Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*
476 U.S. 877 (1986)..........................................................................................................6, 8

*Town of Chester, N.Y. v. Laroe Estates, Inc.*
__ U.S. __, 137 S. Ct. 1645 (2017)...................................................................................11

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*
444 U.S. 11 (1979)...............................................................................................................14

*U.S. v. Bonanno Org. Crime Fam. of La Cosa Nostra*
879 F.2d 20 (2nd Cir. 1989)................................................................................................9

*United States  v. Oregon*
657 F.2d 1009 (9th Cir. 1981) ............................................................................................6

*United States Securities and Exchange Comm'n v. Carrillo*
115 F.3d 1540 (11th Cir.1997) ..........................................................................................21

*United States v. U.S. Fidelity & Guaranty Co.*
309 U.S. 506 (1940)..........................................................................................................6, 8

*Warth v. v. Seldin*
422 U.S. 490 (1975).............................................................................................................13

*World-Wide Volkswagen Corp. v. Woodson*
444 U.S. 286 (1980).....................................................................................................19, 20

## Constitution

U.S. Const. Art. III................................................................................................10, 11, 13

## Statutes

18 U.S.C. § 1965(a) .......................................................................................................16, 24
18 U.S.C. § 1965(b) ..............................................................................................................16
18 U.S.C. § 1965(d) ..............................................................................................................16
25 U.S.C. § 1300(h)(2) ..........................................................................................................1
25 U.S.C. § 1391 ...................................................................................................................25
28 U.S.C. § 1391(b) ..............................................................................................................25
28 U.S.C. § 1406(a) ..............................................................................................................25
Va. Code § 6.2-303 ...............................................................................................................18

## Rules

Fed. R. Civ. P. 12(b)(1)...............................................................................................1, 5, 26
Fed. R. Civ. P. 12(b)(2).............................................................................................15, 26
Fed. R. Civ. P. 12(b)(3)...................................................................................................24

## **Regulations**

82 Fed. Reg. 4915 ........................................................................................................ 1
82 Fed. Reg. 4917 ........................................................................................................ 1

## **Other Sources**

*A Manual for Federal Attorneys* (Oct. 2007) ............................................................. 17
BLACK'S LAW DICTIONARY 857 (7th ed.1999) ........................................................ 16

32899039v1

Defendants, James Williams, Jr., Giiwegiizhigookway Martin, Susan McGeshick, and Gertrude McGeshick, by counsel, and pursuant to Fed. R. Civ. P. 12(b)(1), hereby move to dismiss the Complaint against them, with prejudice, for lack of subject matter jurisdiction.

## INTRODUCTION

Plaintiffs' Complaint only identifies Defendants James Williams, Jr., Giiwegiizhigookway Martin, Susan McGeshick, and Gertrude McGeshick (collectively "LVD Officers") in four allegations and three footnotes.  To summarize those scant allegations, Plaintiffs allege that they are the tribal Chairman, Vice Chairwoman, Treasurer, and Secretary, and that at all times alleged, those LVD Officers acted in their official capacities.  For that reason, Plaintiffs have excluded those LVD Officers from any effort to recover damages, and they seek an injunction without pleading necessary elements for injunctive relief.

Acting at all times relevant in their official capacities, however, tribal sovereign immunity shields the LVD Officers from Plaintiffs' claims.  Moreover, Plaintiffs lack standing to sue the LVD Officers and cannot demonstrate this Court has personal jurisdiction over them.

For the reason described below, the LVD Officers respectfully request that this Court grant their Motion to Dismiss and dismiss Plaintiffs' claims against them with prejudice.

## FACTS

### The Lac Vieux Desert Band of Lake Superior Chippewa Indians Tribal Council.

The Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD") is a federally recognized Indian tribe whose members continue to reside close to their ancestral homeland near Watersmeet, Michigan.  25 U.S.C. § 1300(h)(2); 82 Fed. Reg. 4915, 4917.  As a federally recognized Indian tribe, LVD inherently possesses all the attributes of sovereignty including the power to govern itself and its members, subordinate only to Congress.  On May 14, 1992, LVD

adopted its constitution ("LVD Constitution") as its supreme law to "govern [] under [its] own laws and customs, to maintain and foster [its] tribal culture, to protect [its] homeland and to conserve and develop its natural resources, and to insure [its] rights guaranteed by treaty with the Federal government . . . ." (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #1, LVD Const., Preamble).

The LVD Constitution establishes the LVD Tribal Council ("LVD Council") as the tribe's governing body and enumerates its powers, including the authority "[t]o manage the economic affairs, enterprises, property, both real and personal, and other interests of the [Tribe]" and "[t]o promulgate ordinances, and adopt resolutions . . . and to enforce the same[]." (*Id.*, Art. IV, §1(f), (b)).

The LVD Council consists of four executive officers and five general council members, all of whom are elected by the LVD membership for two-year terms. (*Id.*, Art III § 1(a)(b)). The LVD Council may only take official action by enacting ordinances, adopting resolutions, or by motions, each of which must be approved by a majority vote when a quorum is present at a duly noticed meeting.[1] (*Id.*, Art III § 4(a), (f)–(g)).

To put it plainly, the LVD Council may not act without a majority vote. No individual, whether elected or otherwise, may control LVD or cause the LVD Council to take an official action. This is further demonstrated by the constitutional limitations that are placed on the executive officers' official capacities:

- The Chairperson must: preside at all meetings of the LVD Council; represent LVD in its relations with other governments and organizations (provided that any action taken with regard to such relations must be taken by the LVD Council as a whole); appoint members to LVD Council committees (subject to approval of the LVD Council as a whole); call special meetings of the LVD

---

[1] Under certain circumstances not relevant here, the LVD Constitution requires a super-majority vote.

Council; receive and deliver committee reports to the LVD Council; be an ex-officio officer of all LVD Council committees; and perform any other duties as required by the LVD Council or LVD law.  (*Id.*, Art. III § 2(a)).

