THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| LULA WILLIAMS, GLORIA TURNAGE, GEORGE HENGLE, DOWIN COFFY, and FELIX GILLISON, JR., *on behalf of themselves and all individuals similarly situated,* | : : : : : | |
| Plaintiffs, | : | CIVIL ACTION NO. 3:17-cv-461 |
| v. | : : | |
| BIG PICTURE LOANS, LLC, MATT MARTORELLO, ASCENSION TECHNOLOGIES, INC., DANIEL GRAVEL, JAMES WILLIAMS, JR., GERTRUDE MCGESHICK, SUSAN MCGESHICK, and GIIWEGIIZHIGOOKWAY MARTIN, | : : : : : : : | |
| Defendants. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MATT MARTORELLO'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12**

## TABLE OF CONTENTS

Page

I.   BACKGROUND ....................................................................................... 5

II.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AS TO
     MARTORELLO AND MUST BE DISMISSED................................................ 7

     A.   Plaintiffs' allegations concerning Martorello are conclusory,
          speculative, directly contrary to relevant documents, and cannot be
          accepted by the Court .............................................................................. 8

     B.   The Supreme Court of Virginia's decision in Settlement Funding
          requires dismissal of Plaintiffs' Claims in their entirety.............................. 12

     C.   Plaintiffs' RICO claims are deficient as a matter of law................................ 17

          1.   Plaintiffs fail to define the proper enterprise under RICO................ 18

          2.   Plaintiffs lack standing under RICO to pursue claims against
               Martorello ........................................................................................ 19

          3.   The Complaint fails to establish a violation of Section 1962 by
               Martorello ........................................................................................ 21

          4.   The Complaint fails to establish that Martorello was part of a
               RICO conspiracy .............................................................................. 23

     D.   Plaintiffs' claims against Martorello under the Virginia Usury statute
          must fail........................................................................................................ 24

     E.   Plaintiffs cannot demonstrate a viable claim for unjust enrichment
          against Martorello......................................................................................... 26

          1.   Without an underlying usury claim, Plaintiffs' unjust
               enrichment claim fails...................................................................... 26

          2.   Plaintiffs have not alleged sufficient facts to establish that
               Defendants should have reasonably expected to reimburse
               Plaintiffs for their loan payments .................................................. 26

          3.   Plaintiffs' claim for unjust enrichment fails because it is based
               on an express contract ..................................................................... 27

     F.   Martorello incorporates by reference certain arguments ............................ 28

III. CONCLUSION ........................................................................................ 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. HSBC Bank Nev., N.A.*,
   2012 U.S. Dist. LEXIS 146814 (C.D. Cal. Oct. 11, 2012) ...............................................27, 28

*Andrews v. Ring*,
   266 Va. 311, 585 S.E.2d 780 (2003) .......................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................9, 10, 11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................................8

*Brown Mfg. Corp. v. Alpha Lawn & Garden Equip.*,
   219 F. Supp. 2d 705 (E.D. Va. 2002) .....................................................................................10

*In re Chinese Drywall Cases*,
   80 Va. Cir. 69 (Norfolk 2010) ................................................................................................28

*Chisolm v. TransSouth Fin. Corp.*,
   95 F.3d 331 (4th Cir. 1996) ...............................................................................................20, 21

*D. Penguin Bros. v. City Nat. Bank*,
   587 F. App'x 663 (2d Cir. 2014) .............................................................................................23

*Foster v. Wintergreen Real Estate Co.*,
   363 F. App'x 269 (4th Cir. 2010) ............................................................................................24

*United States ex rel. Garzione v. PAE Gov't Servs., Inc.*,
   164 F. Supp. 3d 806, 811 (E.D. Va.) .........................................................................................9

*GE Inv. Private Placement Partners II v. Parker*,
   247 F.3d 543 (4th Cir. 2001) ...................................................................................................24

*Genty v. Resolution Trust Corp.*,
   937 F.2d 899 (3rd Cir. 1991) ...................................................................................................21

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) .....................................................................................................9

*Goodrow v. Friedman & MacFadyen, P.A.*,
   No. 3:11CV20, 2013 WL 3894842 (E.D. Va. July 26, 2013) ...........................................17, 20

*Greenberg v. Com. ex rel. Atty. Gen. of Virginia*,
  255 Va. 594 (1998) ............................................................................................26

*Heubusch and Reynolds v. Boone*,
  213 Va. 414, 192 S.E.2d 783 (1972)...............................................................14, 15

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258 (1992)...........................................................................................20

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010)............................................................................19, 24

*Inyo Cty. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*,
  538 U.S. 701 (2003)...........................................................................................21

*Iqbal v. Hasty*,
  490 F.3d 143 (2d Cir. 2007)................................................................................11

*Jones v. Bank of America Corp.*,
  2010 U.S. Dist. LEXIS 142918 (E.D. Va. 2010) ....................................................29

*M.B. by & through Brown v. McGee*,
  No. 3:16CV334, 2017 WL 1364214 (E.D. Va. Mar. 24, 2017) .....................9, 12, 23

*New Mexico v. Mescalero Apache Tribe*,
  462 U.S. 324 (1983)...........................................................................................17

*Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*,
  207 F.3d 21 (1st Cir. 2000)................................................................................30

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline*,
  117 F.3d 142 (4th Cir. 1997) ...................................................................19, 21, 23

*Radford v. Community Mortgage and Investment Corporation*,
  226 Va. 596, 312 S.E.2d 282 (1984)...............................................................14, 15

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)......................................................................................19, 24

*Schmidt v. Household Fin. Corp., II*,
  276 Va. 108, 661 S.E.2d 834 (2008)...............................................................27, 28

*Settlement Funding, LLC v. Von Neumann-Lillie*,
  274 Va. 76, 645 S.E.2d 436 (2007)............................................................... *passim*

*Sheard v. Bank of Am., N.A.*,
  2012 U.S. Dist. LEXIS 101764 (D. Md. July 23, 2012).........................................29

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
226 F. Supp. 3d 589 (E.D. Va. 2017) .............................................................21, 22

*Stafford Urgent Care v. Garrisonville Urgent Care*,
224 F. Supp. 2d 1062 (E.D. Va. 2002) ...................................................................10

*U.S. v. Mouzone*,
687 F.3d 207 (4th Cir. 2012) ..................................................................................24

*U.S. v. Walker*,
796 F.2d 43 (4th Cir. 1986) ....................................................................................25

*United Food & Commercial Workers Unions & Employers Midwest Health
Benefits Fund v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013) ............................................................................19, 25

*United States v. Bergrin*,
650 F.3d 257 (3d Cir. 2011) ...................................................................................23

*United States v. Persico*,
832 F.2d 705 (2d Cir. 1987) ...................................................................................23

*United States v. Turkette*,
452 U.S. 576 (1981) ................................................................................................19

*White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
913 F.2d 165 (4th Cir. 1990) ..................................................................................18

*In re XE Servs. Alien Tort Litig.*,
665 F. Supp. 2d 569 (E.D. Va. 2009) .....................................................................18

**Statutes**

18 U.S.C. § 1961(6) ..........................................................................................18, 19

18 U.S.C. § 1962(c) .............................................................................19, 23, 24

18 U.S.C. § 1962(d) ...........................................................................................24, 25

18 U.S.C. § 1964(c) ................................................................................................20

Utah Code Section 70C-2-101 ................................................................................17

Va. Code § 6.2-100 .................................................................................................26

Va. Code § 6.2-305 .................................................................................................26

Va. Code § 6.2-305(A) ...........................................................................................26

Va. Code § 6.2-1540 ........................................................................................................26

Va. Code § Section 6.1-330.55 ........................................................................................14

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ......................................................................................................8

Fed. R. Civ. P. 10(c) ......................................................................................................29

Fed. R. Civ. P. 12(b)(6)....................................................................................................8, 9

Defendant, Matt Martorello ("Martorello"), by counsel, for his memorandum of law in support of his motion to dismiss, states as follows:

Plaintiffs, utilizing cookie-cutter allegations recycled from other complaints, file this lawsuit against Martorello and others in an effort to avoid the terms of the contract, and choice of law provisions, they freely entered into with a sovereign Native American entity.[1]  Rather than

---

[1] This Court need only look to other complaints filed by Plaintiffs and their attorneys to observe that the individual allegations against Martorello are not the type of individualized allegations supported by an adequate pre-filing investigation.  Rather, the Complaint simply recycles allegations against other servicers that assist Native American lenders.  For example, Paragraph 3 of the Complaint makes what appears to be a detailed allegation regarding the genesis of the relationship between Martorello and the LVD:

> To facilitate blatant violations of state usury laws, Defendant Matt Martorello ("Martorello") approached the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe") for the purpose of establishing a rent-a-tribe scheme.

