```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF VIRGINIA

 3                      RICHMOND DIVISION

 4

 5   ---------------------------------------
                                          :
 6   LULA WILLIAMS, et al., on behalf      :
     of themselves and all individuals     :   Civil Action No.
 7   similarly situated                    :   3:17cv461
                                           :
 8   vs.                                   :
                                           :   October 16, 2017
 9   BIG PICTURE LOANS, LLC, et al.        :
                                          :
10   ---------------------------------------

11

12         COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

13          BEFORE THE HONORABLE ROBERT E. PAYNE

14               UNITED STATES DISTRICT JUDGE

15

     APPEARANCES:
16
     Kristi C. Kelly, Esquire
17   Andrew J. Guzzall, Esquire
     Kelly & Crandall, PLC
18   3925 Chain Bridge Road
     Suite 202
19   Fairfax, Virginia  22030
     Counsel for the plaintiffs
20
     David N. Anthony, Esquire
21   Troutman Sanders, LLP
     Troutman Sanders Building
22   1001 Haxall Point
     Richmond, Virginia  23219
23

24
                    Peppy Peterson, RPR
25                 Official Court Reporter
                 United States District Court
```

```
 1   APPEARANCES:  (cont'g)

 2   Justin A. Gray, Esquire
     Karrie S. Wichtman, Esquire
 3   Rosette, LLP
     25344 Red Arrow Highway
 4   Mattawan, Michigan  49071
     Counsel for the defendants
 5
     Richard L. Scheff, Esquire
 6   Montgomery McCracken Walker & Rhoads, LLP
     123 South Broad Street
 7   Philadelphia, Pennsylvania  19109
     Counsel for defendant Matt Martorello
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                     P R O C E E D I N G S

2

3          THE COURT:  Hello.  This is Williams against Big

4     Picture Loans, civil action 3:17cv461.  Starting with counsel

5     for the plaintiffs, who is here for whom, and when you speak,

6     please give your name.

7          MS. KELLY:  Good morning, Judge.  This is Kristi

8     Kelly with Kelly & Crandall for the plaintiff.  Also with me

9     for the plaintiffs is Andrew Guzzo.

10         MR. ANTHONY:  Your Honor, this is David Anthony at

11    Troutman Sanders here on behalf of the defendants.  I'm also

12    here with Karrie Wichtman and Justin Gray who are representing

13    what I would refer to as the Big Picture defendants, and then

14    Richard Scheff who is representing individual defendant Matt

15    Martorello is here as well.

16         THE COURT:  All right.  I was in a trial last week

17    and began -- was to begin another one today after picking the

18    jury on Friday upon conclusion of the first trial, so I didn't

19    have time, and I referred these discovery matters to Judge

20    Young.

21          I'm not taking away the reference, but I read them,

22    and they are most troubling to me, and so I want to sort

23    through some of them with you, because I anticipate that the

24    dilatory response to discovery is going to impact the schedule

25    of filing briefs, et cetera, on the jurisdictional issue.  I'd

1   like to set some principles for you having read what you

2   submitted to Judge Young.

3           One, there isn't any reason a party can't be deposed

4   under Rule 30(b)(1) and Rule 30(b)(6), or a nonparty for that

5   matter, so long as the depositions are kept distinct and

6   separate; all right?

7           Second, the *Breakthrough* analysis is not confined, as

8   the defendants contend, to simply the factors that are outlined

9   in that particular case, and, in particular, as I think

10  *Breakthrough* makes quite clear, what happened before is

11  pertinent to what's happening after the Red Rock transfer.   In

12  particular, the issue involves the intent of the transfer and

13  how the transfer -- how things were handled before and after

14  and can, in fact, implicate matters related to the privilege

15  claims.

16          There is not, as I understand the papers so far, an

17  effort to pierce the privilege by virtue of the fraud-crime

18  exception.   However, there is a statement or a citation to

19  *Rambus* and to other authorities about the potential loss of

20  privilege.   And looking at the issues that are being raised,

21  you need to get this discovery sorted out.

22          Ms. Kelly, what is -- the other thing is, generally

23  discovery respecting Red Rock, so long as it is related to

24  issues that have to do with the transfer of ownership, are fair

25  game for discovery under the allegation of the -- in the

1   complaint which is sufficient, certainly, to survive a 12(b)(6)

2   motion as to -- and any motion, facial motion for discovery at

3   this juncture -- I mean for jurisdiction at this juncture.

4           The next issue is privileges.  How many privileges --

5   documents are being claimed, Ms. Kelly?

6           MS. KELLY:  Judge, there's been three different

7   privilege logs that have been served to us.  Some of them, it's

8   very difficult, based on the descriptions, to even identify

9   what is being withheld.

10          THE COURT:  Don't be using terms like "some of them."

11  You have to be specific.  How many privilege logs and who were

12  they filed by?

13          MS. KELLY:  It's all -- this discovery dispute is

14  solely with the Big Picture Loan defendants.

15          THE COURT:  They have filed --

16          MS. KELLY:  They have three privilege logs that have

17  been served.  The problem is, they're also withholding

18  documents on the basis of legislative privilege which, first,

19  we don't think is appropriate, and, second, they're not logging

20  it, so we don't even know what's being withheld.

