**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **LULA WILLIAMS, *et al*.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Civil Action No. 3:17-cv-461 (REP)** |
| ) | |
| **BIG PICTURE LOANS, LLC, *et al*.,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**
**DOCUMENTS WITHHELD ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE**

Plaintiffs, by counsel, pursuant to Rule 37 of the Federal Rules of Civil Procedure and the telephone conference held by the Court on October 16, 2017, move for an order compelling production of all documents identified on Defendant Big Picture Loans, LLC's ("Big Picture Loans") privilege logs dated October 2, 2017, October 10, 2017, and October 13, 2017.[1]

## I.    Overview of the Lawsuit

To evade state usury and licensing laws, several payday lenders—who were restricted from making loans in certain states—circumvented lending restrictions by originating payday loans in the name of national banks. Because banks did not have the same lending restrictions, the bank served as a conduit for the loans in exchange for a nominal fee, but the payday lender funded, serviced, and collected the loans. When federal regulators began cracking down on these "rent-a-bank" arrangements, the payday lenders developed a solution—they adapted the structure to use Native American tribal entities as the conduit for the loan in an attempt to cloak the loans in tribal sovereign immunity. Like the rent-a-bank arrangement, the loans would be originated in the name

---

[1] The privilege logs are attached as Exhibit 1, 2, & 3, respectively.

of a tribal entity, but the tribal entity served as nothing more than a front and the non-tribal participants reaped exorbitant profits from the loans and controlled the day-to-day operations. In return for the use of their name and potential immunity, the tribal entities received a nominal percentage of the revenues and had minimal responsibilities for the day-to-day operations.

This case involves a rent-a-tribe enterprise operated by Defendant Matt Martorello ("Martorello"). Through an association with the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD" or "Tribe"), Martorello and his companies funded, collected, and ran the day-to-day operations of Red Rock Tribal Lending, LLC ("Red Rock") and Defendant Big Picture Loans, LLC ("Big Picture Loans")—two companies formed under the laws of the LVD to disguise Martorello's companies' roles and to shield the scheme through a dubious claim of tribal sovereign immunity. Although Red Rock and Big Picture Loans were held out as the actual lender of the internet loans, Martorello's companies and their employees provided the infrastructure to market, fund, underwrite, and collect the loans. Because Red Rock and Big Picture Loans were barely involved in the operations—handling a small percentage of the customer service from the reservation—the tribal entities received a 2% flat fee of the net profits from the loans.[2]

## II.    Overview of the Motion and Nature of the Documents Sought

On September 1, 2017, the Court entered an order permitting the parties to take jurisdictional discovery as to issue of sovereign immunity, and Plaintiffs served their discovery on Defendants upon receipt of the Order. On October 2, 2017, Big Picture Loans provided its initial discovery responses, which included a privilege log identifying 70 documents withheld on the basis of attorney client privilege. (Oct. 2, 2017 Privilege Log, attached as Ex. 1). Big Picture Loans provided a second privilege log on October 10, 2017, which identified an additional 179

---

[2] Big Picture Loans started receiving 3% of the net profits in January 2017.

documents withheld on the basis of attorney client privilege and/or work product. (Oct. 10, 2017 Privilege Log, attached as Ex. 2). A third privilege log was served on October 13, 2017, which identified 6 additional documents as withheld on the basis of attorney client privilege. (Oct. 13, 2017 Privilege Log, attached as Ex. 3).

Pursuant to Rule 37(a)(1), Plaintiffs seek to compel the production of the documents on Big Picture Loans' privilege logs. As explained in more detail below, the documents should be produced for four separate reasons. *First*, Big Picture Loans should be prohibited from claiming privilege because Virginia law criminalizes the conduct at issue in this case and, thus, the documents are textbook examples of type of documents subject to the crime/fraud exception. *See, e.g., Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1220 (4th Cir. 1976); Va. Code § 6.2-1540 (making it a class 2 misdemeanor for any person who violates or participates in the violation of Virginia's interest rate cap). *Second*, Big Picture Loans waived any claim of privilege due to its failure to comply with Rule 26(b)(5)'s privilege log description requirements, which requires the party to "describe the nature of the documents" in a manner that will enable the other party "to assess the claim" of privilege. Fed. R. Civ. P. 26(b)(5). Waiver is an appropriate sanction where, as here, a party provides conclusory descriptions that are useless for determining whether the information withheld is privileged.

