**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| LULA WILLIAMS, GLORIA TURNAGE, GEORGE HENGLE, DOWIN COFFY, and FELIX GILLISON, JR., *on behalf of themselves and all individuals similarly situated*, : | Civil Case No. 3:17-cv-00461-REP |
| Plaintiffs, | Hon. Robert E. Payne |
| v. | |
| BIG PICTURE LOANS, LLC; MATT MARTORELLO; ASCENSION TECHNOLOGIES, INC.; DANIEL GRAVEL; JAMES WILLIAMS, JR.; GERTRUDE MCGESHICK; SUSAN MCGESHICK; and GIIWEGIIZHIGOOKWAY MARTIN, | |
| Defendants. | |

**TRIBAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION
TO STAY ALL PROCEEDINGS PENDING APPEAL OF THE COURT'S JUNE 26, 2018
ORDER**

Defendants, Big Picture Loans, LLC and Ascension Technologies, LLC (the "Tribal Defendants"), by counsel, hereby move to stay all further proceedings in this action against all Defendants pending the resolution of the Tribal Defendants pending appeal of the Court's June 26, 2018 Order.

**INTRODUCTION**

The Tribal Defendants have now appealed the Court's June 26, 2018 Order ("Order") denying the Tribal Defendants' motion to dismiss this matter based on their tribal sovereign immunity. (Dkt. No. 124.) If successful, that motion to dismiss would have completely barred all Plaintiffs' claims. The same outcome will result from a successful appeal.

The Tribal Defendants' appeal is by right, as it is an interlocutory order that fits within the collateral order doctrine. *See Eckert Intern., Inc. v. Government of Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167, 173 (E.D. Va. 1993) (citing "settled authority allowing interlocutory

appeals of immunity denials."); *Burlington Northern & Santa Fe Ry. v. Vaughn*, 509 F.3d 1085, 1089–91 (9th Cir. 2007) (just like qualified immunity, denial of tribal immunity is appealable as a matter of right under the "collateral order" doctrine under interlocutory basis).

The appeal as a matter of right also divests this Court of jurisdiction to proceed while the appeal is pending, thereby preventing litigation from moving forward at the district court level. *See, e.g., Griggs v. Provident Consumer Disc. Co.*, 459 US 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Burlington Northern & Santa Fe Ry. v. Vaughn*, 509 F.3d 1085, 1090 (9th Cir. 2007).

While the divestiture of the court's jurisdiction based on the notice of appeal is clear, a stay remains appropriate due to the existence of certain orders that were issued *prior to* the filing of the notice of appeal, which sought to impose various pretrial obligations on the Tribal Defendants (*e.g.*, attendance at a Rule 16 conference). *See*, *e.g.*, 7/3/18 Order Setting Pretrial Conference (ECF No. 128); 7/3/18 Scheduling Order (ECF No. 129); 7/5/18 Order re: *in camera* review (ECF No. 132). It is also appropriate in light of the fact that Plaintiffs served additional, burdensome discovery on the Tribal Defendants *before* the notice of appeal was filed. *See* **Exhibits A-F**. To make certain that there is no inadvertent violation of any order or omission of any duty under the Federal Rules of Civil Procedure, the Tribal Defendants respectfully request that this Court stay all proceedings in this matter as related to the Tribal Defendants pending the Appeal.

Simply put: a stay is appropriate because the Tribal Defendants cannot be forced to participate in discovery before the threshold immunity question" is answered, as immunity would be "forever lost," no matter the result of Tribal Defendants' pending Appeal. *See Bowen v. Doyle*, 880 F. Supp. 99, 134 (W.D.N.Y. 1995) ("A claim of sovereign immunity is forever lost by subjecting [the party] to the very process from which he asserts he is immune."); *In re Facebook*

*Inc.*, 42 F. Supp. 3d 556, 558 (S.D.N.Y. 2014). Indeed, immunity doctrines are meant to give sovereigns "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery." *In re Facebook Inc.*, 42 F. Supp. 3d at 558 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)).

For that reason, the appeal of a denial of sovereign immunity defense necessitates a stay until a higher court of appeals has an opportunity to resolve the matter. *See, e.g., In re Facebook Inc.*, 42 F. Supp. 3d at 558 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982) (concluding that an interlocutory appeal from a denial of immunity prevents a district court from "proceed[ing] with trial" until the "threshold immunity question" is answered on appeal)).

