# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| LULA WILLIAMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 3:17-cv-461 (REP) |
| | ) | |
| BIG PICTURE LOANS, LLC, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT BIG PICTURE, LLC AND ASCENSION TECHNOLOGIES, INC.'S SUPPLEMENTAL MOTION TO STAY ALL PROCEEDINGS PENDING APPEAL OF THE COURT'S JUNE 26, 2018 ORDER

Plaintiffs, by counsel, hereby submit this opposition to the Supplemental Motion to Stay All Proceedings Pending Appeal of the Court's June 26, 2018 Order (Dkt. 199) filed by Defendants Big Picture Loans, LLC, and Ascension Technologies, Inc. (collectively "Defendants").

## INTRODUCTION

Without obtaining leave of Court as required by Local Rule 7(F), Defendants have filed a "supplemental motion" rehashing the same arguments in support of their initial request to stay this case, including their erroneous claim that the Court lacks jurisdiction over this action in its entirety. *See generally* Defs.' Memo. Supp. Stay at Dkt. 138. For the reasons previously explained, the Court maintains jurisdiction over this action, especially as to the claims against Martorello, and the request for a stay should be denied. *See generally* Pls.' Opp. Stay at Dkt. 150.

The only new issue in the supplemental motion concerns the depositions of three individuals: Brian McFadden, James Dowd, and Simon Liang—none of whom are members of the Lac Vieux Desert Band of Chippewa Indians. Due to their employment at Ascension from January

1

2016 through the present, Defendants have taken the position that McFadden, Dowd, and Liang are entitled to sovereign immunity *from any discovery* in this case, including discovery pertaining to: (1) their roles at Bellicose Capital, LLC, which predate their employment with Ascension; and (2) their ownership interest and role with Eventide Credit Acquisitions, LLC, the non-tribal entity owned by Martorello, McFadden, Dowd, and Liang. *See, e.g., Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2018 WL 3615988, at *5 (E.D. Va. July 27, 2018) (providing factual background regarding the role of Eventide).

Because of their multi-dimensional role in the scheme, McFadden, Liang, and Dowd possess discoverable information far beyond their role at Ascension. Rather than seeking a *limited* protective order, however, Defendants take the position that the doctrine of sovereign immunity prohibits the depositions of McFadden, Liang, and Dowd *in any capacity*. Defendants' attempt to prevent the depositions is foreclosed by the Supreme Court's recent decision in *Lewis v. Clarke*, 137 S. Ct. 1285 (2017), where the Court held that "in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated." *Id*. at 1288. By extension, if tribal sovereign immunity does not protect a tribal employee "acting within the scope of his employment" from a lawsuit, it unquestionably cannot protect *non-tribal* members from depositions relating to their employment with or ownership of *non-tribal* companies. Thus, at a minimum, these depositions should be permitted to move forward with respect to discovery related to Bellicose Capital and Eventide.

Deposition questions related to their employment with Ascension should also be permitted because "service of a federal subpoena upon an employee of a tribal entity is neither a suit, nor an action against the tribe." *N.L.R.B. v. Fortune Bay Resort Casino*, 688 F. Supp. 2d 858, 875 (D. Minn. 2010). In other words, while tribal sovereign immunity extends "to tribal officials when

acting in their official capacity," none of the proposed witnesses are tribal officials. *Grand Canyon Skywalk Dev. LLC v. Cieslak*, No. 2:13-CV-00596-JAD, 2015 WL 4773585, at *7 (D. Nev. Aug. 13, 2015) (allowing subpoena of tribal attorney), *aff'd*, No. 215CV00663JADGWF, 2016 WL 890921 (D. Nev. Mar. 7, 2016). Accordingly, absent a stay of this case in its entirety, the Court should allow the depositions to move forward without limitation.

Finally, it is important to note that Defendants inaccurately contend that "Plaintiffs' counsel has aggressively pursued discovery against Ascension in multiple ways" which required the filing of subpoenas "in three different jurisdictions." Dkt. 199, Defs. Mem. at 2 (emphasis added). Far from it—Martorello listed McFadden, Liang, and Dowd as individuals who may provide information in support of his defenses to class certification. *After* learning of Martorello's intention, Plaintiffs' counsel sought the depositions. Worse yet, Defendants conveniently omit that Plaintiffs' counsel offered to withdraw the depositions (on multiple occasions) in exchange for a stipulation that McFadden, Liang, and Dowd would not provide a one-sided declaration. *See, e.g.*, Exs. 1 at pg. 3. Defendants refused to agree to the stipulation, forcing the parties to address these issues when an easy solution existed. To conserve judicial and the parties' resources, Plaintiffs' counsel further requested Defendants to file/transfer the motions to quash to this Court, but Defendants refused to do so. Ex. 2. In sum, the burden and costs associated with this "aggressive" discovery have been self-imposed by Defendants.[1]

