THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| JOETTE PETE, | ) | |
| | ) | **UNREDACTED** |
| Movant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:19-mc-26 (REP) |
| | ) | |
| BIG PICTURE LOANS, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| LULA WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17-cv-461 (REP) |
| | ) | |
| BIG PICTURE LOANS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| RENEE GALLOWAY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:18-cv-406 (REP) |
| | ) | |
| BIG PICTURE LOANS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MATT MARTORELLO'S MEMORANDUM IN SUPPORT OF MOTION
UNDER RULE 30(d) FOR FURTHER DEPOSITION BASED ON
CONDUCT THAT IMPEDED QUESTIONING
AND FOR EXPEDITED RULING[1]**

---

[1] Matt Martorello files this motion and memorandum in case numbers 3:19-mc-26, 3:17-cv-461, and 3:18-cv-406, because the deposition at issue was subject to a motion to quash in case number 3:19-mc-26, but the deposition was for discovery purposes in case numbers 3:17-cv-461 and 3:18-cv-406.

Matt Martorello ("Martorello"), by counsel and pursuant to Rule 30(d) of the Federal Rules of Civil Procedure, submits the following as his Memorandum in Support of Motion under Rule 30(d) for Further Deposition Based on Conduct that Impeded Questioning and for Expedited Ruling:[2]

### Introduction

During the deposition of Joette Pete, Plaintiffs' counsel impermissibly and belligerently used baseless objections as grounds to encourage Ms. Pete not to testify about information she reported to the FBI about certain tribal officials and potentially others, including, Martorello. Notably, appearing to realize that Plaintiffs' counsel's objections were improper, Ms. Pete's counsel did not object to the deposition questioning until prodded by Plaintiffs' counsel to do so, and even then, Ms. Pete's counsel did not instruct his client not to answer. Rather, it was Plaintiffs' counsel that asked everyone to ignore counsel for Martorello's questions, taking it upon himself to raise a non-existent privilege and to instruct Martorello's counsel not to go further:

> I'm asking everyone here to ignore those questions. . . . It's clearly privileged.  It is clearly -- an informant providing unrelated information to a law enforcement agency is privileged.  You can't go further.

(Confidential Rough Pete Depo. Tr. at 16:8-17, attached as Ex. A).  Despite the fact that her own lawyer never instructed her not to answer, Ms. Pete, apparently heeding Plaintiffs' counsels' request that she ignore counsel for Martorello's questions, chose not to do so as a result of Plaintiffs' counsel's improper interference.  By their conduct, which speaks for itself and is set

---

[2] Given the schedule of this matter and the need to complete discovery sufficiently in advance of the July 21-22, 2020 evidentiary hearing in *Williams et al. v. Big Picture Loans, LLC, et al.,* E.D. Va. Civil Action No. 3:17-cv-00461-REP and *Galloway et al. v. Big Picture Loans, LLC,* E.D. Va. Civil Action No. 3:18-cv-406-REP, Martorello asks that the Court order Plaintiffs to respond to this motion on an expedited basis of not less than 6 days after the filing of this Motion.

2

forth in detail below, Plaintiffs' counsel impeded the deposition of Ms. Pete and should be sanctioned for doing so. Martorello asks the Court to enter an order permitting Ms. Pete's deposition to continue for up to two additional hours to explore the topics that were impeded; to order Ms. Pete to answer questions within the scope of her reports to the FBI; and, to award the cost of this Motion and the continued deposition to Martorello, to be paid by counsel for Plaintiffs.

**Background**

On May 26, 2020, Martorello's counsel deposed Joette Pete pursuant to a subpoena that was previously the subject of a Motion to Quash originally filed in the District of Minnesota, but transferred to this Court. (the "Motion to Quash," ECF No. 1-2.) The parties resolved the Motion to Quash and the Court ordered Ms. Pete to be deposed no later than May 29, 2020. The merits of the Motion to Quash are not at issue here, as the conduct that led to this motion concerns objections asserted for the first time during the deposition.

