# EXHIBIT A

**(Filed Under Seal)**

1

**ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1    UNCERTIFIED TRANSCRIPT IN THE MATTER OF:

2 -------------------------------------------------

3 WILLIAMS, ET AL.

4 VS.

5 BIG PICTURE LOANS, ET AL.

6 -------------------------------------------------

7 GALLOWAY, ET AL.

8 VS.

9 BIG PICTURE LOANS, ET AL.

10 -------------------------------------------------

11        **CONFIDENTIAL - ATTORNEYS' EYES ONLY**

12                  - - -

13          The following transcript of

14 proceedings, or any portion thereof, in the

15 above-entitled matter, taken on May 26, 2020, is

16 being delivered UNEDITED and UNCERTIFIED by the

17 court reporter.

18          The purchaser agrees not to disclose

19 this uncertified and unedited transcript in any

20 form (written or electronic) to anyone who has no

21 connection to this case.

22          This is an unofficial transcript,

23 which should NOT be relied upon for purposes of

24 verbatim citation of testimony.

2

**ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1           This transcript has not been checked,

2 proofread or corrected.  It is a draft

3 transcript, NOT a certified transcript.  As such,

4 it may contain computer-generated mistranslations

5 of stenotype code or electronic transmission

6 errors, resulting in inaccurate or nonsensical

7 word combinations, or untranslated stenotype

8 symbols which cannot be deciphered by

9 non-stenotypists.  Corrections will be made in

10 the preparation of the certified transcript,

11 resulting in differences in content, page and

12 line numbers, punctuation and formatting.

13           This uncertified and unedited

14 transcript contains no appearance page,

15 certificate page, index or certification.

16              - - -

17 BY MR. SCHEFF:

18    Q.      And so you mentioned the FBI a few

19 times in your testimony today.  Did you reach out

20 to the FBI or did the FBI reach out to you?

21    A.      I reached out to the FBI.

22    Q.      And what office did you contact?

23    A.       Marquette, Michigan.

24    Q.       And what happened when you contacted

3
**ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1 the Marquette, Michigan office of the FBI?

2    A.       They asked to meet with me.

3    Q.       And when approximately -- did you meet

4 with them?

5    A.       Yes.

6    Q.       When approximately did that occur?

7    A.       I don't remember.

8    Q.       Was it around the same time you were

9 speaking to Mr. Faux?

10    A.       No.

11    Q.       Was it before you spoke to Mr. Faux or

12 after you spoke to Mr. Faux?

13    A.       I don't remember.

14    Q.       Okay.  And how many times did you meet

15 with the FBI?

16    A.       Several times.  I don't know the exact

17 number.

18    Q.       All in Marquette?

19    A.       No.

20    Q.       Where else did you meet with the FBI?

21    A.       My home.

22    Q.      Your home in Watersmeet?

23    A.      Yes.

24    Q.      How many times did you meet with the

4

**ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1 FBI in Watersmeet?

2    A.      I believe once.

3    Q.      And how many times did you meet with

4 the FBI in Marquette?

5    A.      I believe once.

6    Q.      Did you meet with the FBI anywhere else

7 other than in Watersmeet or Marquette on those

8 two occasions that you just testified about?

9    A.      With respect to this case?

10   Q.      Yes, with respect to --

11   A.      Not that I can recall.

12   Q.      Okay.  Have you met with the FBI with

13 respect to other cases as well?

14   A.      Yes.

15   Q.      What cases have you met with the FBI

16 about other than this case?

17   A.      I don't want to answer that.

18   Q.      You don't want to answer that.  Why

19 not?

20            MR. PATTNI:  Do you need to take a

21 break to talk to me?

22                THE WITNESS:  Yes.

23                MR. SCHEFF:  Okay.  Sure.

24                THE VIDEOGRAPHER:  2:22 p.m.  Off

                                           5
        **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1 the record.

2                (Recess.)

3                THE VIDEOGRAPHER:  The time is

4 2:29 p.m.  We're on the record.

5 BY MR. SCHEFF:

6    Q.     Ms. Pete, are you going to answer my

7 question or not?

8    A.     Can you repeat the question, please?

9    Q.     Yeah.  I asked -- you had said that you

10 had talked to the FBI about more than just this

11 case and I asked what other cases?

12               MS. DRAKE:  I'm going to object to

13 that.

14               THE WITNESS:  I talked to the FBI

15 with regards to other crimes that have occurred

16 on the reservation, but with respect to this

17 case, those are the times that I stated that I

18 spoke with them.

19 BY MR. SCHEFF:

20    Q.      Okay.  What other crimes on the

21 reservation have you spoken to the FBI about?

