# EXHIBIT 5

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
 2                      RICHMOND DIVISION

 3   LULA WILLIAMS, et al., on    *
     behalf of themselves and all *
 4   other similarly situated     *
     individuals,                 *
 5            Plaintiff,          *
                                  *
 6   VS.                          *  Civil Action No.
                                  *  3:17-cv-461 (REP)
 7   BIG PICTURE LOANS, LLC,      *
     et al.,                      *
 8            Defendants.         *

 9
     *****************************************************
10
                 ORAL AND VIDEOTAPED DEPOSITION OF
11                      MATTHEW MARTORELLO
                         AUGUST 30, 2018
12
     *****************************************************
13

14              DEPOSITION of MATTHEW MARTORELLO,

15   produced as a witness at the instance of the

16   Plaintiffs, and duly sworn, was taken in the

17   above-styled and numbered cause on the 30th day of

18   August, 2018, from 10:09 a.m. to 2:44 p.m., before

19   Christy R. Sievert, CSR, RPR, in and for the State

20   of Texas, reported by machine shorthand, at the

21   offices of Kellett & Bartholow, PLLC, 11300 North

22   Central Expressway, Suite 301, Dallas, Texas 75243,

23   pursuant to the Texas Rules of Civil Procedure and

24   the provisions stated on the record or attached

25   hereto.
```

```
 1   operating, you know, meeting vendors, and knowing a
 2   little bit about the industry, OLA was pretty
 3   prominently known, so at some point, I would have
 4   been aware and then gone to a conference, you know.
 5   BY MS. KELLY:
 6       Q.   Okay.
 7       A.   Or several conferences over time.
 8       Q.   How did you come to become involved with
 9   the LVD, Duck Creek Financial, or Red Rock?
10       A.   I was approached at OLA in probably -- this
11   was 2011, so I think this was probably spring -- the
12   spring conference.  And this was a time when, you
13   know, there was a lot of favorable on-point case law
14   that was coming out in 2010, and then we saw, you
15   know, TCV and Sequoia and all these big
16   institutional funds coming out.
17            And so at the OLA conference, it was, you
18   know, "Hey, tribal lending is the next tribal
19   gaming."  And so there were breakout sessions and
20   things that were happening an OLA on that -- you
21   know, on that basis.
22            And someone approached me and said, you
23   know, "Hey, I represent a tribe.  They're in the
24   online lending business today.  They've got a code,
25   they're operating, and they are looking for a good
```

```
 1   interpreting that question as them deleting specific
 2   loans.  That's how I've been understanding.  Is that
 3   what you're saying, like --
 4   BY MS. KELLY:
 5        Q.   Specific consumer loan information.
 6        A.   I'm -- you know, other than -- I'm not
 7   specifically aware of some instance where they've
 8   done that, but obviously with the entity dissolving,
 9   I -- I could see them, you know, terminating a
10   contract that -- or something.  I don't know.  And I
11   don't know if that happened specifically either.
12   I'm just saying that's possible.
13        Q.   For the Red Rock loans that were
14   transferred to TED -- strike that.
15             If you look at No. 5, it -- it asks for
16   individuals you may call as a witness in support of
17   your position as to class certification.  Do you see
18   that?
19        A.   Okay.  Yes.
20        Q.   How do you know Brian McFadden?
21        A.   I've known Brian McFadden from riding bikes
22   in the fourth grade.
23        Q.   Okay.  And when did he first become
24   involved with SourcePoint VI?
25        A.   It was probably 2012, late 2012, early --
```