Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

- - -

| | | |
|---|---|---|
| LULA WILLIAMS, et al., | : | NO.: 3:17-cv-00461 |
| Plaintiffs | : | |
| vs. | : | |
| BIG PICTURE LOANS, | : | |
| LLC, et al., | : | |
| Defendants | : | |
| ----------------------- | : | ---------------------- |
| RENEE GALLOWAY, et al., | : | NO.: 3:18-cv-406-REP |
| Plaintiffs | : | |
| Vs. | : | |
| BIG PICTURE LOANS, | : | |
| LLC, et al., | : | |
| Defendants | : | |

- - -

Tuesday, May 26, 2020
*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

- - -

Excerpt from the REMOTE VIDEOTAPED DEPOSITION of JOETTE PETE, taken pursuant to notice, before Lynn Parlapiano, Professional Court Reporter and Notary Public in and for the Commonwealth of Pennsylvania.

- - -

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com



```
 1                  (The following is a confidential
 2    except from the deposition of JOETTE PETE.)
 3                      - - -
 4    BY MR. SCHEFF:
 5       Q.      And so you mentioned the FBI a few
 6    times in your testimony today.  Did you reach out
 7    to the FBI or did the FBI reach out to you?
 8       A.      I reached out to the FBI.
 9       Q.      And what office did you contact?
10       A.      Marquette, Michigan.
11       Q.      And what happened when you contacted
12    the Marquette, Michigan office of the FBI?
13       A.      They asked to meet with me.
14       Q.      And when approximately -- did you meet
15    with them?
16       A.      Yes.
17       Q.      When approximately did that occur?
18       A.      I don't remember.
19       Q.      Was it around the same time you were
20    speaking to Mr. Faux?
21       A.      No.
22       Q.      Was it before you spoke to Mr. Faux or
23    after you spoke to Mr. Faux?
24       A.      I don't remember.
```



```
 1     Q.      Okay.  And how many times did you meet
 2   with the FBI?
 3     A.      Several times.  I don't know the exact
 4   number.
 5     Q.      All in Marquette?
 6     A.      No.
 7     Q.      Where else did you meet with the FBI?
 8     A.      My home.
 9     Q.      Your home in Watersmeet?
10     A.      Yes.
11     Q.      And how many times did you meet with
12   the FBI in Watersmeet?
13     A.      I believe once.
14     Q.      And how many times did you meet with
15   the FBI in Marquette?
16     A.      I believe once.
17     Q.      Did you meet with the FBI anywhere else
18   other than in Watersmeet or Marquette on those
19   two occasions that you just testified about?
20     A.      With respect to this case?
21     Q.      Yes, with respect to --
22     A.      Not that I can recall.
23     Q.      Okay.  Have you met with the FBI with
24   respect to other cases as well?
```



Page 7

```
 1    A.     Yes.
 2    Q.     What cases have you met with the FBI
 3  about other than this case?
 4    A.     I don't want to answer that.
 5    Q.     You don't want to answer that.  Why
 6  not?
 7           MR. PATTNI:  Do you need to take a
 8  break to talk to me?
 9           THE WITNESS:  Yeah.
10           MR. SCHEFF:  Okay.  Sure.
11           THE VIDEOGRAPHER:  2:22 p.m.  Off
12  the record.
13           (Recess.)
14           THE VIDEOGRAPHER:  The time is
15  2:29 p.m.  We're on the record.
16  BY MR. SCHEFF:
17    Q.     Ms. Pete, are you going to answer my
18  question or not?
19    A.     Can you repeat the question, please?
20    Q.     Yeah.
21           I asked -- you had said that you had
22  talked to the FBI about more than just this case
23  and I asked you what other cases?
24           MS. DRAKE:  I'm going to object to
```



Page 8

1  that.
2          THE WITNESS: I talked to the FBI
3  with regards to other crimes that have occurred
4  on the reservation, but with respect to this
5  case, those are the times that I stated that I
6  spoke with them.
7  BY MR. SCHEFF:
8     Q.   Okay.  What other crimes on the
9  reservation have you spoken to the FBI about?
10         MS. DRAKE: I object.  This is far
11 afield from anything that's relevant, Mr. Scheff.
12         MR. SCHEFF: It goes to bias and
13 prejudice.
14         MS. DRAKE: Well, it only goes to
15 bias and prejudice if those crimes have anything
16 to do with anything related to this case for
17 which you've laid no foundation.  This is an
18 obviously extremely sensitive potentially subject
19 matter, and I object to this line of questioning.
20         And I don't know if Mr. Pattni has
21 anything that he wants to say.  He may know what
22 Ms. Pete is about to testify about, but I object.
23 I think you're far afield.
24         MR. SCHEFF: You stated your



