# Exhibit 29

| | |
|---|---|
| **From:** | Matt Martorello |
| **To:** | Karrie Wichtman |
| **Subject:** | RE: DM Recommendation |
| **Date:** | Tuesday, August 26, 2014 8:18:51 PM |
| **Attachments:** | image001.png |

At this stage, I was told council only approved evolving the term sheet into something that would be reviewed later to ask questions about, and if approved, then it'd be binding.  I didn't hear anything back from the Chairman to my email, nor did I get any sense of excitement from anyone, which is really perplexing.  It makes me wonder if some folks think they can operate without spvi or want to learn more to complete the puzzle and reverse engineer.

There are a lot of legal details to go through yet on the deal. Especially in a seller financing.  The tribe will have to be comfortable with full waivers for misuse, bad acts, etc. (Rob said they would, but he is not LVD).

Plus, the seller will have to keep a final say so in business decisions to protect the business from being destroyed by the new owner before paid.  The business needs to be treated very delicately and protected if it is to survive.  Risk and reward carefully measured.  No need to reinvent the wheel or shake things up, just need to keep it alive and then use the earnings from it to take risks with and do other things.

In any event, many extreme protections will be necessary to make sure the sale price occurs, and that IP is not misused (I.e. Escrow for example is common).  These sort of things are mandatory in such a deal format, and I don't have any certainty that they're going to be agreed to or not right now.  My goal is to keep the business alive through Note repayment.

In fact, every vendor but me has a waiver but SPVI.  If LVD were to snoop, and then not do the deal after learning everything about us, and the details and IP, I'd have zero recourse today when they use it to start their own servicing business.  Tribal leaders will need to understand all of these things, then maybe they understand why we have to protect the business and IP.

The Servicer is a Servicer, so the IP it builds is its own, and for the use of its clients (multiple) which it services, or has serviced from even the pre-LVD days.  If it weren't SPVI IP, we'd have some real problems, and I guess any clients would have to deal with previous lenders claiming the same thing today.  The concept of IP sale in and of itself was evident of IP ownership.

Similarly, the Tribe will need to be comfortable that key officers and myself will continue to exist in the industry. With Middletown and possibly another Tribe, or even as a state licensed lender.

We later evolved to recommendations and sharing a bit to be helpful, but certain items and code will never even be shared with most of my current employees, because nobody else in the subprime industry does it, and it is too valuable to put at risk as one leak would destroy the business.   Even talking about DM is a very bad idea, as small a thing as it is, due to competition and the value and power of what we've created.  Just knowing "DM is good" makes people want to study it and spend years figuring it out.

That said, even in due diligence, some information will be extremely limited and some IP held in escrow after closing until satisfaction of the note.  It can't get out to the world.

CONFIDENTIAL

ROSETTE_REVISED 045272

As for Management I don't know what that looks like yet post transaction.  I've discussed staying on as Manager of LLC or maybe not even whatsoever.  I'd love to just turn over the keys and be hands off. However, I very much need to make sure the business can sustain.

All of this would be entirely different if we were talking about a cash purchase deal, but the nature of the transaction has to permeate throughout the documents and details.  I do hope a deal is imminent.  However, I have no idea how council is thinking or will think. I don't know if they will see the nature of the transaction requires such a level of care or not.

Admittedly, I am very paranoid, but I think I have many good reasons to be.  I just would prefer to take one step at a time (yet need to move as quickly as possible).

Sent via the Samsung GALAXY S® 5, an AT&T 4G LTE smartphone


-------- Original message --------
From: Karrie Wichtman
Date:08/26/2014 10:35 PM (GMT-04:00)
To: Matt Martorello
Subject: RE: DM Recommendation

Matt,

I am at a total loss with regard to your response.

