# Exhibit 55

## giizhigookway

| | |
|---|---|
| **From:** | Matt Martorello <mattm@bellicosevi.com> |
| **Sent:** | Monday, January 06, 2014 10:41 AM |
| **To:** | Rob Rosette; jim.williams@lvdtribal.com; John McGeshick (jcmcgeshick@gmail.com); Gkway (gkway@lvdtribal.com); Justin Martorello |
| **Cc:** | Saba Bazzazieh; Karrie Wichtman; Brett Stavin |
| **Subject:** | RE: Meeting with Cheryl Parker Rose @ CFPB |

Thanks Rob, greatly looking forward to hearing what you hear from them in discussions about their very blunt statements that the law applying to online lending is where the consumer resides.

What I'm not clear on from the memo is how being a Tribe with sovereignty makes any difference vs. the Western Sky compliant. How is it weaker if it were a Tribe, considering they said the law were consumer resides prevails? Saba can you comment on that from your memo? You'd made the statement, but I don't understand how it'd be any better if it were a tribal lending entity?

**From:** Rob Rosette [mailto:rosette@rosettelaw.com]
**Sent:** Sunday, January 5, 2014 11:30 PM
**To:** Matt Martorello; jim.williams@lvdtribal.com; John McGeshick (jcmcgeshick@gmail.com); Gkway (gkway@lvdtribal.com); Justin Martorello
**Cc:** Saba Bazzazieh; Karrie Wichtman; Brett Stavin
**Subject:** RE: Meeting with Cheryl Parker Rose @ CFPB

Matt,

The Complaint doesn't give too many clues as to the CFPB's inner thought process. The CFPB did not come right out with a blanket statement that the law of where the consumer resides is what applies for online lending in all scenarios. However, by using State law as the basis of a federal UDAAP claim, the CFPB necessarily relies on the premise that State law applies because the borrower is located in that State. The only support for CFPB's argument that State law applies is that the consumers "did not enter tribal lands in applying for, receiving, or paying WS Loans. Rather, consumers applied for and received their WS Loans in the states where they lived. And consumers' payments on WS Loans were taken from bank accounts typically held by consumers in the states where they lived." Complaint at 14, ¶ 33. (Side note: Obviously, this reasoning was rejected in South Dakota in the FTC case, and could very well be rejected by other courts as well.) Thus, although the CFPB did not release a blanket statement that covers the sovereign lending model, its reasoning as to where the loan takes place is directly applicable to the sovereign lending model. Whether the lender is tribally owned or not, state-licensed or tribally licensed, the geographic considerations are the same. Therefore, on this point, the Complaint is indeed a bad sign.

Nevertheless, in a statement released simultaneously with the Complaint, the CFPB seems to have hedged its analysis in a way that might limit it to Western Sky-type businesses. Specifically, the Bureau released this statement: "Western Sky Financial asserted state laws did not apply to its business because it was based on an Indian reservation and owned by a member of the Cheyenne River Sioux Tribe. But this relationship with a tribe does not exempt Western Sky from having to comply with state laws when it makes loans over the Internet to consumers in various states." CFPB Sues CashCall for Illegal Online Loan Servicing: Bureau's First Online Lending Action Seeks Refund of Illegally Collected Money, http://www.consumerfinance.gov/newsroom/cfpb-sues-cashcall-for-illegal-online-loan-servicing/ (emphasis added). As you know, with the sovereign lending model, there is a significantly different "relationship with a tribe." These are not businesses that merely happen to be owned by a tribal member—these businesses are tribally owned and operated. Moreover, tribes have enacted comprehensive regulatory systems to monitor the businesses. The CFPB's Complaint did not need to address this distinction because it was inapplicable to its case against CashCall. Assuming the

1

CFPB carefully chooses its words in its press releases, the CFPB may have purposely left open the possibility that this distinction could be legally dispositive.

Of course, the Bureau's bootstrapping of State law is in blatant violation of its congressional mandate to enforce federal consumer financial protection laws. It should not be enforcing State usury laws against anyone, even non-tribal lenders. The Bureau's desperate resort to State law quite clearly indicates its contempt for consumer lending; it is prepared to go after consumer lenders (and servicers) regardless of strict limits on its enforcement authority. However, the reasoning of the Complaint, coupled with the press release, does not conclusively demonstrate an intent to go after legitimate tribal lenders. The Bureau did not clearly pass judgment on tribally owned businesses, so we cannot be sure of their intent. As noted above, the Bureau may be open to recognizing the critical distinction between individually owned and tribally owned businesses. That said, their filing of the amicus brief in the NY litigation certainly suggests that they are in fact at least highly skeptical of the sovereign lending model.

