# Exhibit 40

# Tribal Loan Management, LLC

565 W. Chandler Blvd., Suite 212
Chandler, Arizona 85225

August 1, 2012

Alan Shively, Chairman
Lac Vieux Desert Band of Lake Superior Chippewa Indians
P.O. Box 249
Watersmeet, Michigan 49969

Re: <u>Tribal Loan Management, LLC Side-Letter Agreement</u>

Dear Chairman Shively:

This letter (the "Letter Agreement") is intended to memorialize the agreement between Tribal Loan Management, LLC, an Arizona limited liability company ("TLM") and the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "Tribe"), a federally recognized Indian tribe (each individually, a "Party" and collectively, the "Parties") with whom any agreement, contract, understanding, letter of intent, stipulation, or any other rule or bylaw of the Tribe or its subsidiaries of any kind whatsoever, whether oral or written, express or implied (as applicable, an "Agreement"), which was or which might have been attempted or consummated in fact between the TLM and the Tribe.

The Parties have agreed as follows:

1. The TLM Invoice dated August 1, 2012 ("TLM Invoice") in the amount of $960,000, when fully paid in accordance with the terms thereof, shall fully satisfy any and all obligations, duties, requirements to act or refrain from acting, omissions, or any other performance of the Parties under, related to, or with any possible connection to, an Agreement. For the avoidance of doubt, it is understood that, subject to the execution of this Letter Agreement, pursuant to the terms specified in the Invoice attached as Exhibit A, any Agreement directly affecting the Tribe shall be deemed null and void including any revenue or profit sharing arrangements, agency relationships, duties to negotiate documents, requirements for access to or restrictions from certain locations, and, except as set forth herein, requirements to arbitrate certain disputes, non-disclosure, or confidentiality requirements, as well as any other provision, requirement, duty to act or refrain from acting, that might arise from or be in any way related to, an Agreement.

The Parties shall preserve the confidentiality of all material information related to this Letter Agreement or any Agreement that may have been or will be disclosed (the "Confidential Information"), and shall not publish, disclose, or otherwise divulge such Confidential Information without the prior written consent of the other Parties, except to officers, directors, agents, or employees on a confidential and need-to-know basis. In the case of any breach of this confidentiality provision, the breaching Party

_____ Tribe    _____ TLM

August 1, 2012
Page 2 of 3

agrees to pay the other non-breaching Parties the sum of Two Hundred Thousand Dollars ($200,000.00) as liquidated and stipulated damages.

Confidential Information does not include information that: (a) was or is in the public domain prior to the date of disclosure; (b) was or is lawfully received by a Party from a third party without obligation of confidentiality; (c) was or is already known by or in the possession of a Party; or (d) is required to be disclosed under applicable law or by a governmental or court order, decree, regulation or rule, provided that written notice is provided to the other Party as far in advance as possible prior to disclosure. The Parties acknowledge that irreparable damage may incur if there is a breach of this section. Accordingly, if a Party or any of its respective agents or representatives breaches or threatens to breach any of the provisions of this section, then the affected Party will be entitled to all the rights and remedies available to it, including an equitable relief restraining any potential breach of the provisions of this section.

2. The Parties, individually and on behalf of themselves, their assigns, and successors, and each of them, covenants not to sue and fully indemnifies, releases, discharges, and holds harmless each other and their parents, subsidiaries, affiliates, and successors-in-interest, whether as they may have existed in the past, may currently exist, or as they may be created in the future, as well as its and their owners, agents, attorneys, insurers, representatives, assigns, and successors, whether as they may have existed in the past, may currently exist, or as they may be created in the future (hereinafter collectively referred to as "Releasees") with respect to and from any and all claims, demands, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which the Parties now own or hold or has at any time owned or held against said Releasees, arising out of or in any way connected with this Letter Agreement or any Agreement.

