```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE EASTERN DISTRICT OF VIRGINIA

 3                     RICHMOND DIVISION

 4

 5    ------------------------------------
                                          :
 6    LULA WILLIAMS, et al., on behalf    :
      of themselves and all individuals   :   Civil Action No.
 7    similarly situated                  :   3:17CV461
      vs.                                 :
 8    BIG PICTURE LOANS, LLC, et al.      :
      ------------------------------------:
 9    RENEE GALLOWAY, et al., as          :
      individuals and as representatives  :   Civil Action No.
10    of the classes                      :   3:18CV406
      vs.                                 :
11    BIG PICTURE LOANS, LLC, et al.      :
      ------------------------------------:
12    JENNIFER GALLOWAY                   :   Civil Action No.
      vs.                                 :   3:19MC9
13    MATT MARTORELLO, et al.             :
      ------------------------------------:
14    LULA WILLIAMS                       :   Civil Action No.
      vs.                                 :   3:20MC8
15    BIG PICTURE LOANS, LLC, et al.      :
                                          :
16    ------------------------------------

17

                        June 16, 2020
18

19        COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

20        BEFORE THE HONORABLE ROBERT E. PAYNE

21             UNITED STATES DISTRICT JUDGE

22

23

                     Peppy Peterson, RPR
24                  Official Court Reporter
                 United States District Court
25
```

```
 1    APPEARANCES:

 2    Leonard A. Bennett, Esquire
      Consumer Litigation Associates, PC
 3    763 J Clyde Morris Boulevard
      Suite 1A
 4    Newport News, Virginia  23601

 5    Andrew J. Guzzo, Esquire
      Kelly Guzzo, PLC
 6    3925 Chain Bridge Road
      Suite 202
 7    Fairfax, Virginia  22030
      Counsel for the plaintiffs
 8

 9    John M. Erbach, Esquire
      Spotts Fain, PC
10    411 East Franklin Street
      Suite 600
11    Richmond, Virginia  23219

12    Michelle L. Alamo, Esquire
      Armstrong Teasdale, LLP
13    4643 S Ulster Street
      Suite 800
14    Denver, Colorado  80237
      Counsel for Matt Martorello
15

16    Geoffrey J. Greeves, Esquire
      Bradley Arant Boult Cummings, LLP
17    1615 L Street, NW
      Suite 1350
18    Washington, D.C.  20036
      Counsel for Jennifer Galloway
19

20    Frederick M. Baker, Jr., Esquire
      Frederick M. Baker, Jr., PLLC
21    200 Washington Sq N
      Suite 400
22    Lansing, Michigan  48933

23    Wyatt B. Durrette, Jr., Esquire
      Durrette Arkema Gerson & Gill, PC
24    1111 East Main Street - 16th Floor
      Richmond, Virginia  23219
25    Counsel for Karrie Wichtman
```

<u>P R O C E E D I N G S</u>

1
2
3       THE COURT:  Hello.  What case is this in?

4       MR. ERBACH:  Your Honor, John Erbach speaking.  This

5  is in two of the miscellaneous matters for transferred

6  subpoenas, 3:20MC8 which is the Karrie Wichtman subpoena, and

7  3:19MC9, which is the Jennifer Galloway subpoena, and they're

8  both related to Williams v. Big Picture, et al.

9       THE COURT:  All right.  And what is it that we're

10  trying to deal with here?

11       MR. ERBACH:  Your Honor, there are motions --

12       THE COURT:  First, let's see who is here.  Who is

13  here for the plaintiff?

14       MR. BENNETT:  Your Honor, this is Leonard Bennett.

15  Also Andrew Guzzo from Kelly Guzzo is here, both for the

16  plaintiff.

17       MR. ERBACH:  Your Honor, on behalf of defendant Matt

18  Martorello, John Erbach, and I also have on the line Michelle

19  Alamo of the firm Armstrong Teasdale.

20       MR. GREEVES:  And, Your Honor, Geoffrey Greeves with

21  Bradley Arant for Jennifer Galloway, the movant, the party that

22  was subpoenaed.

23       MR. DURRETTE:  Your Honor, this is Wyatt Durrette for

24  Karrie Wichtman, and on also is Fred Baker whose pro hac

25  admission we have moved.

1          MS. ALAMO:  Your Honor, it's Michelle Alamo on behalf

2     of Mr. Martorello.  I just also wanted to add that these two

3     miscellaneous actions relate to motions to quash deposition

4     subpoenas that relate to both Williams and Galloway 1.

5          THE COURT:  What's Galloway, what's that number?

6          MS. ALAMO:  It is 18CV406.

7          THE COURT:  I thought I had issued orders that dealt

8     with all this stuff.  Have I not?

9          MS. ALAMO:  Your Honor, we discussed Ms. Wichtman's

10    motion to quash in the May 7th and 8th teleconferences and

11    relate to the evidentiary hearing.  At that time, Ms.

12    Wichtman's motion had not been transferred from the Western

13    District of Michigan so you could not rule on it.  It has now

14    been transferred and since reviewed for decision.  That's why

15    we wanted to call and request a hearing date.  Ms. Galloway's

16    motion to quash has been pending with the Court for over a year

17    now.

18         THE COURT:  I thought that was gone.  What are you

19    doing, Mr. Bennett?  I thought that was gone.

20         MR. BENNETT:  Judge, this is not -- this isn't me.

21    This is the defendant and its relationship with these

22    third-party witnesses.

23         THE COURT:  She said it was Ms. Galloway's motion to

24    quash.

25         MS. ALAMO:  It's a different -- it's Jennifer

1    Galloway, Your Honor.  She was actually -- it's a different --

2    Jennifer Galloway, not the --

3              MR. GREEVES:  Not related, Your Honor.

4              MR. BENNETT:  It's a name but it's not the same

5    person -- there's no people that are actually involved with one

6    another, Judge.

7              MS. ALAMO:  Correct, Your Honor.

8              THE COURT:  I'm going -- I don't know what's going on

9    here, why it's a constant fight about getting these depositions

10   straight, but enough of it is enough.  Now, I just issued

11   orders, Mr. Bennett, dealing with Ms. Pete's deposition.  That

12   isn't involved here; is that correct?