- The Vice-Chairperson must: serve and perform the duties of the Chairperson in the Chairperson's absence; assume responsibility for those functions delegated by the Chairperson; and perform other functions as required by the LVD Council. (*Id.*, Art. III § 2(b)).

- The Treasurer must: administer and monitor all financial matters of LVD; submit monthly financial reports to the LVD Council; perform other duties as required by the LVD Council; and acquire surety bonds satisfactory to the LVD Council to administer LVD's fiscal affairs.  (*Id.*, Art. III § 2(c)).

- The Secretary must: submit reports of the minutes of all LVD Council and LVD membership meetings to the LVD Council; maintain and protect LVD's Seal; keep the membership informed as to the status of treaty and other rights; and perform any other functions as required by the LVD Council.  (*Id.*, Art. III § 2(d)).

The remaining five general council members have duties and authority as detailed by the Constitution.  However, as there are no allegations against the remaining council members, those additional provisions are not relevant.

**Plaintiffs' Complaint does not make substantive allegations against the LVD Officers.**

Plaintiffs have included the LVD Officers in this lawsuit as an afterthought and without any substantive basis to do so.  The LVD Officers are specifically excluded from Plaintiffs' usury and unjust enrichment claims and from their claim for monetary relief under the RICO allegations.[2] (*See* Comp. ¶¶ 119 n. 9, 95 n. 8).  Plaintiffs' declaratory action also cannot be construed against the LVD Officers because they have not entered into the loan agreements that could be declared as unenforceable, as requested in declaratory fashion.

---

[2] While Plaintiffs use the term "Defendants" in ¶¶ 102 and 116, the term is used generically, as those allegations relate to Plaintiffs' attempts to maintain a class and are not substantively related to the facts or causes of action.

Instead of attempting to plead any meaningful allegations against the LVD Officers, the Complaint is a lengthy attempted disparagement about predatory lending, which is built upon unsupported online articles having nothing to do with this case or the LVD Officers; ongoing, unrelated federal indictments; conjecture/hearsay; and an appeal to empathy.

In particular, Plaintiffs theorize that Defendant Martorello established a "rent-a-tribe" business model—that he convinced LVD to conspire to violate Virginia's usury laws by creating Big Picture Loans, LLC ("Big Picture") as a "front" while Martorello secretly controlled the lending scheme. (*See* Compl., ¶¶ 27–32, 33–42, 54–60). Plaintiffs further allege that, by violating Virginia law, Defendants also violated RICO for collecting "unlawful" debts. (*E.g.*, Compl., ¶ 66).

Throughout the Complaint, the allegations are either specific to Martorello, Defendant Dan Gravel, Big Picture, or Ascension Technologies, LLC ("Ascension"), or, alternatively, use the term "Defendants" to mask Plaintiffs' lack of adequate factual support to form a plausible allegation. So, while Plaintiffs allege that the LVD Officers are proper parties, and identify Defendants Williams, Martin, G. McGeshick, and S. McGeshick as the current LVD Officers, the vast majority of the allegations do not identify the LVD Officers with any particularity. (Compl., ¶¶ 17–20).

## ARGUMENT

### I.   As tribal officials acting in their official capacities at all times alleged, the LVD Officers are immune from Plaintiffs' lawsuit.

Plaintiffs' allegations make the application of tribal sovereign immunity straightforward. The Complaint identifies the LVD Officers as the "chief executive officers of [LVD]," and "tribal officials," and it only identifies Williams, Martin, S. McGeshick and G. McGeshick as the LVD Officers. (Compl. ¶¶ 5 n. 3, 17–20).

As tribal officers acting at all times alleged in their official capacities, the LVD Officers are immune from suit and they must be dismissed from this lawsuit under Fed. R. Civ. P. 12(b)(1).

### A.      Legal Standard under Fed. R. Civ. P. 12(b)(1).

"Sovereign immunity deprives a court of jurisdiction to hear a case." *Global Mail Ltd. v. U.S. Postal Serv.*, 142 F.3d 208, 210 (1998).  When a court lacks subject matter jurisdiction, the case must be dismissed.  *See* Fed. R. Civ. P. 12(b)(1).  Plaintiff has the burden of proving that subject matter jurisdiction exists.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

When a defendant challenges subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*  "Since 'federal courts, being of limited jurisdiction, must examine their subject-matter jurisdiction throughout the pendency of every matter before them,'" subject matter jurisdiction should be addressed first, whether there is a pending Fed. R. Civ. P. 12(b)(1) motion or not.  *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 549 n. 21 (E.D. Va. 2009) (quoting *Holloway v. Brush,* 220 F.3d 767, 781 (6th Cir. 2000) (internal quotations omitted)).

### B.      Tribal sovereign immunity precludes Plaintiffs' claims against the LVD Officers.

As sovereign governments, federally recognized Indian tribes possess common law immunity from suit.  *Mich. v. Bay Mills Indian Cmty.*, 572 U.S. __, 134 S. Ct. 2024, 2029 (2014). The doctrine of tribal sovereign immunity has been recognized by the Supreme Court "for well over a century" and has been reaffirmed many times throughout that period.  *Bay Mills Indian Cmty.*, 134 S.Ct. at 2040 (Sotomayor, J., concurring).  *See also, e.g., Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991); *Puyallup Tribe v. Dep't of Game of*

5

*Wash.*, 433 U.S. 165, 172 (1977); *United States v. U.S. Fidelity & Guaranty Co.*, 309 U.S. 506, 512 (1940).  Indian tribes possess immunity from suit unless expressly abrogated or waived.  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).