(Compl. ¶ 3.)  In reality, however, such allegations are not based in any pre-filing investigation, but are instead boilerplate language that Plaintiffs and their attorneys use against other individual defendants in an attempt to avoid dismissal under Rule 12.  For example, Plaintiff Williams made an almost identical allegation against Kenneth Rees, stating:

> In an attempt to circumvent state and federal lending laws, Defendant Kenneth Rees approached members of the Chippewa Cree Tribe and Otoe-Missouria Tribe (collectively the "Tribes") for the purpose of establishing separate "rent-a-tribe" enterprises."

*Gibbs v. Rees*, No. 3:17-cv-386, ECF No. 1 at ¶ 2 (E.D. Va. May 19, 2017).  Plaintiffs in that case have also filed a second, separate, Federal Court complaint against two tribal lenders – Plain Green and Great Plains Lending – which is practically identical to the complaint in *Gibbs v. Rees*, but instead alleges that the Tribe, and not the servicers sued in the Rees complaint, collected unlawful debts from consumers.  *Gibbs v. Plain Green, LLC*, No. 3:17-cv-495, ECF No. 1 (E.D. Va. July 11, 2017).  Similarly, in *Inscho v. Johnson*, Plaintiffs' attorneys alleged:

> Rather than complying with Virginia's licensing requirements and usury laws, Defendants established a rent-a-tribe business model, associating themselves with the Mandan, Hidatsa, and Arikara Nation (the "MHA Nation")….  Although the MHA Nation holds itself out as the actual lender of the internet payday loans made by Defendants, MHA Nation is merely a front for Defendants' business, which is primarily operated through Cane Bay Partners.

present this Court with well-pled facts based upon an adequate investigation, Plaintiffs' entire

theory of this case is based on conjecture and unsupported inferences drawn from a strained and

incorrect reading of the documents referenced in their Complaint.   Plaintiffs appear to assume that

---

*Inscho v. Johnson*, No. 1:17-cv-674, ECF No. 1 at ¶¶ 22, 24 (E.D. Va. June 15, 2017.)  And in *Wiley v. Jardine*, Plaintiffs' attorneys again made similar accusations against individual defendants, stating:

> To facilitate their blatant violations of state interest-rate lending laws, Defendants helped form the Wakpamni Lake Community Corporation ("WLCC")—a holding company— organized by several rogue members of the Oglala Sioux Tribe (the "Tribe") for the purpose of serving as a "rent-a-tribe" scheme so that Defendants could make loans in excess of 800%.

*Wiley v. Jardine*, No. 3:17-cv-11, ECF No. 1 at ¶ 2 (Jan. 5, 2017).   This conclusory language is not confined to Native American lenders and their servicers – but extends to any lending business Plaintiffs' attorneys sue.  For example, in *Hunter v. NHCash.com, LLC*, the allegation was phrased:

> In an attempt to circumvent state usury and lending statutes, Mellow developed an enterprise comprised of several persons and legally distinct entities, including NHC, NHC SPV and NHC Holdings, to make, market, and collect illegal loans. The enterprise was designed to violate the usury and payday lending laws of Virginia.

*Hunter v. NHCash.com, LLC*, No. 3:17-cv-348, ECF No. 1 at ¶ 2 (E.D. Va. May 8, 2017). Similarly, Plaintiffs and their attorneys routinely label individual defendants as "architects" of a purported scheme in an effort to avoid pleading facts demonstrating an executive's active participation in alleged acts of wrongdoing.  *Wiley v. Jardine*, No. 3:17-cv-11, ECF No. 1 at ¶¶ 13-14 (labelling Defendants Jardine and Collins as "the architect of the illegal enterprise…"; *Inscho v. Johnson*, No. 1:17-cv-674, ECF No. 1 at ¶ 45 ("Johnson and Chewing were the architects of the lending scheme described herein…"; *Gibbs v. Rees*, No. 3:17-cv-386, ECF No. 1 at ¶ 97 ("Rees was the architect of the lending scheme…");  *Pettus v. The Servicing Company*, No. 3:15-cv-479, ECF No. 1 at ¶ 11 (E.D. Va. Aug. 14, 2015) ("Ms. Dolan is the architect and chief executive of the muti-tiered sham business described herein."); *Williams v. Big Picture Loans*, Compl. at ¶ 14 ("Martorello was the architect of the rent-a-tribe lending scheme.").

Plaintiffs' lack of individualized pleadings across many different defendants and alleged enterprises begs the question as to whether Plaintiffs have actually made all their allegations against Martorello based upon an adequate and individualized pre-filing investigation, or whether such allegations are simply manufactured to avoid a motion to dismiss by disguising impermissible conclusory allegations as facts.  Plaintiffs' most recent attempt to paint so many differently situated defendants with the identical broad brush cannot be a permissible pleading strategy under the Federal Rules.

allegations made in unrelated complaints against others in the same industry necessarily must be correct and must apply with equal force to all online consumer lenders owned by Native American tribes.  But there is no basis to infer, as Plaintiffs do, that all Native American lending entities are "fronts." (Compl. at ¶ 30.)  Perhaps most troublingly, Plaintiffs fail to present this Court with mandatory authority from the Supreme Court of Virginia which directly rejected Plaintiffs' theories and policy arguments.  For these reasons, Plaintiffs' Complaint fails to satisfy the Federal Rules, and this Court should dismiss the claims against Martorello with prejudice.

## I.   **BACKGROUND**

Plaintiffs are five Virginia residents who have entered into loan agreements with a Native American lender solely owned and operated by the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD" or the "Tribe").  (Compl. at ¶¶ 8-12, 58-59.)  Before contracting with their lenders and receiving hundreds of dollars in loan principal, Plaintiffs received multiple notices that they were contracting with an arm of a sovereign entity, and that Plaintiffs' loans contained a choice of law provision mandating application of the laws of the sovereign lenders' tribe.  (Compl. at ¶¶ 70-71, Ex. 1.; Defs. Br. in Support of Mot. to Dismiss, ECF No. 25 at 8-12.)  Plaintiffs freely accepted these terms.  Now seeking to avoid the express terms of their loan agreements, including the contracted-for dispute resolution procedures, Plaintiffs bring a host of claims related to alleged violations of Virginia law for which the parties did not contract.  (Compl., at ¶¶ 95-139.)

Plaintiffs have alleged that, contrary to the express terms of their loan agreements, Plaintiffs loans were not made by businesses wholly owned and operated by the LVD.  Instead, Plaintiffs ignore their loan contracts, the documents referenced in their Complaint, and all publicly available documents to allege, on nothing more than their pure conjecture, that it was actually Martorello and related companies who marketed, made, and collected loans from Plaintiffs.