21          There is an objection log where they just identify a

22  document, and so there's approximately 5,000 documents on an

23  objection log, and we believe that the documents that they're

24  withholding for legislative privilege are on the objection log.

25          THE COURT:  Excuse me.  Is the objection log a

1    privilege objection or objection for something else?

2         MS. KELLY:  We've been told that the objection log is

3    related to Red Rock tribal documents and legislative privilege

4    documents.  Then there's three separate privilege logs.

5         THE COURT:  What do you mean privilege logs;

6    attorney-client privilege, work-product privilege, what?

7         MS. KELLY:  It's both attorney-client and

8    work-product privilege.

9         THE COURT:  Why are there three of them?

10        MS. KELLY:  Because we allowed them to do a rolling

11   production so we wouldn't delay the depositions.

12        THE COURT:  What's the total number of documents

13   claimed on the attorney-client privilege and the work-product

14   privilege claims log?

15        MS. KELLY:  There's approximately -- on the second

16   one there's approximately 20 documents.

17        THE COURT:  Excuse me.  Mr. Anthony, how many

18   documents have you claimed privilege to?

19        MR. ANTHONY:  Your Honor, I'm going to have to refer

20   to Ms. Wichtman or Mr. Gray.  They know that better than I do,

21   so let me introduce you to them again.

22        MR. GRAY:  Your Honor, I'm pulling the information up

23   now for the three logs.

24        THE COURT:  Who is that?

25        MR. GRAY:  Justin Gray, Your Honor.  I'm sorry.

1          MS. KELLY:  Judge, this is Kristi Kelly.  On the

2   second privilege log, there are 20 documents per page, and it's

3   a 17-page log.  I'm sorry, we're in a deposition right now, so

4   I don't have it in front of me.

5          THE COURT:  So that's 340 documents.

6          MS. KELLY:  Then the third log has about 12 documents

7   on it.  It's only two pages.

8          THE COURT:  The first one?

9          MS. KELLY:  That's the third log, Judge.  Sorry.

10          THE COURT:  How many in the first one?

11          MR. ANTHONY:  Your Honor, this is David Anthony.  I'm

12   just going to walk away for 30 seconds so I can grab my laptop,

13   and I'll be right back.

14          THE COURT:  Sure.

15          MS. WICHTMAN:  Your Honor, this is Karrie Wichtman.

16   There are 80 documents.

17          THE COURT:  All right, 80.  You are to file -- which

18   is it that you can't understand the privilege on, Ms. Kelly?

19          MS. KELLY:  Judge, the privilege log that I thought

20   was the least descriptive, it didn't have dates or it didn't

21   accord with the rules we normally have under *Rambus*, was the

22   second privilege log.

23          THE COURT:  All right.  Then your appropriate remedy

24   is to file a motion to have the privilege claimed as waived and

25   brief it, because it's an inadequate log if that's your

1   position.  In the event that, perhaps, that may be wrong, there

2   needs to be filed by the defendants a brief explaining each of

3   the privileges, briefly explain why you claim each, and then

4   you will have, please, in a notebook, each privileged document,

5   and in front -- and tabbed with an index, and you will please

6   describe the privilege claimed and explain in a brief one-page

7   summary why there is such a claim.

8          Copies of those papers will have to go to the

9   plaintiff so they can respond to them.  We'll see where we go

10  from there.  We'll set a schedule for that.  When are you going

11  to file the privilege -- the attorney-client privilege and

12  work-product privilege, Ms. Kelly?

13          MS. KELLY:  Judge, we can do that in seven days.

14          THE COURT:  Give me a date.  Do you have a calendar

15  in front of you?

16          MS. KELLY:  It would be October 22nd -- or 23rd.

17          THE COURT:  That's a motion to declare the second

18  privilege log waived; is that what you are talking about?

19          MS. KELLY:  That is, Judge, but we'd like the

20  opportunity to address the other two logs as well.  We're at a

21  deposition right now, so I can't speak that we wouldn't want to

22  try to attack anything on either of the other two logs.

23          THE COURT:  All right, you file all of them

24  October 23rd.  Mr. Anthony, your response?

25          MR. ANTHONY:  We'd like at least a week, Judge.

1          THE COURT:  That would be the 30th; is that right?

2          MR. ANTHONY:  Yes, sir.

3          THE COURT:  All right.  Your reply, Ms. Kelly?

4          MS. KELLY:  If we could have until November 8th.

5          THE COURT:  November 8th.  These privilege claims

6    have slowed things down here, and if I find that these

7    privileges are not well-taken or that the logs are not

8    sufficient, then I'll entertain motions to assess costs of

9    additional discovery or whatever at a later time, but I'll

10   abide the event.

11          Now, as to the filing of what I told you to file, Mr.

12   Anthony, or whoever is going to address these three privilege

13   logs, when are you going to file the papers that I told you to

14   file along with the claimed privilege documents and

15   explanations properly notebooked and tabbed?  When are you

16   going to do that, and is that Big Picture?

17          MR. ANTHONY:  Yes, sir.  I'm going to put you on

18   mute, Judge, just so I can -- actually, how long do you guys

19   think that we'll need for that?  I'm thinking at least a week,

20   ten days.