*Third*, the attorney-client privilege only applies to communications involving an attorney in her capacity "as a legal advisor," not in her capacity "as a business advisor." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No*. 1B, 230 F.R.D. 398, 411 (D. Md. 2005). Nevertheless, Big Picture Loans improperly withheld general business documents, such as communications concerning "return rates," "other business-related issues," "employee additions," and advice regarding the "website" and "call scripts." And *fourth*, many of withheld documents

involve communications with or include the presence of third parties, such as Martorello and employees of his companies. The presence of Martorello and other third parties renders these communications "not confidential" and, thus, "not privileged." *See, e.g., Sprenger v. Rector & Bd. of Visitors of Virginia Tech*, 2008 WL 2465236, at *2 (W.D. Va. June 17, 2008).

### III. Argument

**1. The crime/fraud exception to the attorney client privilege applies in this case.**

"The crime/fraud exception to the attorney-client and work product privileges provides that otherwise privileged communications or work product made for, or in furtherance of, the purpose of committing a crime or fraud will not be privileged or protected." *Rambus, Inc. v. Infineon Technologies AG*, 222 F.R.D. 280, 287 (E.D. Va. 2004) (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)). While this concept is often referred to as an "exception" to privilege, in fact it is actually an "exclusion of certain activity from the prospective reach of the privileges." *Id*. The policy underlying the crime/fraud exception is that advice in furtherance of "fraudulent or unlawful goals" is "not worthy of protection." *Id*. (quoting *In re Grand Jury Subpoena*, 731 F.2d 1032, 1038 (2nd Cir. 1984).

Though discussed as the "crime/fraud" exclusion, the concept is much broader. For example, the Fourth Circuit has even referred to it as the "the tort, fraud, or crime exception." *Duplan Corp.*, 540 F.2d at 1220\. And "many courts have applied the exception to situations falling well outside of the definitions of crime or fraud." *Rambus*, 222 F.R.D. at 288 (citing *Parrott v. Wilson,* 707 F.2d 1262, 1271 (11th Cir.1983); *Cleveland Hair Clinic, Inc. v. Puig*, 968 F.Supp. 1227, 1241 (N.D. Ill. 1996)).

The crime/fraud exception is easily triggered in this case because Virginia law unequivocally criminalizes the conduct at issue in this case. Va. Code § 6.2-1540. In particular,

Va. Code § 6.2-1540 provides "[a]ny person, including members, officers, directors, agents, and employees of an entity, who violates or *participates in* the violation of any provision of § 6.2-1501 is guilty of a Class 2 misdemeanor." *Id.* (emphasis added). In turn, Va. Code § 6.2-1501 provides that "[n]o person shall in engage in the business of making loans to individual . . . and charge, contract for, or receive, directly or indirectly, on or in connection with any loan interest" an amount greater than 12% without first obtaining a license from the Virginia State Corporation Commission. Va. Code § 6.2-1501(A); *see also* Va. Code § 6.2-303. Defendants blatantly violated these provisions as they offered and collected on loans in excess of 649%. (*See* Aug. 3, 2016 Loan Agreement, attached at Dkt. 1-1; *see also* Big Pictures Loans, *Rates*, https://www.bigpictureloans.com/loan-rates (last visited on Oct. 23, 2017) (showing a rate as high as high as 765%).