For the reasons detailed below, a stay makes eminent practical sense. It will promote judicial economy, avoid needless waste of the parties' and the Courts' limited resources, and most importantly, avoid irreparable harm to Tribal Defendants while working no prejudice on Plaintiffs. Accordingly, Tribal Defendants respectfully request this Court stay all proceedings as to the Tribal Defendants, and also for co-Defendant Matt Martorello, pending the appeal of the Court's Order on the issue of tribal sovereign immunity.

**RELEVANT BACKGROUND**

On June 25, 2018, the Court issued its Order denying the Tribal Defendants' motion to dismiss this matter based on tribal sovereign immunity as a complete bar to Plaintiffs' claims.

On July 6, 2018, as ordered by the Court on July 3, 2018, the Tribal Defendants' counsel participated in a Rule 26(f) conference under protest. Before and during that conference, Plaintiffs would not agree that the Tribal Defendants' forthcoming appeal would divest the Court of jurisdiction or stay all pending discovery.

On July 6, 2018, the Court issued its opinion under seal, reasoning that the Tribal Defendants are not entitled to tribal sovereign immunity as arms of the Lac Vieux Desert Band of Lake Superior Chippewa Indians.

On July 6, 2018, Plaintiffs' propounded their second round of discovery on all Defendants. In total, the discovery includes: (1) twenty requests to admit to each Defendant, requiring full audits of all BPL records that may have somehow affected anyone in Virginia, as well as a full re-accounting of interest rates based on Plaintiffs' claimed damages; (2) eight interrogatories to each Defendant probing into all defenses, all evidence, and all loans issued into Virginia; and (3) eight requests for production, essentially asking for every other document not produced during "jurisdictional" discovery that may relate in any way to Virginia lending activities. *See* Exs. A-C.

On July 19, 2018, the Tribal Defendants filed their Notice of Appeal ("Appeal") with the Fourth Circuit. (*See* Dkt. No. 135.) That Appeal remains pending and will be vigorously pursued by the Tribal Defendants.

## ARGUMENT

**I.  With an appeal by right under the collateral order doctrine, the Tribal Defendants' Appeal divests this Court of jurisdiction.**

**A.  The Appeal divests the Court of jurisdiction.**

Tribal Defendants have appealed the Court's denial of tribal sovereign immunity, which would be outcome dispositive of the claims against them. An interlocutory appeal of a denial of immunity "divests a district court of jurisdiction to proceed with trial unless the district court certifies the appeal as frivolous." *In re Facebook*, 42 F. Supp. 3d at 558; *Eckert Intern, Inc. v Gov't of Sovereign Democratic Republic of Fiji,* 834 F. Supp. 167, 174 (E.D. Va. 1993) (holding that defendant's interlocutory appeal based on immunity "divests this Court of jurisdiction over the remaining matters"); *see also Grand Jury Proceedings Under Seal v. United States*, 947 F.2d

4

1188, 1190 (4th Cir. 1991); *accord* 9 J. Moore, B. Ward & J. Lucas, MOORE'S FEDERAL PRACTICE ¶ 203.11 (2d ed. 1991); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, FEDERAL PRACTICE & PROCEDURE § 3949 (1977).

That is equally true in the tribal context, where the denial of a motion claiming tribal sovereign immunity is immediately appealable under the collateral order doctrine, thereby divesting the district court of jurisdiction during the pendency of the appeal. *See, e.g.*, *Bonnet v. Harvest (U.S.) Holdings, Inc.,* 741 F.3d 1155, 1157 (10th Cir. 2014) ("We have recognized that 'the denial of tribal immunity is an immediately appealable collateral order.'"); *see also Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 928 (7th Cir. 2008); *Prescott v. Little Six, Inc.*, 387 F.3d 753, 755 (8th Cir. 2004); *Burlington Northern*, 509 F.3d at 1090–91; *Osage Tribal Council v. United States Dep't of Labor*, 187 F.3d 1174, 1179-80 (10th Cir. 1999); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030, 1050 (11th Cir. 1995); *Vann v. Kempthorne*, 534 F.3d 741, 745 (D.C. Cir. 2008).