---

[1] Defendants also complain that Plaintiffs served "both Rule 30(b)(1) deposition notices and Rule 45 deposition subpoenas on three of Ascension's individual officers." Defs.' Supp. Memo. Supp. Stay, Dkt. 199 at 2. But the Rule 45 subpoena was required because Defendants' counsel refused to accept service of the deposition notice on behalf of McFadden, Liang, and Dowd. *See* Ex. 3 at 2-3. Defendants' counsel also refused to accept service of the subpoenas, including new subpoenas issued to McFadden, Liang, and Dowd after they filed motions to quash in the various jurisdictions.

## BACKGROUND

This case involves a rent-a-tribe enterprise primarily created and operated by Defendant Matt Martorello. Beginning in 2011, the enterprise made high-interest loans to consumers in the name of Duck Creek Financial, LLC and Red Rock Tribal Lending, LLC—two entities formed under the laws of the LVD for the dual purpose of avoiding state and federal laws and concealing the role of Martorello's companies. Although Duck Creek and Red Rock were held out as the actual lender of the internet loans, the LVD and Red Rock had minimal involvement in the operations and received a mere 2% of the net profits from the loans. On the other hand, Martorello's companies, SourcePoint VI, LLC and Bellicose Capital, LLC, reaped nearly all the profits; provided the infrastructure to market, fund, and collect the loans; and controlled the tribal companies' bank accounts.

Martorello owned 85.1% of Bellicose. *See, e.g.*, Ex. 4 Dec. 31, 2015 Statement for Bellicose Capital at Dkt. 83-1 (filed under seal).[2] Martorello's brother owned 9.9%. The remaining 5% was owned by the other officers/executives of Bellicose: McFadden, Liang, and Dowd. *Id.* Faced with mounting pressure against similar rent-a-tribe ventures and a cease and desist issued to Red Rock by the State of New York, Defendants "looked for ways to restructure Red Rock's lending operation in order to reduce exposure to liability." *Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2018 WL 3615988, at *16 (E.D. Va. July 27, 2018). The ultimate solution was to "sell" Bellicose to the LVD in exchange for a $300,000,000.00 promissory note to Eventide— a new company created by Martorello, McFadden, Liang, and Dowd to further insulate the scheme

---

[2] Although this document remains confidential, the relevant portions were allowed to be filed publicly. *See, e.g.,* Dkt. 133 at pg. 2. Accordingly, Plaintiffs have not redacted this information from this filing, but will file a motion to seal the document in accordance with the Court's prior rulings. *See, e.g.,* Dkt. 143.

from liability. Rather than owning 5% of Bellicose, McFadden, Liang, and Dowd now own 5% of Eventide (Ex. 5) (filed under seal),[3] which receives the vast majority of the proceeds from the loans, just like the earlier relationship between Bellicose and Red Rock. *See, e.g.*, *Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2018 WL 3615988, at *18 (E.D. Va. July 27, 2018) (explaining that the promissory note between Big Picture and Eventide "limits the funds available to the Tribe to 5% of Big Picture's monthly revenue-the 3% monthly distribution and the 2% reinvestment amount").

On July 3, 2018, the Court provide the parties with a copy of its Memorandum Opinion denying the motion to dismiss filed by Defendants, which argued that the Court lacked subject matter jurisdiction over the claims because Defendants were entitled to sovereign immunity. *See generally* July 3, 2018 Memo. Opinion at Dkt. 130 (filed under seal). On July 19, 2018, Defendants filed a notice of appeal of the Court's decision. Dkt. 135. The following day, Defendants filed a motion seeking to stay the entire case pending their appeal to the Fourth Circuit. Dkt. No. 137. The motion to stay is fully briefed, but the Court has not issued its ruling as of the date of this filing. However, the Court explained that its "tentative view" was that the case could move forward as to Martorello. Dkt. 147, 7:4-9 ("The Court: My tentative view is there isn't any reason why discovery cannot go on and Mr. Martorello cannot go forward in the case, and the general assertions that are made in the motion that I read, and I admit I've read it summarily at this stage, don't seem, to me, to call for a stay for Mr. Martorello."). To that end, the Court set deadlines for the briefing on class certification as to Martorello. *See generally* Dkt. 147, 20:14-16; 24:17-25:4.