Several times during her deposition, Ms. Pete testified that she provided to the Federal Bureau of Investigation ("FBI") certain documents related to the lawsuit against Martorello. (*See, e.g.,* Non-Confidential Rough Pete Depo. Tr. at 60:20-23, attached as Ex. B.)[3] When questioned about the subject matter of her meetings with the FBI, Ms. Pete acknowledged that she met with the FBI about "this case" and others, but refused to answer questions about what she may have told the FBI. After taking a break from the deposition to meet with her own counsel, Ms. Pete testified that she "talked to the FBI with regards to other crimes that have occurred on the

---

[3] At this time, only the rough version of the Joette Pete Deposition Transcript is available. When the final version becomes available, counsel will submit it upon the Court's request.

reservation, but with respect to this case, [there are only those two times] that I stated that I spoke with them." (Ex. A at 5:14-18.) The following series of questions and objections then ensued:[4]

      MR. SCHEFF:      Okay. What other crimes on the reservation have you spoken to the FBI about?

      MS. DRAKE:      I object. This is far afield from anything that's relevant, Mr. Scheff.

      MR. SCHEFF:      It goes to bias and prejudice.

      MS. DRAKE:      Well, it only goes to bias and prejudice if those crimes have anything to do with anything related to this case for which you've laid no foundation. This is an obviously extremely sensitive potentially [sic] subject matter and I object to this line of questioning. And I don't know if Mr. Pattni has anything that he wants to say. He may know what Ms. Pete is about to testifying [sic] about, but I object. I think you're far afield.

      MR. SCHEFF:      You stated your objection on the record. It's on the record clearly.

BY MR. SHEFF:

      Q.      Ms. Pete, what other crimes on the reservation?

      MR. PATTNI:      Thank you, Mr. Scheff. On Ms. Pete's behalf, too, I'm also objecting on relevancy grounds. I think we are getting far afield. If Ms. Pete wants to provide an answer, you know, she can, but I did -- I think we are getting a little off base here.

      MR. SCHEFF:      Relevancy is not a reason not to have a witness answer a question.

      MS. DRAKE:      All of her contacts with law enforcement are not relevant and they're not even close to being relevant. To get questioned about in any case any more than someone who's spoken with the FBI about other criminal matters is going to get questioned about that in any case. I think you're doing this to try to intimidate her and ask her about sensitive matters and I want that clearly on the record.

---

[4] It may be appropriate for the Court to review the recordings of the deposition to have a full appreciation of the belligerent and disruptive manner in which Plaintiffs' counsels' meritless objections—which are not conveyed through the written transcript—impeded the deposition. Accordingly, Martorello submits under seal as Exhibit C the relevant portion of the video recording of the foregoing exchange during Ms. Pete's deposition.

      MR. SCHEFF:      It's on the record, Ms. Drake.  I've asked a question.  I've stated the reason.  You've noted your objection.

BY MR. SCHEFF:

      Q.      Ms. Pete, are you going to answer my question?

      MS. DRAKE:      You'd laid no foundation for this whatsoever.  This is just harassment at this point.

BY MR. SCHEFF:

      Q.      Are you going to answer my question?

      A.      I did answer your question with respect to this case.

      Q.      What other crimes that you say occurred on the reservation have you spoken to the FBI about?

      MS. DRAKE:      I don't believe she has any obligation to answer that question.

      MR. SCHEFF:      You know, Ms. Drake, you've made your record.  Right now You're just interfering with the testimony.

      MS. DRAKE:      You're harassing a witness.

(Ex. A at 5:20-8:9.)  After a further break from the deposition to speak with her lawyer, Ms. Pete's deposition continued as follows:

      MR. PATTNI:      So Mr. Scheff, I had a conversation with Ms. Pete about the line of questioning.  At this time, she does not want to discuss and we're not going to about any other investigations she's talked to the FBI.  I can do a little inquiry of her to let you know that there -- any other conversation she had with law enforcement were not related to this lending scheme, this lawsuit, any of the defendants in any way related to this matter.  She'd be happy to answer questions if the judge pushes it in camera, but we're kind of going down a sensitive path here and I don't think it's relevant or necessary for her to do it today.