22              MS. DRAKE:  I object.  This is far

23 afield from anything that's relevant, Mr. Scheff.

24              MR. SCHEFF:  It goes to bias and

                                              6
          **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1 prejudice.

2              MS. DRAKE:  Well, it only goes to

3 bias and prejudice if those crimes have anything

4 to do with anything related to this case for

5 which you've laid no foundation.  This is an

6 obviously extremely sensitive potentially subject

7 matter and I object to this line of questioning.

8 And I don't know if Mr. Pattni has anything that

9 he wants to say.  He may know what Ms. Pete is

10 about to testifying about, but I object.  I think

11 you're far afield.

12              MR. SCHEFF:  You stated your

13 objection on the record.  It's on the record

14 clearly.

15 BY MR. SCHEFF:

16    Q.      Ms. Pete, what other crimes on the

17 reservation?

18              MR. PATTNI:  Thank you, Mr. Scheff.

19 On Ms. Pete's behalf, too, I'm also objecting on

20 relevancy grounds.  I think we are getting far

21 afield.  If Ms. Pete wants to provide an answer,

22 you know, she can, but I did -- I think we are

23 getting a little off base here.

24             MR. SCHEFF:  Relevancy is not a

                                          7
         **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1 reason not to have a witness answer a question.

2             MS. DRAKE:  All of her contacts

3 with law enforcement are not relevant and they're

4 not even close to being relevant.  To get

5 questioned about in any case any more than

6 someone who's spoken with the FBI about other

7 criminal matters is going to get questioned about

8 that in any case.  I think you're doing this to

9 try to intimate her and ask her about sensitive

10 matters and I want that clearly on the record.

11             MR. SCHEFF:  It's on the record,

12 Ms. Drake.  I've asked a question.  I've stated

13 the reason.  You've noted your objection.

14 BY MR. SCHEFF:

15    Q.     Ms. Pete, are you going to answer my

16 question?

17             MS. DRAKE:  You'd laid no

18 foundation for this whatsoever.  This is just

19 harassment at this point.

20 BY MR. SCHEFF:

21    Q.      Are you going to answer my question?

22    A.      I did answer your question with respect

23 to this case.

24    Q.      What other crimes that you say occurred

                                          8
            **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

 1 on the reservation have you spoken to the FBI

 2 about?

 3              MS. DRAKE:  I don't believe she has

 4 any obligation to answer that question.

 5              MR. SCHEFF:  You know, Ms. Drake,

 6 you've made your record.  Right now you're just

 7 interfering with the testimony.

 8              MS. DRAKE:  You're harassing a

 9 witness.

10              MR. SCHEFF:  I'm not harassing.

11 I've stated the basis.  You don't like it.  I

12 understand that, but I've stated the basis.

13 BY MR. SCHEFF:

14    Q.      Ms. Pete, can you answer the question?

15              MR. PATTNI:  Ms. Pete wants to talk

16 to me again real quick.

17                 MR. SCHEFF:  That's fine.

18                 THE VIDEOGRAPHER:  The time is

19 2:32 p.m.  We're off the record.

20                 (Recess.)

21                 THE VIDEOGRAPHER:  2:43 p.m.  We're

22 on the record.

23                 MR. PATTNI:  So Mr. Scheff, I had a

24 conversation with Ms. Pete about the line of

↟
                                    9
        **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

 1 questioning.  At this time, she does not want to

 2 discuss and we're not going to about any other

 3 investigations she's talked to the FBI.  I can do

 4 a little inquiry of her to let you know that

 5 there -- any other conversation she had with law

 6 enforcement were not related to this lending

 7 scheme, this lawsuit, any of the defendants in

 8 any way related to this matter.  She'd be happy

 9 to answer questions if the judge pushes it in

10 camera, but we're kind of going down a sensitive

11 path here and I don't think it's relevant or

12 necessary for her to do it today.

13                 MR. SCHEFF:  Are you directing her

14 not to answer the question?

15                 MR. PATTNI:  I told her to use her

16 best judgment.  We're getting far afield here,

17 so --

18              MS. DRAKE:  She's not answering the

19 question.  My understanding of the record is that

20 she's not answering the question, and I think

21 it's certainly appropriate for her to refuse to

22 do that.  These are about potentially law

23 enforcement investigations with the FBI, which

24 you now have on the record are unrelated to this

                                    10
          **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

 1 business or the individuals involved in the

 2 business.

 3              And we certainly on behalf of

 4 plaintiffs would support any further inquiry into

 5 these kinds of matters being made only in camera

 6 and only with Judge Payne.  I think that this is

 7 pure harassment at this point trying to

 8 intimidate this witness by asking her about other

 9 contact she's had with law enforcement.