1 objection on the record. It's on the record
2 clearly.
3 BY MR. SCHEFF:
4    Q.    Ms. Pete, what other crimes on the
5 reservation?
6           MR. PATTNI: Thank you, Mr. Scheff.
7 On Ms. Pete's behalf, too, I'm also objecting on
8 relevancy grounds. I think we are getting far
9 afield. If Ms. Pete wants to provide an answer,
10 you know, she can, but I did -- I think we are
11 getting a little off base here.
12           MR. SCHEFF: Relevancy is not a
13 reason not to have a witness answer a question.
14           MS. DRAKE: All of her contacts
15 with law enforcement are not relevant and they're
16 not even close to being relevant any more than
17 someone who has spoken with the FBI --
18           MR. SCHEFF: You had stated --
19           MS. DRAKE: -- about other criminal
20 matters is going to get questioned about that in
21 any case. I think you're doing this to try to
22 intimidate her and ask her about sensitive
23 matters and I want that clearly on the record.
24           MR. SCHEFF: It's on the record,



Page 10

```
 1   Ms. Drake.  I've asked a question.  I've stated
 2   the reason.  You've noted your objection.
 3   BY MR. SCHEFF:
 4       Q.      Ms. Pete, are you going to answer my
 5   question?
 6               MS. DRAKE:  You've laid no
 7   foundation for this whatsoever.  This is just
 8   harassment at this point.
 9   BY MR. SCHEFF:
10       Q.      Are you going to answer my question?
11       A.      I did answer your question with respect
12   to this case.
13       Q.      What other crimes that you say occurred
14   on the reservation have you spoken to the FBI
15   about?
16               MS. DRAKE:  I don't believe she has
17   any obligation to answer that question.
18               MR. SCHEFF:  You know, Ms. Drake,
19   you've made your record.  Right now you're just
20   interfering with the testimony.
21               MS. DRAKE:  Well, you're harassing
22   a witness.
23               MR. SCHEFF:  I'm not harassing a
24   witness.  I've stated the basis.  You don't like
```



Page 11

1  it.  I understand that, but I've stated the
2  basis.
3  BY MR. SCHEFF:
4     Q.    Ms. Pete, can you answer the question?
5             MR. PATTNI:  Ms. Pete wants to talk
6  to me again real quick.
7             MR. SCHEFF:  That's fine.
8             THE VIDEOGRAPHER:  The time is
9  2:32 p.m.  We're off the record.
10            (Recess.)
11            THE VIDEOGRAPHER:  2:43 p.m.  We're
12  on the record.
13            MR. PATTNI:  So Mr. Scheff, I had a
14  conversation with Ms. Pete about the line of
15  questioning.  At this time, she does not want to
16  discuss and we're not going to about any other
17  investigations she's talked to the FBI.
18            I can do a little inquiry of her to
19  let you know that any other conversation she had
20  with law enforcement were not related to this
21  lending scheme, this lawsuit, any of the
22  defendants in any way related to this matter.
23  She'd be happy to answer questions if the judge
24  pushes it in camera, but we're kind of going down



Page 12

1  a sensitive path here and I don't think it's
2  relevant or necessary to do it today.
3              MR. SCHEFF:  Are you directing her
4  not to answer the question?
5              MR. PATTNI:  I told her to use her
6  best judgment.  We're getting far afield here,
7  so --
8              MS. DRAKE:  She's not answering the
9  question.  My understanding of the record is that
10 she's not answering the question, and I think
11 it's certainly appropriate for her to refuse to
12 do that.
13              These are about potentially ongoing
14 law enforcement investigations with the FBI,
15 which you now have on the record are unrelated to
16 this business or the individuals involved in the
17 business.
18              And we certainly on behalf of
19 plaintiffs would support any further inquiry into
20 these kinds of matters being made only in camera
21 and only with Judge Payne.
22              I think that this is pure
23 harassment at this point trying to intimidate
24 this witness by asking her about other contact



Page 13

```
 1   she's had with law enforcement.
 2            MR. SCHEFF:  I'm not trying to
 3   intimidate the witness.  As I said, it's relevant
 4   to bias and prejudice.
 5            MS. DRAKE:  It's not when you've
 6   already been told that it's completely unrelated
 7   to the subject matter.
 8            MR. SCHEFF:  Can I finish without
 9   you cutting me off as you typically do?
10   BY MR. SCHEFF:
11      Q.    Ms. Pete, do any of these other
12   investigations have anything to do with Chairman
13   Williams?
14            MS. DRAKE:  I'm going to just
15   object.  I think that anything that Ms. Pete is
16   required to answer about any ongoing
17   investigations with law enforcement should be
18   handled by Judge Payne off the record in
19   chambers.  I think she has --
20            MR. SCHEFF:  There's no evidence
21   that this is an ongoing investigation, number
22   one.  Number two, there's no prohibition about
23   asking a witness about their contacts with law
24   enforcement.  There's no law that prohibits that
```