I wasn't recommending that SPVI disclose its secret sauce but only that SPVI be willing to explain to the Co-Managers what exactly they are approving.  For example, do Jimmer and Shelly even know what "DM" means because I don't.  Perhaps I got overzealous with the questions but I have Tribal leaders in my ear eager to learn the business and excited about the restructure.  Your statements with regard to the "should an acquisition occur" and "would be relevant questions for the eyes of Management and those in the acquiring company on a need to know basis as well" have me in a tailspin.  How confident are you that the acquisition will happen because my client is very excited about it as demonstrated by their willingness through formal Tribal Council action to move forward today?  Also, if the Tribe is buying SPVI aren't these questions relevant due diligence so that they know what they are buying and after acquisition who determines who needs to know would be the Tribe not Management.  I guess I would like to know who Management is?  Here's the other thing that I don't understand about your response.  Wasn't the DM – which I have figured out to mean Direct Mail -created for RRTL?  I can't locate any provision in the Servicing that says that IP produced for the Company is SPVI IP.  In fact, it is my opinion that RRTL owns the IP - so you can imagine why it is hard for me to understand why the Co-Managers would not be able to ask questions about documents attached to the approval as support for the basis of the recommendation.

I am not trying to be a bull in a China shop, I am just trying to understand your response?

Sincerely,


Karrie S. Wichtman, Partner

CONFIDENTIAL                                                                                                                                                         ROSETTE_REVISED 045273

ROSETTE, LLP

Michigan Office

Attorneys at Law

25344 Red Arrow Highway

Mattawan, Michigan 49071

269.283.5005 Office

517.913.6443 Facsimile

480.242.6959 Cell

kwichtman@rosettelaw.com

rosettelaw.com

CONFIDENTIAL COMMUNICATION: THIS MESSAGE IS A CONFIDENTIAL ATTORNEY COMMUNICATION ONLY FOR USE BY THE INTENDED RECIPIENT.  ANY INADVERTENT RECEIPT SHALL NOT CONSTITUTE A WAIVER OF ATTORNEY-CLIENT OR WORK PRODUCT PROTECTION.  IF RECEIVED IN ERROR, PLEASE NOTIFY KARRIE S. WICHTMAN IMMEDIATELY AND DELETE THIS MESSAGE.  THANK YOU FOR YOUR COOPERATION.

**From:** Matt Martorello [mailto:mattm@bellicosevi.com]
**Sent:** Tuesday, August 26, 2014 9:34 PM
**To:** Karrie Wichtman; 'gkway@duckcreektf.com'; Daniel Gravel; Chairman James Williams
**Cc:** jennifers@duckcreektf.com; Justin Martorello; James Dowd; Brian McFadden; Ivelisse Morales; Tanya Gibbs; Rob Rosette
**Subject:** RE: DM Recommendation

We respectfully opt to continue to keep any details of SPVI IP (including DM) explicitly for internal eyes only, both for the protection of our business and maintaining the integrity of an acquisition of the SPVI business.  Should an acquisition actually transpire, obviously these would be relevant questions for the eyes of Management and those in the acquiring company on a need to know basis as well (I.e. Certain IP, even in small doses, should at all times be aggressively protected when the result is such a massive competitive advantage, like the process of even just utilizing DM itself which SPVI owns and created).

Sent via the Samsung GALAXY S® 5, an AT&T 4G LTE smartphone

-------- Original message --------
From: Karrie Wichtman
Date:08/26/2014 8:33 PM (GMT-04:00)
To: "'gkway@duckcreektf.com'" , Daniel Gravel , Chairman James Williams
Cc: jennifers@duckcreektf.com, Matt Martorello , Justin Martorello , James Dowd , Brian McFadden , Ivelisse Morales , Tanya Gibbs
Subject: RE: DM Recommendation

Good Evening Shelly,

The campaign being recommended is largely similar to the one approved several months ago. While the modeling and selection criteria seems to vary for this campaign, the look and feel is largely the same.  I assume that the email from Blake Sims was included as an FYI and from a compliance perspective is largely being disregarded because Mr. Sims pointed to CA law but nothing necessarily in federal law that requires Red Rock to comply with CA law or register the campaign with the Commissioner of Business Oversight.  Also, based on the MNE case and the fact that the enforcement authority of these laws and regs by the Commissioner is non-existent when a true TLE is concerned.  This line of reasoning would be consistent throughout the states regardless of the regulatory laws of those states.  Are those assumptions correct, Dan?  I do wonder though as to the purpose of calling out the exemption that can be given by the Commissioner of Business Oversight in CA, when to the best of my knowledge no such exemption has been granted.  What am I missing?