We need to create a strong record of the Tribal regulatory agencies meeting with various federal agencies, including most importantly, the CFPB. This will provide us with strong evidence of the "federal interest" that is required for Courts to weigh when looking at Indian law issues. While we can't necessarily trust the CFPB, we really have nothing to lose by attempting to negotiate an MOU with them. I've attached a draft MOU for you to look at and mark-up and comment on. We can circulate this MOU to the Senate, House, DOJ, White House, and Department of Interior as well. We should attempt to recruit as many federal agencies as possible to support the MOU.

As to your concern over when the CFPB will accuse a servicer of being "too close" to a TLE, the Complaint and the press release did not cover this point. It did not go into detail regarding the relationship between CashCall and Western Sky, save to say that the Complaint points out that CashCall buys, services, and collects on these loans. It did not need to classify CashCall as a de facto lender because the suit relies on the "unfairness" of collecting and servicing on existing loans that are allegedly void under State law. Their UDAAP claims do not require CashCall to be a "lender"—de facto or otherwise. However, North Carolina's lawsuit against CashCall, filed the same day as CFPB's suit, does give some indication of the factors behind what the CFPB will consider "rent-a-tribe." A memo summarizing the North Carolina suit and these factors is attached. I believe that the CFPB may agree with North Carolina's "rent-a-tribe" reasoning based on the fact that the suits were filed on the same day and the CFPB's press release explicitly stated: "In filing this suit today, the Bureau has worked closely and collaboratively with state attorneys general and banking regulators. Some of the state officials are also filing their own lawsuits and announcing formal investigations today; others are already in litigation."

Saba will send you memos on the respective complaints from a purely legal perspective.

I hope this is helpful.

Thanks,

Robert A. Rosette
Rosette, LLP
Attorneys at Law
565 W. Chandler Blvd., Suite 212
Chandler, Arizona 85225
Tel (480) 889-8990
Fax (480) 889-8997
Cell (480) 242-9810
www.rosettelaw.com

CONFIDENTIAL COMMUNICATION: THIS MESSAGE IS A CONFIDENTIAL ATTORNEY COMMUNICATION ONLY FOR USE BY THE INTENDED RECIPIENT. ANY INADVERTENT RECEIPT SHALL NOT CONSTITUTE A WAIVER OF ATTORNEY-CLIENT OR WORK PRODUCT PROTECTION. IF RECEIVED IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THIS MESSAGE.

CONFIDENTIAL                                                                                                             LVD-DEF00018127

**From:** Matt Martorello [mailto:mattm@bellicosevi.com]
**Sent:** Friday, January 03, 2014 6:53 PM
**To:** Rob Rosette; jim.williams@lvdtribal.com; John McGeshick (jcmcgeshick@gmail.com); Gkway (gkway@lvdtribal.com); Justin Martorello
**Cc:** Saba Bazzazieh; Karrie Wichtman
**Subject:** RE: Meeting with Cheryl Parker Rose @ CFPB

Hi guys, happy new year to you all. Hope you had a great holiday season.

As a professional pessimist, I'm cautious that this may be a misdirection attempt by the CFPB to act nice before an attack comes from the flank later in the year. I don't have the answer of course, but wanted to just spill some of my pessimistic thoughts here for your consideration.

Rob, have you been able to get any sort of comment directly from the CFPB on if we should be concerned an action similar to CFPB vs. CashCall is unique because there was not sovereignty? I'm sure they'll say whatever they must to keep folks happy, but it'd still be nice to hear them clarify their statement in the Cash Call suit: "Law of where the consumer resides is what applies for online lending". That statement within the lawsuit was without question a major attack on legit tribal lending operations. The CFPB has taken a stance on it, and they're calling it UDAAP and asking for more money than anyone in CashCall could possibly ever have. I'd love to know if the CFPB feels differently about true sovereign nation lending (how they define true sovereign lending is another issue that needs clarification, if we're even lucky enough to have that conversation).