5. Because the Tribe intends to provide Tribal lending services to consumer borrowers, the Tribe shall indemnify, defend, and hold harmless TLM, its shareholders, directors, officers, attorneys, employees and agents, and its and their successors and assigns from and against any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, including interest, penalties, reasonable attorneys' fees and costs that TLM may incur or suffer which arise, result from, or relate to the Tribe's (a) a breach of any of its representations and covenants set forth in this Agreement or (b) a breach of this Agreement by the Tribe or (c) the Tribe's intended lending services to consumer borrowers or (d) the Tribe's or the Tribe's partner's or contracted vendor's business practices and/or advertising practices. The Tribe will pay any and all costs, damages and reasonable attorneys' fees and reasonable expert witness fees incurred by or awarded against TLM, its shareholders, directors, officers, attorneys, employees and agents, and all expenses incurred by TLM in connection with or arising from any such claim, suit, or proceeding.

6. If any dispute arises under this Letter Agreement, the Parties agree to first try to resolve the dispute with the help of a mutually agreed upon mediator. Any costs and fees other than attorneys' fees associated with the mediation shall be shared equally by the Parties. If it proves impossible to arrive at a mutually satisfactory solution through mediation, the Parties agree to submit the dispute to binding arbitration in the following location: Marquette, Michigan. The Parties agree that the binding arbitration will be conducted by a single arbitrator under the rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrator may be entered in the Lac Vieux Desert Tribal Court and in any Michigan State court. The Tribe consents to a waiver of its sovereign immunity for the limited purposes of resolving any dispute between the Parties arising under this Letter Agreement through

_____ Tribe    _____ TLM

August 1, 2012
Page 3 of 3

arbitration as set forth herein and for the entering of any judgment awarded by the arbitrator. The Tribe consents to the forum and venue(s) as set forth herein.

7. Each Party hereto is an independent contractor and nothing contained herein shall be construed to create a partnership, joint venture or agency relationship between the Tribe and TLM, and neither Party shall be authorized to bind the other in any way. This Letter Agreement is between the Tribe and TLM, and is not for the benefit of any third party, whether directly or indirectly.

8. The failure of any Party to exercise in any respect any right provided for herein will not be deemed a waiver of any further rights hereunder.

9. If any provision of this Letter Agreement is held to be invalid or unenforceable for any reason, such provision shall be conformed to prevailing law rather than voided, if possible, in order to achieve the intent of the parties and, in any event, the remaining provisions of this Letter Agreement shall remain in full force and effect and shall be binding upon the Parties hereto.

10. This Letter Agreement and the Attachment referred to in this Letter Agreement represent the complete and exclusive statement of the mutual understanding of the Parties and supersede and cancel all previous agreements, written and oral agreements, communications and other understandings specifically relating to the Tribe's consumer financial services businesses and the subject matter of this Letter Agreement. Except as otherwise provided herein, all modifications or amendments to this Letter Agreement must be in a writing signed by both Parties, except as otherwise provided herein.

11. The Parties warrant and agree that, by completing and executing this Letter Agreement, legal rights, duties and obligations are created. By signing, each of the Parties independently acknowledges, warrants, and agrees that the Parties have been advised to seek and obtain independent legal counsel as to all matters contained in the Letter Agreement prior to signing same, that each Party has had adequate time and sufficient opportunity to review this Letter Agreement with its own legal counsel and that each Party has obtained such advice or has chosen to proceed without same. For the avoidance of doubt, the Tribe Tribe warrants and represents that it was encouraged to seek independent legal counsel review of this Letter Agreement and affirmatively decided to forgo such review.

12. This Letter Agreement may be signed by TLM and the Tribe in counterparts, and facsimile signatures shall have the same force and effect as an original signature. The Tribe shall attach a copy of a Tribal Council Resolution (Exhibit B) approving both this Letter Agreement and the Invoice.

If this letter accurately reflects the terms of the agreement between TLM and the Tribe please sign where indicated below.

Sincerely,

Flint Richardson, Member Rob Rosette
Tribal Lending Management, LLC

Lac Vieux Desert Band of Lake Superior Chippewa Indians

By: _____
Alan Shively, Chairman

Tribe    TLM

CONFIDENTIAL