13             MR. BENNETT:  That's correct.  And --

14             THE COURT:  Wait a minute.  Let me ask my questions.

15   The only thing involved, that you all want to deal with is Ms.

16   Wichtman's deposition because Ms. Wichtman's motion was not

17   ready for me to decide because there was a motion for

18   reconsideration in Michigan; is that right?

19             MR. BENNETT:  That's correct, Judge.

20             THE COURT:  Now, what is the number of the motion

21   that I'm to be deciding here in -- that is what case, MC8?

22             MR. BAKER:  20MC8, yes.

23             THE COURT:  Who is that?

24             MR. BAKER:  Excuse me, Your Honor.  Fred Baker.

25             THE COURT:  Who?

```
 1              MR. BAKER:  Fred Baker.  I'm Karrie Wichtman's
 2   attorney in the Western District of Michigan, and my
 3   application for pro hac admission is pending.  Wyatt Durrette
 4   is my local counsel, but I had the number handy.
 5              THE COURT:  What is the motion -- the ECF number of
 6   the motion -- the case number and the ECF number?
 7              MR. BAKER:  The case number --
 8              MR. DURRETTE:  Your Honor, this is Wyatt Durrette.  I
 9   have to look that up, but Mr. Baker has it if it's okay for him
10   to address the Court.
11              THE COURT:  That's fine.  I don't care who addresses.
12              MR. BAKER:  I am --
13              MS. ALAMO:  If I may, Your Honor, it's Michelle
14   Alamo.  The miscellaneous case, I believe, is 20-MC-0008, and I
15   believe the motion to quash is ECF 47 which I'm sure Mr. Baker
16   will confirm.
17              MR. BAKER:  I'm pulling that up.
18              MS. ALAMO:  I actually misspoke.  I think 47 is the
19   motion for reconsideration of the order of transfer.
20              THE COURT:  Yeah.  So that's done; right?
21              MR. DURRETTE:  Your Honor, this is Wyatt Durrette.
22   No, it isn't, but it's about to be.  The judge in Michigan did
23   not realize that motion to reconsider was pending, and so he
24   transferred the case while that motion was still pending.  But
25   we have chosen not to pursue it, so that will be either
```

1   dismissed or withdrawn, whatever the Court prefers.

2            THE COURT:  47.

3            MR. DURRETTE:  That leaves only the motion to quash.

4            THE COURT:  47 is to be withdrawn.

5            MR. DURRETTE:  Yes, sir.

6            THE COURT:  Is it withdrawn now?

7            MR. DURRETTE:  Yes, sir.

8            THE COURT:  Any objection?

9            MS. ALAMO:  No objection.

10           THE COURT:  An order will be entered.  Denied as moot

11  having been withdrawn.  Now, what's the motion to quash that

12  you are talking about, please?  42?

13           MS. ALAMO:  ECF 34.

14           MR. BAKER:  That is correct.  ECF 34 filed August 7

15  of 2019.

16           THE COURT:  Are you trying to use the ECF system to

17  get to these things?

18           MR. BAKER:  Yes, Your Honor.

19           THE COURT:  Are you having difficulty getting the

20  system to react in a timely fashion when you click on it?

21           MR. BAKER:  No, sir.  I have it before me.  No, Your

22  Honor.  I have it before me.

23           THE COURT:  I understand that.  That's not my

24  question.  My question is, are you having difficulty having the

25  system -- once you click the number 47, I'm having a

 1    considerable delay between that and the time that it shows up,

 2    and I'm asking if you're having the same thing.

 3                MR. BAKER:  Oh.  Oh, no.

 4                THE COURT:  Then it's my system here.  I don't know

 5    what that is.  I'll have it checked out.  All right, ECF 34.

 6    The briefing is ripe on it?

 7                MS. ALAMO:  Yes, Your Honor.

 8                THE COURT:  What is the next -- what's the response

 9    to that?  Is that number 37?

10                MR. BAKER:  The response, according to what I see

11    before me, is -- the response in opposition to the motion to

12    quash was 38.  But there was also a response, ECF 37.  One is

13    filed by the counsel for plaintiffs, and one is filed by

14    counsel for Martorello, Matt Martorello, and that is ECF 38.

15    37 is filed by counsel for plaintiffs.

16                THE COURT:  And that is withdrawn as moot; is that

17    correct, number 37?

18                MR. BAKER:  No.  That is the response to number 34,

19    the motion to quash, and the motion that is withdrawn as moot

20    is the motion for reconsideration of the order transferring the

21    case.

22                THE COURT:  I know that.  I'm sorry, Mr. Baker.

23    That's not what I'm asking.  Number 37 is filed by somebody

24    named Coffy, Gillison, Hengle, Turnage, Williams.  Is that

25    thing still alive, that response number 37?

1          MR. GUZZO:  Your Honor, that is still live.

2          THE COURT:  Why?  Why is it alive?

3          MR. GUZZO:  To give Your Honor some background, the

4   subpoena was issued, and Ms. Wichtman sought to quash it on the

5   basis of sovereign immunity.  And our brief at docket 37 argues

6   why sovereign immunity does not essentially allow Ms. Wichtman

7   to avoid a deposition in this case.  That is why it's live.

8          MS. ALAMO:  Your Honor, to provide some additional

9   background, Ms. Wichtman was actually subpoenaed by both Mr.

10  Martorello and plaintiff?  So plaintiffs and Mr. Martorello are

11  actually aligned when it comes to taking Ms. Wichtman's

12  deposition.  That's why there's two oppositions.

13         MR. BAKER:  That is correct, Your Honor.

14         THE COURT:  All right.  38 is --

15         MR. BAKER:  That is the response by Mr. Martorello's

16  counsel.  Michelle, you can speak for yourself.  I'm sorry.

17         THE COURT:  That's Martorello's.

18         MS. ALAMO:  Correct.

19         THE COURT:  This thing is a case that was pending in

20  Michigan, so I'm trying -- it's been sitting around over there

21  for awhile.  Now, is there a reply?