Tribal immunity "is a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986). Logically, a government can only act through its officials and agents, thus a necessary component to sovereignty and self-governance requires that a tribe's immunity generally extends to and immunizes tribal officials from claims made against them in their official capacities.  *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1296 (10th Cir. 2008) (citing *Fletcher v. U.S.,* 116 F.3d 1315, 1324 (10th Cir.1997)); *Imperial Granite Co. v. Pala Band of Missouri Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991) ("[W]hen tribal officials act in their official capacity and within the scope of their authority, they are immune.") (citing *United States  v. Oregon*, 657 F.2d 1009, 1012 n.8 (9th Cir. 1981)).

The extension of tribal immunity to tribal officials has been acknowledged by this Court and *many* others.  *See Pettus v. Servicing Co., LLC*, E.D. Va. No. 3:15CV479(HEH), 2016 WL 7234106, at *3 (E.D. Va. Feb. 9, 2016) (where it was clear that tribal sovereign immunity protected both a tribal online lending business and its CEO as a tribal official).  *Pettus* is aligned with the prevalent interpretation of the law, which is that tribal sovereign immunity extends to tribal officials acting in their official capacity.  *See, e.g.*, *Narragansett Indian Tribe v. R.I.*, 449 F.3d 16, 30 (1st Cir. 2006) ("At its most expansive, tribal sovereign immunity may extend to tribal *officers*- but only when such officers are acting within the legitimate scope of their official capacity."); *Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) (holding that a party "cannot circumvent tribal immunity by merely naming officers or employees of the Tribe when the complaint concerns

actions taken in defendants' official or representative capacities and the complaint does not allege they acted outside the scope of their authority."); *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1471 (8th Cir. 1994) (stating that if tribal officials were acting in their official capacity "the tribal officers are clothed with the Tribe's sovereign immunity. . . ."); *Cook v. AVI Casino Enter., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) ("Tribal sovereign immunity 'extends to tribal officials when acting in their official capacity and within the scope of their authority.'") (quoting *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002)); *Fletcher*, 116 F.3d at 1324 ("[T]ribal immunity protects tribal officials against claims in their official capacity.); *Ala. v. PCI Gaming Auth.*, 801 F.3d 1278, 1288 (11th Cir. 2015) ("[T]ribal officials are generally entitled to immunity for acts taken in their official capacity and within the scope of their authority. . . .").

The Complaint does not even attempt to refute that the LVD Officers were acting in an official capacity at all relevant times.  Plaintiffs do not plead any conduct by Williams, Martin, S. McGeshick, or G. McGeshick in an individual capacity.[3]  In the four allegations against the LVD Officers, Plaintiffs identify the LVD Officers in their official capacities as "tribal chairman," "tribal chairwoman," "the secretary of [LVD]," and "the treasurer of [LVD]."  *See* ¶¶ 17-20.

Indeed, Williams, Martin, S. McGeshick, and G. McGeshick could not have performed any of the alleged misconduct in an individual capacity, as LVD may only take official action through the LVD Council, which requires a majority vote at a duly authorized meeting.  Hence, none of the LVD Officers could have "established a rent-a-tribe scheme" on behalf of LVD, violated a federal law, organized Big Picture, or "marketed, initiated, and collected usurious loans in Virginia" acting in any capacity.  (*See, e.g.*, Compl. ¶¶ 3, 5, 5 n. 3, 13, 54).

---

[3] Williams is mentioned in ¶¶ 5 n. 3, 17, 95 n. 8, 119 n. 9.  G. McGeshick is mentioned in ¶¶ 5 n. 8, 19,  95 n. 8, 119 n. 9.  S. McGeshick is mentioned in ¶¶  5 n. 3, 20, 95 n. 8, 119 n. 9.  Martin is mentioned in ¶¶ 5 n. 3, 18, 95 n. 8, 119 n. 9.

**C.    Congress has not abrogated the LVD Officers' tribal sovereign immunity.**

An Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.  *See Three Affiliated Tribes,* 476 U.S. at 890; *Santa Clara Pueblo,* 436 U.S. at 58; *U.S. Fidelity & Guaranty Co.,* 309 U.S. at 512.  Congress must make its intention to abrogate tribal sovereign immunity unmistakably clear.  *Bay Mills*, 134 S. Ct. at 2032 ("[C]ourts will not lightly assume that Congress in fact intends to undermine Indian self-government.").  When an ambiguity exists as to whether tribal sovereign immunity has been abrogated, any ambiguity should be "construed liberally in favor of the Indians . . . [and] interpreted to their benefit."  *Mont. v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).

Plaintiffs have not made any allegation that Congress has abrogated tribal sovereign immunity or the sovereign immunity extended to the LVD Officers.  Nor does such Congressional abrogation exist, therefore Congress has not acted in any way to authorize this lawsuit against the LVD Officers or otherwise.  No ambiguity exists in this case.  LVD Officers are immune.

Moreover, RICO does not abrogate tribal sovereign immunity and contains no language suggesting Congress unequivocally waived Indian tribes' sovereign immunity.  Courts have also consistently rejected any such claim.  *Buchanan v. Sokaogon Chippewa Tribe*, 40 F. Supp. 2d 1043, 1047 (E.D. Wis. 1999) (holding that because Congress has not authorized RICO claims against an Indian tribe, and the Indian tribe had not waived immunity for RICO claims, tribal sovereign immunity barred the claims).  Indeed, RICO contains no language that Congress intended to waive the sovereign immunity of *any* sovereign for purposes of private RICO lawsuits.[4]

---

[4] *See e.g., U.S. v. Bonanno Org. Crime Fam. of La Cosa Nostra*, 879 F.2d 20, 23 (2nd Cir. 1989) (The court concluded that Section 1964(c) does not evince an unequivocal expression of congressional intent to expose the U.S. government to RICO liability); *Genty v. Resolution Trust*