3

(Compl., at ¶¶ 2-3, 13-16, 30-38.)

Plaintiffs claim that Martorello, a founder of Bellicose Capital, LLC ("Bellicose"), "was the architect of the rent-a-tribe scheme" which ultimately made the loans to Plaintiffs in 2016 – long after Martorello had exited the business.  (Compl., at ¶ 14, at Ex. 1.)  Plaintiffs make this allegation in spite of the fact that Plaintiffs admit, as they must, that Martorello was merely an officer of Bellicose Capital, LLC, a company providing consulting services to LVD's tribal lending entities – a business which Martorello eventually sold to LVD in January of 2016. (Compl., at ¶48, ¶ 3 n.1.)  Indeed, LVD and their officials have routinely filed sworn affidavits under penalty of perjury, just as they do in this case, demonstrating that Martorello has never had any control over BPL, Ascension, Red Rock, or any other business which actually made loans to the Plaintiffs. (*See, e.g.,* Aff. of James Williams, Jr., ECF No. 29-2 at ¶¶ 7, 11-13).[2]

The lone evidence Plaintiffs have to purportedly support their conclusory rent-a-tribe allegations is a single news article.  But that article, which Plaintiffs failed to attach to their Complaint, explicitly states that LVD is the lender, that "Bellicose Capital, helps [LVD] run websites that offer small loans to the public," and that after selling Bellicose to LVD, "the tribe will eventually earn $58 million a year, the documents show."  (Compl., at n.1).  Despite the article's clear and express statements specifically recognizing the legitimacy of the sale transaction and the fact that Martorello's companies only assisted LVD in offering their product to consumers, Plaintiffs' Complaint nevertheless alleges that Martorello continues to presently control a business he never operated, and which he exited entirely 18 months prior to being sued.  That is, even the

---

[2] Of course, Plaintiffs have every motivation to allege that LVD and its tribal lending did not make these loans to Plaintiffs.  Plaintiffs' admission that they contracted with a sovereign Native American lender would render them liable for the loan contracts they entered into with that sovereign lending entity pursuant to the laws of that Sovereign nation.

evidence on which Plaintiffs rely in filing suit does not support their allegations.

Plaintiffs' allegations as to Martorello are conclusory, manufactured, and must be dismissed.

## II. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AS TO MARTORELLO AND MUST BE DISMISSED.

The Federal Rules require that a complaint set forth "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a  complaint must provide more than "a formulaic recitation of the elements of a cause of action" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This is because the Federal Rules "do [ ] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions…." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A Motion under Fed. R. Civ. P. 12(b)(6) must be granted where a complaint lacks well-supported factual allegations that permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *United States ex rel. Garzione v. PAE Gov't Servs., Inc.*, 164 F. Supp. 3d 806, 811 (E.D. Va.), *aff'd*, 670 F. App'x 126 (4th Cir. 2016).   "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  The factual allegations of a complaint cannot contradict the plain text of an exhibit, because "in the event of a conflict between the bare allegations of the complaint and any attached exhibit.., the exhibit prevails." *M.B. by & through Brown v. McGee*, No. 3:16CV334, 2017 WL 1364214, at *2 (E.D. Va. Mar. 24, 2017) (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).  Indeed, as the Fourth Circuit has recognized, courts are not required to accept as true "unwarranted inferences, unreasonable conclusions, or

arguments." *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted).

Yet Plaintiffs' Complaint contains nothing more than the creative arguments of counsel based on irrelevant or speculative facts and unreasonable conclusions. Such manufactured claims against Martorello – without the required factually specific and sufficient allegations – must be dismissed.

**A.    Plaintiffs' allegations concerning Martorello are conclusory, speculative, directly contrary to relevant documents, and cannot be accepted by the Court.**

Plaintiffs' Complaint contains numerous allegations regarding Martorello's alleged involvement in a purported nation-wide scheme to defraud consumers, including the Plaintiffs. Under Virginia's active participation theory, however, liability cannot rest solely on a defendant's title – "it is well-established in Virginia that an individual corporate officer or director is not subject to personal liability simply by virtue of his office." *Stafford Urgent Care v. Garrisonville Urgent Care*, 224 F. Supp. 2d 1062, 1065 (E.D. Va. 2002). To be liable, an individual must participate in a violation of the law. *Andrews v. Ring*, 266 Va. 311, 324, 585 S.E.2d 780, 787 (2003) (quoting *Crall & Ostrander v. Commonwealth of Virginia*, 103 Va. 855, 859 (1905)). And, where a plaintiff makes only a conclusory allegation of 'active participation' by an executive, as here, it is clearly improper, and merits dismissal. *See Brown Mfg. Corp. v. Alpha Lawn & Garden Equip.*, 219 F. Supp. 2d 705, 708 (E.D. Va. 2002).

Many of Plaintiffs' allegations are founded upon threadbare conclusions that "Martorello was the architect of the rent-a-tribe lending scheme…," (Compl., at ¶ 14) or that "Martorello established a rent-a-tribe business model for his company, Bellicose Capital…." (Compl., at ¶ 28.) Plaintiffs also allege that Martorello "helped form Big Picture Loans and Red Rock – two companies formed as 'business enterprises' of the Tribe, which claimed to be 'wholly owned' and 'operated as an instrumentality of the tribe.'" (Compl., at ¶ 29). Yet Plaintiffs' allegations are

directly contrary to relevant documents – all of which are either publicly available and many of which are referenced in Plaintiffs' Complaint.  As a result, the allegations are improper as a matter of Virginia law and merit dismissal.

The conclusory nature of Plaintiffs' allegations also require dismissal under applicable Supreme Court jurisprudence: they are practically identical to those already considered, *and rejected*, by the Supreme Court.  Specifically, in *Iqbal*, the Supreme Court was confronted with allegations that the Attorney General John Ashcroft and FBI Director Robert Mueller created a scheme to deprive the plaintiff of his constitutional rights.  *Iqbal*, 556 U.S 669.  The complaint alleged that Ashcroft was the "principal architect" of the policy and that Mueller was "instrumental in its adoption, promulgation, and implementation." *Id*. at 664.  On these facts, Ashcroft and Mueller moved to dismiss the complaint for a lack of personal jurisdiction and a failure to state a claim on the basis that such conclusory facts could not support putting them through the expense and imposition of discovery in a foreign jurisdiction.  *Cf. Iqbal v. Hasty*, 490 F.3d 143, 177 (2d Cir. 2007), *rev'd and remanded sub nom, Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (noting that Ashcroft and Mueller's motion to dismiss for lack of personal jurisdiction was intertwined with the issue of personal involvement.)  The Supreme Court ultimately agreed with Ashcroft and Mueller: mere allegations that a defendant was the "architect" of a policy that caused a plaintiff harm or was instrumental in the implementation of that policy, cannot, *as a matter of law*, be the basis of forcing an individual into the expense and inconvenience of discovery.  *Iqbal*, 556 U.S. at 678-79.