21          MR. GRAY:  Probably ten considering the volume.

22          MR. ANTHONY:  Ten days, Judge?  Can we have until

23   October 27th?

24          THE COURT:  10/27.  Your response, Ms. Kelly?

25          MS. KELLY:  Can we have until November 8th, please.

1              THE COURT:  November 8th.  Your reply, Mr. Anthony?

2              MR. ANTHONY:  November 18th.

3              THE COURT:  You see what you all have done is slowed

4    down this jurisdictional inquiry sufficiently here that I don't

5    know how I can deal with it on the schedule.  Given the delays

6    that have been interposed here, I don't see how I can possibly

7    hold the plaintiffs to the date that I gave them.  So I'll have

8    to reconsider those.

9              As to legislative privilege, what legislative

10   privilege is somebody asserting?  Will somebody tell me that?

11             MS. KELLY:  Judge, this is the plaintiffs.  We're not

12   really sure.

13             THE COURT:  What is the legislative privilege being

14   claimed, and who is it being claimed by?

15             MR. GRAY:  Your Honor, this is Justin Gray.  To the

16   extent that the discovery requests were broad-reaching and one

17   of the named parties is the tribal secretary, we asserted

18   legislative privilege to the named officers in defense of

19   documents or information they may have in their capacity as a

20   tribal official.

21             THE COURT:  You can't do that.  The mere fact that

22   they have documents in their possession as a tribal official

23   will get you nowhere.  A, you have to establish that there is a

24   legislative privilege.  I don't know that it's ever been held

25   that there is, but, B, under the traditional law of legislative

1 privilege, you have to establish an entitlement to the

2 legislative privilege by, inter alia, describing that it

3 goes -- that what you are holding back went through --

4 happened, was generated in the process of some legislation.  If

5 you don't do that, you lose.  And how many documents have you

6 claimed legislative privilege as to?

7 　　　　MR. GRAY:  Your Honor, I'm not sure.  This is Justin

8 Gray again.  The documents held by individuals have been

9 produced.  Documents held by the tribe have not, and, right

10 now, I believe we're looking at three separate documents that

11 are -- in the first log three documents held or redacted based

12 on legislative privilege.

13 　　　　THE COURT:  You file a brief on legislative privilege

14 as to the documents you are withholding.  Do the same process

15 that is used in the attorney-client privilege, work-product

16 privilege.  You want to follow the same schedule?

17 　　　　MR. ANTHONY:  Yes, sir.

18 　　　　THE COURT:  All right.  Now, what are these Red Rock

19 documents that you are withholding?

20 　　　　MR. GRAY:  Your Honor, this is Justin Gray again, and

21 this is the issue that we've been working back and forth with

22 Ms. Kelly about, is the limits to what the jurisdictional

23 discovery included, and it's our understanding under

24 *Breakthrough* that the entity asserting tribal sovereign

25 immunity is the entity to be analyzed under the *Breakthrough*

1    factors, and Red Rock is not --

2           THE COURT:  I've read *Breakthrough*.  You've read it,

3    and it doesn't limit -- the *Breakthrough* analysis doesn't limit

4    discovery to just the factors that were at issue there or just

5    to the entities as to which the analysis is to be applied,

6    because documents from a third party, for example, and back and

7    forth to a third party can be highly relevant in deciding the

8    fundamental question.

9           And so you can't -- you can't -- as I read your

10   letter, you don't think you have to produce any Red Rock

11   documents, and I don't think that's right.  And *Breakthrough*

12   certainly doesn't establish that.

13          MR. GRAY:  Your Honor, we, at one point, offered to

14   go back as far as January 1, 2014, to encompass all the

15   documents related to the transaction that you just described

16   earlier in this call.  We face a couple other issues, and the

17   fact that Red Rock --

18          THE COURT:  Slow down.  You are going too fast.

19          MR. GRAY:  Sorry, sir.

20          THE COURT:  So you are agreeing to provide all

21   documents that have any relation to the transaction if they're

22   in Red Rock's possession; is that what you are saying?

23          MR. GRAY:  Your Honor, yes, the documents would be in

24   Big Picture's possession at this point because Red Rock is a

25   dissolved company.

1      THE COURT:  All right.  So they transferred

2 documents, and you can identify those; is that right?

3      MR. GRAY:  Yes.  We offered a January 1, 2014, cutoff

4 date for those documents.

5      THE COURT:  Why?  Why is that date appropriate?

6      MR. GRAY:  That sort of encompasses the beginning of

7 the transaction that's at issue.

8      THE COURT:  How do you define the beginning of the

9 transaction?

10      MR. GRAY:  Essentially our clients begin planning and

11 looking to create and establish Big Picture and Ascension on or

12 around that time or shortly thereafter.

13      THE COURT:  Well, Ms. Kelly, what's wrong with that

14 time limitation?

15      MS. KELLY:  Judge, what we think is important for

16 *Breakthrough* is why they decided to potentially take all of the

17 Red Rock assets and purchase them, and we think we need farther

18 back because the financial relationship is really important and

19 relevant.

20      THE COURT:  Why do you need further back?  What you

21 need, it seems to me, is from the time consideration of the

22 deal began between the parties or by Red Rock.  What date would

23 you think that would be?  And I'm not talking about formally

24 structuring the paperwork.  I'm talking about when did Red Rock

25 decide it would be a good idea to divest itself and make the

1    transfer to Big Picture, and why was that done.  All of that,

2    it seems to me, is open to discovery if it was -- no matter

3    when it was.  Mr. Gray, do you disagree with that?