Less than six months ago, the United States District Court for the Southern District of New York applied the crime/fraud exception in a criminal action against the mastermind of a similar rent-a-tribe scheme. *United States v. Tucker*, No. 16-CR-91 (PKC), 2017 WL 2470836, at *1 (S.D.N.Y. June 6, 2017). In that case, the indictment charged Scott Tucker and Timothy Muir with "conspiracy to collect unlawful debts" and "collection of unlawful debts," through several payday lending businesses that Tucker managed and controlled, but "were nominally owned by American Indian tribes, including the Miami Tribe of Oklahoma." *Id.* Just like this case, the government alleged that "Tucker entered into sham relationships with the Indian tribes in order to invoke tribal immunity and continue lending practices that would otherwise be unlawful." *Id.* Accordingly, the government sought documents related to a lawsuit filed by Muir, an attorney, for the "purpose of retroactively filing a merger certificate and invoking tribal immunity." In finding the documents were not privileged due to the crime/fraud exclusion, the court observed that the "continuation of

an unlawfully usurious lending business was the crime or fraud attempted, and the communications and documents concerning *Tucker v. AMG* were in furtherance thereof because they were part of an effort to baselessly invoke the protections of tribal immunity." *Id*. at 3.

Like *Tucker*, Defendants do not concede any of these allegations in this case and are expected to contest liability at all stages of this litigation. However, the burden required for the application of the crime/fraud exception does not require a concession or success on the merits. Instead, Plaintiffs are only required to make a *prima facie* showing that the legal advice or work product at issue here was obtained in furtherance of illegal activity or misconduct. *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term*, *1991*, 33 F.3d 342, 348 (4th Cir. 1994) ("the government had to make a *prima facie* showing that the communications sought fell within the crime-fraud exception."); *Rambus*, 222 F.R.D at 285. As explained below, Plaintiffs possess sufficient evidence to make a *prima facie* showing that the legal advice contained in the privilege logs was obtained in furtherance of Defendants' efforts to violate Virginia's usury laws.

**A. The evidence easily satisfies the *prima facie* standard.**

    **i.      The initial structure of the rent-a-tribe enterprise.**

The discovery produced in this case confirms that Martorello established a rent-a-tribe enterprise with the intent of circumventing usury and interest laws. ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---
[3] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████



███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████

ii.    **Events leading to the change in structure and creation of Big Picture Loans and Ascension Technologies.**

In August 2013, the New York Department of Financial Services issued a cease and desist to Red Rock warning it to stop offering its illegal credit products to New York consumers. *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 974 F. Supp. 2d 353, 356 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014). The New York Department of Financial Services also issued warnings to third parties, such as banks and payment processors, to cease providing electronic banking services to Red Rock. *Id.* As a result, these third-party companies "cut back or cut off entirely their financial dealings with the Tribes." *Id.*

In response, Red Rock filed a lawsuit on August 21, 2013, seeking declaratory relief and a preliminary injunction that tribal businesses were inherently sovereign nations and were not subject to the law of New York. *Id.* The district court denied Red Rock's request for a preliminary injunction on September 30, 2013, finding that the "undisputed facts demonstrate[d]" that the illegal activity was "taking place in New York, off of the Tribes' lands," and thus, Red Rock was

---

[5] This is similar to the rent-a-tribe structure involving Scott Tucker and the Miami Tribe of Oklahoma. *See People ex rel. Owen v. Miami Nation Enterprises*, 2 Cal. 5th 222, 253, 386 P.3d 357, 377 (2016) ("But other evidence casts doubt on whether [the tribal entities'] role in approving loans indicates a significant degree of control. Documents compiled as part of the FTC investigation suggest the bulk of AMG's operations are conducted in Kansas, outside the boundaries of the Miami Tribe (in Oklahoma) and the Santee Sioux Nation (in Nebraska). In 2011, for example, AMG registered its location in Kansas, where it employed 606 individuals and paid more than $20 million in wages.")

"subject to the State's non-discriminatory anti-usury laws." *Id*. at 361. In doing so, the court reasoned "[t]here is simply no basis from which to infer . . . that the Tribes are treated differently from any other individuals or entities that enter New York to lend to New York resident." *Id*. On October 1, 2014, the Second Circuit affirmed the district court's decision. 769 F.3d 105.