The complete divesture of this Court's jurisdiction serves to halt all proceedings in this Court, including discovery, until the appellate courts can answer the "threshold immunity question." *In re Facebook*, 42 F. Supp. 3d at 558 (quoting *Harlow*, 457 U.S. 800 at 818–19); *accord McFadyen v Duke Univ*, No. 1:07CV953, 2011 WL 13134315, at *2 (M.D.N.C. June 9, 2011); *Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006) (holding that during an interlocutory appeal of a motion to dismiss on qualified immunity grounds, the district court was divested of jurisdiction to proceed even as to summary judgment determinations); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (noting that where a qualified immunity defense is raised, defendants have an "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law"). Indeed, as the Fourth Circuit has held,

"qualified immunity is an immunity from having to litigate, as contrasted with an immunity from liability." *Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 229 (4th Cir. 2002).

This common-sense result is well grounded in on-point authority. For example, in *In re Facebook*, the district court denied a motion to compel discovery while the defendant's qualified immunity was on appeal. Relying on Supreme Court's decisions on the issue of immunity, the district court held that immunity would be impugned by responding to plaintiffs' discovery requests before the appeal was resolved because the right to qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation" that "like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *In re Facebook*, 42 F. Supp. 3d at 558 (quoting *Mitchell v. Forysth*, 472 U.S. 511, 526 (1985)).

The same principles have been applied in the tribal immunity context. For example, in *Burlington N. & Santa Fe Ry. Co. v. Vaughn,* the Ninth Circuit observed that, "[a]s with absolute, qualified, and Eleventh Amendment immunity, tribal sovereign immunity 'is an immunity from suit rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial.'" 509 F.3d 1085, 1090 (9th Cir. 2007) (emphasis removed) (quoting *Puerto Rico Aqueduct*, 506 U.S. at 143–44 (holding that the denial of Eleventh Amendment immunity is immediately appealable under the collateral order doctrine)). Or, as the Eleventh Circuit put it, "[t]ribal sovereign immunity would be rendered meaningless if a suit against a tribe asserting its immunity were allowed to proceed" despite pending appellate court review of the denial of immunity. *Tamiami Partners, Ltd. By & Through Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Florida,* 63 F.3d 1030, 1050 (11th Cir. 1995).

At bottom, as this Court has recognized, "[b]ecause '[t]he trial is inextricably tied to the question of immunity. . . . [i]t makes no sense for trial to go forward while the court of appeals

cogitates on whether there should be one.'" *Eckert,* 834 F. Supp. at 174 n. 12 (quoting *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir.1989)). Therefore, the case should be stayed.

> B.  **The pending Appeal stops Plaintiffs' discovery and compliance with the Court's pending pretrial orders.**

With jurisdiction now vested exclusively with the Fourth Circuit, Plaintiffs' discovery must be held in abeyance until the Fourth Circuit's decision. Indeed, it is now of no effect. The same is true with respect to the Tribal Defendants' obligations under the court's pending pretrial orders, which were issued before the Appeal was filed, but which are now not operative.

As courts within the Fourth Circuit and elsewhere have recognized, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *McFadyen*, No. 1:07CV953, 2011 WL 13134315, at *2 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 685 ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (noting that threshold immunity questions should be resolved "before permitting discovery"); *Hegarty v. Somerset County*, 25 F.3d 17, 18 (1st Cir. 1994) ("[A] denial of qualified immunity is entitled to immediate appellate review . . . [and] the stay of discovery, of necessity, ordinarily must carry over through the appellate court's resolution of that question."). By propounding discovery and attempting to force Tribal Defendants to respond to discovery, Plaintiffs are asking the Court to exercise jurisdiction outside its authority and thus trample on Tribal Defendants' immunity, despite the Court's current lack of jurisdiction over this dispute. Indeed, absent a stay, to fully protect their rights and prevent any assertion of waiver, the Tribal Defendants would need to file motions with the Court seeking protective orders from the intrusive and overbroad discovery served by Plaintiffs. But, this Court now lacks jurisdiction to hear any such motions.