On August 6, 2018, Martorello provides his responses to Plaintiff Hengle's First Set of

---

[3] Although this document remains confidential, the portions relevant to this motion have already been filed publicly. *See, e.g.,* Dkt. 133 at pg. 2; Dkt. 83, fn. 1 & 13. Accordingly, Plaintiffs again publicly quote this sealed document.

Interrogatories, which sought discovery pertaining to class certification issues. *See* Ex. 6. At this time, Martorello did not answer the interrogatory seeking identification of witnesses who may be used by Martorello to support his defenses to class certification. Ex. 6 at Int. No. 5. After a meet and confer, Martorello provided an amended response identifying McFadden, Dowd, and Liang as individuals who may be used to provide testimony in support of his class certification defenses. *See* Ex. 7.

Due to Martorello's designation of McFadden, Liang, and Dowd, as well as their roles at Bellicose and Eventide, Plaintiffs' counsel served Ascension's counsel with Rule 30(b)(1) deposition notices for each of the individuals. In response, Ascension's counsel ignored multiple requests to accept service of the deposition notices and insisted that discovery was stayed until a decision on the motion to stay. Ex. 3 at pg. 3. Because counsel ignored the requests to accept service, Plaintiffs served the witnesses with Rule 45 subpoenas. After service of the subpoenas, the parties held a meet and confer where Plaintiffs' counsel clearly outlined their position. Ex. 1 at pgs. 6-7. Alternatively, Plaintiffs' counsel offered to withdraw the subpoenas if: (1) Defendants provided a class list and (2) McFadden, Liang, and Dowd agreed not to provide any declaration or one-sided testimony in support of Martorello's class certification defense. Ex. 1 at 2-3. In response, Defendants repeatedly indicated that they would not participate while they waited for the Court's decision on the motion to stay. Ex. 1 at 1-2, 4.

On August 30, 2018, Defendants' counsel indicated that McFadden, Liang, and Dowd would not appear for the depositions, which were scheduled for September 4, 2018. At this time, Defendants' counsel indicated that they would be "moving to quash" the subpoenas in the "jurisdictions where they have been noticed." Ex. 1 at 1. At this time, Plaintiffs' counsel requested Defendants to file the motions in this Court. After the motions were filed, Plaintiffs' counsel once

again requested Defendants' counsel to transfer the motions to this Court. Ex. 2 at 1-2. Defendants' counsel indicated that they would oppose such request, yet they now complain that they were forced "to file motions to quash in three different jurisdictions, with arguments that relied heavily on the lack of jurisdiction to authorize subpoenas and the pending motion to stay." Defs.' Memo. Supp. Stay, Dkt. 138 at 2.

On September 19, 2018, the United States District Court for the District of Puerto Rico denied Dowd's motion to quash the subpoena. *See Williams v. Big Picture Loans, LLC*, Case No. 3:18-cv-00557-PAD at Dkt. No. 20. In doing so, the court found that "Mr. Dowd's request does not satisfy the requirement of Rule 45(d)(3)" because "[c]ontrary to Mr. Dowd's self-serving contention that the subpoena subjects him to undue burden, the record before this court does not support that contention." *Id*. The court further observed that its "decision does not preclude the District Court for the Eastern District of Virginia from considering the merits—or lack thereof—of the motion to stay discovery" filed in this Court. As a result, Defendants continue to refuse to allow the deposition of Dowd to move forward.

On October 3, 2018, the United States District Court for the Western District of Michigan held a hearing on McFadden's motion to quash. *McFadden v. Williams*, Case No. 1:180-mc-00083-ESC. At the hearing, the court agreed that this issue should be addressed by this Court and entered an order on October 4, 2018, transferring McFadden's motion. Dkt. 14. Liang's motion is fully briefed and remains pending.

## <u>ARGUMENT</u>

**I.      Absent a complete stay of the case, *Lewis* forecloses any argument that tribal sovereign immunity prevents the depositions of McFadden, Liang, and Dowd with respect to their roles at Bellicose Capital and Eventide.**

Defendants ask the Court to prevent the depositions of McFadden, Liang, and Dowd due to their employment with Ascension Technologies, which began its operations in January 2016.