      MR. SCHEFF:      Are you directing her not to answer the question?

      MR. PATTNI:      I told her to use her best judgment.  We're getting far afield here, so --

MS. DRAKE: She's not answering the question. My understanding of the record is that she's not answering the question, and I think it's certainly appropriate for her to refuse to do that.

. . . .

MR. SCHEFF: I'm not trying to intimidate the witness. As I said, it's relevant to bias and prejudice.

MS. DRAKE: It's not when you've already been told that it's completely unrelated to the subject matter.

MR. SCHEFF: Can I finish without you cutting me off as you typically do?

BY MR. SCHEFF:

Q. Ms. Pete, do any of these other investigations have anything to do with Chairman Williams?

MS. DRAKE: I'm going to just object. I think that anything that Ms. Pete is required to answer about any ongoing investigations with law enforcement should be handled by Judge Payne off the record in chambers. I think she has --

MR. SCHEFF: There's no evidence that this is an ongoing investigation, number one. Number two, there's no prohibition about asking a witness about their contacts with law enforcement. There's no law that prohibits that in any way, shape or form, no rule that prohibits that in any way, shape or form.

BY MR. SCHEFF:

Q. Ms. Pete, did any of the other supposed criminal matters that occurred on the reservation that you reported to the FBI relate to Chairman Williams?

MS. DRAKE: Again, I object.

MR. PATTNI: Do you need to talk to me a little bit more?

THE WITNESS: I'm just not going to answer that.

BY MR. SCHEFF:

Q. You're not going to answer the question?

  A.  No.

  Q.  Okay. Did any of the other criminal matters that you talked to the FBI about relate to Michelle Hazen?

  A.  I'm not going to answer that.

  Q.  Did any of the other criminal matters -- alleged criminal matters that you talk to the FBI about relate to Matt Martorello?

  A.  I'm not going to answer that.

  Q.  Did any of the other criminal matters -- alleged criminal matters that you spoke to the FBI about --

  MR. BENNETT:  Stop. Stop. This is Len Bennett. Enough. Enough. I'm going to get the judge on the phone. I don't know how you do things in Philadelphia. I don't -- no. No. Stop. I'm talking. You will not on a deposition where I'm the Virginia licensed lawyer have two lawyers tell you they object, have a witness say she's not going to answer and because you, you think that you know more about representing the criminal that [*sic*] everyone else that you're going to continue to proceed and ignore those.

  MR. SCHEFF:  Mr. Bennett, I'm making my record.

  MR. BENNETT:  No. Enough. Enough. Enough. Richard. I will take the heat. I will pay the fees if you ask one more -- listen to me.

  MR. SCHEFF:  No, I'm not going to listen to you.

  MR. BENNETT:  You stop and you listen, you listen to me. You listen to me.

  MR. SCHEFF:  I want to make my record.

  MR. BENNETT:  No. No. I am talking. You can make your record when I'm done. That's the way it works. Got it?

  MR. SCHEFF:  Mr. Bennett, you interrupted me while I was making my record, so --

  MR. BENNETT:  You were not making your record. You were not making your record. You were continuing to --

  MR. SCHEFF:  Yes, I was. I was making my record.

MR. BENNETT: Okay. Put your fingers in your ear and stick your tongue out and go I'm not going to listen. Do what you want to do, Richard, but I'm talking. So here's the way it'll work. You say everything you want to say right now. Nobody will respond. Nobody say anything to Richard. Richard talk as long as you want. When you're done, then I will say stuff on the record and that way the court reporter can take turns typing Richard Scheff, Leonard Bennett. So go. It's on you. You tell us when you're done with your record.

MR. SCHEFF: I'm making my record with the witness, Mr. Bennett, because I need to do that in order to preserve the issue. So I was asking a series of questions of a witness and she was refusing to answer. And I'm going to continue to do that to make my record. If she chooses not to answer, that's up to her.