10              MR. SCHEFF:  I'm not trying to

11 intimidate the witness.  As I said, it's relevant

12 to bias and prejudice.

13              MS. DRAKE:  It's not when you've

14 already been told that it's completely unrelated

15 to the subject matter.

16              MR. SCHEFF:  Can I finish without

17 you cutting me off as you typically do?

18 BY MR. SCHEFF:

19    Q.     Ms. Pete, do any of these other

20 investigations have anything to do with Chairman

21 Williams?

22              MS. DRAKE:  I'm going to just

23 object.  I think that anything that Ms. Pete is

24 required to answer about any ongoing

                                        11
         **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

 1 investigations with law enforcement should be

 2 handled by Judge Payne off the record in

 3 chambers.  I think she has --

 4              MR. SCHEFF:  There's no evidence

 5 that this is an ongoing investigation, number

 6 one.  Number two, there's no prohibition about

 7 asking a witness about their contacts with law

 8 enforcement.  There's no law that prohibits that

 9 in any way, shape or form, no rule that prohibits

10 that in any way, shape or form.

11 BY MR. SCHEFF:

12    Q.     Ms. Pete, did any of the other supposed

13 criminal matters that occurred on the reservation

14 that you reported to the FBI relate to Chairman

15 Williams?

16                MS. DRAKE:  Again, I object.

17                MR. PATTNI:  Do you need to talk to

18 me a little bit more?

19                THE WITNESS:  I'm just not going to

20 answer that.

21 BY MR. SCHEFF:

22    Q.     You're not going to answer the

23 question?

24    A.     No.

                                    12
             **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

 1    Q.     Okay.  Did any of the other criminal

 2 matters that you talked to the FBI about relate

 3 to Michelle Hazen?

 4    A.     I'm not going to answer that.

 5    Q.     Did any of the other criminal

 6 matters -- alleged criminal matters that you talk

 7 to the FBI about relate to Matt Martorello?

 8    A.     I'm not going to answer that.

 9    Q.     Did any of the other criminal

10 matters -- alleged criminal matters that you

11 spoke to the FBI about --

12                MR. BENNETT:  Stop.  Stop.  This is

13 Len Bennett.  Enough.  Enough.  I'm going to get

14 the judge on the phone.  I don't know how you do

15 things in Philadelphia.  I don't -- no.  No.

16 Stop.  I'm talking.  You will not on a deposition

17 where I'm the Virginia licensed lawyer have two

18 lawyers tell you they object, have a witness say

19 she's not going to answer and because you, you

20 think that you know more about representing the

21 criminal that everyone else that you're going to

22 continue to proceed and ignore those.

23              MR. SCHEFF:  Mr. Bennett, I'm

24 making my record.

                              13
        **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

 1              MR. BENNETT:  No.  Enough.  Enough.

 2 Enough.  Richard.  I will take the heat.  I will

 3 pay the fees if you ask one more -- listen to me.

 4              MR. SCHEFF:  No, I'm not going to

 5 listen to you.

 6              MR. BENNETT:  You stop and you

 7 listen, you listen to me.  You listen to me.

 8              MR. SCHEFF:  I want to make my

 9 record.

10              MR. BENNETT:  No.  No.  I am

11 talking.  You can make your record when I'm done.

12 That's the way it works.  Got it?

13                    MR. SCHEFF:  Mr. Bennett, you

14 interrupted me while I was making my record,

15 so --

16                    MR. BENNETT:  You were not making

17 your record.  You were not making your record.

18 You were continuing to --

19                    MR. SCHEFF:  Yes, I was.  I was

20 making my record.

21                    MR. BENNETT:  Okay.  Put your

22 fingers in your ear and stick your tongue out and

23 go I'm not going to listen.  Do what you want to

24 do, Richard, but I'm talking.

⬆
                                        14
          **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1                    So here's the way it'll work.  You

2 say everything you want to say right now.  Nobody

3 will respond.  Nobody say anything to Richard.

4 Richard talk as long as you want.  When you're

5 done, then I will say stuff on the record and

6 that way the court reporter can take turns typing

7 Richard Scheff, Leonard Bennett.  So go.  It's on

8 you.  You tell us when you're done with your

9 record.

10                    MR. SCHEFF:  I'm making my record

11 with the witness, Mr. Bennett, because I need to

12 do that in order to preserve the issue.  So I was

13 asking a series of questions of a witness and she

14 was refusing to answer.  And I'm going to

15 continue to do that to make my record.  If she

16 chooses not to answer, that's up to her.