Page 14

1   in any way, shape or form, no rule that prohibits
2   that in any way, shape or form.
3   BY MR. SCHEFF:
4       Q.      Ms. Pete, did any of the other supposed
5   criminal matters that occurred on the reservation
6   that you reported to the FBI relate to Chairman
7   Williams?
8               MS. DRAKE:  Again, I object.
9               MR. PATTNI:  Do you need to talk to
10  me a little bit more?
11              THE WITNESS:  I'm just not going to
12  answer that.
13  BY MR. SCHEFF:
14      Q.      You said you're not going to answer the
15  question?
16      A.      No.
17      Q.      Okay.  Did any of the other criminal
18  matters that you talked to the FBI about relate
19  to Michelle Hazen?
20      A.      I'm not going to answer that.
21      Q.      Did any of the other criminal
22  matters -- alleged criminal matters that you
23  talked to the FBI about relate to Matt
24  Martorello?



```
 1     A.       I'm not going to answer that.
 2     Q.       Did any of the other criminal
 3   matters -- alleged criminal matters that you
 4   spoke to the FBI about relate --
 5              MR. BENNETT:  Stop.  Stop.  This is
 6   Len Bennett.  Enough.  Enough.  I'm going to get
 7   the judge on the phone.  I don't know how you do
 8   things in Philadelphia.  I don't -- no.  No.
 9   Stop.  I'm talking.
10              You will not on a deposition where
11   I'm the Virginia licensed lawyer have two lawyers
12   tell you they object, have a witness say she's
13   not going to answer and because you, you think
14   that you know more about representing a criminal
15   that everyone else that you're going to continue
16   to proceed and ignore those.
17              MR. SCHEFF:  Mr. Bennett, I'm
18   making my record.
19              MR. BENNETT:  No.  Enough.  Enough.
20   Enough.  Richard.  Enough.  I will take the heat.
21   I will pay the fees if you ask one more -- listen
22   to me.
23              MR. SCHEFF:  No, I'm not going to
24   listen to you.
```



```
                                                        Page 16
 1                  MR. BENNETT:  You stop and you
 2   listen.  You listen to me.  You listen to me.
 3                  MR. SCHEFF:  I want to make my
 4   record.
 5                  MR. BENNETT:  No.  No.  I am
 6   talking.  You can make your record when I'm done.
 7   That's the way it works.  Got it?
 8                  MR. SCHEFF:  Mr. Bennett, you
 9   interrupted me while I was making my record,
10   so --
11                  MR. BENNETT:  You were not making
12   your record.  You were not making your record.
13   You were continuing to --
14                  MR. SCHEFF:  Yes, I was.  I was
15   making my record.
16                  MR. BENNETT:  Okay.  Put your
17   fingers in your ear and stick your tongue out and
18   go I'm not going to listen.  Do what you want to
19   do, Richard, but I'm talking.
20                  So here's the way it'll work.  You
21   say everything you want to say right now.  Nobody
22   will respond.  Nobody say anything to Richard.
23   Richard talk as long as you want.  When you're
24   done, then I will say stuff on the record and
```



Page 17

1  that way the court reporter can take turns typing
2  Richard Scheff, Leonard Bennett.  So go.  It's on
3  you.  You tell us when you're done with your
4  record.
5              MR. SCHEFF:  I'm making my record
6  with the witness, Mr. Bennett, because I need to
7  do that in order to preserve the issue.  So I was
8  asking a series of questions of the witness and
9  she was refusing to answer.  And I'm going to
10 continue to do that to make my record.  If she
11 chooses not to answer, that's up to her.
12             MR. BENNETT:  No, it's not up to
13 her.  Her lawyer has told you, the plaintiffs'
14 counsel has told you.  I get that you don't do a
15 lot of this stuff in Virginia, but we follow the
16 federal rules of civil procedure.
17             MR. SCHEFF:  I am following --
18             MR. BENNETT:  There's an --
19 Richard, it's my turn.
20             You have objections and statements
21 that the witness is not going to talk about this
22 subject matter, which is, by the way, an
23 informant has informed the Federal Bureau of
24 Investigation of possible criminal activity