With regard to the other documents, while not needed for approval for the campaign to move forward, due to the desire to learn and the pending restructure it is my recommendation that you set up a conference call with SPVI to determine for each document (as applicable):

1. Who created the document/concept?  Vendor/Individual/Both
2. Who created the models and the criteria for the models re: where the campaign should be launched? Vendor/Individual/Both
3. How will the data be tracked and compiled to measure success?
4. Who will track the data and compile it?
5. How will such data be reported to the Company and by whom?

It is never too soon to learn who is doing what, where, why, how and when it will be done with regard to every aspect of the business.

Sincerely,


Karrie S. Wichtman, Partner
ROSETTE, LLP
Michigan Office
Attorneys at Law
25344 Red Arrow Highway
Mattawan, Michigan 49071
269.283.5005 Office
517.913.6443 Facsimile
480.242.6959 Cell
kwichtman@rosettelaw.com
rosettelaw.com

CONFIDENTIAL COMMUNICATION: THIS MESSAGE IS A CONFIDENTIAL ATTORNEY COMMUNICATION ONLY FOR USE BY THE INTENDED RECIPIENT.  ANY INADVERTENT RECEIPT SHALL NOT CONSTITUTE A WAIVER OF ATTORNEY-CLIENT OR WORK PRODUCT PROTECTION.  IF RECEIVED IN ERROR, PLEASE NOTIFY KARRIE S. WICHTMAN IMMEDIATELY AND DELETE THIS MESSAGE.  THANK YOU FOR YOUR

COOPERATION.

**From:** gkway@duckcreektf.com [mailto:gkway@duckcreektf.com]
**Sent:** Tuesday, August 26, 2014 7:49 PM
**To:** Daniel Gravel; Chairman James Williams
**Cc:** Karrie Wichtman; jennifers@duckcreektf.com; Matt Martorello; Justin Martorello; James Dowd; Brian McFadden; Ivelisse Morales
**Subject:** RE: DM Recommendation

Karrie, Jennifer and Chairman

Do you have any concerns with this campaign?  I know  SP is anxious to get this campaign going.  Please let me know so that I can sign the approval form.

Thanks.

Shelly

> --------- Original Message ---------
> Subject: DM Recommendation
> From: "Daniel Gravel" <DanielG@bellicosevi.com>
> Date: 8/26/14 4:07 pm
> To: "Gkway - DCTF (gkway@duckcreektf.com)" <gkway@duckcreektf.com>, "Chairman James Williams" <jim.williams@lvdtribal.com>
> Cc: "Karrie Wichtman" <kwichtman@rosettelaw.com>, "jennifers@duckcreektf.com" <jennifers@duckcreektf.com>, "Matt Martorello" <mattm@bellicosevi.com>, "Justin Martorello" <JustinM@BellicoseVI.com>, "James Dowd" <jamesd@bellicosecapital.com>, "Brian McFadden" <BrianM@bellicosevi.com>, "Ivelisse Morales" <ivelissem@bellicosecapital.com>
>
> Shelly and Chairman Williams:
>
> Please see attached recommendation for a direct mail campaign, DM, and supporting documentation.
>
> Let us know if you want to discuss.
>
> Thanks,
>
> **Dan Gravel**
> **General Counsel**
> Email: danielg@bellicosecapital.com
> Office: 787-520-6053
> Mobile: 781-910-9642
>
> 
>
> CONFIDENTIAL COMMUNICATION: The information contained in this email is intended for the individual or entity