I think I'd mentioned that Tim Rainey from [Redacted] who speaks regularly with the CFPB folks had a request form the CFPB just a few weeks before they filed suit against Cash Call and its owner for servicing Western Sky. The CFPB had requested to meet with various "Servicers" because they just wanted to get a sense for who these people were and the type of people that were involved. We were supposed to have an informal coffee meeting just to sit face to face one on one and chat about the industry. After some convincing, I volunteered to meet with them. However, the regulator was then not available to meet and never circled back. For the record, he did not know who he was going to be meeting. After the action came against Cash Call one week later in the CFPB's attempt to sue a "Servicer", I'm glad he doesn't know who was going to meet him and I'm glad it was canceled.

The timing is at least curious, between the requested meetings and the suit against a "Servicer" just a week or two later after "just wanting to get a feeling for what kind of people are Servicing". Frankly, I'm not sure why a regulator would ever take into account the "kind of people" rather than the letter of the law itself.

On top of it, they decided to chime in on the NY case against Tribal Lending.

In any case, I don't see what the upside to the CFPB is to ever enter a MOU. If they deem it a UDAAP violation in the event a lender must follow the law of where the consumer resides, then there is no other fight that matters and a MOU does nothing for tribal lending. That is the end of tribal lending should it apply to tribal government lenders (how they will then define that is another question that needs to be figured).

Essentially, at some point the momentum shows that they will be in a position to say that they gave credence to what Tribes were saying and spent months, or years, researching tribal government lending. However, they've come to the conclusion that the location of the consumer is the jurisdiction that applies to internet lending, and therefore tribal lending is a UDAAP violation. At the time, they may very well feel empowered to take significant action. We all adamantly disagree and have a very strong legal basis to do so. However, it will require a long, expensive and difficult fight where the stakes are very literally <u>everything</u>. My suggestion would be to keep this top of mind in your conversations and whatever can be done today to counter such a play by the CFPB forthcoming needs to occur.

3

CONFIDENTIAL
LVD-DEF00018128

It's also been speculated to me that the CFPB will sue Think Finance in a similar suit as they did to CashCall sometime in March or April.

Maybe we can get them in a MOU to defer to what a TFSRA calls UDAAP (directly or indirectly). Otherwise, Tribes and TLEs would both be on the hook for UDAAP violations where CFPB goes after "all revenue ever collected from consumers". That number is unobtainable by every investor combined. My point is, when this idea is proposed, and they respond with "not a chance", well that's when the relationship becomes bitter between LVD and CFPB. That is when they come with an almost identical suit against the LVD TLEs as they just did against Cash Call.

1) Have we been able to get any sort of comment directly from the CFPB on if we should be concerned an action similar to CFPB vs. CashCall is unique because there was not sovereignty?
2) Any indication if the CFPB would be open to a MOU, and if that MOU would relieve their comment in the Cash Call suit that location of consumer is the law that applies to internet lending?

Now all of this aside. I feel the CFPB is just flat out wrong. As do several wonderful attorneys, certain state AGs and/or courts, and the federal judge in the FTC vs. Western Sky case who stated the last act to occur is where the loan was consummated. There is far more reason to believe tribal law applies to LVD's loan than not, but having an extremely defensible position doesn't alleviate the massive penalties, should you be willing to fight the CFPB for many years (and you probably won't be in business long enough to be able to finance that battle) and you lose.

I think the conversations need to go to the only point that matters.

1) "Is the CFPB stating that RRTL is operating in violation of UDAAP, as its comments in the Cash Call suit read"? If you can't alleviate that issue, then everything else is worthless because a fight is coming and you're giving them more than you'd wish you had. I'd suggest getting clarity around that first. If you can get the correct answer we all want them to agree with us on, the next question is going to be:
2) What exactly constitutes a loan being originated on tribal land via the internet, and finally;
3) What are they seeing in the space that they feel is "rent-a-tribe"? Can they help tell us exactly how they are going to determine who they want to accuse of being "too close" to a TLE as a Servicer? What are they comfortable with for "Servicing" and what do they plan to attack?

Everything else I think is only really harmful, as the fight is coming if they don't agree with NAFSA on this one major point.

Thanks guys

---

**From:** Rob Rosette [mailto:rosette@rosettelaw.com]
**Sent:** Friday, January 3, 2014 6:22 PM
**To:** jim.williams@lvdtribal.com; John McGeshick (jcmcgeshick@gmail.com); Gkway (gkway@lvdtribal.com); Matt Martorello; Justin Martorello
**Cc:** Saba Bazzazieh; Karrie Wichtman
**Subject:** FW: Meeting with Cheryl Parker Rose @ CFPB

Chairman,

The CFPB is proposing to meet with us on Friday, January 31, at 2:00 p.m. This is an ideal time because NIGA is holding its Legislative Session in Washington DC earlier in the week. Will this time work for you?