22         MR. BAKER:  Yes, there is.  It's under ECF --

23         MS. ALAMO:  I believe it's 42.

24         MR. BAKER:  Yes, 42.  You will find the labeling

25  peculiar.

1      THE COURT:  Yes, it is very peculiar.  I'm clicking

2  it to get to it, see if I understand it.  That's still one in

3  the Western District of Michigan, and it's ECF 42.  And that's

4  a reply apply to both 37 and 38, Ms. Alamo?

5      MR. BAKER:  It is a combined reply.  And the Court

6  could take note of the attachment which is the opposition to

7  the transfer motion.

8      THE COURT:  Wait just a minute.

9      MR. BAKER:  Particularly attached to that reply.

10      THE COURT:  So what's to be dealt with by me now is

11  ECF 34, 37, 38, and 42; is that right?

12      MR. BAKER:  That is correct.

13      THE COURT:  Okay.  Now, you all didn't want to argue

14  that today, but does this have -- what does the case 3:18CV406

15  have to do with this?

16      MS. ALAMO:  Your Honor, this deposition was

17  originally noticed for Williams, but, as you know, there is a

18  cross use between Williams and Galloway 1 which is 406, so the

19  depositions are being captioned for both matters.  That's why I

20  wanted to send out that it's related to both cases, just like

21  the evidentiary hearing that is coming up and the other

22  depositions that are being taken in these two cases.

23      THE COURT:  What does this case have to do with

24  3:19MC19, if anything?  What does this motion have to do with

25  that case?

```
 1            MS. ALAMO:  I'm sorry, Your Honor.  Were you
 2   referring to 3:19MC9?
 3            THE COURT:  Is that Martorello v. Williams?
 4            MR. Baker:  No, Your Honor, no.
 5            MS. ALAMO:  No, the other miscellaneous matter that
 6   we were -- that Martorello is requesting a hearing be set on is
 7   Jennifer Galloway who is an attorney, a compliance attorney,
 8   and consultant for Bellicose and Sourcepoint.  Mr. Martorello
 9   and plaintiff had subpoenaed --
10            THE COURT:  Excuse me.  What case is that in?
11            MS. ALAMO:  That is a miscellaneous action, 19MC0009.
12   It's the deposition that relates to both Williams and Galloway.
13            THE COURT:  Excuse me.  I need to get there.  It's
14   3:19CV -- MC, excuse me.
15            MR. BAKER:  Correct, Your Honor, MC.
16            THE COURT:  MC9.  And that is styled Galloway v.
17   Martorello; right?
18            MS. ALAMO:  Correct.  It's Jennifer Galloway the
19   attorney.  It's a little confusing because she has the same
20   name as one of the plaintiffs.
21            THE COURT:  But is the style of the case Galloway v.
22   Martorello?
23            MR. BAKER:  It is, Your Honor.  That is correct.
24            THE COURT:  So that is -- and in what pleadings are
25   we talking about in there?
```

```
1              MR. GREEVES:  Your Honor, if I may, it's Geoffrey
2     Greeves, Jennifer Galloway's attorney.  I don't think Ms.
3     Galloway was on the list originally as a deponent who were set
4     up to be heard.  I just figured -- got an email from Mr. Alamo
5     on, I guess, Friday setting this up for today.  So it's not
6     something that was on the radar.  Number three is the amend --
7     ECF number three --
8              THE COURT:  Wait a minute.  Who are you?
9              MR. GREEVES:  Geoffrey Greeves, Your Honor.  I'm
10    Jennifer Galloway's attorney.
11             THE COURT:  What did all that statement that you just
12    made, what did that have to do with what I need to look into?
13    I'm confused by what you said.
14             MR. GREEVES:  I think the assertion has been made
15    that this deposition somehow has to be taken before a cutoff.
16    At least that's what I was told, but this deposition was never
17    on any of the lists associated with that.
18             THE COURT:  Just so you know, please, when I ask you
19    a question which is a simple question about what the docket
20    number was, I don't need you to launch into a discussion about
21    the merits of the issue.  All I want to know is the -- I have
22    here a motion to quash the subpoena and memorandum, number one.
23    Is that --
24             MR. GREEVES:  ECF number three.  It's an amended
25    motion, Your Honor.
```

1          THE COURT:  Okay, so, number one is denied as moot;

2     is that correct?

3          MR. GREEVES:  I believe so.  I believe it was

4     re-filed as an amended motion.

5          THE COURT:  So it will be denied as moot, and now the

6     operative motion is ECF three.  And Ms. Galloway, who is she

7     again, this lady?

8          MS. ALAMO:  She was a consumer lending compliance

9     consultant hired by Bellicose and Sourcepoint from 2011 to

10    2015.  She did compliance review and advice, and then after

11    2016, she continued to work for the tribal lending businesses.

12         THE COURT:  So she was employed.  You mean an

13    employee, or she was contracted with?

14         MS. ALAMO:  Contracted with.  She was outside

15    counsel, compliance counsel and consultant.

16         MR. BENNETT:  Your Honor, this is Len Bennett.  She

17    was actually Mr. Martorello's lawyer prior to the merger.

18         THE COURT:  All right, so who wants to take her

19    deposition?

20         MS. ALAMO:  Your Honor, Mr. Martorello originally

21    subpoenaed her back in 2018.  Andrew, you'll have to remind me,

22    did plaintiffs cross subpoena her?

23         THE COURT:  Let's stop again.  As of today, who wants

24    to depose her?