**D.   LVD has not waived the LVD Officers' tribal sovereign immunity.**

For the reasons above, due to a lack of Congressional waiver, LVD retains the sole ability to expressly and unequivocally waive its sovereign immunity for itself and the LVD Officers. Well-settled federal law states that a waiver of tribal sovereign immunity cannot be implied, but must be unequivocally expressed. *Bay Mills*, 134 S.Ct. at 2035; *Santa Clara Pueblo*, 436 U.S. at 49; *Puyallup Tribe*, 433 U.S. at 172. Waivers of sovereign immunity must be made in accordance with the tribe's law in order to be valid. *See Santa Clara Pueblo*, 436 U.S. at 58 ("[A] waiver of sovereign immunity cannot be implied but must be unequivocally expressed." (internal quotations omitted)). *See also, e.g., Native Am. Distributing,* 546 F.3d at 1294 – 95 (10th Cir. 2008) (examining tribal law and tribal resolution to determine whether sovereign immunity had been properly waived by a tribal entity); *Memphis Biofuels, LLC v. Chickasaw Nation Inds.,* 585 F.3d 917, 921 (6th Cir. 2009) (examining a tribe's charter to determine whether or not a waiver of sovereign immunity was valid).

Far from waiving immunity, LVD's Constitution states that the LVD Council "shall not waive or limit the right of the Lac Vieux Desert Band to be immune from suit, except as authorized by this Article or in furtherance of tribal business enterprises." (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in Supp. of Mot. to Dismiss, Attach. #1, Art. XIII). As explained above, the LVD Council only acts by motion, ordinance, or resolution approved by a majority vote. (*Id.*, Art. III §4(f)). Plaintiffs have not alleged, nor does there exist, any LVD

---

*Corp.*, 937 F.2d 899, 914 (3rd Cir. 1991) (a RICO civil action may not be maintained against a municipality because a municipality cannot be liable for the treble damages imposed in such an action.); *McNeily v. United States*, 6 F.3d 343, 350 (5th Cir. 1993) (rejecting plaintiff's attempts to sue the FDIC under the RICO statute.); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) ("it is clear that there can be no RICO claim against the federal government.").

Council motion, ordinance, or resolution that clearly and unequivocally waives the sovereign immunity of LVD or the LVD Officers to allow Plaintiffs' lawsuit.  Because the LVD Officers are cloaked with LVD's sovereign immunity, and LVD has not waived such sovereign immunity, Plaintiffs' lawsuit is barred against the LVD Officers.  The Court's analysis can end here.

## II.      Plaintiffs lack standing to sue the LVD Officials.

### A.      Legal Standard for Article III standing.

In addition to the sovereign immunity that prevents this lawsuit against the LVD Officers, Plaintiffs also lack standing to sue the LVD Officers under Article III of the Constitution.

A motion to dismiss based on lack of standing to bring a cause of action "is generally associated with Civil Procedure Rule 12(b)(1) pertaining to subject matter jurisdiction."  *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011).  "That is because 'Article III gives federal courts jurisdiction only over cases and controversies,' and standing is 'an integral component of the case or controversy requirement.'"  *Id.* (quoting *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006)).

"To satisfy the constitutional minimum of standing," a plaintiff must allege personal injury that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  "This formula includes three elements: (1) injury in fact; (2) traceability; and (3) redressability."  *Gaston Copper*, 204 F.3d at 154 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, (1992)).

"Our standing decisions make clear that standing is not dispensed in gross."  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, __ U.S. __, 137 S. Ct. 1645, 1650 (2017) (internal quotations omitted.)  "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each

form of relief that is sought." *Id. (*quoting *Davis v. Federal Election Commission,* 554 U.S. 734 (2008)) (internal quotations omitted); *DaimlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing separately for each form of relief sought"); *Los Angeles v. Lyons,* 461 U.S. 95, 105–106, 137 n. 7 (1983) (stating that a plaintiff who has standing to seek damages must also demonstrate standing to pursue injunctive relief).

Against these standards, Plaintiffs lack standing as to the LVD Officers because: (i) the alleged injury is not traceable to the LVD Officers and, (ii) relief is not available from the LVD Officers.

### B. Plaintiffs' alleged injuries are not traceable to the LVD Officers.

Traceability is necessary to establish Article III standing. *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 324 (4th Cir. 2002). More simply, this element requires causation— a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, (1976); *Defenders of Wildlife*, 504 U.S. at 560.

The LVD Officers did not cause Plaintiffs' alleged injury, meaning that any alleged harm is not traceable to the LVD Officers. That is true for multiple reasons.

First, at all times alleged, the LVD Officers acted within the confines of their constitutionally mandated authority, which precludes any attempt to ground standing against them individually. "Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S. Ct. 783, 788, 95 L. Ed. 1019 (1951). While in retrospect Plaintiffs may not be happy with their decisions to borrow from a tribal lender operating within LVD's jurisdiction and under LVD's laws, Plaintiffs cannot blame their decisions on LVD's governance.

11

For example, in *Imperial Granite Co. v. Pala Band of Mission Indians,* the Ninth Circuit found that tribal legislative action does not support a legal cause of action:

> The complaint alleges no individual actions by any of the tribal officials named as defendants.  As far as we are informed in argument, the only action taken by those officials was to vote as members of the Band's governing body against permitting Imperial to use the road.  Without more, it is difficult to view the suit against the officials as anything other than a suit against the Band.  *The votes individually have no legal effect; it is the official action of the Band, following the votes, that caused Imperial's alleged injury.*  940 F.2d 1269, 1271 (9th Cir. 1991) (emphasis added).]

In other words, serving on the LVD Council by the LVD Officers, individually or collectively, did not cause Plaintiffs' alleged injuries.  The LVD Officers governed LVD, along with the other LVD council members, by passing business organization laws, regulatory codes, creating government departments, approving and organizing businesses, managing tribal funds, etc.  When governing, the LVD Officers do not subordinate LVD to another sovereign and are free to act in the best interests of LVD without consideration of states and state laws.  Thus, none of Plaintiffs' alleged injuries are traceable to these individual LVD Officers.