Plaintiffs' allegations against Martorello are analogous to, and in some instances identical to, those dismissed against both Ashcroft and Mueller.  Plaintiffs' Complaint makes vague allegations regarding Martorello's power to control the lending enterprise – both prior and

7

subsequent to the sale of the servicing entity to the tribe – just as plaintiff in *Iqbal* labeled Director

Mueller as "instrumental" in the implementation of the scheme in that matter.   But Plaintiffs'

Complaint does not stop at mere similarities to the allegations in *Iqbal*.   Martorello is labeled the

"architect" of the alleged lending scheme (Compl., at ¶ 14) – the same exact epithet attached to

Attorney General Ashcroft by the plaintiff in *Iqbal*.[3]

And, even if such allegations were not "facts" masquerading as legal conclusions – as they

are – Plaintiffs cannot make allegations that contradict publicly available documents, including

and especially those attached to their Complaint. Plaintiffs improperly ask this Court to simply

ignore the plain text of the documents they attach to their Complaint, all of which demonstrate that

Martorello was an executive of a company assisting the Tribe in offering loans to consumers, in

favor of an unsupported narrative crafted to avoid dismissal and open the doors to discovery.  *M.B.*

*by & through Brown v. McGee*, No. 3:16CV334, 2017 WL 1364214, at *2 (E.D. Va. Mar. 24,

2017).

For example, footnote 6 of Plaintiffs' Complaint points the Court to a website hosting LVD

Resolution # T2014-066, a copy of which Plaintiffs failed to attach to their Complaint, but that

Defendants Big Picture and Ascension attach to their Motion to Dismiss as Exhibit '10.' (ECF No.

23-10.)  The plain text of the Tribal Resolution makes clear that LVD, created, owns, and operates

BPL and Red Rock Tribal Lending, LLC.  Nothing is left to doubt, and Martorello is not mentioned

anywhere in the document. Further, Tribal Resolution # T2014-066 details how those companies

were formed, and their articles of incorporation approved, pursuant to several separate and

---

[3] And, as referenced above in footnote 1, Plaintiffs' counsel consistently utilizes this epithet across numerous cases in an effort to avoid having to perform a reasonable investigation into the facts surrounding an individual's involvement in a case.  Yet the holding of *Iqbal* compels the Court to disregard such conclusory labels.

unanimous tribal resolutions by the LVD Tribal Council. Such clear and contemporaneous evidence of tribal control of all aspects of the lending relationship is entirely ignored by Plaintiffs' Complaint.

Indeed, the sole loan contract that Plaintiffs attach to their Complaint reflects that Plaintiffs contracted with a Native American tribal lending entity – not with Martorello. (Compl., at Ex. 1.) Under the loan contracts, payments are to be made directly to the Lender, not to Martorello. (Id.) Similarly, Plaintiffs other exhibit attached to Plaintiffs' Complaint, a February 27, 2017 offer letter, explicitly states:

> All Loan requests are approved or denied on Tribal Land at Big Picture Loans' office located at N5384 US Highway 45, Suite 400, Watersmeet, MI 49969 and are subject to final determination by Big Picture Loans, a Tribal enterprise wholly owned and operated by the Lac Vieux Desert Band of Lake Superior Chippewa Indians, a federally recognized American Indian Tribe and sovereign government. If approved, your loan will be governed by Tribal Law, applicable federal law and the terms and conditions of your loan agreement. This marketing letter's contents are a solicitation for an installment loan governed by the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.

(Compl., at Ex. 2.)   Plaintiffs ignore the patent documentary evidence attached or referenced in their Complaint where that evidence contradicts Plaintiffs' crafted narrative.

While Plaintiffs weave a story regarding Martorello's control over the lending activity and loans – such an account stands completely at odds with all the contemporaneous documents *attached or explicitly referenced* in Plaintiffs Complaint. And at odds with the wealth of publicly available documents which Plaintiffs have ignored in presenting their Complaint to the Court. In this way, Plaintiffs champion their exhibits where helpful, and hope the Court fails to consider those parts of the exhibits which contradict Plaintiffs' theory of the case.

**B.     The Supreme Court of Virginia's decision in *Settlement Funding* requires dismissal of Plaintiffs' Claims in their entirety.**

Even if this Court were to consider Plaintiffs' conclusory allegations, the Supreme Court of Virginia's holding in *Settlement Funding, LLC v. Von Neumann-Lillie*, requires that Plaintiffs' claims, *in their entirety*, must be dismissed. *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 645 S.E.2d 436 (2007).

The core holding in *Settlement Funding*, requiring application of a choice-of-law provision in a consumer contract permitting interest at rates in excess of Virginia's usury limits, is fatal to Plaintiffs' theory of this case. In *Settlement Funding*, a Virginia consumer entered into a loan agreement with interest in excess of Virginia's 12% usury limit. *Id.*, 247 Va. at 78, 80. When the consumer defaulted, the lenders' assignee sought judgment from the consumer for the principal, interest, and penalties. *Id.* at 78-79. The consumer in *Settlement Funding*, just as Plaintiffs do here, specifically asserted that her loan agreement was void as a result of Virginia's usury statute and public policy. *Id.* at 79-80.[4] The Circuit Court declined to apply Utah law as specified by the

---

[4] The consumer in *Settlement Funding* expressly presented arguments regarding Virginia's public policy against usurious loans in the context of an out-of-state lender, arguing in her brief:

> [T]he specific contract provision in question - the interest rate provision - is also against Virginia public policy. Virginia has established a public policy to protect its citizens from usurious and high rate loans. Virginia Code Section 6.1-330.55. Assuming for the sake of argument that Utah law does not have any cap on allowable interest rates, this would be against Virginia's expressed public policy. Allowing Appellant's choice of law provision to stand in the facts of this case would completely eliminate Virginia's usury protection for its citizens. All a money lender would need to do to avoid Virginia's usury laws would be 1) set up a front in Utah (even if that front was nothing more than a post office box), and 2) place in the loan agreement a Utah choice of law provision. Virginia's usury laws "represent a clarification of the public policy of the state that usury is not to be tolerated, and the court should therefore be chary of permitting this policy to be thwarted." *Heubusch and Reynolds v. Boone*, 213 Va. 414, 421, 192 S.E.2d 783, 789 (1972); *Radford v. Community Mortgage and Investment Corporation,* 226 Va. 596, 602, 312 S.E.2d 282, 285 (1984).

parties' choice of law provision, and held the loan agreement to be usurious under Virginia law. *Id.* at 80. On appeal, the Supreme Court of Virginia was asked to "consider whether the circuit court erred in refusing to apply the law of the jurisdiction stipulated in the choice of law provision of a contract and its application of Virginia's usury law to the provisions of that contract." *Id.* at 77. The Court held: "[i]f a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *Id.* at 80 (citing *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342, 397 S.E.2d 804, 807 (1990)).

The only fact relevant to the court in determining to apply Utah law was the plain text of the consumer loan agreement which provided that the loan was completed in Utah, the original lender was doing business in Utah, and the consumer agreement provided that disputes would be resolved "in accordance with the laws of the State of Utah." *Id.* at 80-81. Neither the actual rate of interest charged to the consumer in *Settlement Funding* – which was in excess of Virginia's usury law – nor Virginia public policy was of consequence to the Supreme Court of Virginia.[5] To

---

BRIEF FOR APPELLEE, *Settlement Funding v. Von Neumann-Lillie*, No. 061373, at *4-5 (Va. January 5, 2007) (available at 2006 WL 4701777). Accordingly, the issue of Virginia's public policy was squarely presented to the Virginia Supreme Court. That court rejected the consumer's policy arguments and enforced the contractual choice of law provision.