4            MR. GRAY:  Your Honor, not entirely, but based on the

5    *Breakthrough* factors and looking at Big Picture today, every

6    case that has gone through *Breakthrough* has considered -- every

7    case that has gone through *Breakthrough* has considered --

8            THE COURT:  You are running too fast, and I want you

9    to stop right now.  You do consider the entity asserting

10   immunity, but you cannot isolate the entity claiming the

11   immunity under *Breakthrough* and avoid producing all the

12   documents that led up to the transfer.

13           You can't do that, and *Breakthrough* doesn't hold it,

14   and nothing that I know of does.  And if you have a case that

15   holds it, I hold otherwise because that's just not what the law

16   is, as I understand it.  So when did Red Rock begin thinking

17   about and analyzing and deciding whether or not to make this

18   transfer and -- when did that happen?

19           MS. KELLY:  Judge, this is Kristi Kelly for the

20   plaintiff.  It's our position that it wasn't Red Rock or the

21   tribe who decided it, because the effect of the transition from

22   Red Rock --

23           THE COURT:  You are talking too much.  You are

24   talking too much.  Stop there and tell me who it is that did

25   decide it.

1          MS. KELLY:  I believe we believe it was Mr.

2   Martorello, the other defendant in this case, because there was

3   regulatory crackdown on payday lending businesses --

4          THE COURT:  Yes, Ms. Kelly, I read your paper and I'm

5   familiar with that.  But there had to be a transfer, didn't

6   there?  There had to be contemplation of it by Red Rock in

7   addition to Mr. Martorello; right?

8          MS. KELLY:  Yes, there was, Judge.

9          THE COURT:  Of course, there had to be.  Red Rock was

10  a corporate entity, wasn't it?

11         MS. KELLY:  Correct.

12         THE COURT:  And at some point in time, it and its

13  people, in conjunction with Martorello, or separately from him,

14  began contemplating the transfer that you say is the sham.  And

15  when did, in your mind, that contemplation by either Red Rock

16  or Martorello begin?

17         MS. KELLY:  It would have been in early 2014 based on

18  the documents we've seen.

19         THE COURT:  Then why don't you limit your Red Rock

20  request to January 1, 2014, and then if you find, in looking at

21  those documents, something that requires a further reach-back,

22  then you can file a supplement.

23         MS. KELLY:  That's fine, Judge.  The only issue that

24  we could foresee with that is that the lawyers, the general

25  counsel for Big Picture, handled the majority of the

1    correspondences, and so the Big Picture employees and tribal

2    officials may not be on any of those correspondences.  That

3    would be our only concern.

4            THE COURT:  If they're handled by the general

5    counsel, you must -- they're going to identify them, and if

6    they haven't claimed them as privilege, then they're not

7    privileged.  If they have claimed them as privileged, they'll

8    be on the privilege log; isn't that correct, Mr. Anthony or Mr.

9    Gray?

10           MR. GRAY:  Yes, Your Honor.

11           THE COURT:  All right.  Then we can deal with that.

12   To the extent that any privilege document deals with the

13   contemplation of the transfer that's at issue, you need to

14   separately identify that for Ms. Kelly and for the Court so we

15   understand that scope; all right?

16           MR. ANTHONY:  Yes, sir.

17           THE COURT:  Now, where does that leave us?  We've

18   taken care of the legislative privilege, the Red Rock

19   documents, the motion to waive by the plaintiffs, and all

20   privilege claims briefed, et cetera, et cetera, by the

21   defendants, Big Picture, or whoever is claiming the privilege.

22   Does Judge Lauck have the *Gibbs* case?

23           MS. KELLY:  That's correct, Judge.

24           THE COURT:  Where does that case stand?

25           MS. KELLY:  We have briefed the motions to dismiss,

1    and we're filing our reply brief for the jurisdictional

2    discovery requests we made --

3              MR. ANTHONY:  Judge, Judge Lauck did not order

4    jurisdictional discovery.  That issue in the scope of it is

5    being briefed.

6              MS. KELLY:  Correct.  But we're moving forward with

7    the non-tribal lending entities briefing, the 12(b)(6) and

8    various arbitration motions.  There are two separate cases,

9    because the defendants in the first case, the non-tribal

10   lending entities, also transferred back control to the tribal

11   lending entities after the payday lending breakdown.

12             So in order to cease the lending in Virginia, we had

13   to name the tribal lending entities, and that is the case where

14   we are -- we have briefed the jurisdictional discovery issue.

15             THE COURT:  All right.  Okay.  Now, does that take

16   care of the discovery questions that you all have, or do you

17   have any left to go to Judge Young?

18             MS. KELLY:  Judge, for the plaintiffs, we also have

19   the issue of redacted documents that were -- there were

20   probably close to at least one-third of the production was

21   redacted.

22             MR. GRAY:  We can confirm that with your decisions on

23   what counts as documents responsive to the transfer, we'll be

24   able to sort those and produce them now that we understand the

25   Court's position.

1        THE COURT:  So the redactions will be eliminated; is

2   that right?