The loss in *Otoe-Missouria* was the not only problem for Martorello's scheme—various lawsuits and government enforcement actions against Defendants' competitors brought attention to the sham business model. *See, e.g.*, *In re Moses,* No. 12-05563-8-RDD, 2013 WL 53873, at *4 (Bankr. E.D.N.C. Jan. 3, 2013)*, subsequently aff'd in part, rev'd in part, Moses v. CashCall, Inc.,* 781 F.3d 63 (4th Cir. 2015) ("I do not hesitate to observe the odiousness of CashCall's apparent practice of using tribal arbitration agreements to prey on financially distressed consumers, while shielding itself from state actions to enforce consumer protection laws."); *In Re Cashcall, Inc.*, 2013 WL 3465250, at *3 ("it appears that Western Sky is nothing more than a front to enable CashCall to evade licensure by state agencies and to exploit Indian Tribal Sovereign Immunity to shield its deceptive business practices from prosecution by state and federal regulators."); *Heldt v. Payday Fin., LLC,* 12 F. Supp. 3d 1170, 1179 (D.S.D. 2014); *Consumer Financial Protection Bureau v. CashCall, Inc.*, No. 1:13-cv-13167 (Dec. 16, 2013).

        **iii.**    **Defendants create Big Picture Loans and Ascension Technologies to add an additional layer of protection to the scheme.**

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

In short, the undisputed evidence in this case establishes an intentional effort to violate and

participate in the violation of state usury laws, which is a crime in Virginia. Because the legal

advice was obtained in furtherance of this criminal conduct, the documents should not be considered privileged under the crime/fraud exception.

### 2. Waiver is an appropriate sanction due to Big Picture Loans' failure to comply with Rule 26(b)(5)'s description requirements.

Privilege protections serve "an important purpose in our legal system, but that application can also 'remove otherwise pertinent information from the fact finder, thereby impeding the full and free discovery of the truth.'" *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 251 (E.D. Va. 2012) (quoting *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 271 (E.D. Va. 2004)). In the Fourth Circuit, assertions of work-product and attorney-client privilege are construed "quite narrowly" and the proponent of the privilege bears the burden to demonstrate its applicability. *Rambus*, 220 F.R.D. at 271. Accordingly, Rule 26(b)(5)(A)(ii)'s requires that a party "describe the nature of the documents" and "do so in a manner" that "will enable the other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(ii); *see also Rambus*, 220 F.R.D. at 272 ("the descriptions in the log must satisfy the claiming party's burden.").

To establish the applicability of the attorney-client privilege, a party's log must be sufficiently detailed to show: (1) "the person to whom the communication was made . . . act[ed] as a lawyer [in connection with the communication]," (2) "the communications relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding[.]" *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). To establish each of these elements, "an adequate 'privilege log' should contain: a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect

to the document, and how each element of the privilege is met as to that document." *Cappetta v. GC Servs. Ltd. P'ship*, 3:08-cv-288, 2008 WL 5377934, at *4 (E.D. Va. Dec. 24, 2008) (quoting *Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Big Picture Loans' privilege log violates Rule 26(b)(5)'s description requirements. For example, the first privilege log does not include a date for 64 of the documents. (Ex. 1 at PRIV_0001-0064). It also does not contain specific information regarding the person who prepared the document for 30 entries and, instead, the log generically identifies "Rosette, LLP" as the author. (Ex. 1 at PRIV_0011-0016, PRIV_0033-0034, PRIV_0036-0037, PRIV_0045, PRIV_0050-0064, PRIV_0072-0074, PRIV_0079-0080). For many of the entries omitting the author, Big Picture Loans also failed to specifically identify the recipient and, instead, it generically identified "Big Picture Loans" or "Ascension Technologies." (Ex. 1 at PRIV_0002-0003, PRIV_0011-0016, PRIV_0050-0064, PRIV_0072-0074).[8]

Worse yet, Big Picture Loans' description of the documents on the privilege logs makes it impossible for Plaintiffs to assess the applicability of privilege. Instead, Big Picture Loans' descriptions are nothing more than conclusory assertions, such as "legal advice regarding handbook," "legal advice regarding the formation of Big Picture Loans," and "legal advice regarding approval for compliance policies." (Ex. 1, at PRIV_0001, PRIV_0002, PRIV_0003). There is no further explanation or purported proof that the communication involved a person acting