To try and preempt this issue, Tribal Defendants informed Plaintiffs that Tribal Defendant would be filing the Appeal shortly after receiving the Court's opinion, and at that time the Court would be divested of jurisdiction, such that discovery could not go forward. Nonetheless, Plaintiffs served discovery on Tribal Defendants. The Tribal Defendants should not be forced to address Plaintiffs' discovery requests or undertake efforts to unseal documents and compel other pretrial processes under the current orders, as their immunity rights would be functionally gutted through such litigation activities. *See Behrens v. Pelletier,* 516 U.S. 299, 308 (1996) (immunity principles provide "a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery").

Fundamentally, the Tribal Defendants' immunity would be "effectively lost" if, during the appeal of their immunity contentions, they were subject to the very proceedings from which immunity protects them.

## II. The Court should stay all ongoing issues pending resolution of the Appeal.

Even though divestiture of this Court's jurisdiction is clear, what remains possibly unclear are the Tribal Defendants' obligations under the existing pretrial orders, which were issued prior to the filing of the Appeal. *See, e.g.*, 7/3/18 Order Setting Pretrial Conference (ECF No. 128); 7/3/18 Scheduling Order (ECF No. 129); 7/5/18 Order re: in camera review (ECF No. 132). Under Fed. R. App. P. 8, this Court retains jurisdiction to act in aid of an appeal, including granting a stay. Hence, to ensure all parties are aligned with the Court's expectations and to ensure that there are no inadvertent violations of any order or omission of any duty, the Tribal Defendants respectfully request this Court to stay *all* further proceedings in this matter pending the Appeal.

To determine if a stay should be granted, district courts apply a four-factor test. "A party requesting a stay must demonstrate '(1) that [they] will likely prevail on the merits of the appeal, (2) that [they] will suffer irreparable injury if the stay is denied, (3) that other parties will not be

8

substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Fitzgerald v. Alcorn*, No. 5:17cv16, 2018 WL 709979, at *3–4 (W.D. Va. 2018) (quoting *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) (citing *Nken v. Holder*, 556 U.S. 418, 433 (2009))). The factors are balanced and "[t]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other." *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). Those factors are all satisfied here.

    A.  **Tribal Defendants are likely to succeed on the merits of the Appeal.**

The Tribal Defendants respectfully submit that the Court's Order was issued in error and is contrary to the weight of the evidence before it, and they will ask the Fourth Circuit to rule in their favor for the reasons set forth in their pleadings. However, the first factor regarding the likelihood of success on the merits does not require Tribal Defendants to offer evidence that would support this Court's abandoning of its prior Order. Instead, this factor is satisfied if the case presents a case of "first impression" and a "substantial case on the merits." *Fitzgerald*, No. 5:17cv16, 2018 WL 709979 at *1 (quoting *Project Vote/Voting for America, Inc. v. Long*, 275 F.R.D. 473, 474 (E.D. Va. 2011)); *see also Miller*, 465 F. Supp. 2d at 596 ( "While the Court cannot say that Defendants are likely to prevail in their appeal, the Court does recognize that this case raises an issue of first impression.").

In this District, and in the Fourth Circuit, there is very little history of Indian law holdings, including decisions regarding tribal sovereignty. One of the few other federal courts to consider any similar issue, coincidentally in this District, found the existence of sovereign immunity for a tribal lending business as an arm of a federally-recognized tribe. *See Howard v Plain Green, LLC*, No. 2:17CV302, 2017 WL 3669565, at *1 (E.D. Va. Aug. 7, 2017). However, the Fourth Circuit has not analyzed whether a wholly owned tribal entity shares tribal sovereign immunity, and it has

yet to formally adopt the factors set forth in *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Econ. Dev. Auth.*, 629 F.3d 1173 (10th Cir.2010), or the California Supreme Court's modified *Breakthrough* factors set forth in *People ex rel. Owen v. Miami Nation Enters.*, 211 Cal.Rptr.3d 837, 386 P.3d357 (2016), or any other test.

Nor has the Fourth Circuit addressed which party bears the burden of proof on the issue of tribal sovereign immunity, which is a question of law that this Court also wrestled with in issuing its Order in light of conflicting authority, and which would also itself likely have been outcome determinative of the Tribal Defendants' motion. Moreover, as the Court's opinion on the issue of sovereign immunity recognized, even when placing the burden of proof on the Tribal Defendants, a number of the *Breakthrough* factors weighed in favor of sovereign immunity. And, those factors that the Court held did not favor sovereign immunity were decided only after lengthy analysis and the Court's use of evidentiary inferences to refute contested facts favoring immunity.