Prior to the restructure, McFadden, Liang, and Dowd were officers and minority shareholders of Bellicose, a non-tribal company. And post restructure, these individuals are officers and minority shareholders of Eventide, another non-tribal company. Despite the clear position taken by Plaintiffs during the meet and confer, Defendants ignore the multi-dimensional role of the witnesses for a reason—the Supreme Court's decision in *Lewis* forecloses any argument that tribal sovereign immunity completely bars the deposition of McFadden, Liang, and Dowd.

In *Lewis*, the Supreme Court considered a negligence action arising from a tribal employee operating a vehicle within the scope of his employment. *Lewis v. Clarke*, 137 S. Ct. 1285, 1291, (2017). Even though the employee acted within the scope of his employment and tribal law had an indemnification provision for its employees, the Court concluded that the negligence action was "simply a suit against [the employee] to recover for his personal actions, which 'will not require action by the sovereign or disturb the sovereign's property.'" *Id.* (quoting *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949)). The Court relied on its decisions regarding state and federal employees, reasoning that "[t]he protection offered by tribal sovereign immunity here is no broader than the protection offered by state or federal sovereign immunity." *Id.* at 1292.

The Court explained that "in the context of lawsuits against state and federal employees or entities, courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Id.* at 1290. Thus, "[t]he distinction between individual- and official-capacity suits is paramount here." *Id.* at 1291. "In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Id.* "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* (quoting *Hafer v. Melo*, 502 U.S. 21, 27 (1991)). "'[O]fficers sued in their personal capacity come

to court as individuals," and the real party in interest is the individual, not the sovereign.'" *Id.* (alteration in original) (citation omitted) (quoting *Hafer*, 502 U.S. at 27).

Here, even assuming McFadden, Liang, and Dowd are entitled to some claim of sovereign immunity with respect to their roles at Ascension, there can be no dispute concerning their testimony regarding their roles at Bellicose Capital and Eventide. To the extent Plaintiffs' subpoena seeks information in that respect, Defendants have no basis to argue Plaintiffs' subpoena is really a case against Ascension and, by extension, the Tribe. Plaintiffs' subpoena seeks this information in their individual capacity, and to the extent they seek it in any other capacity, the subpoena could only be considered to be against Bellicose Capital or Eventide—neither of which enjoys sovereign immunity.

Accordingly, Defendants have no basis to claim that either Ascension or the Tribe is the "real party in interest" to the extent the subpoena concerns Bellicose Capital and Eventide. *See Lewis*, 137 S. Ct. at 1291 ("The identity of the real party in interest dictates what immunities may be available."). The Supreme Court has flatly rejected similar attempts to improperly use sovereign immunity to "erect a barrier" against liability whenever a person can claim an association with a sovereign entity. *Id.* ("But sovereign immunity 'does not erect a barrier against suits to impose individual and personal liability.'" (quoting *Hafer*, 502 U.S. at 30–31). By extension, Defendants attempt to use McFadden's, Liang's, and Dowd's association with Ascension to protect them from testifying regarding their roles at Bellicose Capital and Eventide, should be rejected by this Court.

## II.    Tribal sovereign immunity does not prevent the deposition of tribal employees.

It is well established that Indian tribes enjoy sovereign immunity from "suits." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978). The Supreme Court has explained that "[t]he general rule is that a suit is against a sovereign if the judgment sought would expend itself on the public

treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the [sovereign] from acting, or to compel it to act." *Miccosukee Tribe of Indians of Florida v. United States*, 698 F.3d 1326, 1330 (11th Cir. 2012) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

Even though the definition of a "suit" is broad, the "service of a federal subpoena upon an employee of a tribal entity is neither a suit, nor an action against the tribe." *Fortune Bay Resort Casino*, 688 F. Supp. 2d at 875 (quoting *United States v. Juvenile Male 1*, 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006)). In rejecting a similar argument, the United States District Court for the District of Arizona explained:

> it can hardly be contended that federal or state sovereign immunity from suit has any application to the enforcement of a federal subpoena on the custodian of records of a state or federal agency. Federal subpoenas routinely issue to state and federal employees to produce official records or appear and testify in court and are fully enforceable despite any claim of immunity. *See, e.g., Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 778 (9th Cir.1994). Even the President of the United States must comply with a federal subpoena. *United States v. Nixon*, 418 U.S. 683, 713 (1974). ***It would be strange indeed if a federal subpoena were operative against the greater sovereign and its officers but not the lesser***. *See Cherokee Nation v. Southern Kan. Ry. Co.*, 135 U.S. 641, 656 (1890).