MR. BENNETT: No, it's not up to her. Her lawyer has told you, the plaintiffs' counsel has told you. I get that you don't do a lot of this stuff in Virginia, but we follow the Federal Rules of Civil Procedure.

MR. SCHEFF: I am following --

MR. BENNETT: There's an -- Richard, it's my turn. You have objections and statements that the witness is not going to talk about this subject matter, which is, by the way, an informant has informed the Federal Bureau of Investigation of possible criminal activity unrelated to online lending and now you want to use this deposition in order to, as you say, learn about bias that the witness has. . . . All right. I'm done talking. You will not ask another question about this. If you ask any question about this, I'm asking everyone here to ignore those questions. . . . It's clearly privileged. It is clearly -- an informant providing unrelated information to a law enforcement agency is privileged. You can't go further.

MR. SCHEFF: Mr. Bennett, it's not privileged. Ms. Drake made an objection earlier saying I had not laid a foundation as to why that these questions related to bias and prejudice and so I was laying that foundation when you interrupted me. The witness has not been directed not to answer the question. She's choosing not to answer the question, so I'm making my record so I can present it to Judge Payne accordingly. That's all I'm doing.

MS. DRAKE: Well, my view is that your questions as to the people to whom anything she may have conveyed to the FBI relates or does not relate invade what I believe is a privilege called the informer privilege, and I believe that the basis for her refusal to answer these questions is linked to an important governmental interest and that your efforts to force her into answer[ing] these questions are intimidating and harassing in violation of the federal rules.

….

8

(Ex. A at 8:23-17:14.) Ms. Pete thereafter answered no questions about what she reported to the FBI based on Mr. Bennett's assertion that such testimony was "clearly privileged" because it involves "an informant providing unrelated information to a law enforcement agency." (Ex. A at 16:14-16.)

Based on the foregoing, Martorello seeks to reopen Ms. Pete's deposition so that his counsel may explore this line of questioning concerning any bias Ms. Pete may have against him or tribal officials based on crimes she perceives occurred on the reservation. Specifically, Martorello seeks an additional two hours of deposition time limited to the scope of her reporting any crimes on the LVD reservation related to any defendant in the underlying lawsuits. Moreover, Martorello seeks an award of his fees and costs in pursuing this motion and in further deposition of Ms. Pete.

### **Applicable Rules of Law**

Rule 30(c)(2) provides that objections during a deposition:

> must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(2).

Rule 30(d)(1) of the Federal Rules of Civil Procedure provides further that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court *must* allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes . . . the examination." (Emphasis added). Rule 30(d)(2) further provides for sanctions "including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes . . . or frustrates the fair examination of the deponent." The Advisory Committee Notes to the 1993

9

Amendments to Rule 30 explain that this provision was designed to deal with "[d]epositions that have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond."

## Argument

Plaintiffs' counsels' conduct at Ms. Pete's deposition speaks for itself and constitutes an extreme example of attorneys impeding a deposition. They invoked an "informer's privilege" held, if at all, by the government, not the witness. Even if Ms. Pete could invoke the privilege, Plaintiffs' counsel had no standing to do so on her behalf. It was not their ox being gored. Ms. Pete's own counsel never instructed her not to answer Mr. Scheff's questions, instead making clear on the record that it was the witness's choice not to answer the questions about her reports of tribal activities to the FBI. Plaintiffs' counsels' lengthy, needlessly dramatic attempts to repeatedly block Ms. Pete from testifying on her reports to the FBI violated Rule 30(d) and served only one purpose—discouraging her from testifying. Moreover, the extensive speaking objections interfered with Mr. Scheff's efforts to make a record of what questions Ms. Pete would or would not answer, thus violating Rule 30(c). For these reasons, the Court should order Ms. Pete's deposition to recommence for up to an additional two hours to question her about reports of tribal activity she provided to the FBI, and that she be directed to answer the questions asked within the scope of this area of inquiry. Moreover, given their conduct that necessitated this motion, Plaintiffs' counsel should be required to pay Martorello's costs and reasonable attorneys' fees incurred in pursuit of this Motion and the continued deposition as permitted by Rule 30(d)(2).