17              MR. BENNETT:  No, it's not up to

18 her.  Her lawyer has told you, the plaintiffs'

19 counsel has told you.  I get that you don't do a

20 lot of this stuff in Virginia, but we follow the

21 federal rules of civil procedure.

22              MR. SCHEFF:  I am following --

23              MR. BENNETT:  There's an --

24 Richard, it's my turn.  You have objections and

                              15
          **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1 statements that the witness is not going to talk

2 about this subject matter, which is, by the way,

3 an informant has informed the Federal Bureau of

4 Investigation of possible criminal activity

5 unrelated to online lending and now you want to

6 use this deposition in order to, as you say,

7 learn about the bias that this witness has.

8              You clearly already know this

9 witness does not think well of Mr. Martorello.

10 You clearly know this witness does not think well

11 of either Michelle or of Chairman Williams, and

12 you have that.  That's done.  So now you want to

13 learn more maybe to find out if Mr. Martorello

14 has some other problems.  I don't know.  You

15 know.  You're his lawyer.  If he's selling drugs

16 and you know that, I don't get to ask you those

17 questions.  You're not going to talk about

18 unrelated matters beyond online lending.  And I'm

19 telling you that and I'm interrupting in this

20 deposition.  I'm putting my name, my license on

21 the record and I will take the heat with Judge

22 Payne.

23             The offer that has been made to you

24 is that if you want to ask these questions, you

                                    16
        **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1 can do it in camera with the judge and the judge

2 can then make sure that Richard Scheff doesn't

3 tell Matthew Martorello this information, which

4 will likely be designated attorney eyes only, and

5 does not share it with the tribe.

6             All right.  I'm done talking.  You

7 will not ask another question about this.  If you

8 ask any question about this, I'm asking everyone

9 here to ignore those questions.  If you continue,

10 then I will ask that this deposition be

11 terminated so that we can seek protective order

12 and sanctions against either you or I, but you

13 have an objection, which the witness said they're

14 not answering.  It's clearly privileged.  It is

15 clearly -- an informant providing unrelated

16 information to a law enforcement agency is

17 privileged.  You can't go further.

18                    MR. SCHEFF:  Mr. Bennett, it's not

19 privileged.  Ms. Drake made an objection earlier

20 saying I had not laid a foundation as to why that

21 these questions related to bias and prejudice and

22 so I was laying that foundation when you

23 interrupted me.

24                    The witness has not been directed

                                                    17
              **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1 not to answer the question.  She's choosing not

2 to answer the question, so I'm making my record

3 so I can present it to Judge Payne accordingly.

4 That's all I'm doing.

5                    MS. DRAKE:  Well, my view is that

6 your questions as to the people to whom anything

7 she may have conveyed to the FBI relates or does

8 not relate invade what I believe is a privilege

9 called the informer privilege, and I believe that

10 the basis for her refusal to answer these

11 questions is linked to an important governmental

12 interest and that your efforts to force her into

13 answer these questions are intimidating and

14 harassing in violation of the federal rules.

15             MR. SCHEFF:  Okay.  We can litigate

16 that in front of Judge Payne.  I'm making my

17 record.  That's all I'm doing.  If she's not to

18 answer the question, she's not to answer the

19 question, but I'm making my record, this

20 transcript --

21             MS. DRAKE:  I think the record has

22 already been made, Richard.  She's not answering

23 any questions about who any of the testimony

24 related to or didn't relate to.  You can start

⬆

                                    18
          **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1 reading names in the phonebook and she's not

2 going to answer any of those questions.

3             So why don't you ask her this

4 question if you don't want to harass her.  Why

5 don't you say are you going to tell me anybody

6 that you're testimony relates to, and then she'll

7 say no and then you can have your record and we

8 can put it in front of Judge Payne.

9           MR. SCHEFF:  That's fine.

10 BY MR. SCHEFF:

11    Q.    Why don't you answer that question, Ms.

12 Pete.  Are you going to identify any of the

13 individuals that you disclosed to the FBI alleged

14 criminal activity which you believe occurred on

15 the reservation, yes or no?

16    A.    No.

17    Q.    Okay.  When's the last time you spoke

18 to the FBI regarding this tribal lending matter?

19    A.    2016.

20    Q.    2016?

21    A.    Yes.

22    Q.    And they were the two meetings, the one

23 in Marquette, the one in Watersmeet.  Any others?

24    A.    No.

                                          19
          **ROUGH DRAFT - CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1           MR. SCHEFF:  All right.  I've got

2 nothing further of this witness at this time, but

3 I reserve my rights based on our conversation.

4               (Whereupon, the testimony resumed

5 in the original transcript.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24