Page 18

1  unrelated to online lending and now you want to
2  use this deposition in order to, as you say,
3  learn about the bias that this witness has.
4              You clearly already know this
5  witness does not think well of Mr. Martorello.
6  You clearly know this witness does not think well
7  of either Michelle or of Chairman Williams, and
8  you have that.  That's done.  So now you want to
9  learn more, maybe to find out if Mr. Martorello
10 has some other problems.  I don't know.  You
11 know.  You're his lawyer.  If he's selling drugs
12 and you know that, I don't get to ask you those
13 questions.
14              You're not going to talk about
15 unrelated matters beyond online lending.  And I'm
16 telling you that and I'm interrupting in this
17 deposition.  I'm putting my name, my license on
18 the record and I will take the heat with Judge
19 Payne.
20              The offer that has been made to you
21 is that if you want to ask these questions, you
22 can do it in camera with the judge and the judge
23 can then make sure that Richard Scheff doesn't
24 tell Matthew Martorello this information, which



Page 19

```
 1   will likely be designated attorney eyes only, and
 2   does not share it with the tribe.
 3              All right.  I'm done talking.  You
 4   will not ask another question about this.  If you
 5   ask any question about this, I'm asking everyone
 6   here to ignore those questions.  If you continue,
 7   then I will ask that this deposition be
 8   terminated so that we can seek protective order
 9   and sanctions against either you or I, but you
10   have an objection, which the witness said they're
11   not answering.
12              It's clearly privileged.  It is
13   clearly -- an informant providing unrelated
14   information to a law enforcement agency is
15   privileged.  You can't go further.
16              MR. SCHEFF:  Mr. Bennett, it's not
17   privileged.  Ms. Drake made an objection earlier
18   saying I had not laid a foundation as to why that
19   these questions related to bias and prejudice and
20   so I was laying that foundation when you
21   interrupted me.
22              The witness has not been directed
23   not to answer the question.  She's choosing not
24   to answer the question, so I'm making my record
```



Page 20

1  so I can present it to Judge Payne accordingly.
2  That's all I'm doing.
3              MS. DRAKE:  Well, my view is that
4  your questions as to the people to whom anything
5  she may have conveyed to the FBI relates or does
6  not relate invade what I believe is a privilege
7  called the informer privilege.
8              And I believe that the basis for
9  her refusal to answer these questions is linked
10 to an important governmental interest and that
11 your efforts to force her into answering these
12 questions are intimidating and harassing in
13 violation of the federal rules.
14             MR. SCHEFF:  Okay.  We can litigate
15 that in front of Judge Payne.  I'm making my
16 record.  That's all I'm doing.  If she's not to
17 answer the question, she's not to answer the
18 question, but I'm making my record, this
19 transcript --
20             MS. DRAKE:  I think the record has
21 already been made, Richard.  She's not answering
22 any questions about who any of the testimony
23 related to or didn't relate to.  You can start
24 reading names in the phonebook and she's not



1  going to answer any of those questions.

2               So why don't you just ask her this
3  question if you don't want to harass her.  Why
4  don't you say, are you going to tell me anybody
5  that you're testimony relates to, and then she'll
6  say no and then you can have your record and we
7  can put it in front of Judge Payne.

8               MR. SCHEFF:  That's fine.

9  BY MR. SCHEFF:

10     Q.     Why don't you answer that question, Ms.
11  Pete.  Are you going to identify any of the
12  individuals that you disclosed to the FBI alleged
13  criminal activity which you believe occurred on
14  the reservation, yes or no?

15     A.     No.

16     Q.     Okay.  When's the last time you spoke
17  to the FBI regarding this tribal lending matter?

18     A.     2016.

19     Q.     2016?

20     A.     Yes.

21     Q.     And they were the two meetings, the one
22  in Marquette, the one in Watersmeet.  Any others?

23     A.     No.

24               MR. SCHEFF:  All right.  I've got



Page 22

1  nothing further of this witness at this time, but
2  I reserve my rights based on our conversation.
3              (Whereupon, the testimony resumed
4  in the original transcript.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



Page 23

1  CERTIFICATE
2
3          I HEREBY CERTIFY that the witness was
4  duly sworn by me and that the deposition is a
5  true record of the testimony given by the
6  witness.
7
8
9
10  _____
11  Lynn Parlapiano,
12  A Professional Court Reporter
13  and Notary Public
14  Dated:_____
15
16
17          (The foregoing certification of this
18  transcript does not apply to any reproduction of
19  the same by any means, unless under the direct
20  control and/or supervision of the certifying
21  reporter.)
22
23
24