As far as a meeting agenda, I think we should keep it completely introductory in nature. We can discuss generally the corporate governance structure of the Tribe's lending entities and drive the point home they are 100% owned; demonstrate the regulatory structure of the Tribe; and demonstrate what the Tribe does with the revenues generated. I've also been working on an outline for a proposed MOU, which I will attempt to circulate today or

4

tomorrow. I think we should come to the table with the MOU in hand. As you can see from the below e-mail, Otoe-Missouri has begun these discussions and will be presenting the MOU as well.

Let me know your thoughts and availability ASAP so that we can work to confirm the meeting.

Sincerely Yours,

Robert A. Rosette
Rosette, LLP
Attorneys at Law
565 W. Chandler Blvd., Suite 212
Chandler, Arizona 85225
Tel (480) 889-8990
Fax (480) 889-8997
Cell (480) 242-9810
www.rosettelaw.com

CONFIDENTIAL COMMUNICATION: THIS MESSAGE IS A CONFIDENTIAL ATTORNEY COMMUNICATION ONLY FOR USE BY THE INTENDED RECIPIENT. ANY INADVERTENT RECEIPT SHALL NOT CONSTITUTE A WAIVER OF ATTORNEY-CLIENT OR WORK PRODUCT PROTECTION. IF RECEIVED IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THIS MESSAGE.

---

**From:** Esselman, Jared (CFPB) [mailto:Jared.Esselman@cfpb.gov]
**Sent:** Thursday, January 02, 2014 12:17 PM
**To:** Rob Rosette
**Subject:** RE: Meeting with Cheryl Parker Rose @ CFPB

Good Afternoon Mr. Rosette,

As I am setting up the IGA calendar, would representatives from the Otoe Missouri Tribe be available for a meeting on January 29 at 1:00pm?

Please provide a formal discussion agenda.

Also, would Lac Vieux Desert Band of Lake Superior Chippewa Indians be available for a meeting on January 31 at 2:00pm?

Please provide a formal discussion agenda.

Let me know and I will arrange for a conference room.

Warmest Regards,

**Jared Esselman**
Coordinator, Intergovernmental Affairs
Consumer Financial Protection Bureau
202-435-9572 (direct)
www.consumerfinance.gov

---

**From:** Rob Rosette [mailto:rosette@rosettelaw.com]
**Sent:** Monday, December 30, 2013 4:57 PM

CONFIDENTIAL

**To:** Esselman, Jared (CFPB)
**Cc:** Joe Keene; Saba Bazzazieh; Brett Stavin; Parker Rose, Cheryl (CFPB); Pitts, John (CFPB)
**Subject:** RE: Meeting with Cheryl Parker Rose @ CFPB

Cheryl,

Happy Holidays!

I sent the below e-mail ten days ago with a listing of issues and meeting requests that the Tribal Governments wish to move forward with the CFPB. Can you please provide the Tribal Leadership with a response to each inquiry so that we may begin scheduling travel itineraries and preparing for the various meetings?

I look forward to your response.

Sincerely,

Robert A. Rosette
Rosette, LLP
Attorneys at Law
565 W. Chandler Blvd., Suite 212
Chandler, Arizona 85225
Tel (480) 889-8990
Fax (480) 889-8997
Cell (480) 242-9810
www.rosettelaw.com

CONFIDENTIAL COMMUNICATION: THIS MESSAGE IS A CONFIDENTIAL ATTORNEY COMMUNICATION ONLY FOR USE BY THE INTENDED RECIPIENT. ANY INADVERTENT RECEIPT SHALL NOT CONSTITUTE A WAIVER OF ATTORNEY-CLIENT OR WORK PRODUCT PROTECTION. IF RECEIVED IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THIS MESSAGE.