25         MS. ALAMO:  Mr. Martorello.

```
 1              THE COURT:  What's wrong with that?  If Martorello --
 2    if she's Martorello's lawyer, who is objecting to the subpoena;
 3    Ms. Galloway?
 4              MS. ALAMO:  Yes, Your Honor.
 5              THE COURT:  And is she the only one objecting to it?
 6              MS. ALAMO:  Yes, Your Honor.
 7              THE COURT:  All right.  So the operative is number
 8    three, and then what's the response to that; number six?
 9              MS. ALAMO:  Number six.
10              THE COURT:  And is there any other response other
11    than number six?  Is there a reply then, any reply?
12              MS. ALAMO:  Your Honor, there is a number 11 which is
13    the opposition to the amended motion to quash.  I believe
14    that's the operative response.  I apologize for that.
15              THE COURT:  All right.  And then there is --
16              MR. GREEVES:  Number 16 would be the reply.
17              MS. ALAMO:  Actually I think there's two responses.
18    I take that back.  I believe plaintiff -- number six is Mr.
19    Martorello's response, and number 11 is plaintiffs' response.
20              THE COURT:  All right, now, why is the plaintiff
21    filing a response if it's Martorello who noticed the deposition
22    and issued the subpoena?
23              MR. BENNETT:  Judge, this is Len Bennett.  We had
24    previously ourselves sought to obtain discovery from Ms.
25    Galloway and her law firm, and -- so this -- the challenge here
```

1    is -- in terms of separating this, Judge, there's the upcoming

2    misrepresentation hearing --

3            THE COURT:  Mr. Bennett, you are getting into the

4    history of Switzerland, and I don't want it.  Do you have --

5    did you subpoena Ms. Galloway and is there a motion seeking to

6    quash your subpoena in this MC --19MC9; yes or no?

7            MR. BENNETT:  I have to ask Mr. Guzzo.

8            MR. GUZZO:  Yes.

9            THE COURT:  Stop.  What docket number is it?  What

10   docket number is your subpoena, what docket number is the

11   motion to quash?

12           MR. GUZZO:  The motion to quash is docket number one,

13   and the subpoena is docket number --

14           THE COURT:  Wait just a minute.  I was just told that

15   motion -- docket number one is denied as moot because it was

16   replaced by docket number three.

17           MR. GUZZO:  That's correct, Your Honor.  I apologize.

18           THE COURT:  So does docket number three seek to quash

19   a subpoena issued by the plaintiffs?

20           MR. GUZZO:  Both the plaintiffs and Mr. Martorello

21   have separately subpoenaed Ms. Galloway.

22           THE COURT:  You know, I understand that from what you

23   said, but my question is a little different than that.  My

24   question is, does this motion seek to quash a subpoena issued

25   by Martorello and by the plaintiffs?

1      MR. GUZZO:  Yes, that's correct, Your Honor, and the

2  subpoenas themselves are at document number 3-1.  They're

3  attached as Exhibit A to the motion, and both Mr. Martorello's

4  subpoena as well as plaintiffs' subpoenas are attached at

5  docket 3-1.

6      THE COURT:  It says in the paper that Exhibits A-1

7  and A-2, which are document subpoenas and deposition subpoenas,

8  are attached to the deposition of Galloway which is attached as

9  Exhibit A to ECF number three; is that right?

10     MR. GUZZO:  That's right.  The initial 3-1 is a

11 declaration from Ms. Galloway, and then Exhibits A-1 to A-2 are

12 the subpoenas that were issued by the parties.

13     THE COURT:  And so then does -- is the plaintiffs'

14 response thereto number 11 and the reply number 16 as well; is

15 that right?

16     MR. GUZZO:  Let me just page back.  That is correct.

17 The plaintiffs' response is docket 11, and that's right, docket

18 16 is the response in opposition actually to eight.

19     MS. ALAMO:  That was the motion to transfer which has

20 obviously been resolved.

21     THE COURT:  Plaintiffs want a ruling on the motion to

22 quash their subpoena.  The plaintiff will now tell me exactly

23 what the subpoena is with the correct references, the brief

24 that opposes -- and the motion opposing, the brief responding,

25 and the reply brief.  That way then I will know what to do.

1   Otherwise you lose.  Go.

2           MR. BENNETT:  Judge, after pulling it up, Your

3   Honor --

4           THE COURT:  Do that.  That's fine.

5           MR. BENNETT:  We are.  Judge, we didn't schedule the

6   hearing.  We weren't even sure what the subject was from Ms.

7   Alamo's point.  So we're trying to do this on the fly now, and

8   I'm sorry, Judge.  We are.

9           MR. GUZZO:  Your Honor, this is Andrew Guzzo.  We

10  have subpoenaed Ms. Galloway.  We want to take her deposition.

11  We want her to produce the documents that are on our subpoena.

12  It's my understanding, and her counsel is on the phone, that

13  Ms. Galloway expects she is entitled to tribal sovereign

14  immunity based on both her position as counsel for Bellicose

15  and then subsequently counsel for the tribe.

16          And so very much like the deposition subpoena of Ms.

17  Wichtman, the issues before the Court with regard to whether

18  Ms. Galloway needs to comply with the subpoena revolve around

19  whether a third party is subject to Rule 45 and the subpoena

20  process or whether tribal sovereign immunity allows Ms.

21  Galloway and Ms. Wichtman to block us from taking the

22  deposition.  That's the core issue before the Court.

23          THE COURT:  I didn't ask you what the core issue was.

24  I asked you to tell me the docket numbers of your subpoena, of

25  the motion to quash your subpoena, of your response to the

 1    motion to quash your subpoena, and of the reply to it, and

 2    that's what I want, please.

 3            MR. BENNETT:  Yes, sir, so the motion to quash our

 4    subpoenas, the motion to quash is at docket number two.

 5            THE COURT:  Docket number two?

 6            MR. BENNETT:  I believe.  No.  I pulled up

 7    document -- our opposition is at 11, and the motion to quash is

 8    number three.

 9            THE COURT:  And the reply is number 16.

10            MR. BENNETT:  Yes, sir.

11            THE COURT:  And the subpoenas that are being sought

12    to be quashed are what?

13            MR. BENNETT:  They are at document number three.  The

14    Exhibit A or Exhibit 1, 3-1, so it's characterized as Exhibit

15    A --

16            THE COURT:  You are -- Mr. Bennett, you are running

17    together a bunch of things that nobody can understand, least of

18    all me.  What is the docket number of the subpoenas that you

19    issued?