Similarly, with respect to the declaratory judgment claim in Count I, Plaintiffs have not shown any injury attributable to the LVD Officers from the existence of the dispute resolution process that is challenged under that Count.  Indeed, Plaintiffs have not attempted to rely upon the dispute resolution procedure and thus have not shown injury.[5]  So, the Plaintiffs perceived harm from their loan agreements' forum selection and choice of law provisions are also not traceable to the LVD Officers.

Furthermore, the LVD Officers did not issue any loans or have any individual control over the day-to-day operations of the lending businesses, meaning that they could not have caused any

---

[5] Should Plaintiffs rely on the forum selection and choice of law provisions in their loan agreements, the procedure is completely isolated from the LVD Officers.

of the alleged injuries relating to Plaintiffs' loans.  Plaintiffs have not made any allegation to connect their perceived injuries to the individuals serving as LVD Officers on the LVD Council. Any connection between the LVD Officers and the allegation of "unlawful debts" in Virginia cannot support traceability, as finding culpability by an LVD Officer for governing would allow anyone to sue any legislator for any vote.

The Complaint, on its face, fails to satisfy the traceability element of Article III standing as to the LVD Officers.  Thus, the claims against them must be dismissed.

### C.   The LVD Officers are unable to redress Plaintiffs' alleged injury.

As an additional requirement for Article III standing, redressability "ensures that a plaintiff personally would benefit in a tangible way from the court's intervention."  *Gaston Copper*, 204 F.3d at 162 (quoting *Warth v. v. Seldin,* 422 U.S. 490, 508 (1975) (internal quotations omitted)). An injury is redressable if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000)).  Still, "no explicit guarantee of redress to a plaintiff is required to demonstrate a plaintiff's standing."  *Doe*, 713 F.3d at 755 (4th Cir. 2013) (quoting *Equity in Athletics, Inc. v. Dep't of Educ.,* 639 F.3d 91, 100 (4th Cir. 2011)).  *Only declaratory and injunctive relief is sought against the LVD Officers*.[6]    However, Plaintiffs cannot receive either from the LVD Officers.

First, under the declaratory claim in Count One, if the Court were to issue a declaration that the dispute resolution process in the Plaintiffs' loan agreements is invalid, that declaration

---

[6] See Complaint ¶ 95 fn 8 excluding the LVD Officers from money damages under RICO; see also Complaint ¶ 119 fn 9, excluding the LVD Officers from relief for Counts 4 and 5.

would in no way affect the LVD Officers, nor would the LVD Officers be required to act in any way based on the declaration.

Next, the injunctive relief sought through the RICO claims is untenable because RICO does not authorize injunctions.  Section 1964(c) of RICO only grants private parties the right to seek treble damages from a RICO violator, but it is silent as to injunctive or declaratory relief.  *See Dan River v. Icahn*, 701 F.2d 278, 290 (4th Cir. 1983).  "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.  'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'"  *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19–20 (1979) (quoting *Botany Mills v. U.S.*, 278 U.S. 282, 289 (1929)).  Thus, the requested injunctive relief against the LVD Officers is not available under RICO.

Moreover, if the Court were to issue an injunction requiring "Defendants to divest themselves of any interest in the Enterprise," as requested under the RICO claim, it would have no effect against the LVD Officers, as the individual LVD Officers do not have any interest to divest.  Finally, as to Plaintiffs' causes for violations of usury laws and unjust enrichment, injunctive relief would also have no effect as the LVD Officers do not lend in Virginia so there is no conduct to enjoin nor is there injunctive relief available to resolve unjust enrichment.

**IV.    This Court lacks Personal Jurisdiction over the LVD Officers**

In addition to a lack of subject matter jurisdiction over the LVD Officers, this Court also would lack personal jurisdiction over the LVD Officers, which requires dismissal under Fed. R. Civ. P. 12(b)(2).

"If due process is to have any application at all in federal cases—and the Fifth Amendment requires that it does—it seems impossible that Congress could empower a plaintiff to force a

defendant to litigate any claim, no matter how trifling, in whatever forum the plaintiff chooses, regardless of the burden on the defendant." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A*, 119 F.3d 935, 947 n. 24 (11th Cir. 1997) (quoting 4 WRIGHT & MILLER § 1067.1, at 328–29). That is what Plaintiffs are preempting here.

### A.      Standard of Review under Fed. R. Civ. P. 12(b)(2).

Under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating *in personam* jurisdiction exists. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).  A Fed. R. Civ. P. 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter before reaching the merits of a case.  *Id.*  When the court addresses the *in personam* jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, the plaintiff must make a *prima facie* showing of personal jurisdiction to survive the Fed. R. Civ. P. 12(b)(2) motion to dismiss.  *Id.*

When determining whether a plaintiff has made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff.  *Combs*, 886 F.2d at 676; *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993).  "The plaintiff must nevertheless plead facts 'sufficient in themselves to establish jurisdiction.'"  *Protype Productions, Inc. v. Reset, Inc.*, 844 F.Supp.2d 691, 700 (E.D. Va. 2012) (quoting *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F.Supp. 562, 564 (S.D.N.Y.1997)).

### B.      Because the LVD Officers are immune from unconsented suit, *in personam* jurisdiction over the LVD Officers is not compatible with due process as Plaintiffs' claims are immaterial and insubstantial

"*In personam* jurisdiction" is the phrase used to express a court's power to bring a person into its adjudicative process.  BLACK'S LAW DICTIONARY 857 (7th ed.1999); *Noble Sec., Inc.*, 611 F. Supp. 2d at 525.  Here, Plaintiffs allege jurisdiction exists under RICO, 18 U.S.C. § 1965.  The

Fourth Circuit has held that § 1965(d) authorizes nationwide service of process and therefore authorizes *in personam* jurisdiction in any district court of the United States:

> Where, as here, Congress has authorized nationwide service of process . . . so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant.  [*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997) (internal quotations omitted)][7]

"When a jurisdictional motion to dismiss depends, as in this case, on the assertion of a right created by a federal statute, the court should dismiss for lack of jurisdiction only if the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of

---

[7] The *ESAB* court's interpretation of § 1965(d) is inconsistent with that provision's plain language and cannot alone provide the threshold basis for seeking to subject a defendant to jurisdiction in an improper forum, as has been attempted here.