[5] Previously, Plaintiffs' counsel has confronted identical arguments by attempting to distinguish the holding of *Settlement Funding* by arguing that because the consumer loan contract in that case only exceeded Virginia's usury limit by "a mere 8% above the 12% interest rate cap in Virginia." *See Pls. Opp'n, Gibbs v. Rees*, 3:17-cv-386 ECF No. 65 at 19-20 (E.D.Va. 9/11/17). That argument not only ignores the clear holding of *Settlement Funding*, but also ignores Plaintiffs' description of the status of Virginia law in their Complaint. (Compl. at ¶ 4 ["Defendants' usurious loans were void *ab initio* pursuant to Va. Code. § 6.2-1541(A), which provides that any loan containing an interest rate above 12% 'shall be void.'"].) *Settlement Funding* is a case on all fours – permitting the application of the laws of Utah, a state with no maximum rate of interest. Plaintiffs' subsequent retreat from the all-or-nothing positions espoused in the Complaint implicitly recognizes the applicability of *Settlement Funding* to these cases.

the contrary, the policy arguments advanced by the appellee in *Settlement Funding* (*supra.,* n.3), and subsequently rejected by the Supreme Court of Virginia, are identical to those advanced by Plaintiffs. Indeed, Plaintiffs' Complaint cites to the identical passages in in *Heubusch*, and *Radford* as evidence of Virginia's public policy. (Compl., at ¶¶ 22-23.)  Yet Plaintiffs fail to present the Court with the 2007 holding in *Settlement Funding* – a holding which rejected Plaintiffs' view of Virginia public policy and reflects the most recent pronouncement by the Supreme Court on choice of law provisions and usury in consumer contracts.  The sole consideration for the Supreme Court was the law of the state for which the parties contracted.  Virginia public policy, played no role in the Court's analysis.

Utah, unlike Virginia, had not established any maximum rates of interest in consumer loan agreements, and on this basis, the court reversed the circuit court's judgment in favor of the consumer "based on her claim of usury…."  *Settlement Funding*, 247 Va. at 81.  For the Supreme Court of Virginia, neither prior Virginia case law on usury nor a consumer's appeal to Virginia public policy could change application of the law of the parties' chosen forum, Utah, even where that forum had no maximum rate of interest. The contractual choice of law provision agreed to by the parties is paramount.

Notwithstanding Plaintiffs' statements to the contrary, the holding of *Settlement Funding* conclusively demonstrates that Virginia consumers may lawfully be charged interest rates exceeding those set by the Virginia usury statute where the consumer's loan agreement contains a choice of law provision – even where that choice of law provides no maximum rate of interest (as Utah does).  Here, the loan agreement attached to the Complaint as Exhibit 1 contains a choice of law provision which is remarkably similar to the provision analyzed in *Settlement Funding*

12

requiring application of Utah law.[6]  The loan agreement specifies application of the laws of LVD

which, unlike the Utah law applied in *Settlement Funding* permitting *any* amount of interest and

fees the parties can agree to, has a maximum rate of interest for small loan transactions.[7]  And, the

_____

[6]     For example, the very first provision on the first page of the consumer loan agreement entered into by Plaintiff Williams provides, in bold:

> **IMPORTANT NOTICE:   This Loan Agreement (hereinafter, the "Agreement") is governed by the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.   There will be no binding contract formed between You and Us until this Agreement is electronically signed by You and then is received and verified by Us on the Lac Vieux Desert Reservation.**

(Ex. 1 at 2.)   Plaintiff Williams' loan contract further provides:

> **GOVERNING LAW AND FORUM SELECTION:**  This Agreement will be governed by the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("Tribal law"), including but not limited to the Code as well as all applicable federal law.

(Id. at 3.)  Finally, the penultimate section of Plaintiffs' loan contract again reinforces Plaintiffs' choice of tribal law, again in bold:

> **IMPORTANT ACKNOWLEDGMENTS:**
>
> **You acknowledge and agree that this Agreement is subject solely and exclusively to the Tribal law and jurisdiction of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.**

(Id. at 4.)

[7]     Indeed, LVD's law is actually *more* favorable to consumers than the law of the state of Utah.  Specifically, Utah Code Section 70C-2-101 states:

> Except where restricted or otherwise covered by provisions of this title, the parties to a consumer credit agreement may contract for payment by the debtor of *any* finance charge and other charges and fees.

(emphasis added). Section 11.3(b) of LVD's Tribal Consumer Financial Services Regulatory Code, first enacted in 2011, caps the amount of finance charges that are permissible under LVD law:

> Finance Charge. A Financial Services Licensee may not enter into a Small Loan Transaction with a consumer in which the scheduled finance charges

loan agreements contain an acknowledgement that each loan transaction was completed "within the Tribe's jurisdiction and is subject to and governed by Tribal Law and not the law of the borrower's resident state."  Indeed, the only meaningful difference between the loan agreement in *Settlement Funding* and the agreement attached to Plaintiffs' Complaint is the reference to the laws of sovereign Native American tribes rather than the laws of one of the fifty states.  Yet the laws of a Native American sovereign are entitled to no less deference than the laws of the State of Utah or any other state.  *Cf. New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 331-32 (1983) (discussing the historical context of tribal sovereignty and laws promulgated by the tribes).

Accordingly, Plaintiffs' claims under the Virginia Usury Laws must be dismissed.  And Plaintiffs' claims under 18 U.S.C. § 1962 must also fail under the holding of *Settlement Funding* because the interest charged to Plaintiffs was not "at least twice the enforceable rate" permitted under state law.  18 U.S.C. § 1961(6) (defining an "unlawful debt" under RICO).[8]

---

exceed fifty dollars ($50.00) per one hundred dollars ($100.00) of principal per installment period. The finance charge may be calculated, earned and scheduled for payment as agreed by the parties as long as the finance charges as originally scheduled for payment do not exceed the maximum allowable amount set forth above.

LVD's entire Tribal Consumer Financial Services Regulatory Code is freely available on the same website referenced in Plaintiffs' Complaint at footnote 6 and is made available for consumers to review prior to entering into their loans with LVD:

http://www.lvdtribal.com/pdf/2015%2011%2003%20Tribal%20Consumer%20Financial%20Services%20Regulatory%20Code.pdf.

The Tribal Consumer Financial Services Regulatory Code is attached to Defendants Big Picture and Ascension's Brief in Support of their Motion to Dismiss as Exhibit #4.  (ECF No. 23-4.) This Court can properly consider such authentic documents on a Motion to Dismiss.  *See Goodrow*, No. 3:11CV20, 2012 WL 6725617, at *2.

[8] There is no legitimate dispute as to whether the loan agreements are void under Virginia law or public policy. The Virginia Supreme Court has already affirmed that these loans are *valid* pursuant to the parties' choice of law.  Accordingly, Plaintiffs' Declaratory Judgment Count must be dismissed.  *See White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 168 (4th Cir.

C.      **Plaintiffs' RICO claims are deficient as a matter of law.**

Even if Plaintiffs could overcome the holding of *Settlement Funding*, Plaintiffs' substantive RICO claims fail to allege required elements of that claim as to Martorello.  In order to plead a viable claim under substantive RICO against an individual such as Martorello, Plaintiffs' Complaint must plausibly allege: " (i) that [Martorello] is associated with an enterprise (ii) that engages in or affects interstate or foreign commerce, (iii) that [Martorello] conducted or participated in the conduct of the enterprise's affairs (iv) through a pattern of racketeering activity [or collection of an unlawful debt], (v) and that this pattern of racketeering activity [or collection of an unlawful debt] caused the property damage to the RICO plaintiffs."  *In re XE Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 597 (E.D. Va. 2009).  Section 1961(6) defines unlawful debt as, a debt which is (1) unenforceable under State or Federal Law in whole or in part as to principal or interest because of the laws relating to usury; (2) which was incurred in the business of lending money or a thing of value; and (3) at a rate of interest at least twice the enforceable rate.  18 U.S.C. § 1961(6).