3        MS. WICHTMAN:  As it relates to Red Rock and Duck

4   Creek.

5        THE COURT:  Who is that?

6        MS. WICHTMAN:  Karrie Wichtman, Your Honor.

7        THE COURT:  Why else did you redact them, Ms.

8   Wichtman?

9        MS. WICHTMAN:  There were broad requests for

10   third-party service providers, and at this stage in

11   jurisdictional discovery, the vendors and capital sources of

12   Big Picture loans we didn't feel -- we stood on our objections

13   related to those.

14        THE COURT:  Ms. Kelly, why do you need the vendors

15   and capital providers?

16        MS. KELLY:  Well, the capital providers is about the

17   financing and who gets what and who is really in control of the

18   lending operation.  And we believe that's part of the last

19   *Breakthrough* factors.  So to the extent that the tribe is not

20   funding the loans and the loans are immediately being sold to

21   third parties and they're getting returns on the investment

22   that the tribe is not getting, we think that is entirely

23   relevant to the last *Breakthrough* factor.

24        THE COURT:  That's the capital sources issue.  How

25   about the vendors?

1          MS. KELLY:  For the vendors, that is not as

2     necessary.  I will concede that because of Mr. Martorello's

3     production we've been able to identify a lot of them because he

4     produces the documents un-redacted.

5          THE COURT:  All right.  You withdraw your request for

6     the vendors at this time.

7          MS. KELLY:  We -- I don't think we ever really

8     specifically asked for that, but we will agree they don't need

9     to un-redact the vendor agreement.

10          THE COURT:  The capital services, why isn't -- Ms.

11     Wichtman or Mr. Gray or Mr. Anthony, why are the capital

12     sources leading up to and what the capital sources people were

13     told about what they were going to invest to, what the

14     structure was to be, the considerations of the structure, why

15     isn't all of that available to the plaintiffs where they allege

16     what they allege here?

17          MR. GRAY:  Your Honor, at no point did we disclose

18     there were the capital sources, and, at this point, through

19     production provided by Matt Martorello, all the notes and

20     documents have been provided.  So I think we're in a position

21     right now where we're talking form over substance of what Ms.

22     Kelly actually needs.

23          THE COURT:  Then you provide everything about the

24     capital sources that you have, even if it's the same documents

25     that Martorello provided, because you may have just to show

1  that you got them or had them, and if there are notes on them,

2  then they're different documents anyway, because I don't see

3  any reason why the financial structure of this transaction is

4  not open to discovery in terms of assessing the jurisdictional

5  issue, and I think Ms. Kelly is right that it does implicate

6  *Breakthrough*.

7        MS. WICHTMAN:  Your Honor, this is Karrie Wichtman.

8  I would just clarify that we have not -- we have withheld

9  capital source related to the financing of the transaction, but

10  we've also withheld capital sources related to the operation of

11  the business, and in our understanding of your September 1st

12  order, it was about jurisdiction, not necessarily operation of

13  the business but actually the structure of the business.  So

14  that's why we withheld the capital sources related to the

15  operation of the business.  We certainly --

16        THE COURT:  Why do you need the operation of the

17  business, Ms. Kelly?

18        MS. KELLY:  Judge, so the operation of the business

19  is whether the tribe is in control.  So in one of the

20  agreements that we've seen for lending to the tribes to fund

21  this business, the lender exerts control over basic day-to-day

22  functions, and the capital agreements would also show what

23  return that lender is entitled to get.  And, in some

24  situations, they may be receiving more than the tribe.

25        It may also explain the structure, whether they

1   purchased loans that are immediately funded.  Any number of

2   things could go toward the *Breakthrough* factors, but we don't

3   have the benefit of seeing those, but we think they're

4   definitely relevant to this inquiry.

5            THE COURT:  Ms. Wichtman, anything else to say?

6            MS. WICHTMAN:  I would say we provided information

7   related to the capital sources that are used by the business in

8   our briefs and in the interrogatory responses to name them

9   generally, and specific information related to those capital

10  sources and their names are not relevant to jurisdiction and

11  the *Breakthrough* factors.

12           THE COURT:  All right, that objection is overruled.

13  All documents relating to the structure and operation of the

14  business are certainly pertinent to understanding who it is

15  that's driving the boat, who it is that is in control, whether

16  or not the tribe really has any say-so in any of the matters or

17  is just being used as a passthrough.

18            There is no better way to assess that than to assess

19  the documents by which the financial people structured the

20  arrangement and by which operations are conducted.  It seems to

21  me that -- that's not just *Breakthrough*.  That has to do with

22  any transaction of any kind that is alleged to be a sham or a

23  charade, because the truth then comes out with respect to how

24  it is that the operation is conducted.  And if the business

25  operations are all squared away, for example, and the tribe

1  gets X and the other person gets Y and that's pursuant to the

2  structure, it shows what role the tribe plays in it, then

3  that's all pertinent to the discovery -- to the jurisdictional

4  issue just as is the fact that it's, as Ms. Kelly says, she

5  thinks it is.  So that objection is overruled.  There was a

6  complaint about Ms. Kelly using subpoenas in addition to

7  document requests.  What's the objection to that?