---

[8] The second log contained similar deficiencies. It did not include a date for 132 of the documents. (Ex. 2, PRIV_0081-213). It listed either "Rosette, LLP" or no author whatsoever for a majority of the entries. (Ex. 2, PRIV_0081-0093, PRIV_0098-0153, PRIV_0125-0153, PRIV_0155, PRIV_0160, PRIV_0166-0167, PRIV_0171-0174, PRIV_0177, PRIV_0180-0189, PRIV_0192, PRIV_0195, PRIV_0196, PRIV_0199, PRIV_0201-0204, PRIV_0205- PRIV_0207-0208, PRIV_0211, PRIV_0214, PRIV_0217-0221, PRIV_0229, PRIV_0231-0233, PRIV_0252, PRIV_0256). And the log also omits the recipients for a majority of the entries. (Ex. 2, PRIV_0081-0093, PRIV_0098-0153, PRIV_0155-0157, PRIV_0159-0160, PRIV_0172-0174, PRIV_0177, PRIV_0180-0186, PRIV_0205-0206, PRIV_0208-0209, PRIV_0211, PRIV_0214, PRIV_0217-0221, PRIV_0222-0223).

as a lawyer and contained facts of which the attorney was informed without the presence of strangers for legal advice. *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 751 (E.D. Va. 2007) ("A conclusory allegation that the documents sought are protected by attorney-client privilege is inadequate to meet this burden. RLI needed to demonstrate specific facts showing that the communications were privileged. Because RLI instead submitted only a conclusory statement that the 'communications' must have been privileged, it failed to meet its burden of proof.").

Failure to provide an adequate privilege log may result in a waiver of privilege, *Cappetta*, 2008 WL 5377934, at *4, an outcome that is not rare in this District. *Burke v. Fed. Nat'l Mort. Ass'n*, No. 3:16-cv-00153 (E.D. Va. Oct. 6, 2016) (Novak, J.) (Dkt. 91) (finding privilege waived due to failure to provide privilege log with responses and insufficient descriptions); *ePlus Inc.*, 280 F.R.D. at 251, 252 (finding privilege waived where party failed to provide author and recipient information). In determining whether waiver is an appropriate sanction, this Court has examined a number of factors, including: (1) the reasonableness of the effort made by the party; (2) the time taken to rectify any error; (3) the scope of discovery; (4) and the overriding fairness of the assertion. *Cappetta*, 2008 WL 5377934, at *4. In short, waiver is appropriate "[w]here a party has taken no precautions to properly assert the privilege, and has allowed time to pass without clarifying the basis for its assertion of privilege[.]" *Id.*

In this case, waiver is an appropriate sanction because Big Picture Loans did not make a reasonable efforts to satisfy its obligations under Rule 26(b)(5). It omitted basic information that would have taken a few hours to log, such as the date, author, and recipients. It also completely disregarded its obligation to provide detailed descriptions and allowed far too much time to pass without correcting its errors, including more than 3 weeks after Big Picture Loans' counsel was notified of the deficiencies on October 3, 2017.

### 3. Waiver is appropriate because many of the documents listed on the privilege logs are business documents that do not contain legal advice.

The attorney-client privilege has long been understood to protect corporate clients and counsel. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). However, the privilege is limited to situations in which the attorney is acting as a legal advisor—business and financial advice are not protected. *Burden–Meeks v. Welch,* 319 F.3d 897, 899 (7th Cir. 2003). In the case of documents that provide both business and legal advice, a party must show that the advice given in the documents are more likely "legal" than "business" in nature in order to withhold the document on a privilege objection. *Brainware, Inc. v. Scan-Optics, Ltd.*, 3:11-cv-755, 2012 WL 2872812, at *3 n.3 (E.D. Va. July 12, 2012), *reconsideration denied*, 3:11-cv-755, 2012 WL 3555410 (E.D. Va. Aug. 16, 2012) (citing *Am. Nat'l Bank & Trust Co. v. Equitable Life Assur. Soc'y of the U.S.*, 406 F.3d 867, 879 (7th Cir. 2005); *Neuder v. Battelle Pac. N.W. Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000) ("In cases that involve in-house counsel it is necessary to apply the privilege cautiously and narrowly lest the mere participation of an attorney be used to seal off disclosure.")); *see also United States v. Frederick,* 182 F.3d 496, 501 (7th Cir. 1999) (holding that "a dual-purpose document—a document prepared for use in preparing tax returns and for use in litigation—is not privileged."); *Baxter Travenol Labs., Inc. v. Abbott Labs.,* No. 84 C 5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987) ("Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged.").[9]