With conflicting analyses even within this district over how *Breakthrough* applies and who bears the burden of proof under such an analysis, when coupled with the existence of a plainly good-faith appeal, a stay is appropriate.

**B      Tribal Defendants will be irreparably injured if a stay is denied.**

As to the second factor, the Tribal Defendants will be irreparably harmed if this Court proceeds to trial while the question of immunity is pending. Infringement of tribal sovereign immunity constitutes irreparable harm by invading tribal self-government in a way that "cannot be adequately compensated for in the form of monetary damages" and because the loss of tribal sovereignty may not be subject to remedy upon final determination on the merits. *United States. v. Washington*, 20 F.Supp.3d 986, 1073 (W.D. Wa. 2013) (citing *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250–51 (10th Cir. 2001)).

Moreover, the substantial costs already incurred by the Tribal Defendants with respect to the expansive "jurisdictional" discovery permitted by the Court and related motion practice have already impacted revenues generated for the Tribe. "Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." *Ashcroft*, 556 U.S. at 685. In this case, the litigation impacts, not only Tribal Defendants, but also members of the Tribal Council, as well as a primary funding source for the Tribe's government operations. As such, there can be no doubt that Tribal Defendants will suffer irreparable harm.

This concern is particularly acute because, despite the Appeal, Plaintiffs have continued to try and win by attrition by serving additional requests for admissions, interrogatories, and request for production on all Defendants. If the prior "jurisdictional discovery" is any indicator, this additional discovery could produce another seven-figure bill that will never be recoverable by the Tribal Defendants, even upon success at the Fourth Circuit.

As the cases cited above demonstrate, once the Tribal Defendants are subject to pre-trial proceedings, the right to immunity is lost and it cannot be restored. *Eckert*, 834 F. Supp. at 167. Irreparable harm is clearly present.

**C.      Plaintiffs will not be substantially harmed by a stay.**

Plaintiffs cannot demonstrate any injury—let alone a "substantial" one—that would result from a stay.

Plaintiffs are not incurring any ongoing harm, and any alleged injury is wholly compensable by reimbursement (calculated with interest) if necessary. The same is true with respect to the claims of the putative class, which seek monetary reimbursement from the Tribal Defendants and cancellation of their loans. In fact, all parties will benefit from a stay because the

ultimate adjudication of the existence of tribal sovereign immunity will likely eliminate the need for significant adjudication and needless expenditure of pretrial resources by all parties. There can be no dispute that a favorable appellate court ruling will have the effect of terminating the present litigation and preventing the parties (and the Court) from needlessly expending resources on costly pretrial discovery and litigation. Those costs are easily avoided with a stay.

### D. The public interests are best served by granting a stay.

With respect to the last factor, it is in the public interest to preserve the principles of sovereignty and sovereign immunity. The public interest is best served by Congress' federal Indian policy, which "is committed to a policy of supporting tribal self-government and self-determination." *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985); *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P. C.*, 476 U.S. 877, 894 (1986)) ("Tribal sovereign immunity is 'a necessary corollary to Indian sovereignty and self-governance.'").

It is also in the public's interest to promote judicial economy, which is best accomplished here by staying all proceedings until the pending Appeal is resolved. Again, if the Tribal Defendants are correct on the issue of sovereign immunity, "then parallel court proceedings will have been enormously wasteful." *Gingras v. Rosette*, 2016 WL 4442792, at *7 (D. Vt. 2016) (finding that the public interest is best served by staying the case until the issue of arbitrability is decided).

### III. The entire case should be stayed.

Finally, the entire matter should be stayed, including as to co-Defendant Matt Martorello, in order to prevent injury and prejudice to the Tribal Defendants. This scenario has played out before in other cases. Plaintiffs attempt to keep pressure on the case while sovereignty is appealed by dividing claims and defendants to show that some claims are not dependent on sovereign

immunity, thereby forcing the party claiming immunity to participate in the discovery process to protect their interests in the interim. However, the Supreme Court has rejected such a tactic:

> It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

*Ashcroft,* 556 U.S. at 685–86.