*Juvenile Male 1*, 431 F. Supp. 2d at 1016–17 (emphasis added); *see also Grand Canyon Skywalk Dev. LLC v. Cieslak*, No. 2:13-CV-00596-JAD, 2015 WL 4773585, at *7 (D. Nev. Aug. 13, 2015) (providing extensive analysis on the scope of sovereign immunity and finding that "tribal sovereign immunity does not bar enforcement of the deposition subpoena served" on an attorney "assisting the Tribe in carrying out its fundamental sovereign and legislative powers"), *aff'd*, No. 215CV00663JADGWF, 2016 WL 890921 (D. Nev. Mar. 7, 2016).

Although the Fourth Circuit and this Court have not addressed this issue, *Fortune Bay Resort Casino* and *Juvenile Male 1* are instructive with respect to the present dispute between the parties. Like these cases, Plaintiffs do not seek anything within the possession or control of the

10

tribe, nor do they seek to restrain the tribe or compel it to do anything. Moreover, the subpoenas could not possibly "interfere with the public administration [of the tribe]" because none of the proposed witnesses are tribal officials. *See, e.g., Dugan*, 372 U.S. at 620; *see also Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1161–62 (10th Cir. 2014) (explaining that "Although we agree with the Eighth Circuit's holding as to the immunity enjoyed by the Tribe itself, we need not decide whether a tribal official is also immune from an appropriate federal discovery request. Indeed, we see no reason why an Indian tribe should be able to 'shut off an appropriate judicial demand for discovery' served on a tribal official, rather than against the Tribe itself.").

Indeed, the justifications for and policy concerns underlying sovereign immunity are entirely absent where, as here, none of the proposed witnesses are tribal officials or even tribal members. No concern exists over the "duties" of a government official are at stake given the role of Ascension, which does not employ any tribal members or officials. *See* July 27, 2018 Memo. Opinion, Dkt. 146 at 62. There is likewise no litigation-driven "heavy cost" that would jeopardize the "valuable time and resources" of tribal officials that "might otherwise be directed to the proper execution of the work" of any government, especially because the proposed witnesses must *inevitably* appear to answer deposition questions regarding class certification issues revolving around Bellicose and Eventide. Finally, to the extent McFadden, Liang, and Dowd have information concerning Ascension based on their roles at Bellicose Capital and Eventide, that information would certainly not be protected for the reasons discussed in Part I.

Accordingly, absent a complete stay, Plaintiffs should be allowed to move forward with the depositions of McFadden, Liang, and Dowd.

### III.     Plaintiffs were permitted to issue a Rule 45 subpoena to McFadden, Liang, and Dowd.

Finally, Defendants contend that Plaintiffs impermissibly sought to obtain discovery via Rule 45, as opposed to Rule 30(b)(1). As explained above, however, Plaintiffs only served the subpoenas pursuant to Rule 45 because Defendants' counsel would not accept service of the deposition notices pursuant to Rule 30(b)(1). Ex. 2 at 1-3. Plaintiffs also served the Rule 45 subpoena because they intended to seek discovery from the witnesses in connection with their roles at Bellicose and Eventide; not simply in their capacity as employees of Ascension. Accordingly, Defendants' complaint is one of form over substance as Plaintiffs employed a "belt and suspenders" approach based on Defendants' refusal to acknowledge service of the subpoenas.[4]

Respectfully submitted,
**PLAINTIFFS**


_/s/ Kristi C. Kelly_
Counsel

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Fax: (703) 591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
_Counsel for Plaintiffs_

---

[4] Defendants selectively quote three cases out of context to support their position that the issue of a subpoena was improper under the circumstances of this case. One case involved a subpoena issued _after the Court entered an order staying the case_; not while a request to stay was pending. _Wade v. City of Fruitland_, 287 F.R.D. 638, 643 (D. Idaho 2013). Another involved an attempt to issue a deposition subpoena on an employee of a defendant _after the discovery cutoff. Golden v. Mentor Capital, Inc._, No. 2:15-CV-00176-JNP, 2017 WL 5151350, at *2 (D. Utah Nov. 3, 2017). And the third authority, a treatise, states that a subpoena should not be used to obtain documents _from a party. See_ 7 _Moore's Federal Practice_ § 34.02[5][e] (3d ed.).

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th of October 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

                                       */s/*_____
Kristi Cahoon Kelly, Esq. (VSB #72791)
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Tel: 703-424-7572
Fax: 703-591-0167
Email: kkelly@ kellyandcrandall.com
*Counsel for the Plaintiffs*