As a preliminary matter, there is no evidence to support Plaintiffs' claim that Ms. Pete is an informant of the FBI, and the context of her testimony suggests otherwise. "An informant is someone who provides evidence against someone else for a personal reason or advantage." *United*

*States v. Smith*, 2007 U.S. Dist. LEXIS 27997, at *43 (D. Kan. April 13, 2007). Without first establishing that Ms. Pete was working with the FBI as an informant, *i.e.* for some personal reason or advantage, it does not appear that any privilege could conceivably exist.

Assuming that Ms. Pete could establish that her testimony may be governed by the informer's privilege (which she cannot), she is still not entitled to invoke the privilege. "What is usually referred to as the informer's privileged is in reality the Government's privilege to withhold from disclosure *the identity* of persons who furnish information of violations of law to officers charged with enforcement of that law." *Rovario v. U.S.*, 353 U.S. 53, 59 (1957) (emphasis added) (citing *Scher v. U.S.*, 305 U.S. 251, 254 (1938)); *accord U.S. v. Fagot-Maximo*, 795 Fed. App'x 213, 215 (4th Cir. 2020) ("[T]he 'informer's privilege' allows the Government 'to withhold from disclosure the identity of persons who furnish information about crimes to law enforcement.'") (quoting *U.S. v. Bell*, 901 F.3d 455, 466 (4th Cir. 2018)).

> The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, *once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable*.

*Id.* at 60 (emphasis added).

Neither Mr. Bennett nor Ms. Drake are counsel for the FBI or any other agency of the United States Government. They are not even Ms. Pete's counsel, who correctly refrained from invoking a privilege that cannot be invoked by his client. That Plaintiffs' counsel are twice removed from the party who may invoke the privilege—the Government—highlights the frivolous nature of the objections that led to this motion.

Under these facts, even the Government could not invoke the informer's privilege, as it was lost as soon as Ms. Pete's identity was revealed. The privilege does not protect the substance

11

of information provided to law enforcement, but the *identity* of the informer. *Fagot-Maximo*, 795 Fed. App'x at 215 ("[T]he informer's privilege allows the Government to withhold from disclosure *the identity* of persons who furnish information about crimes to law enforcement.") (citations and internal quotation marks omitted) (emphasis added); *see also Henrik Mannerfrid, Inc. v. Teegarden*, 23 F.R.D. 173, 177 (S.D.N.Y. 1959) ("Only the identity of the informer is protected by the privilege"). In short, Plaintiffs' counsel interfered with a deposition of a critical witness by invoking a privilege that belongs neither to them nor the witness and that was lost as soon as Ms. Pete disclosed her contact with the FBI. The extensive objections were as frivolous as they were loud and longwinded.

Indeed, it is not uncommon for district courts in the Fourth Circuit to order the disclosure of communications with law enforcement in civil discovery, and inquiry about the contents of such communications are particularly well-suited for deposition. *See, e.g., Bonumose Biochem, LLC v. Zhang*, No. 2018 WL 10068639, at *4 (W.D. Va. Sept. 10, 2018) (ordering party to identify all oral communions between a federal, state, or local law enforcement agency and a party, with "[f]urther inquiry into the details of any communication [to] be done through deposition.").

Without any basis to invoke a privilege on behalf of Ms. Pete, Plaintiffs' counsel violated Rule 30(c)(2) by preventing Ms. Pete from answering the questions that Mr. Scheff properly asked.

To the extent that Ms. Drake's objections to lack of foundation or relevance could stand (Ex. A. at 6:2-5), such objections are not a reason to preclude a witness from answering the questions in the first instance. Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."). And, these objections were neither "concise" nor

"nonargumentative" as Rule 30(c)(2) requires, and they expressly sought to influence the witness to refuse to answer questions even when her own counsel had not instructed her not to answer.