---

**From:** Rob Rosette
**Sent:** Friday, December 20, 2013 11:53 AM
**To:** 'Esselman, Jared (CFPB)'
**Cc:** Joe Keene; Saba Bazzazieh; Joe Keene; Cheryl.Rose@cfpb.gov; 'John.Pitts@cfpb.gov'
**Subject:** RE: Meeting with Cheryl Parker Rose @ CFPB

Jared,

Thank you for the call and the e-mail below. I'm copying folks from my law firm that will be helpful in working with you to finalize meetings that our law firm's clients have been requesting, and other matters we are hopeful to continue working on with your office. For convenience of time, I'm including several requests from various tribes on several matters into one comprehensive e-mail, as follows"

- Otoe Missouri Tribe request for meeting to discuss a formal government-to-government relationship, particularly between the CFPB and the Tribe's Regulatory Agency. The Tribe requests the attendance of CFPB folks from Supervision, Marketing, and Legal as well. The Tribe already had an initial meeting, but desires to have a second follow-up meeting soon. We propose conducting such a meeting on January 16th or 17th, or alternatively on the weeks of January 20th or January 27th, 2014.
- Otoe Missouri Tribe would also like a meeting with Enforcement regarding the CID. The suggested dates above are recommended.

6

- The Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD") is requesting an introductory meeting with Supervision, Marketing, Legal, and anybody else that Intergovernmental Affairs deems necessary to discuss a formal government-to-government relationship between the Tribe's Regulatory Agency and the CFPB. We propose such a meeting occur on January 16th or 17th, or alternatively the weeks of January 20th or January 27th, 2014.
- We discussed, extremely preliminarily, the prospect of a potential CFPB hearing dedicated to Tribal issues for any rulemaking for non-bank lending products. Saba Bazzazieh, specifically, from our office would like to assist, if possible, in bringing such a concept to fruition and working with CFPB and the Tribes to coordinate this effort to the extent we have the opportunity to do so. Please provide us direction on how to move this worthwhile endeavor forward.
- Finally, LVD, Otoe-Missouria, Pojoaque Pueblo, Habematolel Pomo of Upper Lake, Middletown Rancheria, Chico Rancheria, La Posta Band of Mission Indians, Big Valley Rancheria, and several other tribes have invited Ms. Parker-Rose to visit their respective tribes. We would like to begin scheduling these visits (we believe they can be scheduled in such a manner whereby multiple stops/tribes could occur during each travel period). If possible, we would like you to work with Joe Keene, who is copied to this e-mail, in order to coordinate these meetings.

I look forward to your response to each of these points. If possible, we'd like to get all of this confirmed before the Holidays so that we can begin to schedule our travel to DC and clear our respective calendars.

Sincerely Yours,

Robert A. Rosette
Rosette, LLP
Attorneys at Law
565 W. Chandler Blvd., Suite 212
Chandler, Arizona 85225
Tel (480) 889-8990
Fax (480) 889-8997
Cell (480) 242-9810
www.rosettelaw.com

CONFIDENTIAL COMMUNICATION: THIS MESSAGE IS A CONFIDENTIAL ATTORNEY COMMUNICATION ONLY FOR USE BY THE INTENDED RECIPIENT. ANY INADVERTENT RECEIPT SHALL NOT CONSTITUTE A WAIVER OF ATTORNEY-CLIENT OR WORK PRODUCT PROTECTION. IF RECEIVED IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THIS MESSAGE.

**From:** Esselman, Jared (CFPB) [mailto:Jared.Esselman@cfpb.gov]
**Sent:** Wednesday, December 18, 2013 2:02 PM
**To:** Rob Rosette
**Subject:** Meeting with Cheryl Parker Rose @ CFPB

Hi Mr. Rosette,

Per our conversation, I am sending an email and please feel free to let me know what day and time would work best for you in January. The week of the 6th is going to be extremely busy for us but the week of the 13th should be easier to schedule.

Warmest Regards,

**Jared Esselman**

7

Coordinator, Intergovernmental Affairs
Consumer Financial Protection Bureau
202-435-9572 (direct)
www.consumerfinance.gov

\*\*This email and any files transmitted with it are confidential and may contain privileged or copyrighted information. You must not present this message to another party without gaining permission from the sender. If you are not the intended recipient you must not copy, distribute or use this email or the information contained in it for any purpose other than to notify us. If you have received this message in error, please notify the sender immediately, and delete this email from your system.\*\*

\*\*This email and any files transmitted with it are confidential and may contain privileged or copyrighted information. You must not present this message to another party without gaining permission from the sender. If you are not the intended recipient you must not copy, distribute or use this email or the information contained in it for any purpose other than to notify us. If you have received this message in error, please notify the sender immediately, and delete this email from your system.\*\*

CONFIDENTIAL

LVD-DEF00018133