20            MR. BENNETT:  3-1.  So it's 3-1 starting at page

21    five.  So document 3-1 starting at page five, and the substance

22    of the exhibit listing the documents that are requested is at

23    page eight of 3-1.  And the notice of deposition is 3-1

24    starting at page 14.  But -- and, Your Honor, I don't want to

25    get into a non sequitur like I normally do, but there is

1    something I would like to raise with the Court in this regard.

2              THE COURT:  On what regard?

3              MR. BENNETT:  There are two purposes for the

4    discovery that is sought.  The first purpose is to prove the

5    case and to defend the case, the case in chief, and these

6    depositions were noticed in 2019, and they were to prove the

7    case in chief.  They were not -- this is not an issue that

8    arose related to the misrepresentation hearing and the

9    depositions for which we have cutoff coming in about two weeks.

10             Then, of course, there is that misrepresentation

11   hearing.  In the discussion before Your Honor got on the call

12   as well as in other matters, discovery matters, Mr. Martorello

13   is attempting to conduct discovery not just with respect to the

14   misrepresentation hearing but also just generally with respect

15   to the case in chief, and the reason why that's important is

16   because we only have two weeks now.

17             Mr. Martorello's effort to try to cram -- I think

18   maybe 20-some witnesses have been listed in its proposed

19   witness list.  We'll have something to say about that when we

20   file our motion, but this deposition was not one of the ones

21   that was ever discussed as necessary for the misrepresentation

22   hearing, hence the sense of urgency that is suggested by Mr.

23   Martorello we don't believe is appropriate.

24             MS. ALAMO:  Your Honor, if I may respond to that,

25   Ms. --

```
1              THE COURT:  Here again, this is all information that
2    you all know about and that may be important to you, but right
3    now it's not real important to me.  Right now I want to make
4    sure that I fully understand exactly what's before me that you
5    want a hearing on.  That's why you called.
6              As I understand it, in 3:20MC8, there is -- the
7    motions, replies -- responses and replies reflected in ECF
8    number 34, 37, 38, and 42.  Then there is a separate matter
9    that is in 3:19MC9, Galloway versus Martorello, and that is --
10   that has to do with the deposition of Jennifer Galloway who
11   was -- as I understand it, everybody said she's a consultant,
12   and then somebody else said she's a lawyer.  Lawyers can be
13   consultants, lawyers can be lawyers, but, in any event, those
14   issues are reflected in ECF numbers three in that case, that is
15   3:19MC9, six, 11, and 16.  Now, am I right so far?
16             MS. ALAMO:  Your Honor, just for one question.  16
17   does not relate to the motion to quash.  16 related to the
18   motion to transfer.  I will have to defer --
19             THE COURT:  What's the reply?
20             MS. ALAMO:  I'm not sure there was a reply.  I don't
21   remember if there was a reply actually committed under the
22   Florida local rules.
23             THE COURT:  Okay.
24             MS. ALAMO:  Mr. Greeves?
25             MR. GREEVES:  Your Honor, I think we filed some
```

```
 1   supplemental materials, but I don't think we filed a reply as
 2   such.  It was -- 21 is the supplemental authority that was
 3   filed, and then also docket 20 was filed in support.  But like
 4   you, Your Honor, I'm in the -- I'm actually getting to the meat
 5   of what's in there, but those were the two references I have.
 6               THE COURT:  This is a problem when you lump a bunch
 7   of different things together.  You can't understand the title
 8   of the pleading.  Do I need to consider number 21 as part of
 9   what we're doing or not?
10               MS. ALAMO:  Yes, Your Honor.  20 and 21.
11               THE COURT:  Now, the next question is, what
12   motions -- excuse me a minute.  Just so I understand then,
13   these depositions in 3:19-9 of Ms. Galloway and 3:20MC8, Ms.
14   Wichtman, are pertinent to the substantive motion of some kind
15   or the defense or the prosecution in which cases, Mr. Bennett?
16   Just simply the cases and the numbers.
17               MR. BENNETT:  In Williams which is 270 --
18               THE COURT:  No, Williams is 3:17 -- what is 270?
19               MR. BENNETT:  I'm pulling it up, Your Honor's.
20               THE COURT:  Williams is 3:17CV461, and Galloway 1 is
21   3:18-406.
22               MR. BENNETT:  Just a minute, Judge.
23               THE COURT:  Are both -- let's take them one at a time
24   then.  Is the Wichtman deposition pertinent to the merits of
25   3:17CV461 and/or 3:18CV406; yes or no?
```

1              MR. BENNETT:  Yes.

2              THE COURT:  Does anybody disagree with that?  Okay.

3              MR. BAKER:  This is Fred Baker.  The only caption

4    that was involved, to my knowledge, is the Lula Williams v. Big

5    Picture which is 3:17CV461.

6              THE COURT:  That's the caption of the notice; is that

7    what you are saying?

8              MR. BAKER:  Yes.  That's the case in which the

9    miscellaneous matter was brought in Michigan to my knowledge.

10   Only the Williams v. Big Picture.

11             THE COURT:  To the extent that Ms. Wichtman testifies

12   about the -- state of misrepresentations, that's involved in

13   3:18CV406 and 3:17CV461.

14             MR. BAKER:  No claims of misrepresentation had been

15   advanced in 2019 when that subpoena was issued.  These are

16   matters of which I am not informed.

17             THE COURT:  All right.  What is the position of the

18   other people as to which of these cases, 3:17CV461 and

19   3:18CV406, that the deposition of Ms. Wichtman relates?

20             MS. ALAMO:  Your Honor, it's Michelle Alamo on behalf

21   of Mr. Martorello.  We agree with plaintiffs' counsel that Ms.

22   Wichtman's testimony for which she was subpoenaed is relevant

23   to both cases.  It goes not only to the misrepresentation

24   hearing but also to the merits.  That's why we're seeking to

25   depose her once.  It's only constant in one of the matters

1  because if Your Honor recalls, there is in the protective order

2  a provision in your order.  Your Honor actually had provided

3  that discovery taken in one case will apply to both cases.

4             THE COURT:  That's my understanding, okay.  Now, how

5  about the deposition of Jennifer Galloway?  Does it pertain to

6  3:17CV461 and 3:18-406, Williams v. Big Picture and Galloway 1

7  respectively?