Subsection 1965(d) only provides for nationwide service of those types of process that are not authorized by other provisions of § 1965: "*All other process* in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides . . . ."  18 U.S.C. § 1965(d) (emphases added).  Thus, the section necessarily does not refer to subsections (a)-(c).  However, §§ 1965(a) and 1965(b) each independently provide for service of summonses, which precludes any contention that § 1965(d) can be validly used to serve a summons.  Accordingly, because § 1965(d) concerns only the types of process not otherwise set forth in the statute, and because §§ 1965(a) and (b) each specifically provide for service of a summons, § 1965(d) cannot be read to authorize nationwide service of a summons on a defendant.

This logic is underscored by the legion of decisions to disagree with *ESAB* based on the plain language of § 1965 and its numerous subparts.  *Every* other federal circuit court and federal district court to consider the issue has disagreed with the Fourth Circuit's analysis in light of the foregoing analysis.  For instance, in the year after *ESAB* was decided, the Second Circuit held that § 1965(d) only provides for service of <u>*non-summons*</u> process, and not the type of process that would require a party to litigate in the chosen forum.  *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998).  Other federal circuit and district courts have now uniformly lined up behind the Second Circuit.  *See, e.g.*, *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006); *Nutrimost, LLC v. Werfel*, No. 2:15-cv-531, 2016 WL 5107730, at *6 (W.D. Pa. Mar. 2, 2016); *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008).  Indeed, even the U.S. Department of Justice, the federal agency responsible for criminal enforcement of the RICO Act, has publicly rejected the *ESAB* court's interpretation of § 1965(d).  U.S. Dept. of Justice, Criminal Division, Organized Crime & Racketeering Section, *Civil RICO: A Manual for Federal Attorneys*, at 94 n.81 (Oct. 2007), available at https://www.justice.gov/criminal/foia/docs/2007civil-rico.pdf

merit as not to involve a federal controversy." *Noble Sec., Inc.*, 611 F. Supp. 2d at 549 (quoting *Republic of Panama,* 119 F.3d at 941 (internal quotations omitted)) (quoting *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1055–57 (2d Cir.1993)); *see also Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256 (11th Cir.1997) (dismissal for lack of subject matter jurisdiction is only appropriate when plaintiff's federal claim is "clearly immaterial or insubstantial").

**1.  The LVD Officers are immune from RICO claims, which includes immunity from RICO's nationwide service or process provision.**

To rely on RICO's nationwide service of process as authority to argue this Court has jurisdiction over the LVD Officers, Plaintiffs RICO claim must not be "wholly immaterial or insubstantial." *See Noble Sec., Inc.*, 611 F. Supp. 2d at 549 (internal quotations omitted). However, Plaintiffs' allegations against LVD Officers are immaterial and insubstantial.

First, as described above, Plaintiffs do not allege *any* conduct by the LVD Officers nor do Plaintiffs allege that the LVD Officers caused Plaintiffs' alleged harms. *Noble Sec., Inc.*, 611 F. Supp. 2d at 550 ("Furthermore, in the RICO context, the 'pertinent inquiry in determining the existence of proximate, or "legal" cause, is "whether the conduct has been so significant and important a cause that the defendant should be held responsible.").  The failure to allege any conduct or causation whatsoever makes the claims as to the LVD Officers immaterial and insubstantial.

Next, Plaintiffs do not dispute that that tribal sovereign immunity bars Plaintiffs' claims. As discussed above, tribal sovereignty and sovereign immunity shields the LVD Officers from suit, which includes immunity from RICO claims and claims arising under state laws.  Without pleading that tribal sovereign immunity does not impede their claims, Plaintiffs' claims are meritless and immaterial as to the LVD Officers because the claims are barred.

Additionally, as tribal officials, just as the LVD Officers are immune from Plaintiffs' claims, they are also immune from service under RICO.  Tribal sovereign immunity from suit protects the LVD Officers against *all* aspects of the judicial process; it is *not* limited to protecting tribes against being named defendants in formally conducted civil litigation.  Because the LVD Officers are cloaked in LVD's immunity and Plaintiffs have made no effort to overcome such immunity, Plaintiffs' claims are meritless and immaterial.

### 2.   LVD Officers are immune from Virginia's laws.

Next, the gravamen of Plaintiffs' lawsuit is usury—that Plaintiffs' loans violate Virginia's usury law, e.g., Va. Code § 6.2-303.  (*See*, *e.g.*, Compl. ¶ 5 ("Defendants . . . violated Virginia's usury laws and RICO's prohibition against the 'collection of unlawful debts.'")).

Again, Plaintiffs do not allege that the LVD Officers violated Virginia laws—all allegations related to Plaintiffs' loans are against Big Picture, Ascension, Martorello, and Gravel—which makes the claims immaterial and insubstantial as to the LVD Officers.

And again, Plaintiffs' usury allegations are immaterial and insubstantial as to the LVD Officers because the LVD Officers are immune from Virginia law and the loans are authorized by LVD law.  It is not disputed that LVD law allows interest rates higher than Virginia law—presumably that is why the population in Virginia that is underserved by traditional lenders seeks financial security in the online marketplace.  But Plaintiffs cannot attack the legitimacy of LVD's laws by suing its government officials.  Because the dispute comparing Virginia law and LVD law cannot be resolved by Plaintiffs' lawsuit against the LVD Officers, the claims against the LVD Officers are immaterial and insubstantial.