Not only do Plaintiffs lack standing to pursue claims against Martorello, but they have also failed to demonstrate essential elements of a RICO claim – most importantly that Martorello has collected any unlawful debts from Plaintiffs.  Indeed, plaintiffs fail to define what the actual RICO enterprise is. Instead, all of Plaintiffs' RICO claims are improperly based upon nebulous allegations against the defendants as a whole, with no mention of Martorello, or his actions, specifically.  On these allegations, the RICO claim against Martorello must fail.

---

1990) (holding that a declaratory judgment action must, at a minimum, seek relief that (1) will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." (internal quotation marks omitted)).  Plaintiffs' mere dissatisfaction with the Virginia Supreme Court's holding in *Settlement Funding* does not make for a justiciable declaratory judgment claim.

### 1.   Plaintiffs fail to define the proper enterprise under RICO.

Plaintiffs have failed to identify a RICO enterprise – an oversight which is fatal to their RICO claims.  Demonstrating the existence of an enterprise which is "distinct from the persons alleged to have violated [RICO's substantive provisions]," is an essential element of all RICO claims.  *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997); *see also United States v. Turkette*, 452 U.S. 576, 583 (1981) ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.").  Identification of a RICO enterprise is essential because the Supreme Court has repeatedly confirmed that "liability [under RICO] depends on showing that the defendant conducted or participated in the conduct of the *'enterprise's affairs,'* not just their *own* affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) (emphasis in original); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 371 (3d Cir. 2010) ("More precisely, one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." (internal quotation omitted)); *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (dismissing complaint for failure to demonstrate a RICO enterprise where plaintiff had failed to demonstrate that communications between entities were "undertaken on behalf of the enterprise as opposed to" the companies "in their individual capacities, to advance their individual self-interests").

Rather than satisfy the legal standard, in the most conclusory of fashions, Plaintiffs ask the Court to determine "whether the Enterprise constitutes an 'enterprise' under RICO," and "whether Defendants participated in the Enterprise."  (Compl., at ¶ 98.)  Despite the use of a capitalized noun, nowhere in the Complaint is the term "Enterprise" defined by Plaintiffs.  To the contrary, at several points throughout their Complaint, Plaintiffs point to various nebulous "criminal," "illegal," "business," or "lending" enterprises – which contain some or all of the Defendants, but

without any clarity as to the overall composition or any detail which would permit Defendants to evaluate Plaintiffs' claims.  Accordingly, Plaintiffs RICO claims must be dismissed.

### 2. Plaintiffs lack standing under RICO to pursue claims against Martorello.

Plaintiffs also lack standing to pursue RICO claims against Martorello because Plaintiffs have not been injured in their business or property by reason of the collection of an unlawful debt *by Martorello*.  Private plaintiffs have standing to sue under RICO only when "injured in his business or property by reason of a violation of section 1962…."  18 U.S.C. § 1964(c); *see also Goodrow v. Friedman & MacFadyen, P.A.*, No. 3:11CV20, 2013 WL 3894842, at *20 (E.D. Va. July 26, 2013).  This standing requirement demands that a plaintiff demonstrate that a defendant's collection of an unlawful debt is both the but-for and legal cause of a plaintiff's injury.  *Chisolm v. TransSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996); *see also Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992).

A plaintiff must demonstrate that each defendant – not the enterprise as a whole – meets the proximate cause requirement.  "The pertinent inquiry in determining the existence of proximate, or legal cause, is whether the conduct has been so significant and important a cause that the defendant should be held responsible." *Chisolm,* 95 F.3d at 336.  Because recovery comes from a defendant and not the RICO enterprise, *Palmetto State*, 117 F.3d at 148 (4th Cir. 1997), the RICO proximate cause element is necessary to "limit a person's responsibility for the consequences of that person's own act." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 226 F. Supp. 3d 589 (E.D. Va. 2017) (citing *Holmes*, 503 U.S. at 268).  Where a plaintiff fails to demonstrate this proximate cause element as to a defendant, he or she cannot recover on a RICO claim from that defendant.  *See D'Addario*, 264 F. Supp. 2d at 400.

Plaintiffs have failed to demonstrate that Martorello, as opposed to the enterprise as a

whole, has proximately caused them harm.  First and foremost, as Plaintiffs have acknowledged, Martorello sold his servicing business to the LVD, so no proximate cause could exist for any loans made for the post-sale period when Martorello has no involvement in any tribal lending business. (Compl., at ¶ 48.)  And, as Plaintiffs' loan contracts make clear, repayment of Plaintiffs' loans is made to LVD and their sovereign lending entities – not Martorello.  (Compl., at Ex. 1.)  As such, to the extent any Plaintiffs could have suffered any harm, such harm would have been proximately caused by the entities *actually collecting Plaintiffs' debts*, not Martorello.  Yet those entities are sovereign arm-of-the-tribe lending companies formed by LVD, and there is no monetary or equitable relief available from such entities under RICO, as sovereign entities are not "Persons" under RICO from whom relief is available.  *Cf. Inyo Cty. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 709 (2003) (Native American tribe, like a state, is not a "person" that could be sued under 42 U.S.C. § 1983); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3rd Cir. 1991) (plaintiffs could not maintain private civil action under RICO against municipality as the municipality could not be liable for the treble damages imposed in such an action).

Plaintiffs' alleged RICO claims against others cannot and does not create standing to pursue such claims against an executive of a company providing valuable and lawful services in support of a Native American lender.  Martorello is not alleged to have made loans to Plaintiffs – indeed the loan contracts expressly contradict such an allegation.  Martorello did not collect loans made to Plaintiffs – again the loan contracts directly contradict such an allegation.  Martorello was an executive with a company who, for a time, provided assistance and consulting services to Native American tribes offering loans to consumers – nothing more.  Said differently, aside from the factual and legal deficiencies within the Complaint, such a theory of liability against Martorello

stretches RICO beyond its intended reach.  *Cf. Slay's Restoration*, 226 F. Supp. 3d at 595-96 (refusing to find RICO standing where a plaintiff had not sued the party with whom it had directly contracted and who was likely the party that had proximately harmed the plaintiff).

        **3.**        **The Complaint fails to establish a violation of Section 1962 by Martorello.**

Beyond the lack of standing, perhaps a more fundamental flaw in Plaintiffs' Complaint is that it fails to actually allege a substantive violation of RICO's conduct provision, Section 1962, by Martorello.  Specifically, Plaintiffs' Complaint fails to allege that Martorello – as opposed to any other defendant – participated in the operation or management of any enterprise, and that he did so through the collection of an unlawful debt.  The absence of such key and necessary factual allegations requires dismissal of the RICO claims against Martorello.

First and foremost, Plaintiffs' Complaint fails to even allege that Martorello engaged in any acts prohibited under the statute.  It is black letter law that in order to face liability under substantive RICO, each individual defendant must be shown to have engaged in either a pattern of racketeering activity or the collection of an unlawful debt.  18 U.S.C. § 1962(c); *see also Palmetto State*, 117 F.3d at 148 (4th Cir. 1997) (noting that the plaintiff must prove that "each RICO defendant" engaged in a pattern of racketeering activity); *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise…"); *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) ("It is the 'person' charged with the racketeering offense—not the entire enterprise—who must engage in the 'pattern of racketeering activity.'" (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 244 (1989))).  Nowhere in the Complaint is Martorello, as opposed to the enterprise as a whole, alleged to have collected any debts from Plaintiffs.  As set forth above, Plaintiffs' loan contracts makes clear that

it is BPL which makes and collects all loans from individuals within the Commonwealth.  Lacking the key factual allegation that Martorello – as opposed to the enterprise as a whole – collected debts from Plaintiffs, Martorello cannot be liable under Section 1962(c).