8         MR. GRAY:  Your Honor, we didn't believe the

9  jurisdictional order was all-encompassing of running avenues

10  and essentially a fishing expedition to anybody and everybody

11  she found the name of in a document, and we believe that the

12  purpose of those is essentially --

13         THE COURT:  Mr. Gray, you're going to have to take

14  lessons in slowing down, because neither the court reporter nor

15  I can follow what you are saying.

16         MR. GRAY:  I apologize, Your Honor.

17         THE COURT:  And you need to identify yourself when

18  you are talking.  So your position, Mr. Gray, is that the order

19  I issued restricted her to the particular things that were

20  mentioned therein; is that what you are saying by way of --

21         MR. GRAY:  We believe it did, Your Honor.  It limited

22  it to the jurisdiction of Big Picture as it claims are its

23  mentality status, and all the information she is seeking in

24  these third parties has likely been supplied already, or will

25  be based on today's decision, and we believe the purpose is

1    essentially to frustrate the business while it operates today

2    as opposed to litigate the dispute.

3            THE COURT:  Ms. Kelly?

4            MS. KELLY:  Thank you, Judge.  We issued either four

5    or five subpoenas, and the majority of them, I believe except

6    for two, were bank subpoenas because they were not giving us

7    the information, and we wanted to meet our deadline.

8            THE COURT:  Who is "they" in that sentence?

9            MS. KELLY:  The Big Picture Loan defendants.  And so

10   through that, we learned that there are controls on their bank

11   accounts where the Big Picture defendants can't even sign for

12   wires or do -- control their own bank accounts, and so that led

13   us to do more discovery.  But the purpose of the subpoenas was

14   to meet our deadlines for briefing so that we would have all

15   the information.

16           THE COURT:  All right.  Well, the order doesn't limit

17   the kind of discovery that is available to any party.  It did

18   deal with the kind of discovery that you all were talking about

19   at the conference where we set up this arrangement and

20   schedule, but it's perfectly all right to use any procedural

21   vehicle authorized by the Federal Rules of Civil Procedure in

22   pursuit of the discovery about a jurisdictional issue, and I

23   don't see anything that Ms. Kelly has done or said is intended

24   to interfere with the operation of the business, and so that

25   objection is overruled, and, in any event, it is the

1    responsibility of any party receiving a subpoena to raise an

2    objection to it and -- or seek protection from it.  Has anybody

3    done that that you've subpoenaed, Ms. Kelly?

4            MS. KELLY:  I don't think any of these -- no, not

5    that I'm aware of.

6            THE COURT:  If they haven't, then they have to comply

7    with them, and you get to look at them.  I don't see that you

8    have a whole lot of say in it, Mr. Gray, except to the extent

9    you had a contention that it may have been interfering with

10   business operations, and, quite frankly, in over 50-something

11   years of practicing law, I have never seen that actually

12   happen, and there's nothing that you've shown in anything that

13   I've seen that would suggest that it is interfering with your

14   business operations.  It seems to me to be rather much an

15   obstructionist objection, so it's overruled.  Is there

16   anything -- you need to leave with Judge Young now, or have you

17   exhausted everything?

18           MS. KELLY:  The only other issue, Judge -- this is

19   Kristi Kelly.  The only other issue was the discovery that Big

20   Picture defendants propounded on the different plaintiffs.  We

21   have addressed that with the defendants, and we believe it's

22   completely outside the scope of the order.

23           It asks for things like when our plaintiffs went on

24   vacation, all their income for the past six years, and I don't

25   know how anything dealing with the specific plaintiffs could be

1  relative to the *Breakthrough* factors.

2        Our plaintiffs are low-income consumers, and the

3  discovery, in my opinion, was just to harass and belittle the

4  plaintiffs.

5        THE COURT:  All right, thank you.  Mr. Gray, why do

6  you need information like that on the discovery issues?

7        MR. GRAY:  Yes, Your Honor, this is Justin Gray.  The

8  complaint makes allegations not only against Big Picture and

9  Ascension but also against LVD officers, and it also attacks

10  the fundamental integrity of the loan agreements.

11        Our jurisdictional discovery is propounded on behalf

12  of the LVD officers, the four named Tribal Council members, and

13  it seeks a basis, first of all, to claim that they're not

14  immune from these allegations.

15        THE COURT:  Who is not immune?

16        MR. GRAY:  The complaint alleges that these LVD

17  officers are not immune because they have violated federal law.

18        THE COURT:  What is it that calls into analysis in

19  that process, the jurisdictional issue when the people went on

20  vacation and how much money they make, the plaintiffs?  How

21  does that work?

22        MR. GRAY:  Your Honor, the complaint goes back as far

23  as 2009 on certain instances, and we believe we're entitled to

24  find out exactly what information plaintiffs had going that far

25  back to support claims that my clients are not immune as

1    entities or officials of the tribe.

2         THE COURT:  I didn't ask you that.  I asked you how

3    it is that the vacation and income of the individual plaintiffs

4    applied here.

5         MR. GRAY:  Your Honor, we'd like to be able to

6    determine when and where these plaintiffs were when they used

7    our client's service, when and where they were when they took

8    the loan, when and where they were when they spent the loan.

9         THE COURT:  All right, Mr. Gray, excuse me.  A, that

10   isn't responsive to the question I asked you.  B, whether you

11   would like to or not is a prurient interest and is not

12   necessarily an interest related to valid discovery, and I

13   didn't ask my question right or I wouldn't have gotten those

14   answers.