---

[9] *See also Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 411 (D. Md. 2005) ("communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, would not be privileged."); *F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 71 (D. Md. 1998) ("What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda.").

While the "expanded role of legal counsel within corporations" has blurred the line between business and legal advice, *Acosta v. Target Corp.,* 281 F.R.D. 314, 322 (N.D. Ill. 2012), and a prudent corporation will seek legal advice with respect to most corporate decisions, the inclusion of general counsel does not transform all business discussions into privileged attorney-client communications. *Upjohn,* 449 U.S. at 393. In fact, at least one court has held that "the increasing inclusion of attorneys in business discussions and decisions has 'increased the burden that must be borne by the proponent of corporate privilege claims relative to in-house counsel.'" *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013) (internal citations omitted). And of course, the party asserting the privilege bears the burden of showing that the documents constitute legal, and not merely business, advice. *Rambus, Inc. v. Infineon Techs. AG,* 220 F.R.D. 264, 271 (E.D. Va. 2004) (citing *United States v. Under Seal,* 341 F.3d 331, 335 (4th Cir. 2003)); *Brainware, Inc.*, 2012 WL 2872812, at *1. And, under the test established by the Fourth Circuit, the party must show that "'the communication must be for the *purpose* of "securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'" *Scott & Stringfellow, LLC v. AIG Commercial Equip. Fin., Inc.*, No. 3:10-cv-825-HEH-DWD, 2011 WL 1827900, at *3 (E.D. Va. May 12, 2011) (quoting *United States v. Jones,* 696 F.2d at 1072. (emphasis added)) (emphasis in original).

Rosette, LLP served as in-house counsel for Red Rock, Big Picture Loans, and Ascension Technologies. From the onset of the rent-a-tribe scheme, the Rosette attorneys were instrumental in setting up the rent-a-tribe arrangement and working as the liaison between the tribal entities and the non-tribal participants. As part of this process, Rosette attorneys often provided advice on issues that appear to be exclusively business related. For example, Big Picture Loans' October 2, 2017 privilege log claims privilege over advice regarding: an employee handbook (Ex. 1 at

PRIV_0001, PRIV_0047), return rates (Ex. 1, at PRIV_0027), the website (Ex. 1 at PRIV_0048), call center scripts (Ex. 1 at PRIV_0049, PRIV_0053, PRIV_0058), template customer emails and text messages (Ex. 1 at PRIV_0050-51, PRIV_0054), revisions to the loan rate page (Ex. 1 at PRIV_0055), and capital sources (Ex. 1 PRIV_0074).

None of these entries indicate that Rosette was providing an opinion regarding the application of a particular law to these documents, that the documents were used to secure legal services, or that the documents were being used for assistance in a legal proceeding. Instead, these documents appear to be reviews of draft business documents used in the Big Picture Loans' general business operations. Even worse, there are entries in the October 2 privilege log that explicitly demonstrate that the documents are being withheld because they regard "various business matters." (Ex. 1 at PRIV_27-29). Big Picture Loans made no attempt to demonstrate that these documents were more legal then business in nature.

The October 10, 2017 privilege log is similarly flawed. It includes entries regarding email templates (Ex. 2 at PRIV_0082-88), loan and customer payments (Ex. 2 at PRIV_0089-93), marketing material (Ex. 2 at PRIV_0094-97), and presentation materials regarding entity restructuring (Ex. 2 at PRIV_0105-0121). It also indicates that Big Picture Loans is withholding documents related to "business issues." (Ex. 2 at PRIV_0155, PRIV_0158). Again, these entries do not contain any indicia of an application of a particular law, the procurement of legal services, or that the use of the document in a particular proceeding.