This Court has relied on *Ashcroft* to stay trial and defer pending motions. For instance, in *McFadyen*, several defendants sought to stay discovery pending an appeal to the Fourth Circuit based on the denial of immunity. After finding that the appeal divested the district court of jurisdiction over the appellant, the court also found that several of the non-appealed aspects of the case were "inextricably intertwined with the claims in Count 18 asserted against the City Defendants" on appeal, "[t]hus, in the present case, the Court finds that, as a practical matter, these claims could not realistically proceed independent of the claims on appeal." *McFadyen*, No. 1:07CV953, 2011 WL 13134315, at *3. The court also found that, absent a stay, the discovery that had been served on several non-appellant defendants "would indeed impose undue burdens on the City Defendants while their qualified immunity defense is still pending on appeal." *Id.* Other courts have reached similar conclusions. *See, e.g.*, *Black v. Dixie Consumer Prod. LLC*, No. 108CV00142, 2015 WL 13714173, at *3 (W.D. Ky. Sept. 9, 2015); *Adkins v. Suba,* No. 09-00029, 2010 WL 934017, at *1 (D. Guam Mar. 8, 2010) (temporarily staying discovery as to all defendants pending the court's ruling on certain defendants' motions to dismiss on qualified immunity grounds); *Ransaw v. United States*, 2011 WL 1752160, at *2 (N.D. Ohio May 5, 2011) (staying all discovery "pending the resolution of the qualified immunity question" in related case).

Staying the entire matter is even more appropriate considering the contents of Plaintiffs' recently propounded discovery. The discovery propounded on Mr. Martorello is exactly the same as the discovery propounded on each Tribal Defendant. *Compare* Exs. A-F *with* **Exhibits G-I**. Thus, such discovery is properly seen as an attempted end-run around the divestiture of jurisdiction resulting from the Appeal. There are no non-appealed issues that are distinct, such that the case could proceed without burdening the Tribal Defendants. Thus, a stay as to all parties and all claims is required.

## CONCLUSION

Because the Tribal Defendants have filed the Appeal, this court is divested of jurisdiction until the matter is returned by the Fourth Circuit. Thus, as to ongoing matters and existing orders, a stay is appropriate to ensure that there is no uncertainty as to any of the parties' obligations during the pending Appeal and to make certain that Defendants are not irreparably harmed.

The Tribal Defendants respectfully request that the Court grant their Motion to Stay and stay this matter until the matter is returned to this Court's jurisdiction.

**BIG PICTURE LOANS, LLC, ASCENSION TECHNOLOGIES, INC.**

By: /s/ Timothy J. St. George
David N. Anthony
Virginia State Bar No. 31696
Timothy J. St. George
Virginia State Bar No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutmansanders.com
Email: tim.stgeorge@troutmansanders.com

                                  Karrie Sue Wichtman (admitted *pro hac vice*)
                                  Justin A. Gray (admitted *pro hac vice*)
                                  ROSETTE, LLP
                                  25344 Red Arrow Highway
                                  Mattawan, MI 49071
                                  Telephone: (269) 283-5005
                                  Facsimile: (517) 913-6443
                                  Email: kwichtman@rosettelaw.com
                                  Email: jgray@rosettelaw.com

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of July, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: 703-424-7570
Facsimile: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for Plaintiffs*

James W. Speer
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA 23219
Telephone: 804-782-9430
Facsimile: 804-649-0974
Email: jay@vplc.orga
*Counsel for Plaintiffs*

David F. Herman
Jonathan P. Boughrum
Richard L. Scheff
MONTGOMERY MCCRACKEN WALKER
& RHOADS LLP
123 S Broad Street
Philadelphia, PA 19109
Telephone: 215-772-1500
Facsimile: 215-772-7620
Email: dherman@mmwr.com
Email: jboughrum@mmwr.com
Email: rscheff@mmwr.com
*Counsel for Defendant Matt Martorello*

/s/ Timothy J. St. George
Timothy J. St. George
Virginia State Bar No. 77349
*Counsel for Defendants*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1245
Facsimile: (804) 698-1300
Email: tim.stgeorge@troutmansanders.com