Finally, to the extent Ms. Drake's objection on harassment grounds could be considered a basis to interfere with her testimony (Ex. A at 7:18-19), just like the privilege issue, it was for Ms. Pete's attorney to assert that objection, not Plaintiffs' counsel. Ms. Pete is not their client. Moreover, questions that seek information about bias or prejudice against another are permissible inquiries of discovery. *See Behler v. Hanlon*, 199 F.R.D. 553, 561 (D. Md. 2001) ("[E]xamples of bias/prejudice…[are] squarely within the scope of discovery authorized by Rule 26(b)(1), in either its present, or immediately preceding version."). Otherwise, counsel would be limited in its ability to obtain impeachment evidence—just as Mr. Scheff was limited by Plaintiffs' counsel here. If Ms. Pete's lawyer wished to instruct his client due to perceived harassment, Rule 30(c)(2) would permit such instruction "only when necessary…to present a motion under Rule 30(d)(3)" to terminate or limit the deposition. *See, e.g.*, *Cincinnati Ins. Co. v. Serrano*, 2012 U.S. Dist. LEXIS 1363, at * 14-15 (D. Kansas Jan. 5, 2012) (citing *Layne Christiansen Co. v. Bro-Tech Corp.*, 2011 U.S. Dist. LEXIS 116174 (D. Kan. 2011) for the proposition that non-privilege objections are not grounds to withhold a response under Rule 30(d)(3) when no relief is sought). That Mr. Pattni never sought such relief is dispositive—there is no basis for Plaintiffs' counsel to have instructed Ms. Pete not to answer the line of questioning based on harassment without seeking relief, which was not sought here.

## Conclusion

Plaintiffs' counsel had no standing to object on the grounds of any "informer's privilege." And even if they had standing to do so, the privilege was not properly invoked here. Rather, it was used merely as a tool to discourage Ms. Pete's testimony about what she may or may not have said

13

to the FBI.  It was a frivolous motion in terms of who can assert it, whose counsel can assert it, and whether it permits withholding evidence (as opposed to identity).  Each of Plaintiffs' counsels' other objections served no basis to prohibit Ms. Pete from testifying about a fairly serious form of bias—the belief that tribal authorities were engaged in criminal activity.  For these reasons, the Court should order Ms. Pete to submit to further deposition of two additional hours, be ordered to answer questions within the scope of what she may have disclosed to the FBI, and Plaintiffs' counsel should be ordered to pay the reasonable attorneys' fees and costs incurred in pursuit of this Motion and the further deposition of Ms. Pete.

Respectfully submitted,

MATT MARTORELLO

By: /s/ *John M. Erbach*
M. F. Connell Mullins, Jr. (VSB No. 47213)
Email: cmullins@spottsfain.com
Hugh McCoy Fain, III (VSB No. 26494)
Email: hfain@spottsfain.com
John Michael Erbach (VSB No. 76695)
Email: jerbach@spottsfain.com
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone: (804) 697-2000
Facsimile:  (804) 697-2100

Richard L. Scheff (admitted *pro hac vice*)
ARMSTRONG TEASDALE, LLP
2005 Market Street
29th Floor, One Commerce Square
Philadelphia, PA 19103
Telephone: 267.780.2000
Facsimile: 215.405.9070
Email: rscheff@ armstrongteasdale.com

Michelle Lynne Alamo (admitted *pro hac vice*)
ARMSTRONG TEASDALE, LLP
4643 S. Ulster Street, Suite 800
Denver, CO 80237
Telephone: 720.722.7189

14

Facsimile: 720.200.0679
Email: malamo@armstrongteasdale.com

*Counsel for Defendant Matt Martorello*

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on this 3rd day of June, 2020, the foregoing was filed using the Court's CM/ECF system, thereby serving a copy on all counsel of record electronically.

By:/s/  *John M. Erbach*
John M. Erbach (VSB No. 76695)
jerbach@spottsfain.com
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone: (804) 697-2000
Facsimile:  (804) 697-2100