8             MR. BENNETT:  Yes, Your Honor.

9             MS. ALAMO:  Yes, Your Honor.

10            THE COURT:  And it pertains also to the

11  misrepresentation and to the underlying merits; right?

12            MS. ALAMO:  Yes, Your Honor.

13            THE COURT:  Okay.  So right now, why are we talking

14  about taking any depositions other than as pertains to the

15  alleged misrepresentation, Mr. Bennett?

16            MR. BENNETT:  I don't know.  Judge, I don't think we

17  should.

18            THE COURT:  Ms. Alamo?

19            MS. ALAMO:  Well, Your Honor, discovery per Your

20  Honor's order 349 in Galloway has been reopened as to Mr.

21  Martorello.  The case is no longer stayed.  We don't see any

22  reason to bifurcate these depositions.  Your Honor has

23  mentioned that these matters need to move along, so it would be

24  our position that the depositions should be taken once, they

25  should be taken as to the merits.  That's what we intend to do

1  so as to not overburden or harass these witnesses and, as I

2  said, to progress with discovery in these cases as there's no

3  stay.

4        THE COURT:  Also, there is no order of scheduling or

5  cutoff, discovery cutoff in these two cases; is that right?

6  That is 3:17CV461 or 3:18CV406; is that correct?

7        MS. ALAMO:  That is correct, Your Honor.

8        THE COURT:  How long do you anticipate the

9  depositions to be if they are confined only to the question of

10  misrepresentation, Mr. Bennett?

11        MR. BENNETT:  Judge, I don't know.  I don't know what

12  the defendant -- ours would be cross-examination.

13        THE COURT:  Thank you.  Ms. --

14        MR. BENNETT:  One day or less all told.

15        THE COURT:  How long do you think the deposition will

16  be, Ms. Alamo, if the deposition is confined to the matter of

17  misrepresentation?

18        MS. ALAMO:  If it's confined to the matter of

19  misrepresentation, I anticipate that Mr. Martorello will need

20  four to five hours with Ms. Wichtman.

21        THE COURT:  If it includes the merits, how long do

22  you think it would take?

23        MS. ALAMO:  If it includes the merits, we have

24  requested in our conference seven hours for our questioning.

25        THE COURT:  A total of seven hours.

1              MS. ALAMO:  Correct, for our questioning, and I

2    believe plaintiffs' counsel requested seven hours for their

3    questioning during --

4              MR. BENNETT:  That's correct.

5              THE COURT:  Excuse me.  That would be for the merits

6    and for the misrepresentation; correct?

7              MS. ALAMO:  Correct.

8              MR. BENNETT:  Yes, sir.

9              THE COURT:  All right.  Now I understand.  And at

10   this point, I guess we have to go back and read the briefs,

11   but -- what is the basic -- is it correct, counsel for Galloway

12   and counsel for Wichtman, that the issue is that these people

13   have some kind of tribal immunity?

14             MR. Baker:  I will go first, Your Honor.  Ms.

15   Wichtman is currently a private attorney and was formerly

16   outside counsel for the tribe before assuming the position of

17   tribal attorney.  She certainly is an officer of the tribe.  It

18   is our position that she is an officer of the tribe and, under

19   the tribe's charter, is entitled to the same -- by virtue of

20   that status the same immunity as the tribe, and that matter has

21   been briefed in the matter now before you.

22             THE COURT:  How about Ms. Galloway?

23             MR. GREEVES:  Thank you, Your Honor.  Geoffrey

24   Greeves.  The point of Jennifer Galloway's objection is it's an

25   attorney-client privilege issue.  She's acting as outside

1    counsel, number one.  Number two, she shares the tribal

2    immunity.  We briefed that issue as well, and number three,

3    Your Honor, most important -- maybe most importantly, Ms.

4    Galloway only advised federal law issues, not state law issues,

5    which I think is all that's left in the matter, so Ms.

6    Galloway's deposition need not be taken at all because she

7    couldn't actually add any information that would be pertinent

8    to the case in that manner.  Those are the three bases of

9    objections that we have.

10            THE COURT:  I understand Mr. Bennett to have said a

11   moment ago that Ms. Galloway was Mr. Martorello's lawyer.  Is

12   that correct?

13            MR. GREEVES:  I don't think she was his personal

14   attorney.  I think she served in a corporate capacity serving

15   as entity counsel.

16            THE COURT:  Entity, what entity?

17            MR. GREEVES:  I believe it would have been the

18   Bellicose entity, and then post-merger I think she was counsel

19   for Ascension.

20            THE COURT:  All right, Mr. Bennett?  What, if

21   anything, does that have to do --

22            MR. BENNETT:  Yes, sir.  So the concern that -- I

23   know -- you know, I presume that -- I'm hesitant to say this,

24   but I think that the defendant is trying to delay the matter.

25   The reason why this has become an issue now is because this

1    would cause the Court to render a decision on sovereign

2    immunity, and the result is that it would become an appealable

3    order that would delay the currently scheduled

4    misrepresentation hearing.

5            THE COURT:  Well, we're not going to delay it come

6    hell or high water.  This hearing is going, it's not going to

7    be delayed.  There has been nothing but delay by the whole

8    defense side in this case from the very beginning, and it is

9    over with.  So I'll look at these and see -- are you trying to

10   get -- Ms. Alamo, are you trying to get Ms. Galloway to talk

11   about something that she did or had with respect to the

12   representation of Martorello before the merger?

13           MS. ALAMO:  With respect to her representation of

14   Bellicose and Sourcepoint pre-merger.  I'd actually like to say

15   we are in no way trying to delay this hearing.  We are simply

16   trying to move discovery along.  We're not trying to cram Ms.

17   Galloway's deposition in the next week.  We just ask for a

18   ruling on the motion to quash so we can proceed with discovery

19   we need.

20           THE COURT:  But this has been pending for a long time

21   in Galloway, but Wichtman has just come here from Michigan.  In

22   any event, what I asked you was not that.  I asked you are all

23   your questions going to be directed to her advising Martorello

24   in connection with her representation of his company.