Based on these reasons, it is self-evident that Plaintiffs' claims against the LVD Officers are immaterial and insubstantial, which makes this Court's exercise of personal jurisdiction over the LVD Officers violative of due process, so this case must be dismissed as to the LVD Officers.

### C.   Forcing the LVD Officers to defend claims in this forum would be unfair and inconvenient.

Forcing the LVD Officers to litigate in this forum based on immaterial and insubstantial claims, as discussed above, is a constitutionally significant inconvenience to the LVD Officers. When a defendant makes a showing of constitutionally significant inconvenience, jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant. *Republic of Panama,* 119 F.3d at 948.

In *ESAB Group, Inc.*, the Fourth Circuit reasoned that "[t]he Fifth Amendment's Due Process Clause not only limits the extraterritorial scope of federal sovereign power, but also protects the liberty interests of individuals against unfair burden and inconvenience." 126 F.3d at 626. The protections against an "unfair burden and inconvenience" are traced back to *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980), where the Supreme Court explained that "[t]he protection against inconvenient litigation is typically described in terms of 'reasonableness' or 'fairness.'" *World-Wide Volkswagen Corp.*, 444 U.S. at 292. *World-Wide Volkswagen* further explained that the concepts of "reasonableness" and "fairness" required consideration of "relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.'" *Id.* (quoting *Int'l Shoe Co. v. State of Wash. Office of Unemp't Comp. & Placement*, 326 U.S. 310, 317 (1945)).

The concepts of "reasonableness" and "fairness" under *World Wide Volkswagen's* Fourteenth Amendment analysis also apply to a Fifth Amendment analysis: "We discern no reason

why these constitutional notions of "fairness" and "reasonableness" should be discarded completely when jurisdiction is asserted under a federal statute rather than a state long-arm statute." *Republic of Panama,* 119 F.3d at 945 (relying on *World–Wide Volkswagen*, 444 U.S. at 291–92.).

To evaluate whether the Fifth Amendment requirements of fairness and reasonableness have been satisfied, "courts should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation." *Republic of Panama,* 119 F.3d at 946. "As in other due process inquiries, the balancing seeks to determine if the infringement on individual liberty has been justified sufficiently by reference to important governmental interests." *Id*. However, the balancing differs from the Fourteenth Amendment analysis to accommodate the federal statute.

"For example, a defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis . . . A court must therefore examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state in conducting the Fifth Amendment analysis." *Id.* at 946-47 (relying on *United States Securities and Exchange Comm'n v. Carrillo*, 115 F.3d 1540, 1543–44 (11th Cir.1997)).

In evaluating the federal interest, courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. *Republic of Panama,* 119 F.3d at 947.

"A defendant's 'minimum contacts' with the United States do not, however, automatically satisfy the due process requirements of the Fifth Amendment." *Id*. Despite sufficient nationwide

contacts, there are instances where a defendant may still be "unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." *Id.*

Under these standards, asserting personal jurisdiction over the LVD Officers would be unfair and inconvenient and have harmful consequences to LVD. *First*, considering the LVD Officers' "aggregate contacts with the nation," other than being physically located within the borders of the United States, Plaintiffs' have not pled any "nationwide contacts" by the LVD Officers related to their claims. In other words, this scenario is one where compelling the LVD Officers into court here would violate the concepts of fair play and substantial justice as the LVD Officers could not have anticipated being hailed into this Court simply for being LVD Officers. Plaintiffs' bare pleading is insufficient to comport with the Fifth Amendment.

*Second,* the federal policies underlying RICO are not advanced by asserting personal jurisdiction over the LVD Officers under the circumstances. "RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498 (1985). In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482, 487 (2d Cir. 1984), rev'd, 473 U.S. 479, 105 S. Ct. 3275 (1985), the Second Circuit found that "there is simply no evidence that in creating RICO, Congress intended to create the broad civil cause of action that the reading of the statute given by its proponents would allow," and that instead of being used against mobsters and organized criminals, it has become a tool for everyday fraud cases brought against "respected and legitimate enterprises." *Id.* But the Supreme Court disagreed: "The fact that § 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued." *Sedima, S.P.R.L.,* 473 U.S. at 499–500.

> It is true that private civil actions under the statute are being brought almost solely against such defendants, rather than against the

21

> archetypal, intimidating mobster.  Yet this defect—if defect it is—
> is inherent in the statute as written, and its correction must lie with
> Congress.  It is not for the judiciary to eliminate the private action
> in situations where Congress has provided it simply because
> plaintiffs are not taking advantage of it in its more difficult
> applications.  [*Id.*]

However, despite RICO's evolution and its breadth, the purposes of RICO have never been stretched so far as to allow suit against a government or a government official merely for being a government official, which is evidenced by the dozens of cases barred by sovereign immunity, listed above.  To the extent that it is alleged, Plaintiffs' RICO dispute in the first instance is with their lender, Big Picture and not with the LVD Officers that enacted the laws under which Big Picture operates.  Moreover, as RICO was not intended to create a civil cause of action for citizens displeased with government officials, RICO's nationwide service of process is not served by allowing Plaintiffs to compel the LVD Officers into this Court.

*Third*, the Plaintiffs' interests in obtaining convenient and effective relief is protected by the choice of law and forum selection provisions within their loan agreements, which reflects that the parties did not intend to resolve any dispute in this Court or in Virginia.  "[W]hen the parties' contract contains a valid forum-selection clause . . . [t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568 (2013).  Thus, the Plaintiffs' interest in obtaining relief are already adequately protected regardless of whether the LVD Officers are named defendants in this lawsuit.  Moreover, Plaintiffs' allegations of usury can be litigated when the Plaintiffs rely on their contractual choice of law and forum selection provisions.  And ultimately, based on the Complaint, it is apparent that any relief Plaintiffs seek is not available from the LVD Officers.