Beyond the failure to identify a single instance in which Martorello (as opposed to the entire enterprise) *collected* unlawful debts, Plaintiffs also fail to put forward facts demonstrating that Martorello participated in the operation or management of an enterprise *through* the collection of unlawful debts.  As courts have recognized, "RICO is not violated every time two or more individuals commit one of the predicate crimes listed in the statute."  *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (quoting *United Food & Comm. Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.,* 719 F.3d 849, 854 (7th Cir.2013)).  Rather, Section 1962(c) is violated only when the collection of an unlawful debt is "the means by which a defendant 'participate[s], directly or indirectly, in the conduct of [the] enterprise's affairs.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 371 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)) (alterations in original).  Yet even Plaintiffs' unsupported and conclusory allegations as to the purported involvement of Martorello do not go far enough.  Plaintiffs Complaint simply describes Martorello's association with a consulting company, Bellicose Capital, LLC, assisting BPL and the Tribe in their lending business.  (Compl., at ¶ 101.)  Nothing in the Complaint alleges that Martorello participated in the affairs of those entities by collecting loans.    Under the holding of *Reves*, this is plainly not enough.

### 4.    The Complaint fails to establish that Martorello was part of a RICO conspiracy.

Much like their claims under substantive RICO, Plaintiffs' claims against Martorello under RICO's conspiracy provision must fail as to Martorello. To establish a claim under Section 1962(d), a party must prove three elements:  (1) the existence of a RICO enterprise affecting

interstate commerce; (2) the participation of the conspirators in the affairs of the enterprise; and (3) an agreement among conspirators to further the criminal endeavor by committing two or more acts of racketeering activity or the collection of an unlawful debt.  18 U.S.C. § 1962(d); *see also U.S. v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012) (quoting *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 965 (7th Cir. 2000)).  Where, as here, a plaintiff has failed to state a claim under Section 1962(c), "Plaintiffs' RICO conspiracy claim fails as well."  *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001); *see also Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 275 n.6 (4th Cir. 2010) (same).

Plaintiffs allege that many Defendants, including Martorello, violated Section 1962(d) "by entering into a series of agreements… to violate § 1962(c)…."  (Compl., at ¶ 116.)  Plaintiffs do not attach these series of agreements, nor do they identify what, precisely, Martorello allegedly agreed to do as a party to these agreements.  While Plaintiffs reference "the agreement between Defendants and Tribe that established the terms and operations of the rent-a-tribe business" (*Id.*), no such agreement actually exists.  Rather the only agreements between Martorello's businesses and LVD provided for the provision of lawful consulting services to LVD to assist the Tribe in originating loans through their wholly owned entities prior to the sale of those businesses to the Tribe.  This conduct does not violate RICO and is not the basis for a RICO conspiracy claim. *Walgreen Co.*, 719 F.3d at 854 (motion to dismiss granted where plaintiff could not demonstrate that communications between entities were "undertaken on behalf of the enterprise as opposed to" the companies "in their individual capacities, to advance their individual self-interests").

Plaintiffs' conspiracy claim also ignores the fact that if any RICO conspiracy exists, Martorello effectively withdrew from such a conspiracy, *at the latest*, January 26, 2016 when LVD

closed the purchase of Bellicose Capital, LLC. (Compl., at ¶ 48.)[9] This sale occurred months prior to Plaintiffs' loans being made or collected by the alleged enterprise. (*See* Compl., at n. 1.) Indeed, the lone contract Plaintiffs attach to their Complaint is dated August 3, 2016 – seven months *after* the sale of Bellicose Capital to the Tribe. (Compl., at Ex. 1.) To demonstrate withdrawal from a conspiracy, a defendant must show he or she undertook affirmative acts inconsistent with the object of the conspiracy and communicated an intention to leave the conspiracy in a manner reasonably calculated to reach co-conspirators. *U.S. v. Walker*, 796 F.2d 43, 49 (4th Cir. 1986). Here, Martorello's sale of his consulting business constitutes an affirmative withdrawal from, and act inconsistent with, the object of the alleged conspiracy. (See Compl., at n. 1.) Under Section 1962(d), liability cannot lie *after* the sale of such a business.

### D. Plaintiffs' claims against Martorello under the Virginia Usury statute must fail.

Much like their claims under RICO, Plaintiffs' claims against Martorello under the Virginia Usury statute fail for reasons in addition to the holding of *Settlement Funding*. Under Virginia law, a plaintiff may bring an action against any "person" who "tak[es] or receiv[es]" payments at more than the maximum rate of interest permissible under Virginia law. Va. Code § 6.2-305(A). The Supreme Court of Virginia has previously ruled that the provisions of the Virginia usury statute must be construed "as it is written," and that courts may not expand the scope of liability under the statute beyond the words chosen by the legislature. *Greenberg v. Com. ex rel. Atty. Gen.*

---

[9] As Plaintiffs' referenced article makes clear, the transaction to sell Bellicose Capital, LLC to the Tribe closed in January, 2016. However, the material terms of that transaction were agreed to in October, 2015. Accordingly, the October, 2015 may be a more appropriate date for Martorello's withdrawal.

*of Virginia*, 255 Va. 594, 600-02 (1998).[10]

On its face, Virginia Code Section 6.2-305(A) permits a consumer to file an action seeking to recover excess payments "from the person taking or receiving such payments." Va. Code § 6.2-305(A). As written, this provision requires that the only proper defendant is a person that takes or receives payments from a consumer.[11] To hold otherwise "would be to invade the province of the legislature and expand the scope of liability," for Section 6.2-305(A). *Greenberg*, 255 Va. at 602. As there is no allegation in the Complaint that is not purely conclusory that Martorello was directly "taking or receiving" payments from Plaintiffs, there can be no liability against Martorello under Section 6.2-305(A). Rather, as Plaintiffs' loan agreements provide, it is BPL and LVD who receive all payments from Virginia consumers. (Compl., at Ex. 1.) Accordingly, Plaintiffs' claims under the Virginia Usury statute must be dismissed.

### E.    **Plaintiffs cannot demonstrate a viable claim for unjust enrichment against Martorello.**

In attempting to plead a cause of action for Unjust Enrichment, Plaintiffs again ignore the holdings of the Supreme Court of Virginia. Under Virginia law, in order to state a viable claim for

---

[10] The statutory provision interpreted in *Greenberg* is, for all intents and purposes, identical to Va. Code § 6.2-305.

[11] Under title 6.2 of the Virginia Code, a "Person" is defined as "individual, corporation, partnership, association, cooperative, limited liability company, trust, joint venture, government, political subdivision, or other legal or commercial entity," Va. Code § 6.2-100. This general definition of "Person" under Title 6.2 fails to include a provision expanding the definition to include "members, officers, agents, and employees," despite the legislatures' specific use of such a definition in setting forth criminal penalties associated with usurious transactions. *See* Va. Code § 6.2-1540 ("Any person, including the members, officers, directors, agents, and employees of an entity, who violates or participates in the violation of any provision of § 6.2-1501 is guilty of a Class 2 misdemeanor."). As is clear from *Greenberg*, if the Legislature had desired to expand the potential ambit of liability under Section 6.2-305(A) beyond just the entity receiving or taking payments from consumers, it could have done so by using the language contained in provisions such as Section 6.2-1540. *Greenberg*, 255 Va. 600-02.

unjust enrichment against Martorello, Plaintiffs must allege: "(1) [Plaintiffs] conferred a benefit on [Martorello]; (2) [Martorello] knew of the benefit and should reasonably have expected to repay [Plaintiffs]; and (3) [Martorello] accepted or retained the benefit without paying for its value." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008).  Plaintiffs have failed as to all three elements as to Marotrello.