15        So my question is, what relevance to the

16   jurisdictional issue for anybody does a plaintiff's vacation

17   schedule or income have?  Can you help me with that?

18        MR. GRAY:  Yes, Your Honor, and I'll be more

19   succinct.  The discovery we propounded had two of those issues

20   that Ms. Kelly had taken path to.  We have yet to receive their

21   objections and will work with them on some of the limits to

22   these, but primarily they allege these loans are procured by

23   fraud and that the choice-of-law provision is faulty, and we

24   believe that under the theory of tribal exhaustion, they're

25   relevant to tribal sovereignty and tribal immunity.

1          THE COURT:  How?

2          MR. GRAY:  Because the forum-selection provisions and

3     the choice-of-law provisions are duly authorized, valid, and

4     were not procured by fraud, and to the extent that the

5     allegations say that my clients have a faulty loan agreement, a

6     sham procedure, we believe we're able to investigate that.

7          The procedure for a dispute is a tribal court

8     mechanism.  The doctrine of tribal exhaustion should prevail

9     under the circumstances.  If Ms. Kelly or the plaintiffs have

10    evidence that this is somehow a sham, we'd like to be able to

11    review that.  This is not a situation --

12         THE COURT:  So how does the plaintiff's vacation

13    schedule show that?

14         MR. GRAY:  Like I said, Your Honor, perhaps some are

15    reaching.  The bulk are not.

16         THE COURT:  I'll tell you what.  Because you reached

17    and went too far on at least three of them, all your discovery

18    requests are stricken, and you may posit discovery requests

19    that confine to the issues you are talking about in such a way

20    as you can demonstrate when we next talk about it.

21         As of now, all of your discovery requests to the

22    plaintiff are stricken, and you start all over again.  That's

23    what happens when you go too far.

24         MR. GRAY:  Your Honor, are we entitled to -- this is

25    Justin Gray again.  Are we entitled to take depositions of the

1   plaintiffs?

2           THE COURT:  Yes, you are.

3           MR. GRAY:  Your Honor, this is Justin Gray again.  If

4   Ms. Kelly is through, we have a couple issues we'd like to

5   present to the Court as well.

6           THE COURT:  I don't know what you have left to

7   present given that your discoveries have been stricken.  What

8   is your issue?

9           MR. GRAY:  Your Honor, we'd like to look at a

10  reasonable limit to the discovery, and I'd like to back up one

11  second on what we have originally produced here.  We broke --

12          THE COURT:  Mr. Gray, excuse me.  I've read all that.

13          MR. GRAY:  Then the short and sweet, Your Honor, is

14  that we're at $140,000 deep, and we have documents that we now

15  need to go back through again.  The tier two and tier three

16  categories are --

17          THE COURT:  Slow down.

18          MR. GRAY:  The tier two and tier three production are

19  largely going to be duplicative at a cost of 700-plus thousand

20  dollars.  We believe everything that the Court has instructed

21  we turn over today will be encompassed in tier one production,

22  especially after we return to it based on your instructions,

23  and before our clients get into $700,000 of additional expense

24  at probably five weeks of realistic time, we think that the

25  discovery should be ended with tier one after we re-review this

1   collection based on today's instructions.

2            THE COURT:  My suggestion is that you file a detailed

3   brief respecting what you're talking about with respect to tier

4   one, tier two, and tier three, and my general approach -- this

5   is a case -- what is at stake here, Ms. Kelly?  How much can

6   the ad damnum be or the jury award be?

7            MS. KELLY:  Judge, the defendants have not told us

8   the amount of money that's at stake in Virginia, but in the

9   *Gibbs* case, we know that they took $93 million from Virginia

10  residents, and so we understand that Big Picture is a bit

11  smaller of an entity, so I would estimate that -- I mean, this

12  is just a really off-the-cuff guess, but approximately

13  $30 million would be at stake --

14           THE COURT:  Excuse me.  Mr. Gray, how much do you

15  think is at stake assuming she wins?

16           MR. GRAY:  Your Honor, our best estimate at this time

17  is less than $5 million from Virginia residents.

18           MS. KELLY:  And, Judge, this is Kristi Kelly, but any

19  of that money would be trebled, and as to their request about

20  tier one, we already agreed to that, to limit it to tier one

21  discovery in our meet-and-confer.  But we reserved the right to

22  have them search two other custodians after we reviewed their

23  most recent production.

24           The problem, though, is that half of their production

25  of 10,000 pages so far was redacted, and they withheld

1    approximately 5,000 documents.  So we are fine working with

2    them on the scope of the discovery, and we're not trying to be

3    punitive.  I already agreed to that.

4         THE COURT:  All right.  I think that is made clear.

5    I think your request for a limit on what you are calling tier

6    one, two tier, and tier three is premature until you do what

7    you're required to do, Mr. Gray, by what I've directed you to

8    do today, and then Ms. Kelly looks at it and then you all can

9    talk about it again, and you are free to raise that issue at a

10   later time.