Therefore, Big Picture Loans has failed to carry their burden of proof that these documents are subject to the attorney-client privilege and that the withholding of these documents from discovery is justified. Accordingly, the Court should order production of the business-related documents, *i.e.*, PRIV_0001, PRIV_0027, PRIV_0047, PRIV_0048, PRIV_0049, PRIV_0050-51,

PRIV_0053, PRIV_0054, PRIV_0055, PRIV_0058, PRIV_0074, PRIV_0082-88, PRIV_0089-93, PRIV_0094-97, PRIV_0105-0121, PRIV_0155, and PRIV_0158.

4. **Big Picture Loans cannot claim privilege to documents provided to third-parties.**

For the attorney-client privilege to apply, the communication "must have been made in confidence." *Hawkins*, 148 F.3d at 384. A party waives the privilege if it voluntarily produces the privileged document to a third party. *Scott & Stringfellow, LLC*, 2011 WL 1827900, at *2 (citing *New Bank of New England v. Marine Midland Realty Corp.,* 138 F.R.D. 479, 482 (E.D. Va. 1991)). When a party knowing discloses privileged material to a third-party, it surrenders the privilege with respect to the world at large—it cannot selectively disclose the material and still assert privilege. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). In addition, the Fourth Circuit has held that, "if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information, as well as 'the details underlying the data which was to be published' will not enjoy the privilege." *United States v. Under* Seal, 33 F.3d 342, 354 (4th Cir. 1994) (quoting *United States v. (Under Seal),* 748 F.2d 871, 875 (4th Cir. 1984)). This means that "the details underlying the published data are the communications relating the data, the document . . . to be published containing the data, all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the document. Copies of other documents, the contents of which were necessary to the preparation of the published document will also lose the privilege." *United States v. (Under Seal),* 748 F.2d at 875, n.7.

As explained above, Rosette served as in-house counsel for Red Rock, Big Picture Loans, and Ascension Technologies—three separately incorporated entities. However, Rosette did not have an attorney-client relationship Martorello, Bellicose Capital, SourcePoint or any other entity

owned by Martorello. Nevertheless, Big Picture Loans has claimed attorney-client privilege over emails sent by Rosette to Martorello and other employees of his company. (Ex. 1 at PRIV_0035, PRIV_0037, PRIV_0046). Big Picture Loans has also claimed attorney-client privilege over documents authored by Martorello's brother. (Ex. 2 at PRIV_0236-0239). Because all of these communications were provided to a third party outside of the attorney-client relationship, any privilege protection that these documents once had have been waived.

Additionally, Big Picture Loans has also claimed attorney-client privilege over documents that Rosette sent to both Big Picture Loans and Ascension Technologies in the same communication. (Ex. 1 at PRIV_0054-64). Big Picture Loans also has possession and claims attorney-client privilege over documents that Rosette sent to the LVD Tribe or Tribal Officials. (Ex. 2 at PRIV_0161-65, PRIV_0173, PRIV_0178, PRIV_0188-89, PRIV_0191-97, PRIV_0200-204, PRIV_208). The waiver of attorney client privilege applies with equal force to these documents unless Big Picture Loans, Ascension Technologies, and the LVD show a common interest or joint defense privilege, which "permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims[.]" *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 347 (E.D. Va. 2015). Here, neither Big Picture Loans nor Ascension Technologies have even asserted a common interest or joint defense privilege and, thus, they cannot satisfy their "burden of showing that the attorney-client privilege applies, and that this privilege was not waived as to a third party because of the operation of the common interest doctrine." *Id*.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to enter an order compelling production of all documents identified on Defendant Big Picture Loans, LLC's

privilege logs dated October 2, 2017, October 10, 2017, and October 13, 2017.

Respectfully submitted,
**PLAINTIFFS**

_____*/s/ Kristi C. Kelly*_____
Counsel

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email:  casey@kellyandcrandall.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2017, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

*/s/ Kristi C. Kelly*

Kristi C. Kelly, Esq.
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
*Counsel for Plaintiffs*