25           MS. ALAMO:  Yes, Your Honor.  We do not intend to get

 1    into privileged matters.

 2            THE COURT:  So it has to do with pre-merger advice;

 3    is that right?

 4            MS. ALAMO:  Pre-merger business consulting advice,

 5    correct.

 6            THE COURT:  And that is -- that she was counsel to

 7    Martorello in that regard?

 8            MS. ALAMO:  Bellicose and Sourcepoint, yes, Your

 9    Honor.

10            THE COURT:  And that's the same as Martorello, or

11    not?

12            MS. ALAMO:  She was entity counsel, not personal

13    counsel.

14            THE COURT:  Before the merger, who owned Bellicose

15    and Ascension?

16            MS. ALAMO:  And Sourcepoint, Your Honor?

17            THE COURT:  Sourcepoint.

18            MS. ALAMO:  I'd have to go back to the corporate

19    documents.  Mr. Martorello was an owner either directly or

20    indirectly.

21            THE COURT:  Well, I think in order -- I have -- I

22    think in order to understand this, I'm going to need to see --

23    I don't understand why there's any need to depose Galloway

24    about matters after the merger given what you've said, and I

25    don't understand why there's a privilege before the merger or

1    why there's sovereign immunity before the merger.  How can

2    there be sovereign immunity before the tribe has the ownership

3    of the entity?  How could that happen?  Maybe somebody could

4    tell me.

5         MR. GREEVES:  Your Honor, this Geoffrey Greeves.  I

6    think the documents that were installed as part of the merger

7    were bought by the tribe in that connection, and so I think the

8    position is that the -- you know, based on the acquired as

9    such, but they're also subject to sovereign immunity.

10        THE COURT:  I hope you don't really want to make that

11   argument.  The question -- that's ridiculous.  That is a

12   ridiculous argument.  You're going to ask him -- ask her

13   questions about advice she gave Martorello or what she told

14   Martorello before the acquisition, and she can -- they can do

15   that.  You don't have any sovereign immunity claim, and you

16   will provide me -- today is what; Tuesday?  Provide me on

17   Friday morning by 9:00 authority that provides that there would

18   be sovereign immunity in that situation so I can understand

19   your position.  9:00, please.  Now -- Mr. Bennett, is your

20   deposition -- are you taking the deposition of Ms. Galloway?

21   Is it limited to matters before the merger?

22        MR. BENNETT:  Yes, sir.

23        THE COURT:  So we have no questions after the merger,

24   all before the merger.  All right.  And the documents have been

25   produced, haven't they?  Have the documents been produced, Mr.

1  Bennett?

2          MR. BENNETT:  No, sir.

3          THE COURT:  Ms. Alamo?

4          MS. ALAMO:  There have been documents produced by the

5  tribe and essentially third parties.  There have been no

6  documents produced by Ms. Galloway.  The document subpoenas are

7  also part of the motion to quash.

8          THE COURT:  But you have the documents from other

9  sources.

10         MS. ALAMO:  We have some documents from other

11 sources, yes.

12         THE COURT:  My suggestion is you -- I'm going to look

13 at it, but I cannot imagine that her deposition does not go

14 forward.  All right, now, what period of time are you trying to

15 talk to Ms. Wichtman about, Ms. Alamo?

16         MS. ALAMO:  We intend to depose Ms. Wichtman both

17 with respect to pre-merger and -- well, presale and post-sale.

18 I think she was involved with the lending entities in 2001

19 through to today.

20         THE COURT:  Do the entities that she was counsel to,

21 she was counsel to whom?

22         MS. ALAMO:  She was counsel to the tribe and in the

23 tribe dispute.

24         MR. BAKER:  That is correct, Your Honor.

25         THE COURT:  Does the tribe object to her testifying

1    about these matters?

2              UNIDENTIFIED SPEAKER:  Yes, Your Honor.

3              MS. ALAMO:  The tribe has not filed a formal motion.

4    Ms. Wichtman is raising the sovereign immunity.

5              THE COURT:  If Ms. Wichtman is claiming derivative

6    community, if the tribe doesn't object to it, then why can she

7    object to it?

8              MS. ALAMO:  Your Honor, that is part of our argument

9    in opposition.

10             THE COURT:  I haven't read those so I don't know, but

11   that seems to me to be obvious.  I believe you folks ought to

12   be doing some careful studying on the arguments that are being

13   made, because you can ride the sovereign immunity horse only so

14   far, but now -- so there has been no objection to Wichtman's

15   testimony by the tribe, you say, Ms. Alamo, but does the tribe

16   even know about the facts she's been called upon to testify?

17             MS. ALAMO:  Yes, Your Honor.  She's currently general

18   counsel for the tribe, and we actually negotiated a consent

19   order with Mr. Gray of Rosette who is representing the tribe

20   before this Court actually.  That consent order was filed in

21   the Western District of Michigan, and part of our argument is

22   that consent order should not be set aside and the deposition

23   should go forward as it was agreed to by her in consultation

24   with Rosette who is representing both her and the tribe.

25             THE COURT:  You mean you have a previous agreement by

1    her counsel and the tribe's counsel that she can testify, and

2    you are raising an objection now, Mr. Baker?

3              MR. BAKER:  That's correct, Your Honor.

4              THE COURT:  Then I hope you will provide me by 9:00

5    on Monday morning -- I mean on Friday morning the authority by

6    which you can do that.

7              MR. BAKER:  It is addressed in our brief, but I will

8    recapitulate that.

9              THE COURT:  And just be aware that if the Court's and

10   the parties' time is wasted by motions that don't have

11   substantive bases, consequences can ensue.  All right, so you

12   called here to get a date to do something, I guess, and I

13   haven't -- I needed to understand what you were asking to be

14   done before I agreed to a date on it because I need to do some

15   things before the date.  What is it that you want by way of a

16   date, and why it is that we're dealing with it two weeks from

17   the cutoff?