*Fourth*, the concerns of judicial efficiency and economy are best served by honoring the Plaintiffs' forums selection provisions and not by asserting personal jurisdiction over the LVD Officers to force them to defend allegations made against others in this Court. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (KENNEDY, J., concurring) (The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.")

*Finally*, trial in Virginia would be unreasonably burdensome.  While the factors discussed above guide the Court's Fifth Amendment analysis, they are not exclusive as "the balancing seeks to determine if the infringement on individual liberty has been justified sufficiently by reference to important governmental interests." *Republic of Panama*, 119 F.3d at 946.  The Court should also consider the burden on the defendants—here the burden is on the LVD Officers and on the LVD government.

Under the uncommon circumstances presented in this matter, the Court should consider the harmful effects litigation in this forum will have on LVD, and on any government, if a Plaintiff can stall governance by simply naming officials in lawsuit and without substantive allegations. The LVD Officers are tasked with all aspects of governing LVD: ensuring the continued operation of the government and the government departments, overseeing the tribal budget; enacting law and regulation; working with federal, state, county, municipal, and tribal governments; assisting constituents; calling and presiding over regular and special meetings; recording meetings and official acts; voting on official acts; etc.  This lawsuit will impede LVD's governance.

This litigation will require substantial time and distract the LVD Officers from their constitutional duties by both requiring time to focus on the lawsuit and also require the LVD Officers to be away from LVD for extended periods of time to defend against this lawsuit.  The

lawsuit will prohibit these elected officials from representing their constituents and voting on decisions that significantly impact LVD and its members.  Without making allegations against the LVD Officers, Plaintiffs have still found a way to harm LVD by interfering with LVD's government and business operations for as long as its takes the LVD Officers to successfully defend this suit.

### V.     Venue is improper in this District requiring dismissal.

"The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). Under Fed. R. Civ. P. 12(b)(3), a party may seek dismissal for improper venue.  Plaintiffs allege that venue is appropriate in this district under 18 U.S.C. § 1965(a), where "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  Plaintiffs do not allege that the LVD Officers reside, are found, have an agent, or "transact [their] affairs" in this district.  It is self-evident that the LVD Officers do not meet any of these requirements.

Plaintiffs also allege that venue is appropriate under 28 U.S.C. § 1391(b) because "a majority of Plaintiffs are residents . . . and a substantial part of Plaintiffs' claims occurred in Virginia."  (Compl. ¶ 7).  "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)" to determine if venue is proper.  *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 577.  If venue is improper the case must be dismissed or transferred under § 1406(a).  *Id.*

What is clear in § 1391(b) is that the Court must consider where the Defendants "reside," not where the Plaintiffs reside, and the "substantial part" of where the Plaintiffs' claims occurred

24

is on LVD's Reservation.  The last act on Plaintiffs' loan agreements of acceptance occurred on

LVD's Reservation.  (*See* Def.'s Big Picture Loans, LLC and Ascension Technologies, Inc. Br. in

Supp. of Mot. to Dismiss, Attach. #2, M. Hazen Affidavit at ¶ 30 (c)(8)).  The approvals to disburse

funds occurred on LVD's Reservation and Big Picture's funds are held in a bank in Wisconsin.

(*Id.* at ¶ 26).  Plaintiffs' received funds electronically and have not pled that they have ever entered

any bank in Virginia.  Plaintiffs never alleged that they spent the funds in Virginia or that the funds

were received by any entity in Virginia.  In fact, Plaintiffs only allege they are residents of Virginia,

but not that they were actually in Virginia at the time the applied for the loan, received the funds,

spent the funds, or otherwise made any action related to the Complaint in Virginia.  Based on

Plaintiffs' allegations, there is no factual basis to conclude that any part of Plaintiffs' claims

occurred in Virginia.

Without any basis to support venue under § 1391, venue is improper and the case must be

dismissed.

### VI.     LVD Officers join and incorporate Big Picture and Ascension's motion to dismiss.

To avoid burdening the Court with duplicative briefing, the LVD Officers join and

incorporate by reference the authorities and legal arguments cited in Big Picture and Ascension's

motion to dismiss and other substantive motions filed by the LVD Officers.

### CONCLUSION

As Plaintiffs have not attempted to plead that the LVD Officers have acted outside their

official capacities nor plead that tribal sovereign immunity has been abrogated or waived, it is clear

that the LVD Officers are immune from Plaintiffs' claims.

Also, as Plaintiffs do not make any substantive allegations against the LVD Officers and

specifically exclude the LVD Officers from their requested relief, there is no standing as to the

25

LVD Officers and Plaintiffs have failed to state any claims upon which the LVD Officers can grant relief.

Finally without allegations against the LVD Officers, and as the LVD Officers are immune from RICO's nationwide service provisions, personal jurisdiction in this Court would violate the LVD Officers' due process protections.

For these reasons, the LVD Officers respectfully request that this Court grant their motion and dismiss Plaintiffs' Complaint as to the LVD Officers under Fed R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6) and for lack of standing.

**JAMES WILLIAMS, JR., GERTRUDE MCGESHICK, SUSAN MCGESHICK, AND GIIWEGIIZHIGOOKWAY MARTIN**

By:/s/David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com

Karrie Sue Wichtman (admitted *pro hac vice*)
Justin A. Gray (admitted *pro hac vice*)
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: kwichtman@rosettelaw.com
Email: jgray@rosettelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA  23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
*Counsel for Plaintiffs*

David F. Herman
Jonathan P. Boughrum
Richard L. Scheff
MONTGOMERY MCCRACKEN WALKER
& RHOADS LLP
123 S Broad Street
Philadelphia, PA 19109
Telephone: 215-772-1500
Facsimile: 215-772-7620
Email: dherman@mmwr.com
Email: jboughrum@mmwr.com
Email: rscheff@mmwr.com
*Counsel for Defendant Matt Martorello*

/s/ David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
*Counsel for Defendants*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com