### 1. Without an underlying usury claim, Plaintiffs' unjust enrichment claim fails.

Plaintiffs allege that Defendants have been unjustly enriched because Plaintiffs voluntarily repaid loans that are void under Virginia usury law.  Hence, as an initial matter, Plaintiffs' unjust enrichment claim necessarily fails if their Virginia usury claim fails, which it does for the reasons set forth above.  Thus, there has been no "unjust enrichment."  *See, e.g., Anderson v. HSBC Bank Nev., N.A.*, 2012 U.S. Dist. LEXIS 146814 (C.D. Cal. Oct. 11, 2012) ("As described above, however, the substantive Nevada law upon which Plaintiff relies is preempted and/or inapplicable. Plaintiff's unjust enrichment claim is, therefore, dismissed.").

### 2. Plaintiffs have not alleged sufficient facts to establish that Defendants should have reasonably expected to reimburse Plaintiffs for their loan payments.

In *Schmidt*, a plaintiff appealed from the grant of a demurrer on a cause of action for unjust enrichment.  *Id*.  Plaintiff in *Schmidt* had specifically alleged in his complaint that the defendant had made an illegal loan to plaintiff under the laws of Virginia and, as such, the defendant "ha[d] no right to retain the money that it received from [plaintiff] in excess of the amount it lent to [plaintiff] and is obligated by natural justice and equity to refund the money to [plaintiff]."  *Id*.  On those facts, the Supreme Court recognized that plaintiff "did not plead sufficient factual allegations in his amended complaint to state a cause of action for unjust enrichment."  *Id*.

The allegations here are no different, and require a similar result.  Specifically, Plaintiffs

allege they "conferred a benefit on Defendants when they repaid the void loans; Defendants knew or should have known of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful loans." (Compl., at ¶ 138.) Leaving aside the conclusory nature of these allegations, even if the Court were to credit Plaintiffs' allegations, such allegations are, at their core, identical to those in *Schmidt*, and should be dismissed for the same reasons. Further, there is no plausible allegation that Plaintiffs directly conferred any *benefit* upon *Martorello*. Plaintiffs made payments to the tribal entity – not Martorello – they freely contracted with, at a rate legal under the choice of law provision Plaintiffs contracted for. Plaintiffs have never had any interactions with Martorello, let alone conferred any benefit upon him such that it would be unjust for him to retain it. Such allegations, without more, do not state a cause of action for unjust enrichment as to Martorello and the cause of action should be dismissed.

> **3.      Plaintiffs' claim for unjust enrichment fails because it is based on an express contract.**

"Unjust enrichment provides the basis for implying an equitable contract where there is no express contract." *In re Chinese Drywall Cases*, 80 Va. Cir. 69, 83 (Norfolk 2010) (citing *Raven Red Ash Coal Co. v. Ball*, 185 Va. 534, 542-43, 39 S.E.2d 231 (1946)). In cases where there is "an express contract" governing the parties' relationship, a claim for unjust enrichment cannot stand. *See Jones v. Bank of America Corp.*, 2010 U.S. Dist. LEXIS 142918, at 23 (E.D. Va. 2010) ("It is clearly established that under Virginia law, a plaintiff cannot bring a claim of unjust enrichment where the parties have an express contract that covers the matter at issue."). That is plainly the case here. And, numerous other courts in the Fourth Circuit have likewise agreed that no claim for unjust enrichment is possible in the context of allegations involving a written loan agreement and agreed-upon interest rates, even if those interest rates are themselves challenged. *See, e.g., Sheard v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 101764, at *21 (D. Md. July 23,

2012) ("The mortgage loan contract executed in the spring of 2007 defined the parties' obligations, including the applicable interest rate, and therefore Court V [for unjust enrichment] must be dismissed."); *Augustson v. Bank of Am.*, N.A., 864 F. Supp. 2d 422, 439 (E.D.N.C. 2012) (dismissing unjust enrichment claim because "plaintiffs received the loan at the interest rate that each agreed to pay" and it was not "unjust for each contracting party to receive the benefit of the bargain in the contract").

All of Plaintiffs' unjust enrichment claims are based on the interest rates set forth in their written loan agreements. Based on the foregoing authority, the Court should therefore dismiss Plaintiffs' unjust enrichment claim with prejudice.

### F.    Martorello incorporates by reference certain arguments.

In the interest of preserving judicial economy, and as expressly permitted by Fed. R. Civ. P. 10(c), Martorello adopts and incorporates by reference as if set forth in full herein.  (Def Big Picture Loans, LLC Br. in Support of Mot. to Dismiss, ECF No.  27, at Page ID # 716-734.) Plaintiffs' loan agreements are explicit: "All disputes arising out of, relating to, or in connection with this Agreement shall be finally settled under the Tribal Dispute Resolution Procedure." (Compl., at Ex. 1.)  Plaintiffs claims against Martorello are clearly a dispute "arising out of, relating to, or in connection with," their loan agreement and, as such, Plaintiffs must utilize the Tribal Dispute Resolution Procedure in the first instance.  *See, e.g., Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 31 (1st Cir. 2000) ("The tribal exhaustion doctrine holds that when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." (citing *El Paso Natural Gas v. Neztsosie*, 526 U.S. 473, 483 (1999); *and National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 856–57 (1985))).  Plaintiffs' failure to exhaust such remedies is

grounds for dismissal.  Alternatively, Plaintiffs' Complain must be dismissed under the doctrine of *forum non conveniens* because the forum selection clause in Plaintiffs' loan agreements are valid and enforceable.

III.   **CONCLUSION**

Plaintiffs' Complaint makes claims against Martorello which are not viable under Virginia law.   While these claims should ultimately be resolved through LVD's Tribal Dispute Resolution Procedure, as required by the loan agreements Plaintiffs all signed, on the merits all of Plaintiffs claims against Martorello should be dismissed.     While Plaintiffs may be dissatisfied with the Commonwealth of Virginia's laws, the loans Plaintiffs voluntarily accepted contained valid choice-of-law clauses which render their loans lawful and valid under the holding of *Settlement Funding*.  As such, Plaintiffs' cannot demonstrate an essential element in all of their claims against Martorello.  Indeed, Plaintiffs' loan contracts, and the interest charged thereon, are consistent with applicable Virginia choice of law principles, and the law of the Lac Vieux Desert Band of Lake Superior Chippewa Indians for which Plaintiffs contracted.  And, even if this were not so, the remaining factual and legal deficiencies in Plaintiffs' Complaint require dismissal of the remaining claims.

For these reasons, Defendant, Matt Martorello, by counsel, respectfully requests that the Court enter an Order: (1) granting Martorello's Motion to Dismiss; (2) dismissing Plaintiffs' Class Action Complaint with prejudice; and (3) granting Martorello such further relief as the Court deems appropriate.

**MATT MARTORELLO**


By:/s/David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com

Richard L. Scheff (admitted *pro hac vice*)
Jonathan P. Boughrum (admitted *pro hac vice*)
David F. Herman (admitted *pro hac vice*)
MONTGOMERY MCCRACKEN WALKER &
     RHOADS LLP
123 South Broad Street, 24th Floor
Philadelphia, PA  19109
Telephone:  215.772.7502
Email:  rscheff@mmwr.com
Email:  jboughrum@mmwr.com
Email: dherman@mmwr.com

*Counsel for Matt Martorello*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA  23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
*Counsel for Plaintiffs*

Karrie Sue Wichtman
Justin A. Gray
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: kwichtman@rosettelaw.com
Email: jgray@rosettelaw.com
*Counsel for Defendants*

/s/ David N. Anthony
David N. Anthony
Virginia State Bar No. 31696
*Counsel for Matt Martorello*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com

29