11        As of this time, looking at the allegations of the

12   complaint, the information that has been provided in the

13   briefing and the papers on discovery and an assessment of what

14   counsel have said, the discovery sought so far has been -- is

15   proportional and is certainly appropriate.  So I don't see any

16   way that at this juncture it's appropriate for the Court to

17   impose further stricture.  What's the next point you've got,

18   Mr. Gray?

19        MR. GRAY:  Yes, Your Honor, I'm just checking notes.

20   We'd also like to ask for a limit on plaintiffs' deposition to

21   the named parties.  Again, this also all goes to the scope of

22   what is necessary to evaluate Big Picture as it operates today,

23   and we provided five times more documents than every case ever

24   to analyze Big Picture at a federal level, and we have produced

25   more documents in our initial motions than any motion has ever

1    done before.

2          We have provided depositions starting today and

3    tomorrow and then of the other named defendants, and we think

4    anything else is excessive for what the Court will need to

5    evaluate the status of Big Picture and whether or not the named

6    tribal officials are immune.

7          THE COURT:  Ms. Kelly?  What kind of restrictions do

8    you want?  I still don't understand it.

9          MR. GRAY:  We're asking that the depositions

10   essentially be limited, Your Honor, to the parties, to the

11   named parties.

12         THE COURT:  Oh, okay.  What is your position, Ms.

13   Kelly?

14         MS. KELLY:  Judge, we've already agreed to that.  We

15   have two depositions noticed for two of the executives of

16   Ascension, but we said after we reviewed the production, we can

17   likely withdraw those.

18         THE COURT:  You are limited in your deposition to the

19   parties, and you are waiting to see what happens, and so the

20   request is premature, but as a practical matter, there's no

21   reason to limit anybody's depositions to just the parties where

22   some nonparty may have pertinent information.

23         Let us suppose, for example, that one of the lenders'

24   documents shows facts that reasonably show that the tribe

25   doesn't have any real interest in this.  If they want to take a

1    deposition of that person to confirm what the operating

2    situation is and what the loan situation is, that's perfectly

3    all right.

4           I don't know where you came to this nonparty/party

5    distinction in the first place, Mr. Gray, but I don't think

6    it's appropriate.  But in any event, it's premature, and she

7    can -- you can raise it after she decides to do whatever she's

8    going to do with the two nonparty depositions that she's

9    noticed.

10          Is there anything else -- I'll tell Judge Young that

11   this matter is moot now based on what we talked about today.

12          MS. KELLY:  Judge, for the plaintiff, that's correct.

13   We really appreciate your taking the time to handle this.

14          THE COURT:  If I hadn't had a free day and Judge

15   Young wasn't tied up in a settlement conference, I wouldn't

16   have done it, but it needs to get done because of the schedule

17   we're on.  How about you, Mr. Gray; is that okay?

18          MR. GRAY:  Your Honor, I believe we've addressed all

19   the issues other than revising the calendar going forward with

20   this.  We have briefing deadlines on these other topics right

21   now, but looking at where we are now, I believe plaintiffs'

22   brief is due November 3.

23          THE COURT:  Ms. Kelly, you can't get your brief done

24   and get everything done by this time given the schedule that

25   we've got, so my suggestion is that the two of you sit down

1    after you assess the documents as they come in, you get some

2    things under control, and we'll set a new date for your

3    response, Ms. Kelly, and a new date for your reply, Mr. Gray.

4    And, in the meantime, that provision of the order will be held

5    in suspension and not apply.

6            MS. KELLY:  Thank you, Judge.

7            THE COURT:  Now go back to your depositions and see

8    what you can do.  What have you done about trying to settle

9    this case, folks?  Have you had a discussion with any of the

10   magistrate judges?

11           MS. KELLY:  Judge, this is Kristi Kelly.  Mr. Anthony

12   and I have discussed broad ideas, and we've talked about other

13   settlements in other cases, but I just don't know that we're

14   there.

15           MR. ANTHONY:  There has not been, Judge -- this is

16   David Anthony -- conversations yet with a magistrate judge.

17           THE COURT:  Is the magistrate judge assigned?  I just

18   haven't looked at the docket.

19           MR. ANTHONY:  I seem to remember yes, but I'm not

20   sure, and I guess since Judge Young was involved in the

21   discovery, that would be Judge Novak, but I can't remember,

22   Judge.  I think yes, but I'm not sure.

23           THE COURT:  Actually now I remember.  Ms. Hooper told

24   me I did assign it to Judge Young, and I didn't see any problem

25   with him being involved in the discovery as well as settlement,

1    so I'll double-check that, but you all need to sit down and

2    sort through this case.

3              MS. KELLY:  Thank you, Judge.

4              THE COURT:  All right.  And you need to get -- do you

5    all need the transcript so you can make sure you understand you

6    comply with everything; is that correct?

7              MS. KELLY:  Yes, plaintiffs would like to order the

8    transcript.

9              MR. ANTHONY:  This is David Anthony on behalf of

10   defendants, yes, sir.

11             THE COURT:  Both of you have it.  Thank you.

12             MR. ANTHONY:  Thank you.

13             THE COURT:  Bye-bye.

14

15                   (End of proceedings.)

16

17

18             I certify that the foregoing is a correct transcript

19   from the record of proceedings in the above-entitled matter.

20

21

22   _____/s/_____              _____

     P. E. Peterson, RPR              Date

23

24

25