18             MS. ALAMO:  Your Honor, we called to get a hearing

19   date with respect to Ms. Wichtman's motion to quash as soon as

20   it was transferred to Your Honor for decision.  We had raised

21   her back on May 7th and May 8th during that hearing, but

22   because the motion was not transferred from Michigan yet, it

23   was not before Your Honor.  So that's why we're raising it now.

24             Ms. Galloway, we have decided we need to proceed with

25   her discovery and deposition in light of the filings including

1  plaintiffs' misrepresentation brief that was filed after

2  May 7th and 8th as well as their response to our supplemental

3  motion regarding class certification which raised new issues.

4  We do not -- although we request a hearing on the motion to

5  quash and if the motion to quash is denied intend to proceed

6  expeditiously with her deposition to move these matters

7  forward.  We are not asserting her deposition has to be before

8  July 6th.

9            THE COURT:  So when do you want these hearings,

10  folks?

11            MS. ALAMO:  Your Honor, we're available at your

12  convenience.

13            MR. BAKER:  That is also correct for me, Your Honor.

14  Fred Baker here.  My calendar will be adjusted in the next two

15  weeks.  I understand that there is a desire to have this

16  hearing very soon because of the hearing that you plan in early

17  July regarding other matters.

18            THE COURT:  June 30 at 10:00 in the morning.

19            MR. BAKER:  10:00 a.m., June 30.  Yes, Your Honor.

20            MS. ALAMO:  Yes, Your Honor.

21            MR. DURRETTE:  Wyatt Durrette, Your Honor.  That's

22  good for me as well.

23            MR. GREEVES:  Does that pertain to Jennifer Galloway

24  hearing as well, or were you --

25            THE COURT:  Both of them, seriatim.

1          MR. GREEVES:  Will that be telephonic, Your Honor?

2          THE COURT:  We're open for business now.

3          MR. GREEVES:  Your Honor, I'm on a family vacation

4    that's supposed to begin on the 28th.

5          THE COURT:  Who is that?

6          MR. GREEVES:  It's Mr. Greeves, Geoffrey Greeves

7    again.  Given Ms. Alamo's representation about not needing it

8    before the 6th, it would be better for me to get it done before

9    the 28th.

10         THE COURT:  I'm not going to do it before the 28th.

11   Because of things going on here, I can't do it.  It's not going

12   to be viable.

13         MR. BAKER:  I did not understand.  Does open for

14   business does that mean travel to Virginia, or would this be

15   telephonic?  This is Fred Baker.

16         THE COURT:  We are having hearings in court, open

17   court now in civil matters.

18         MR. BAKER:  In view of the distance involved, would

19   it be possible to do it telephonically?

20         THE COURT:  Is that what you all want to do?

21         MS. ALAMO:  Your Honor, Mr. Martorello would concur

22   in a telephonic hearing.

23         THE COURT:  I think, Mr. Bennett -- anybody object to

24   it?  Let me put it that way.

25         MR. BENNETT:  Judge, we would appear -- we could

1    appear in person.  We have been at others, but we don't

2    object -- either way, if you want to do a hybrid or do it only

3    by phone, we're fine.

4              THE COURT:  I want to do what makes sense for you

5    all.  You're the ones -- I walk through the door and come right

6    here with relative ease.  You are the ones who have to come

7    from various places.  When is your vacation over, Mr. -- I'm

8    sorry, I've lost the name.

9              MR. GREEVES:  That's okay, Your Honor.  It's Geoffrey

10   Greeves.

11             THE COURT:  Greeves.  I haven't lost the name.  I

12   thought it was wrong.  All right, when is your vacation over?

13             MR. GREEVES:  July 1, Your Honor.  If it's going to

14   be telephonic, Your Honor, I'm happy to participate by

15   telephone on the 30th.  If we can do it after July 1, so much

16   the better, and I'm sorry.

17             THE COURT:  How about July 6, Ms. Alamo, the rest of

18   you for the Galloway part of it?  Does anybody object to

19   July 6?

20             MS. ALAMO:  In person, no, Your Honor.

21             THE COURT:  We will be available, but I'm not going

22   to make -- we don't know what the situation is with respect to

23   the pandemic.  I generally know where some of you are located.

24   I don't know where all of you are located.  I'm willing to do

25   whatever is easiest for you and safest for you because

1   important though these cases may be, catching COVID is not one

2   of the sacrifices that lawyers are expected to make, and I

3   don't want you bringing any to me.

4          MS. ALAMO:  We agree to a hearing on both dates.

5   July 6th for Ms. Galloway's motion via telephone and June 30th

6   at 10:00 a.m. for Ms. Wichtman's motion, if I have this right,

7   via telephone.

8          THE COURT:  That's correct.  Anybody objects?  No.

9   Okay.  That seems to take care of it.  Is there anything else

10  you all need to do?

11         MR. BAKER:  Your Honor, one small point.  Mr.

12  Durrette can file.  I realize -- I've read the rules, and I

13  realize I may not be E-filing anything, it will all go through

14  Mr. Durrette, but if the Court has the time to address the

15  motion for my pro hac admission, and I appreciate Your Honor

16  allowing me to speak today before that order is entered, but if

17  you could address that order, I would appreciate it so I can

18  send stuff to Mr. Durrette for his --

19         THE COURT:  That's fine.  We are a little slowed down

20  procedurally in my office because my secretary is out, but we

21  will find that motion, and I consider that it's granted

22  verbally, and I'll sign it tomorrow or whenever it is.

23         MR. BAKER:  You had directed me to file something by

24  Friday morning.  I can't do it, Mr. Durrette will have to do

25  it, but thank you.

```
1              THE COURT:  All right.  We'll have it entered.
2              MR. DURRETTE:  I have to do it either way, Judge.
3              MR. BAKER:  Thank you, Your Honor.
4
5                    (End of proceedings.)
6
7
8         I certify that the foregoing is a correct transcript
9    from the record of proceedings in the above-entitled matter.
10
11
12   _____/s/_____              _____
     P. E. Peterson, RPR              Date
13
14
15   MS. ALAMO:  Thank you, Your Honor.
16
17
18
19
20
21
22
23
24
25
```