# EXHIBIT A

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| Martorello "was not involved in the creation of Red Rock, but made aware Red Rock had been formed." Martorello Decl. ¶ 17. | Stmt. of position at 7, 8 | • Ex. E - Gravel 4/5/19 Dep. at 98:14–99:19 (testifying that it is not true that Gravel, Martorello and Bellicose "helped form Big Picture and Red Rock")<br>• Ex. D - Rosette 6/29/2020 Dep. at 182:8–17 (███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████)<br>• Ex. LLL - ROSETTE_REVISED_052703 at 052706, 052709 (███████████████████████████████████████████████████████████)<br>• Ex. MMM - ROSETTE_REVISED_052104 at 052105 (████████████████████████████████████████)<br>• Ex. NNN - CM0000341 (██████████████████████████████)<br>• Ex. OOO - ROSETTE_REVISED_004067 (Oct. 8, 2011 email from Flint Richardson to Martorello et al.: "As everyone is aware LVD has already established Red Rock Tribal Lending LLC") |
| "Neither I, nor Bellicose, helped form Big Picture or Red Rock." Martorello Decl. ¶ 102. | Stmt. of Position at 8 | • Ex. E - Gravel 4/5/19 Dep. at 98:14–99:19: (testifying that it is not true that Gravel, Martorello and Bellicose "helped form Big Picture and Red Rock")<br>• Ex. PPP - McGeshick 11/14/17 Dep. at 12:1–8 (testifying that Red Rock was dissolved and became Big Picture "for the growth and—of the economic development of the Tribe.")<br>• Ex. D - Rosette 6/29/20 Dep. at 182:8–17 (████████████████████████)<br>• Ex. C - Williams 11/13/17 Dep. 78:2–5 ("Q: Who created BPL? A: The Tribe. Q: And whose idea was it to create BPL? A: It was the Tribe, the business and Tribal Council.")<br>• Ex. C - Williams 11/13/17 Dep. 138:20–139:21 (discussing reasons for creating BPL and Ascension) |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | • Ex. F - Weddle 5/20/19 Dep. at 125:14–18 (testifying that Bellicose and SourcePoint did not have authority regarding whether the tribal lending entities were renamed)<br>• Ex. NNN - CM0000341 (███████████████████████████████████)<br>• Ex. OOO - ROSETTE_REVISED_004067 (Oct. 8, 2011 email from Flint Richardson to Martorello et al.: "As everyone is aware LVD has already established Red Rock Tribal Lending LLC")<br>• Ex. B - LVD Resolution No. 2014-066 (Aug. 26, 2014) (forming Big Picture under Tribal law by act of the Tribe, through the efforts of its counsel) |
| "LVD approached Martorello in 2011 to assist them [sic] create and grow online lending business." Martorello Decl. at Heading II.A. | Stmt. of Position at 11 | • Ex. I - Dowd 11/13/18 Dep. 177:2–5 (███████████████████)<br>• Ex. I - Dowd 11/13/18 Dep. at 202:11–205:13 (████████████████████████████████████)<br>• Ex. HHH - Justin Martorello 6/12/19 Decl. at 6 ("[R]epresentatives of LVD approached my brother sometime in 2011 and proposed that he provide consulting services to the new online consumer lending business that it intended to form.")<br>• Ex. G - Mansfield 1/18/19 Dep. at 45:7–47:8 (████████████████████████████████████████████████████)<br>• Ex. J - Merritt 3/21/19 Dep. at 65:17–67:8 (█████████████████████████████)<br>• Ex. D - Rosette 6/29/20 Dep. at 77:7–13; 80:7–81:2; 94:13–22; 97:17–21 and 169:24–170:23 (██████████████████████████████████████████)<br>• Ex. QQQ - LVD-DEF00000716 (██████████████████████████)<br>• Ex. RRR - ROSETTE_REVISED_048773 (Aug. 4, |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | 2011 email setting up an "Intro Call" with Martorello in August 2011 regarding the "Tribal Lending Program," indicating he was not involved in the Tribe's efforts prior to that date)<br>• Ex. SSS - ROSETTE_REVISED_048832 (Aug. 4–5, 2011 email chain among Martorello, Flint Richardson, Rob Rosette, and Scott Merritt showing that at the time Martorello first met those three, LVD had already taken substantial steps towards launching the lending business including forming an LLC and establishing a tribal lending ordinance and regulatory commission)<br>• Ex. TTT - ROSETTE_REVISED_048835 (Aug. 5, 2011 email in which LVD's agents inform Martorello of LVD's minimum Tribal Net Profits requirements, proposed contractual term, and other deal terms)<br>• Ex. UUU - ROSETTE_REVISED_052381 (Aug. 10, 2011 email in which LVD's agents forwarded initial draft of servicing agreement)<br>• Ex. VVV - ROSETTE_REVISED_052365 (Aug. 20, 2011 email in which Scott Merritt states that "tribe is ready" and he would "be glad to arrange a visit" to LVD)<br>• Ex. OOO - ROSETTE_REVISED_004067 (Oct. 8, 2011 email stating LVD has already established Red Rock and secured the EIN)<br>• Ex. WWW - ROSETTE_REVISED_007017 (Oct. 12, 2011 email stating that LVD already had ACH processor)<br>• Ex. XXX - ROSETTE_REVISED_007004 (Oct. 19, 2011 email stating LVD already had its "Tribal Consumer Financial Services Regulatory Agent")<br>• Ex. PP - ROSETTE_REVISED_037655 ( ████████████████ )<br>• Ex. YYY - ROSETTE_REVISED_040120 ( ████████████████ |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | ▪ ) <br> ▪ Ex. BBBB - ROSETTE_REVISED_040124 (███████ ████████████) <br> ▪ Ex. ZZZ - ROSETTE_REVISED_053462 (Feb. 28, 2012 email from Martorello: "we have about 80 new hires planned for training over the next 45 days") <br> ▪ Ex. AAAA - ROSETTE_REVISED_044532 (██████████████) <br> ▪ Ex. HHHH - CM0000286–97 (████████████████) <br> ▪ Ex. IIIIII - ROSETTE_REVISED_034840–1 (██████████████) <br> ▪ Ex. QQQQQ - MidMarch_DD 000536 (Oct. 8, 2013 memo from Rosette analyzing *Otoe* decision and providing extensive detail of activities Red Rock is performing on the reservation) |
| "As LVD gained additional knowledge and sophistication, I understood that LVD had always intended to increase its ability to manage and run a successful lending business while decreasing outsourced consulting services." Martorello Decl. ¶ 48. | Stmt. of Position at 11 | ▪ Ex. I - Dowd 11/13/18 Dep. at 36:2–22 (████████████) <br> ▪ Ex. I - Dowd 11/13/18 Dep. at 175:14–17 & 202:2–5 (███████) <br> ▪ Ex. I - Dowd 11/13/18 Dep. at 180:24–181:22 (██████████████) <br> ▪ Ex. I - Dowd 11/13/18 Dep. at 186:2–12 (████████████) <br> ▪ Ex. I - Dowd 11/13/18 Dep. at 191:24–192:13 (██████████████) <br> ▪ Ex. I - Dowd 11/13/18 Dep. at 193:14–194:2 (██████████████) <br> ▪ Ex. I - Dowd 11/13/18 Dep. at 202:11–205:13 |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | (███████████████████████ ███████████) |
| | | • Ex. E - Gravel 04/05/2019 Dep. at 21:8–16 (testifying that Bellicose made recommendations to the lender that hired Bellicose) |
| | | • Ex. CCCCCC - Hazen 9/28/17 Aff. ¶ 8 ("To learn the lending industry, Red Rock contracted with Bellicose…") |
| | | • Ex. G - Mansfield 1/18/19 Dep. at 106:2–107:5 (██████████████████████ ████) |
| | | • Ex. G - Mansfield 1/18/19 Dep. at 185:18–186:2 & 119:10–19 (██████████████████ ██████████) |
| | | • Ex. F - Weddle Dep. at 116:11–117:16 ("[t]he model that many tribes follow is to hire the best service provider they can to help them learn a business, develop their internal capacity, grow it over time, and then eventually they don't need that service provider anymore") |
| | | • Ex. F - Weddle 5/20/2019 Dep. at 227:6–229:6 (testifying that Tribe had a long-term vision for lending business, which was discussed in 2011 at the tribal council meeting, to create upward mobility for LVD members) |
| | | • Ex. F - Weddle 5/20/2019 Dep. at 239:3–240:7 (testifying that LVD decided to purchase Bellicose because tribes frequently acquire businesses: "it's a way by which tribes very quickly acquire capacity and expertise by purchasing it rather than growing it in-house over a longer period of time.") |
| | | • Ex. PP - ROSETTE_REVISED_037655 (██████████████████████ ████████████████████████ ███████████████) |
| | | • Ex. DDDD - CM0000620 (████████████ |

| Martorello Statement | Cite in Pls' Brief | Proof that Statement Is True |
|---|---|---|
| | | ███████████████████████<br>)<br>• Ex. EEEE - ROSETTE_REVISED_045532 (████<br>████████████████████<br>)<br>• Ex. FFFF - ROSETTE_REVISED_043977 (████<br>███████████████████████<br>███████)<br>• Ex. GGGG - ROSETTE_REVISED_045806 ████<br>████████████████████<br>)<br>• Ex. HHHH - CM0000286–97 (████<br>████████████████████████<br>)<br>• Ex. OO - ROSETTE_REVISED_045131 (June 7, 2012 email documenting transfer of authority to co-managers to negotiate debt settlements as part of lending business)<br>• Ex. JJJJJ - ROSETTE_REVSIED_046394 (████<br>████████████████████<br>)<br>• Ex. WW - ROSETTE_REVISED_045533 (████<br>████████████████████<br>)<br>• Ex. IIII - ROSETTE_REVISED_037729 (████<br>███████████████████████<br>)<br>• Ex. ZZ - ROSETTE_REVISED_014047 (Nov. 2, 2012 email listing lending activities performed in office on LVD reservation)<br>• Ex. JJJJ - ROSETTE_REVISED_044773 (████<br>████████████████<br>)<br>• Ex. KKKK - ROSETTE_REVISED_044130–044131(████<br>████████████████████<br>████████████████████ |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | ██████████████████████████████ ██████████████████████████████ ██████████████) <br><br> • Ex. LLLL - ROSETTE_REVISED_029171 (Aug. 19, 2014 email stating compliance manager is impressive and "the Tribe will absolutely benefit from her participation as a DCTF employee) <br> • Ex. MMMM - ROSETTE_REVISED_046799 (██ ██████████████████████████████ ██████████████████) <br> • Ex. NNNN - ROSETTE_REVISED_045267 (Aug. 24, 2014 email from Wichtman to Martorello: "I have tribal leaders in my ear eager to learn") <br> • Ex. OOOO - ROSETTE_REVISED_037429 (████ ██████████████████) <br> • Ex. FFF - LVD-DEF00017855 (████████████ ██████████████████████) <br> • Ex. EEEEE - LVD-DEF00006043 (██████ ██████████████████████████████ ████████) <br> • Ex. FFFFF - LVD-DEF00022840 (██████ ██████████████████████████████ ████) <br> • Ex. PPPP - ROSETTE_REVISED_031665 (████ ██████████████████████████) <br> • Ex. QQQQ - ROSETTE_REVISED_006609 (██████ ██████████████████████████████) <br> • Ex. RRRR - LVD-DEF00023021 (████████████ ██████████) <br> • ECF 821-2 - Henson Rep. at 4 ("Noteworthy parallels exist between the development of tribal gaming enterprises and online lending. When tribes initially entered the highly-regulated gaming industry, they did |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | not have the capital, managerial talent, or technical skills to start and operate successful casino businesses. As a result, tribal governments sought outside expertise to help them manage their gaming enterprises, as well as to provide technological solutions associated with many popular gaming products (such as electronic bingo and slot machines). In addition to facilitating tribal gaming operations, outside experts also trained tribal employees, so that tribes were better positioned to manage their enterprises themselves. These circumstances are mirrored in the similarly highly-regulated online lending industry, as tribes formalized contractual relationships with outside experts to facilitate their entry into a new industry.")<br>• ECF 821-6 - Morgan Rep. at 7–8 (explaining that, in the context of gaming, tribes often partner with non-tribal service providers "because they d[o] not have the required knowledge and capital" to enter the business, and that "Once a tribe had gained enough gaming knowledge, they were able to function without the non-tribal company and operate, control, and regulate every aspect of their own casinos.")<br>• ECF 821-6 - Morgan Rep. at 13 ("The Sales and Service agreements together position [LVD] to utilize a common business development technique in other tribal industries. … [T]he tribes used their partnership relationships to gain experience, knowledge and capital. After gaining the necessary knowledge, the tribes no longer needed a partner and were able to increase their profitability by eliminating the need for a partner. The increased profits are key to fulfilling [LVD]'s socio-economic goals for its membership.")<br>• ECF 821-6 - Morgan Rep. at 14 ("In my professional opinion, the [LVD]'s lending business was following the same evolutionary path as most tribal gaming and tribal government contracting businesses. The Sales Agreement represents [LVD]'s effort to manage all aspects of its business operations without the need for a partner.")<br>• ECF 821-6 - Morgan Rep. at 28 ("Tribes follow an evolutionary cycle when entering into a new industry. They create the entity, often partner with another company to help learn the business and then generally are incentivized to completely take over a business |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | without any partners or with partners in limited roles.") |
| Martorello had "never taken any action to collect, in whole or in part, any consumer loan originated by Red Rock." Martorello Decl. ¶ 26 | Stmt. of Position at 14 | • Ex. I - Dowd 11/13/18 Dep. at 185:15–23 (███████ ████████████████████████████ ) <br> • Ex. YY - Gerber 12/17/18 Dep. at 52:9–53:18 (explaining that the bank used for lending business would only deal with customers that conducted business on Tribal soil) <br> • Ex. E - Gravel 4/5/19 Dep. at 158:1–19 (testifying that Red Rock and Duck Creek were the entities that had the authority to approve loans) <br> • Ex. G - Mansfield 1/18/19 Dep. at 53:11–54:18 (██████████████████████████████ ████████████████████ ) <br> • Ex. G - Mansfield 1/18/19 Dep. at 112:23–113:2 (██████ ███████████████████████████ ███████████ ) <br> • Ex. G - Mansfield 1/18/19 Dep. at 186:3–14 (████ ███████████████████████ ████████████████████████████████ ████████████████████████ ) <br> • Ex. CCC - Justin Martorello 1/9/19 Dep. at 101:8– 104:16 (explaining batch renewal process that occurred on Tribal land and was operated by Tribal employees) <br> • Ex. J - Merritt 03/21/19 Dep. at 54:8–17 (████ ██████████ ) <br> • Ex. D - Rosette 6/29/20 Dep. at 60:18–61:11 (████ ███████████ ) <br> • Ex. F - Weddle 5/20/2019 Dep. at 62:9–63:22 (testifying that any documentation or business matter, such as the consumer loan document language, must have had approval of the designated Tribal officials; Bellicose was not the decision maker as to what documents were acceptable, "[b]ecause Bellicose VI |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | was simply providing services pursuant to its contract")<br>• Ex. F - Weddle 5/20/2019 Dep. at 108–114 (explaining extensive evidence demonstrating Tribal control and that it is essential to the sovereign model that the Tribe maintain its control of lending)<br>• Ex. F - Weddle 5/20/2019 Dep. at 110:8–15 ("at all times it was clear to me that I was advising Bellicose, as a service provider, who was in turn providing that information and advice to Red Rock and Duck Creek, and that the individuals responsible for decision-making for Duck Creek and for Red Rock were at all times tribal officials.")<br>• Ex. PP - ROSETTE_REVISED_037655 (███████████████ █████████████████████ ████████████████████ █████████████ )<br>• Ex. XX - ROSETTE_REVISED_036363 (███ ████████████████████ ████████████████████ ████████████████ ██ )<br>• Ex. OO - ROSETTE_REVISED_045131 (June 7, 2012 email documenting transfer of authority to co-managers to negotiate debt settlements as part of lending business)<br>• Ex. III - ROSETTE_REVISED 044598 at 044600 (June 15, 2012 email from Karrie Wichtman: "we made every effort to ensure tribal control, and are tweaking things almost constantly, it seems, to allow for more tribal control…")<br>• Ex. ZZ - ROSETTE_REVISED_014047 (Nov. 2, 2012 discussion of activities taking place on-reservation including "payment processing," inputting payments into customer accounts, and depositing physical checks into bank account)<br>• Ex. TTTT - LVD-DEF00018890-4 (████████████ █████ )<br>• Ex. GGGGGG - LVD-DEF00017128 (███████████ ████████████████████ █████████ |

| Martorello Statement | Cite in Pls' Brief | Proof that Statement Is True |
|---|---|---|
| | | ■■■■■■■■ ) |
| | | • Ex. UUUU - ROSETTE_REVISED_048583 (■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ) |
| | | • Ex. DDD - Chippewa_000013 (■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ) |
| | | • ECF 821-4 - Ross Rep. at 17 ("Red Rock or Big Picture Loans were the lenders to whom the small dollar consumer installment loans were first payable and therefore the lender, the only lender and the True Lender.") |
| "Bellicose has never accepted or collected a consumer loan payment under any loan agreement originated by Big Picture or Red Rock." Martorello Decl. ¶ 105 | Stmt. of Position at 14 | • Ex. I - Dowd 11/13/18 Dep. at 185:15–23 (■■■■■■■■■■■■■■■■■■■■■■■■■■ ) |
| | | • Ex. YY - Gerber 12/17/18 Dep. at 52:9–53:18 (explaining that the bank used for lending business would only deal with customers that conducted business on Tribal soil) |
| | | • Ex. E - Gravel 4/5/19 Dep. at 158:1–19 (testifying that Red Rock and Duck Creek were the entities that had the authority to approve loans) |
| | | • Ex. G - Mansfield 1/18/19 Dep. at 53:11–54:18 (■■■■■■■■■■■■■■■■■■■■■■■■ ) |
| | | • Ex. G - Mansfield 1/18/19 Dep. at 112:23–113:2 (■■■■■■■■■■■■■■■■■■■■■■■■■■ ) |
| | | • Ex. G - Mansfield 1/18/19 Dep. at 186:3–14 (■■■■■■■■■■■■■■■■■■■■■■■■ ) |
| | | • Ex. CCC - Justin Martorello 1/9/19 Dep. at 46:20–47:3 ("I can tell you that the servicer SourcePoint never collected any amounts ever." and "Red Rock Tribal Lending or – or Duck Creek would have used payment processors that would debit consumers' accounts, and those funds would settle into Red Rock's bank account.") |
| | | • Ex. CCC - Justin Martorello 1/9/19 Dep. at 101:8– |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | 104:16 (explaining batch renewal process that occurred on Tribal land and was operated by Tribal employees)<br>• Ex. J - Merritt 03/21/19 Dep. at 54:8–17 (████████████████)<br>• Ex. D - Rosette 6/29/20 Dep. at 60:18–61:11 (████████████████████)<br>• Ex. F - Weddle 5/20/2019 Dep. at 62:9–63:22 (testifying that any documentation or business matter, such as the consumer loan document language, must have had approval of the designated Tribal officials; Bellicose was not the decision maker as to what documents were acceptable, "[b]ecause Bellicose VI was simply providing services pursuant to its contract")<br>• Ex. F - Weddle 5/20/2019 Dep. at 108–114 (explaining extensive evidence demonstrating Tribal control and that it is essential to the sovereign model that the Tribe maintain its control of lending)<br>• Ex. F - Weddle 5/20/2019 Dep. at 110:8–15 ("at all times it was clear to me that I was advising Bellicose, as a service provider, who was in turn providing that information and advice to Red Rock and Duck Creek, and that the individuals responsible for decision-making for Duck Creek and for Red Rock were at all times tribal officials.")<br>• Ex. PP - ROSETTE_REVISED_037655 (████████████████████████████████████)<br>• Ex. XX - ROSETTE_REVISED_036363 (████████████████████████████████)<br>• Ex. OO - ROSETTE_REVISED_045131 (June 7, 2012 email documenting transfer of authority to co-managers to negotiate debt settlements as part of lending business)<br>• Ex. III - ROSETTE_REVISED 044598 at 044600 (June 15, 2012 email from Karrie Wichtman: "we made every effort to ensure tribal control, and are tweaking things |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | almost constantly, it seems, to allow for more tribal control…")<br>• Ex. ZZ - ROSETTE_REVISED_014047 (Nov. 2, 2012 discussion of activities taking place on-reservation including "payment processing," inputting payments into customer accounts, and depositing physical checks into bank account)<br>• Ex. TTTT - LVD-DEF00018890-4 (███████████████)<br>• Ex. GGGGGG - LVD-DEF00017128 (███████████████)<br>• Ex. UUUU - ROSETTE_REVISED_048583 (███████████████)<br>• Ex. DDD - Chippewa_000013 (███████████████)<br>• ECF 821-4 - Ross Rep. at 17 ("Red Rock or Big Picture Loans were the lenders to whom the small dollar consumer installment loans were first payable and therefore the lender, the only lender and the True Lender.") |
| "Under the Servicing Agreement, Red Rock paid SourcePoint to develop underwriting criteria to recommend for implementation by Red Rock. SourcePoint did not simply implement these underwriting criteria on behalf of Red Rock, but | Stmt. of Position at 16 | • Ex. I - Dowd 11/13/18 Dep. at 36:2–22 (███████████████)<br>• Ex. I - Dowd 11/13/18 Dep. at 37:3–20 (███████████████)<br>• Ex. I - Dowd 11/13/18 Dep. at 50:8–23 (███████████████)<br>• Ex. I - Dowd 11/13/18 Dep. at 58:12–59:19 (██████ |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| instead presented the underwriting criteria to Red Rock's co-managers for their evaluation and ultimate approval or rejection." Martorello Decl. ¶ 45 | | ██████████████████<br>██████████████<br>██████████ )<br>• Ex. I - Dowd 11/13/18 Dep. at 74:18–75:7 (████<br>██████████████████<br>██████████████ )<br>• Ex. I - Dowd 11/13/18 Dep. at 175:4–176:7 (████<br>██████████████ )<br>• Ex. I - Dowd 11/13/18 Dep. at 184:10–21 (████<br>████████████ )<br>• Ex. I - Dowd 11/13/18 Dep. at 197:16–198:8 (████<br>██████████████████<br>██████████████ )<br>• Ex. E - Gravel 4/5/19 Dep. at 20:18–23:18 (testifying that Bellicose provided servicer provider recommendations to the lender that hired it—Capital Payday and Pepper Cash, owned by Red Rock Financial and Duck Creek Financial, owned by LVD—by way of lending operation recommendations and that the Tribal entities had decision-making authority regarding how to act on those recommendations)<br>• Ex. E - Gravel 4/5/19 Dep. at 43:19–44:8 (testifying that the Tribal council was responsible for overseeing the governance and functioning of the Tribe, including the lending operation)<br>• Ex. E - Gravel 4/5/19 Dep. at 86:3–87:12 (testifying that Martorello did not control Red Rock or Duck |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | Creek, and that it is extremely common in the industry for entities to serve as servicers to lending entities) |
| | | • Ex. E - Gravel 04/05/2019 Dep. at 152:12–18 ("[W]e were merely making recommendations and acting as a service provider.") |
| | | • Ex. E - Gravel 4/5/19 Dep. at 158:1–19 (confirming that after loan applications complete underwriting process, "all loan applications are reviewed and [] approved by [Red Rock or Duck Creek] on tribal land before the loan is originated.") |
| | | • Ex. VVVV - ROSETTE_REVISED_052323 (Aug. 24, 2011 email in which Martorello describes the emerging concept for the relationship between the Tribe and Bellicose as follows: the Tribe will make the "decision on how to operate and underwrite" while "Bellicose suggest new ideas and changes to the operations," and "the Tribe is making the decision on how to operate") |
| | | • Ex. TT - ROSETTE_REVISED_030201 (███████ █████████████████████) |
| | | • Ex. KKKKKK - LVD-DEF00017139 (████████ ████████████████████████████████ ██) |
| | | • Ex. YYYY - LVD-DEF00017189 (██████████ ███████████████████████) |
| | | • Ex. ZZZZ - LVD-DEF00017101 (███████████ ██████████████████████████████████) |
| | | • Ex. AAAAA - LVD-DEF00017208 (████████████ ████) |
| | | • Ex. BBBBB - LVD-DEF00016838 (████████ ██████████████████████████████) |
| | | • Ex. CCCCC - LVD-DEF00021160 (███████████ ██████████████████████████) |
| | | • Ex. DDDDD - LVD-DEF00018915 (███████████ |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | )<br><br>• Ex. EEEEE - LVD-DEF00006043 (<br><br><br>)<br>• Ex. FFFFF - LVD-DEF00022840 (<br><br><br>)<br>• ECF 821-4 - Ross Rep. at 35 (stating that in modern banking relationships, while proprietary "credit-scoring model[s] employing various algorithms," such as a FICO score, are used to evaluate loan applications, "it is the approver of the predetermined non-discretionary underwriting criteria that actually makes the credit decision," which in this case is "the lender comanagers, and Tribal Representative, and or the Tribal Council" and that "Red Rock and BPL operate as typical companies with the specialist recommending and management approving") |
| "Neither I nor Bellicose have 'controlled' any underwriting criteria used by and of LVD's lending businesses – at all times the LVD business retained full control over the underwriting criteria used to make loans to consumers." Martorello Decl. ¶ 101 | Stmt. of Position at 16 | • Ex. I - Dowd 11/13/18 Dep. at 37:3–20 (<br><br><br>)<br>• Ex. I - Dowd 11/13/18 Dep. at 44:6–22 (<br><br><br>)<br>• Ex. I - Dowd 11/13/18 Dep. at 50:8–23 (<br><br><br>)<br>• Ex. I - Dowd 11/13/18 Dep. at 58:12–59:19 ( |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | █████ ) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 74:18–75:7 (████████████████████████████████████████████████████████████ ) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 77:10–78:10 (████████████████████████████████ ) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 175:4–176:7 (████████████████████████ ) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 184:10–21 (████████████████████████ ) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 185:10–12 (████████████████ ) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 193:14–194:2 (████████████████████ ) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 197:16–198:8 (████████████████████████████████████ ) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 208:18–210:20 (███ ██████████████ ) <br><br> • Ex. E - Gravel 04/05/2019 Dep. at 22:20–23:4 (testifying that while Bellicose made recommendations, the Tribal entities had decision making authority) <br><br> • Ex. E - Gravel 4/5/19 Dep. at 43:19–44:8 (testifying that the Tribal council was responsible for overseeing the governance and functioning of the Tribe, including |

| Martorello Statement | Cite in Pls' Brief | Proof that Statement Is True |
|---|---|---|
| | | the lending operation)<br>• Ex. E - Gravel 4/5/19 Dep. at 86:3–87:12 (testifying that Martorello did not control Red Rock or Duck Creek, and that it is extremely common in the industry for entities to serve as servicers to lending entities)<br>• Ex. E - Gravel 04/05/2019 Dep. at 152:12–18 ("[W]e were merely making recommendations and acting as a service provider.")<br>• Ex. E - Gravel 4/5/19 Dep. at 158:1–19 (confirming that after loan applications complete underwriting process, "all loan applications are reviewed and [] approved by [Red Rock or Duck Creek] on tribal land before the loan is originated.")<br>• Ex. VVVV - ROSETTE_REVISED_052323 (Aug. 24, 2011 email in which Martorello describes the emerging concept for the relationship between the Tribe and Bellicose as follows: the Tribe will make the "decision on how to operate and underwrite" while "Bellicose suggest new ideas and changes to the operations," and "the Tribe is making the decision on how to operate")<br>• Ex. TT - ROSETTE_REVISED_030201 (█████████ )<br>• Ex. KKKKKK - LVD-DEF00017139 (████████ )<br>• Ex. YYYY - LVD-DEF00017189 (█████ )<br>• Ex. AAAAA - LVD-DEF00017208 (████ )<br>• Ex. ZZZZ - LVD-DEF00017101 (██████ )<br>• Ex. BBBBB - LVD-DEF00016838 (██████ )<br>• Ex. CCCCC - LVD-DEF00021160 (███ |

| Martorello Statement | Cite in Pls' Brief | Proof that Statement Is True |
|---|---|---|
| | | ■■■■■■■■■ ) |
| | | • Ex. DDDDD - LVD-DEF00018915 ( ■■■■■■■■■■■■■■■ ) |
| | | • Ex. EEEEE - LVD-DEF00006043 ( ■■■■■■■■■■■■■■■■ ) |
| | | • Ex. FFFFF - LVD-DEF00022840 ( ■■■■■■■■■■■■■■■ ) |
| | | • ECF 821-4 - Ross Rep. at 35 (stating that in modern banking relationships, while proprietary "credit-scoring model[s] employing various algorithms," such as a FICO score, are used to evaluate loan applications, "it is the approver of the predetermined non-discretionary underwriting criteria that actually makes the credit decision," which in this case is "the lender comanagers, and Tribal Representative, and or the Tribal Council" and that "Red Rock and BPL operate as typical companies with the specialist recommending and management approving") |
| "Contrary to what Plaintiffs have represented to the Court, Red Rock did not receive two percent of the *net* revenues under the terms of the Servicing Agreements. Instead, as the documents I have reviewed that were provided in discovery demonstrate LVD chose to structure their arrangement to stabilize their | Stmt. of Position at 22 | • Ex. BBB - Hazen 10/16/17 Dep. at 34–38 (discussing revenue split) • Ex. AAAAAAA - McFadden 12/21/17 Decl. ¶¶ 10–16 ("Martorello has no ownership in nor control over Ascension") • Ex. C - Williams 11/13/17 Dep. 52:6-57:7 (back and forth regarding amount Tribe received in January 2014 from revenue generated by Red Rock wherein Williams claims revenue percentage Tribe has received could be between 2-10%, all factors considered) • Ex. C - Williams 11/13/17 Dep. 57:8–61:25 (stating Red Rock received at least 2% and likely more) • Ex. C - Williams 11/13/17 Dep. 63:1–6 (stating that in August 2015 LVD was actively reinvesting 2% back into the business) • Ex. C - Williams 11/13/17 Dep. 66:24–68:25 (discussing BPL's net revenue in February 2016 as 2%) • Ex. C - Williams 11/13/17 Dep. 133:13–134:20 (stating the Tribe gets 3% of gross revenue, 2% gets reinvested, |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| monthly income as a percentage of *gross* revenues, adjusted for bad debts." Martorello Decl. ¶ 34 | | and 2% goes to pay Eventide)<br>• Ex. C - Williams 11/13/17 Dep. 136:14–18 (describing revenue split/structure as an "amazing deal" for the Tribe)<br>• Ex. C - Williams 11/13/17 Dep. 166:19–169:2, 169:16–170:7, 170:16–25 (discussing revenue split)<br>• Ex. RR - Ross Dep. at 133:13–135:3 (correcting questioner on the two-percent issue; it actually ends up being 6.13 percent of the profit. Fee for services absorbed approximately 93 percent of profits before service fees) |
| "LVD suggested this form of revenue split as it guaranteed LVD's lending entities would always generate income for LVD's general fund while simultaneously incentivizing SourcePoint to assist LVD in the growth and the maintenance of an efficient and successful business for the benefit of LVD." Martorello Decl. ¶ 36. | Stmt. of Position at 23 | • Ex. BBB - Hazen 10/16/17 Dep. at 35:21–38:6 (discussing the 2% of gross and that it was Tribe's idea for revenue split)<br>• Ex. J - Merritt 3/21/19 Dep. at 49:1–13 (███████████████████████████████████████████████████████████████)<br>• Ex. D - Rosette 6/29/20 Dep. at 177:10–14 (██████████████████████████████████████████████████████████████████████████████████████████████████████)<br>• Ex. F - Weddle 5/20/19 Dep. at 116:9–17 ("The model that many tribes follow is to hire the best service provider they can to help them learn a business, develop their internal capacity, grow it over time, and then eventually they don't need that service provider anymore.")<br>• Ex. F - Weddle 5/20/19 Dep. at 127:22–129:15 (stating that *Otoe-Missouria* did not impact Ms. Weddle's belief that Tribal law still applied to LVD's loans)<br>• Ex. C - Williams 11/13/17 Dep. 52:6–57:7 (back and forth regarding amount Tribe received in January 2014 from revenue generated by Red Rock wherein Williams claims revenue percentage Tribe has received could be between 2-10%, all factors considered)<br>• Ex. C - Williams 11/13/17 Dep. 57:8–61:25 (stating Red Rock received at least 2% and likely more)<br>• Ex. C - Williams 11/13/17 Dep. 63:1–6 (stating that in August 2015 LVD was actively reinvesting 2% back into the business)<br>• Ex. C - Williams 11/13/17 Dep. 66:24–68:25 (discussing BPL's net revenue in February 2016 as 2%)<br>• Ex. C - Williams 11/13/17 Dep. 133:13–134:20 (stating |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | the Tribe gets 3% of gross revenue, 2% gets reinvested, and 2% goes to pay Eventide)<br>• Ex. C - Williams 11/13/17 Dep. 136:14–18 (describing revenue split/structure as an "amazing deal" for the Tribe)<br>• Ex. C - Williams 11/13/17 Dep. 166:19–169:2, 169:16–170:7, 170:16–25 (discussing revenue split)<br>• Ex. GGGGG - ROSETTE_REVISED_052537–8 (██████████████████)<br>• Ex. HHHHH - ROS002-0000693 at 694 (████████████████)<br>• ECF 821-6 - Morgan Rep. at 22–24 (explaining that revenue sharing arrangements are common in Tribal businesses and concluding, "In my professional opinion … it would be reasonable for a tribe to consider the revenue sharing and the recapitalization provisions of the Sales Agreement and the term of the Note, a rational and mutually beneficial business arrangement.") |
| "Contrary to the allegations of Plaintiffs, the decision to sell Bellicose to LVD was not motivated by impending threats of litigation or enforcement actions by government agencies. Indeed, much of the discussions as to the motivation behind the sale transaction described by Plaintiffs' Complaint are nonsensical and are temporally | Stmt. of Position at 23 | • Ex. I - Dowd 11/13/18 Dep. at 85:20–86:5 (████████████)<br>• Ex. I - Dowd 11/13/18 Dep. at 205:14–16 (██████████)<br>• Ex. E - Gravel 4/5/19 Dep. at 71:12–72:22, 74:5–76:15, 77:5–78:3, 79:1–4 (testifying that Gravel believed operations complied with the law, Operation Chokepoint, *Otoe-Missouria*, etc. did nothing to affect that belief, and *Otoe-Missouria* litigation was not a significant event for him)<br>• Ex. BBB - Hazen 10/16/17 Dep. at 33:15–35:20 (testifying that Tribe's purpose in creating Big Picture was Tribal economic development)<br>• Ex. D - Rosette 6/29/20 Dep. at 137:3–140:21 ███████████████ |

| Martorello Statement | Cite in Pls' Brief | Proof that Statement Is True |
|---|---|---|
| problematic. Plaintiffs claim there were certain 'motivating factors' for the sale which, in reality, occurred eighteen months to three years before the sale transaction closed." Martorello Decl. ¶ 69 | | ██████ )<br>• Ex. D - Rosette 6/29/20 Dep. at 138:9–140:21 (██████████████████████████ )<br>• Ex. D - Rosette 6/29/20 Dep. at 187:23–188:2 (██████████████████████████ )<br>• Ex. D - Rosette 6/29/20 Dep. at 194:9–21 (██████████████████████████ )<br>• Ex. F - Weddle 5/20/19 Dep. at 127:22–129:15 (stating that *Otoe-Missouria* did not impact Ms. Weddle's belief that tribal law still applied to LVD's loans)<br>• Ex. P - Williams 8/22/13 Decl. at 3 ("Pursuant to Tribal law and their creation documents, Red Rock was created in order to advance the Tribe's economic development and to aid in addressing issues of public health, safety, and welfare.")<br>• Ex. P - Williams 8/22/13 Decl. at 5 (stating, "Tribal lending has been an invaluable vehicle for economic growth, Tribal services, and Tribal development. The impact of Tribal lending on tribal growth and opportunity, employment and governmental financial stability has been immeasurable," and explaining that lending enterprise accounts for "46 percent of the Tribe's government budget" and fund "housing, youth programs, health and wellness, and law enforcement")<br>• Ex. P - Williams 8/22/13 Decl. at 5 ("The Tribe's lending initiative gives the Tribe a chance to lift itself up from years of struggle and poverty, underfunded government and financial uncertainty toward stable, legitimate economic growth, development and economic prosperity and success.")<br>• Ex. M – John Williams 6/22/20 Dep. at 39:20–23 (██████████████████████████ )<br>• Ex. S - ROSETTE_REVISED_053374–6 (Nov. 2, 2012 |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | email from Martorello: "research is underway on this IP sale option"— showing sale discussions in 2012 predating *Otoe-Missouria* litigation) |
| | | • Ex. KKKKK - PHEN0002519 (July 16, 2013 email explaining that branding firm to hold SourcePoint out to public as "a tech company that helps make Native American tribes [become] self-sufficient" while creating multiple brands for identified tribal clients, showing that rebrand of Castle Payday was in the works before *Otoe-Missouria* district court decision) |
| | | • Ex. IIIII - ROSETTE_REVISED_048729–32 (█████████ ██████████████████ ██████ ) |
| | | • Ex. JJJJJ - ROSETTE_REVISED_048681 (██████ ████████████████████████ ) |
| | | • Ex. SSSS - ROSETTE_REVISED_002801–2 (Aug. 19, 2013 legal opinion and letter from former US Attorney of Colorado to New York Division of Financial Services stating LVD's business is lawful) |
| | | • Ex. LLLLL - MidMarch_DD 000546 (Aug. 22, 2013 letter from Rep. Luetkemeyer et al. to U.S. Dep't of Justice and Fed. Deposit Ins. Comm'n re illegality of Operation Choke Point) |
| | | • Ex. MMMMM - MARTORELLO_ROSS_001392 (Sept. 5, 2013 email from LVD's bank recounting that the FDIC stated "that TLE's are not illegal and they will not be exercising any moral values only legal matters.") |
| | | • Ex. NNNNN - ROSETTE_REVISED_047091 (████ ███████████████████████████ ██████████████████████████████ █) |
| | | • Ex. OOOOO - PHEN0001869 (███████ ███████████████████████████ ██████████████████████████████ █) |
| | | • Ex. PPPP - ROSETTE_REVISED_044063 (███ █████ ) |
| | | • Ex. OOOOO - PHEN0001881 (████████ |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | ████████████ ) <br> • Ex. QQQQQ - MidMarch_DD 000536 (Oct. 8, 2013 memo from Rosette analyzing *Otoe* decision and concluding that "nothing about [the *Otoe*] order alters Rosette's conclusions that tribal sovereignty and the right of a tribe to govern its own activities are long-standing and well-settled principles of federal law and that, under applicable Tribal law, the Tribe's activities, and those if its servicer, are legal and the proper basis for origination of ACH debits from state-based consumer accounts.") <br> • Ex. VVVVVV - MidMarch_DD 000255 (log showing that on Oct. 27, 2013, Martorello sent documents to fill data room to raise money and grow LVD's lenders) <br> • Ex. RRRRR - ROSETTE_REVISED_052790 ( ███████████████████████ ) <br> • Ex. W - ROSETTE_REVISED_052243 ( █████████ ) <br> • Ex. SSSSS - ROSETTE_REVISED_043466 ( ███████████ ) <br> • Ex. LLLLLL - ROSETTE_REVISED_044365 ( ████████████████ ) <br> • Ex. TTTTT - LVD-DEF00018126 at 00018131–32 ( ████████ ) <br> • Ex. X - ROSETTE_REVISED_052247 (Dec. 31, 2013 email in which Martorello rejects a potential sale |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
|  |  | transaction—opting, instead for "status quo"—for purely economic reasons, stating that "10% certainly isn't going to work from a business standpoint (i.e. I might as well be a state licensed lender, as a comp. ) The deal could be an outstanding deal and 1st of its kind, but we need to have it make sense") |
|  |  | • Ex. NNNNNN - ROSETTE_REVISED_030815 (███████) |
|  |  | • Ex. AA - Middlemarch_001721 (███████) |
|  |  | • Ex. EEE - Martorello_003936 (April 16, 2014 email from Martorello: "My objective is to help the Tribe build their business in a self-sufficient manner.  To help them learn and hire for all the various business components, and then walk away leaving them with a business that literally transforms an impoverished Tribe into one of financial stability.") |
|  |  | • Ex. XXXXXX - MARTORELLO_012230 (April 24, 2014 Greenberg Traurig Indian Law attorney representing Martorello publishes article concluding the Tribal online lending is lawful) |
|  |  | • Ex. OOOOOO - Chippewa_000033 (May 29, 2014 email in which Martorello shares House Oversight Committee's scathing report on Operation Choke Point stating Choke Point is an "abuse of power" that uses threat of federal investigation to target "industries deemed objectionable by the Administration" and that "if the administration believes some business should be out of business, they should prosecute them before a judge and jury.") |
|  |  | • Ex. XXXX - ROSETTE_REVISED_039876 (███████) |
|  |  | • Ex. MMMMMM - ROSETTE_REVISED_052572 (███████) |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | ██████████████████████████<br><br>)<br>• Ex. Y - ROSETTE_REVISED_046264 (██████████████)<br><br>)<br>• Ex. UUUUU - Middlemarch_002002 (██████)<br><br>)<br>• Ex. VVVVV - Chippewa_000028 (June 30, 2014 House Bill to end Operation Choke Point)<br>• Ex. BB - Middlemarch_000268 (████████)<br><br>)<br>• Ex. UUUUUU - Middlemarch 000642 (████████)<br><br>)<br>• Ex. PPPPP - MARTORELLO_032879 (July 29, 2014 Martorello learns that the FDIC is removing "payday lending" from a "hit list" so as not to deter banks)<br>• Ex. V - ROSETTE_REVISED_047736 (████████)<br><br>)<br>• Ex. V - ROSETTE_REVISED_047736 (████████)<br><br>)<br>• Ex. WWWWW - ROSETTE_REVISED_047747 (████)<br><br>)<br>• Ex. XXXXX - ROSETTE_REVISED_047730 (████) |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | <div style="background:black"> </div>)<br>• Ex. CC - ROSETTE_REVISED_052280 (██████)<br>• Ex. YYYYY - ROSETTE_REVISED_053089 (██████)<br>• Ex. ZZZZZ - ROSETTE_REVISED_052619 (Aug. 14, 2014 email in which LVD's lawyers send the Eventide structured deal among three options)<br>• Ex. DD - ROSETTE_REVISED_052616 (██████)<br>• Ex. EE - ROSETTE_REVISED_048520 (Aug. 25, 2014 email from Martorello explaining he will not exit Tribal lending if sale to LVD completed: "if we do reach terms, then some of my team will likely proceed with [another tribe] in a new entity, to help them stand up a business")<br>• Ex. FF - ROSETTE_REVISED_052400 (██████)<br>• Ex. AAAAAA - ROSETTE_REVISED_045282 (██████)<br>• Ex. GG - ROSETTE_REVISED_046191 (██████ |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | ███████████████████████████ ███████████████████████████ ███████████████████████████ ███████████████████ ) <br>• Ex. BBBBBB - ROSETTE_REVISED_052656 (███ ███████████████████████████ ███████████████████ ) <br>• Ex. WWWWWW - ROSETTE_REVISED_001110 (Nov. 4, 2014 email in which Martorello suggests "face to face meetings with State DFIs to talk" about the Second Circuit's *Otoe-Missouria* ruling and the LVD lending business) <br>• Ex. HH - ROSETTE_REVISED_045972 (███ ███████████████████████████ ███████████████████████████ ███████████████████████████ ███████████████████████████ ███████████████████████████ ██████████████████ ) <br>• Ex. II - ROSETTE_REVISED_044639–44642 (███ ███████████████████████████ ███████████████████████████ ███████████████ ) <br>• Ex. JJ - CW_01786 (April 6, 2015 email from Martorello explaining: "the closing can't happen until 1/1/16.  This is the fallback date if all else fails.  If it happens in 2015, I'm locked onto this island until the year 2020.  If it closes 2016, I am set free.  This would mean once we have all the details on these docs, we execute the longest binding term sheet ever committed to close 1/1/2016") <br>• Ex. QQQQQQ - ROSETTE_REVISED_006669 (███ ███████████████████████████ |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | )<br>• Ex. RRRRRR - ROSETTE_REVISED_006782 (███████████████ )<br>• Ex. SSSSSS - ROSETTE_REVISED_029547 (███████████████████████ )<br>• ECF 368-41 - Hudson Cook Legal Memo (Mar. 9, 2017) (MARTORELLO_011673) (former Assistant Director of CFPB summarizing "history of developments in federal regulatory intervention in the small dollar lending market during the period 2015–2016 and stating "pressure on online lender access to banking services had diminished by the end of 2015.")<br>• Ex. TTTTTT - Martorello_011255 (Mar. 10, 2017 email from Martorello detailing how Operation Chokepoint and potential CFPB rule were mitigated well before the sale)<br>• ECF 821-3 - Norman Rep. at 13–14 (describing Martorello's tax motivations to sell in 2016) |
| "To that end, since at least 2012, LVD and I have engaged in multiple conversations relating to the potential sale of my consulting businesses to LVD to accelerate LVD's ability to maintain a profitable online consumer lending business with no outsourced consulting services." Martorello Decl. ¶ | Stmt. of Position at 24 | • Ex. I - Dowd 11/13/18 Dep. at 202:11–205:13 (███████████████████ )<br>• Ex. D - Rosette 6/29/20 Dep. at 146:4–147:11 (██████████████████████████ )<br>• Ex. DDDDDD - ROSETTE_REVISED_037492 (███████████████ )<br>• Ex. S - ROSETTE_REVISED_053374–6 (Nov. 2, 2012 email from Martorello: "I know you wanted option of docs for the Tribe to consider signing … research is underway on this IP sale option"— showing sale |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| 49 | | discussions in 2012 predating *Otoe-Missouria* litigation)<br>• Ex. EEEEEE - ROSETTE_REVISED_053377 ( █████████████ )<br>• Ex. IIIII - ROSETTE_REVISED_048729 ( █████████████ )<br>• Ex. T - ROSETTE_REVISED_055756 (July 7, 2013 sale proposal to sell a copy of SourcePoint intellectual property)<br>• Ex. X - ROSETTE_REVISED_052247 (Dec. 31, 2013 email in which Martorello rejects a potential sale transaction for purely economic reasons)<br>• Ex. Y - ROSETTE_REVISED_046264 ( █████████████ )<br>• Ex. V - ROSETTE_REVISED_047736 at 047737 ( █████████████ )<br>• Ex. WWWWW - ROSETTE_REVISED_047747 ( █████████████ )<br>• Ex. XXXXX - ROSETTE_REVISED_047730 ( █████████████ )<br>• Ex. CC - ROSETTE_REVISED_052280 ( █████████████ )<br>• Ex. YYYYY - ROSETTE_REVISED_053089 ( █████████████ )<br>• Ex. ZZZZZ - ROSETTE_REVISED_052619 (Aug. 14, 2014 email in which LVD's lawyers send the Eventide structured deal among three options) |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | • Ex. DD - ROSETTE_REVISED_052616 (████████ ████ ) |
| | | • Ex. EE - ROSETTE_REVISED_048520 (Aug. 25, 2014 email from Martorello to Rosette discussing possible sale and another buyer for SPVI) |
| | | • Ex. AAAAAA - ROSETTE_REVISED_045282 (████ ███ ) |
| | | • Ex. HH - ROSETTE_REVISED_045972 (████ ███████████████████████ ) |
| | | • Ex. II - ROSETTE_REVISED_044639–44642 (████ ██████████████ ) |
| | | • Ex. JJ - CW_01786 (April 6, 2015 email from Martorello, "the closing can't happen until 1/1/16") |
| | | • ECF 821-6 - Morgan Rep. at 13 ("The Sales and Service agreements together position [LVD] to utilize a common business development technique in other tribal industries…. [T]he tribes used their partnership relationships to gain experience, knowledge and capital. After gaining the necessary knowledge, the tribes no longer needed a partner and were able to increase their profitability by eliminating the need for a partner. The increased profits are key to fulfilling [LVD]'s socio-economic goals for its membership.") |
| | | • ECF 821-6 - Morgan Rep. at 14 ("In my professional opinion, the [LVD]'s lending business was following the same evolutionary path as most tribal gaming and tribal government contracting businesses. The Sales Agreement represents [LVD]'s effort to manage all aspects of its business operations without the need for a partner.") |
| "all loans are made from LVD's reservation." | Stmt. of Position at 26 n. 16 | • Ex. I - Dowd 11/13/2018 Dep. 82:11–22, 83:9–15; 184:11–16 (████████████ ) |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| Martorello Decl. ¶ 107 | | • Ex. YY - Gerber 12/17/18 Dep. at 52:9–53:18 (testifying about the importance of lending activities being on Tribal soil and that the bank would only deal with customers that conducted business on tribal soil)<br>• Ex. E - Gravel 4/5/19 Dep. at 158:1–19 (confirming that after loan applications complete underwriting process, "all loan applications are reviewed and [] approved by [Red Rock or Duck Creek] on tribal land before the loan is originated.")<br>• Ex. CCCC - Hazen 7/20/18 Decl. ¶ 8(c) (detailing eight-step process for loan origination)<br>• Ex. G - Mansfield 1/18/2019 Dep. at 99:22–102:10 (███████████████████████████████████████████████████████████)<br>• Ex. G - Mansfield 1/18/2019 Dep. at 106:6–12 (███████████████████████████████████)<br>• Ex. G - Mansfield 1/18/2019 Dep. at 112:23–113:2 (███████████████████████████████████)<br>• Ex. G - Mansfield 1/18/2019 Dep. at 115:23–116:1 (███████████████████████)<br>• Ex. D - Rosette 6/29/20 Dep. at 124:15–125:6 (███████████████████████)<br>• Ex. P - Williams 8/22/13 Decl. at 4 ("Through the internet and Red Rock's online platform, the loan application process takes place through a website owned and controlled by the Tribe as the sole member of Red Rock…. The ultimate authority to decide whether or not to fund a loan lies with the Tribe - both through technological aids and software capabilities as well as approvals by Red Rock officers - and occurs on Reservation land squarely within the Constitutional and territorial jurisdiction of the Tribe. Through technological aids and underwriting software, loans are approved through processes that occur on the Reservation in various forms, including by approvals |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | by Red Rock's CEO. Upon approval of a loan application, Red Rock notifies the borrower of the acceptance of his or her loan application, the loan agreement is made available for electronic signature. The loans are funded by Tribally-owned bank accounts.") <br> • Ex. P - Williams 8/22/13 Decl. at 4 ("As the sole member of Red Rock, the Tribe plays a critical role in the lending operations of the companies. Pursuant to the manager-managed LLC formation, Red Rock is managed by Tribal members who are engaged in business decisions for each company on a day to day basis.") <br> • Ex. P - Williams 8/22/13 Decl. at 4–5 ("In my capacity as Chairman of the Tribal Council, and thus, Chairman of the sole member of Red Rock, I remain informed and abreast of the issues related to the continued successful operation of this Tribally-owned business. I am intimately aware of the financial benefit derived from Red Rock, and the way that the Tribal Council has utilized Red Rock revenues to fund Tribal government operations.") <br> • Ex. PP - ROSETTE_REVISED_037655 (███████ ███████ ) <br> • Ex. XX - ROSETTE_REVISED_036363 (███████ ███████ ) <br> • Ex. ZZ - ROSETTE_REVISED_014047 (Nov. 2, 2012 email listing lending activities performed in office on LVD reservation) <br> • Ex. NN - ROSETTE_REVISED_046999 (███████ ███████ ) <br> • Ex. QQ - ROSETTE_REVISED_031984–6 (Feb. 1, 2013 email from Hazen with instructions to document origination process to standardize new employee training) |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | • Ex. TTTT - LVD-DEF00018890–4 (███████████████) |
| | | • Ex. GGGGGG - LVD-DEF00017128 (███████████████████████████████████████) |
| | | • ECF 821-4 - Ross Rep. at 15 (reviewing evidence and concluding that all components of origination—including approval, dispersal of funds, and communication of final approval—occurred on Tribal lands) |
| "As I understand LVD's lending, all loans are made from LVD's reservation to customers based on criteria other than the customers' locations. I have never collected any debts from any consumers in Virginia. I have never had any control over Red Rock or Big Picture's lending decisions, including the decision to lend in any particular state." Martorello Decl. ¶ 107 | Stmt. of Position at 26 n. 16 | • Ex. I - Dowd 11/13/18 Dep. at 44:6–22 (████████████████████████████████) |
| | | • Ex. I - Dowd 11/13/18 Dep. at 50:8–23 (████████████████████████) |
| | | • Ex. I - Dowd 11/13/18 Dep. at 58:12–59:19 (███████████████████████████) |
| | | • Ex. I - Dowd 11/13/18 Dep. at 74:18–75:7 (███████████████████████████████) |
| | | • Ex. I - Dowd 11/13/18 Dep. at 79:19–80:1 (███████████████████████████) |
| | | • Ex. I - Dowd 11/13/2018 Dep. 82:11–22, 83:9–15; 184:11–16 (███████████████████) |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | • Ex. I - Dowd 11/13/18 Dep. at 140:8–20 (███████████████████) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 179:7–17 (███████████████████) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 183:9–15 (███████████████████) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 184:10–21 (███████████████████) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 185:15–23 (███████████████) <br><br> • Ex. I - Dowd 11/13/18 Dep. at 208:18–210:20 (███████████████) <br><br> • Ex. YY - Gerber 12/17/18 Dep. at 28:15–29:7 (the Tribe was the customer, and Bellicose/SourcePoint were just servicers) <br><br> • Ex. E - Gravel 4/5/19 Dep. at 20:18–23:1–18 (testifying that Bellicose provided servicer provider recommendations to the lender that hired it—Capital Payday and Pepper Cash, owned by Red Rock Financial and Duck Creek Financial, owned by LVD—by way of lending operation recommendations and that the Tribal entities had decision-making authority regarding how to act on those recommendations) <br><br> • Ex. E - Gravel 4/5/19 Dep. at 43:19–44:8 (testifying that the Tribal council was responsible for overseeing the governance and functioning of the Tribe, including the lending operation) <br><br> • Ex. E - Gravel 4/5/19 Dep. at 86:3–87:12 (testifying that Martorello did not control Red Rock or Duck Creek, and that it is extremely common in the industry for entities to serve as servicers to lending entities) |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | • Ex. E - Gravel 4/5/19 Dep. at 151:15–152:18 (explaining that it was not a concern that Bellicose would be subject to state law, not because of its partnership with LVD, but because it was not a lender. "Because we were not the lender and we were merely making recommendations and acting as a service provider to the sovereign tribal entities.") |
| | | • Ex. E - Gravel 4/5/19 Dep. at 158:1–19 (confirming that after loan applications complete underwriting process, "all loan applications are reviewed and [] approved by [Red Rock or Duck Creek] on tribal land before the loan is originated.") |
| | | • Ex. CCCCCC - Hazen 9/28/17 Aff. ¶ 8 ("To learn the lending industry, Red Rock contracted with Bellicose…") |
| | | • Ex. CCCCCC - Hazen 9/28/17 Aff. ¶ 9 ("While Red Rock received advice and consulted with Bellicose about operations, all final decisions about operations were made by Red Rock managers.") |
| | | • Ex. BBB - Hazen 10/16/17 Dep. at 99:12–100:5 (testifying that Hazen did not ask permission from Martorello to make decisions in lending business) |
| | | • Ex. G - Mansfield 1/18/19 Dep. at 47:3–7 (███████████████████████████████████████████) |
| | | • Ex. G - Mansfield 1/18/2019 Dep. at 53:5–25 (███████████████████████████████████████████) |
| | | • Ex. G - Mansfield 1/18/19 Dep. at 112:23–113:2 (███████████████████████████████████████████) |
| | | • Ex. G - Mansfield 1/18/2019 Dep. at 115:23–116:1 (███████████████████████████████████) |
| | | • Ex. CCC - Justin Martorello 1/9/19 Dep. at 46:20–21 ("I can tell you that the servicer SourcePoint never collected any amounts ever.") |
| | | • Ex. CCC - Justin Martorello 1/9/19 Dep. at 101:8–104:16 (explaining batch renewal process that occurred on Tribal land and was operated by Tribal employees) |

| Martorello Statement | Cite in Pls' Brief | Proof that Statement Is True |
|---|---|---|
|  |  | • Ex. HHH - Justin Martorello 6/12/19 Decl. at 6 ("Throughout my employment with BVI and BC, LVD's operational decisions were made by managers which were appointed by the LVD Tribal Council.") <br> • Ex. HHH - Justin Martorello 6/12/19 Decl. at 8 ("By 2013, it become apparent to me that DCTF was entirely self-sufficient and relied on SPVI recommendations for only highly technical issues.") <br> • Ex. J - Merritt 03/21/19 Dep. at 54:8–17 (█████████) <br> • Ex. D - Rosette 6/29/20 Dep. at 60:18–61:11 (████████████) <br> • Ex. D - Rosette 6/29/20 Dep. at 124:15–125:6 (████████████) <br> • Ex. F - Weddle 5/20/2019 Dep. at 62:9–63:22 (testifying that any documentation or business matter, such as the consumer loan document language, must have had approval of the designated Tribal officials; Bellicose was not the decision maker as to what documents were acceptable, "[b]ecause Bellicose VI was simply providing services pursuant to its contract") <br> • Ex. F - Weddle 5/20/19 Dep. at 108:5–14 ("these were tribal entities formed by the tribe, for the tribe, under tribal law, and the tribe was, at all instances, in my observation, directing the companies. Directing their legal decisioning, directing their contracting, acting with recommendations from Bellicose and later from SourcePoint, but at no point was Mr. Martorello, or any entity he was ever involved in, controlling anything. Those were determinations made by the appropriate tribal officials.") <br> • Ex. F - Weddle 5/20/2019 Dep. at 110:8–15 ("[A]t all times it was clear to me that I was advising Bellicose, as a service provider, who was in turn providing that information and advice to Red Rock and Duck Creek, and that the individuals responsible for decision-making for Duck Creek and for Red Rock were at all times tribal officials.") <br> • Ex. C - Williams 11/13/17 Dep. 42:10–44:5, 190:17–191:11 (testifying that BPL collects loans) <br> • Ex. C - Williams 11/13/17 Dep. 107:17–108:8 (stating |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
|  |  | that BPL handles underwriting the loans, not Ascension) |
|  |  | • Ex. P - Williams 8/22/13 Decl. at 4 ("Through the internet and Red Rock's online platform, the loan application process takes place through a website owned and controlled by the Tribe as the sole member of Red Rock…. The ultimate authority to decide whether or not to fund a loan lies with the Tribe - both through technological aids and software capabilities as well as approvals by Red Rock officers - and occurs on Reservation land squarely within the Constitutional and territorial jurisdiction of the Tribe. Through technological aids and underwriting software, loans are approved through processes that occur on the Reservation in various forms, including by approvals by Red Rock's CEO. Upon approval of a loan application, Red Rock notifies the borrower of the acceptance of his or her loan application, the loan agreement is made available for electronic signature. The loans are funded by Tribally-owned bank accounts.") |
|  |  | • Ex. P - Williams 8/22/13 Decl. at 4 ("As the sole member of Red Rock, the Tribe plays a critical role in the lending operations of the companies. Pursuant to the manager-managed LLC formation, Red Rock is managed by Tribal members who are engaged in business decisions for each company on a day to day basis.") |
|  |  | • Ex. P - Williams 8/22/13 Decl. at 4–5 ("In my capacity as Chairman of the Tribal Council, and thus, Chairman of the sole member of Red Rock, I remain informed and abreast of the issues related to the continued successful operation of this Tribally-owned business. I am intimately aware of the financial benefit derived from Red Rock, and the way that the Tribal Council has utilized Red Rock revenues to fund Tribal government operations.") |
|  |  | • Ex. VVVV - ROSETTE_REVISED_052323 (Aug. 24, 2011 email in which Martorello describes the emerging concept for the relationship between the Tribe and Bellicose as follows: the Tribe will make the "decision on how to operate and underwrite" while "Bellicose suggest new ideas and changes to the operations," and "the Tribe is making the decision on how to operate") |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | • Ex. PP - ROSETTE_REVISED_037655 (█████████████████████████████████████████████████████████████) <br><br> • Ex. XX - ROSETTE_REVISED_036363 (███████████████████████████████████████████████████████████████) <br><br> • Ex. JJJ - ROSETTE_REVISED_002331 (April 12, 2012 email in which Martorello seeks approvals for a business plan from Red Rock's co-managers including "the sale of denied loan applications" and "remarketing efforts" for existing customers, which Red Rock took nearly a month to consider and approve) <br> • Ex. OO - ROSETTE_REVISED_045131 (June 7, 2012 email documenting transfer of authority to co-managers to negotiate debt settlements as part of lending business) <br> • Ex. OO - ROSETTE_REVISED_045131 (June 13, 2012 email discussing Craig Mansfield's authority to review and authorize settlement offers for delinquent loan accounts) <br> • Ex. III - ROSETTE_REVISED_044598 at 044600 (June 15, 2012 email from Karrie Wichtman: "we made every effort to ensure tribal control, and are tweaking things almost constantly, it seems, to allow for more tribal control…") <br> • Ex. WW - ROSETTE_REVISED_045533 (████████████████████████████████████████████) <br><br> • Ex. ZZ - ROSETTE_REVISED_014047 (Nov. 2, 2012 email listing lending activities performed in office on LVD reservation, including payment processing) <br> • Ex. NN - ROSETTE_REVISED_046999 (███████████████████████) <br> • Ex. QQ - ROSETTE_REVISED_031984 at 031985–86 (email summary of January 30, 2013 weekly meeting |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | discussing on-reservation activities) |
| | | • Ex. FFFFFF - ROSETTE_REVISED_031987 at 031988–89 (███████████████████████ ████████) |
| | | • Ex. TTTT - LVD-DEF00018890–4 (█████████ ████████████████████████████████████) |
| | | • Ex. SS - ROSETTE_REVISED_029177–79) (███ ███████████████████████████████████████ ████████████████████████████) |
| | | • Ex. EEEEE - LVD-DEF00006043 (████████ ████████████████████████████████████ ██████) |
| | | • Ex. FFFFF - LVD-DEF00022840 (███████ ███████████████████████████████████ ████████████████████████████ █) |
| | | • Ex. GGGGGG - LVD-DEF00017128 (██████ ███████████████████████████████████ ████████████████████) |
| | | • Ex. MM - ROSETTE_REVISED_040016 (Mar. 2014 email reflecting Tribe's exercising control over employee hiring and firing decisions) |
| | | • Ex. EEE - MARTORELLO_003936 (April 15, 2014 email from Martorello to potential investor: "My job is to provide … services to Tribal government lenders and I get paid for my services. I don't buy the loans they originate and then collect them. The tribe owns, manages, collects, and underwrites on tribal land, etc. My objective is to help the Tribe build their business in a self-sufficient manner.") |
| | | • Ex. LL - ROSETTE_REVISED_053208 (July 2014 email showing Tribe's hiring of a new Compliance ECF 821-4 - Manager and introducing her to SourcePoint) |
| | | • ECF 821-4 - Ross Rep. at 17 ("Red Rock or Big Picture Loans were the lenders to whom the small dollar consumer installment loans were first payable and therefore the lender, the only lender and the True Lender.") |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | • ECF 821-4 - Ross Rep. at 35 (stating that in modern banking relationships, while proprietary "credit-scoring model[s] employing various algorithms," such as a FICO score, are used to evaluate loan applications, "it is the approver of the predetermined non-discretionary underwriting criteria that actually makes the credit decision," which in this case is "the lender comanagers, and Tribal Representative, and or the Tribal Council" and that "Red Rock and BPL operate as typical companies with the specialist recommending and management approving")<br>• Ex. RR - Ross 3/15/2019 Dep. at 9, 74–75 ("The loan origination approval, dispersal and communication of the loan origination all occurred on tribal lands.")<br>• Ex. RR - Ross 3/15/2019 Dep. at 9 (stating conclusion that Tribal council oversaw lending business and Tribe was "actively involved in day-to-day activities of the business")<br>• Ex. RR - Ross Dep. at 130:21–133:12 (stating conclusion that Red Rock and Big Picture were structured as "traditional finance company" which originates and holds loans, rather than repackaging them and selling them off and that that is why the Tribal Entities are the true lenders) |
| "Neither I nor any company I own or manage directed or controlled the creation of Big Picture." Martorello Decl. ¶ 67 | Stmt. of Position at 33–34 | • Ex. E - Gravel 4/5/19 Dep. at 98:14–99:19: (testifying that it is not true that Gravel, Martorello and Bellicose "helped form Big Picture and Red Rock")<br>• Ex. BBB - Hazen 10/16/17 Dep. at 33:15–35:20 (testifying that it was Tribe's idea to create Big Picture)<br>• Ex. PPP - McGeshick 11/14/17 Dep. at 12:1–8 (testifying that Red Rock was dissolved and became Big Picture "for the growth and—of the economic development of the Tribe.")<br>• Ex. D - Rosette 6/29/20 Dep. at 182:8–17 (██████████ )<br>• Ex. F - Weddle 5/20/2019 Dep. at 107:12–108:24 (regarding ownership discussions: "these were tribal entities formed by the tribe, for the tribe, under tribal law, and the tribe was, at all instances, in my observation, directing the companies. Directing their legal decisioning, directing their contracting, acting with recommendations from Bellicose and later from SourcePoint, but at no point was Mr. Martorello, or any |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | entity he was ever involved in, controlling anything. Those were determinations made by the appropriate tribal officials.") |
| | | • Ex. F - Weddle 5/20/19 Dep. at 125:14–18 (testifying that Bellicose and SourcePoint did not have authority regarding whether the tribal lending entities were renamed) |
| | | • Ex. C - Williams 11/13/17 Dep. 78:2–5 ("Q: Who created BPL? A: The Tribe. Q: And whose idea was it to create BPL? A: It was the Tribe, the business and Tribal Council.") |
| | | • Ex. B - LVD Resolution No. 2014-066 (Aug. 26, 2014) (forming BPL under Tribal law by act of the Tribe, through the efforts of its counsel) |
| "Neither I, nor Bellicose, helped form Big Picture[.]" Martorello Decl. ¶ 102 | Stmt. of Position at 34 | • Ex. E - Gravel 4/5/19 Dep. at 98:14–99:19: (testifying that it is not true that Gravel, Martorello and Bellicose "helped form Big Picture and Red Rock") |
| | | • Ex. BBB - Hazen 10/16/17 Dep. at 33:15–35:20 (testifying that it was Tribe's idea to create Big Picture) |
| | | • Ex. PPP - McGeshick 11/14/17 Dep. at 12:1–8 (testifying that Red Rock was dissolved and became Big Picture "for the growth and—of the economic development of the Tribe") |
| | | • Ex. D - Rosette 6/29/20 Dep. at 182:8–17 (███████████████████████████████ ████) |
| | | • Ex. F - Weddle 5/20/2019 Dep. at 107:12–108:24 (regarding ownership discussions: "these were tribal entities formed by the tribe, for the tribe, under tribal law, and the tribe was, at all instances, in my observation, directing the companies. Directing their legal decisioning, directing their contracting, acting with recommendations from Bellicose and later from SourcePoint, but at no point was Mr. Martorello, or any entity he was ever involved in, controlling anything. Those were determinations made by the appropriate tribal officials.") |
| | | • Ex. F - Weddle 5/20/19 Dep. at 125:14–18 (testifying that Bellicose and SourcePoint did not have authority regarding whether the tribal lending entities were renamed) |
| | | • Ex. C - Williams 11/13/17 Dep. 78:2–5 (stating that it was the Tribe's idea to create BPL) |
| | | • Ex. C - Williams 11/13/17 Dep. 138:20–139:21 |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | (discussing reasons for creating BPL and Ascension) <br>• Ex. B - LVD Resolution No. 2014-066 (Aug. 26, 2014) (forming BPL under Tribal law by act of the Tribe, through the efforts of its counsel) |
| The Defendants have made material misrepresentations about the value of Bellicose, such as that it "was valued at just over $100 million" at the time of the sale. See Galloway I, ECF 40 at 7. | Stmt. of Position at 42 | • Ex. I - Dowd 11/13/2018 Dep. at 230:2–15 (███████████████████████████████) <br>• Ex. G - Mansfield 1/18/2019 Dep. at 48:4–7 (███████████████████████) <br>• Ex. KKK - LVD-DEF00022047 (███████████████████████) <br>• Ex. UUUUUU - Middlemarch 000642 (███████████████████████) <br>• Ex. AAA - ROSETTE_REVISED_048541 (Aug. 26, 2014 email from Martorello to LVD forecasting revenues of over $58 million each year) <br>• Ex. KK - BDO-Bellicose000065 (███████████████████████) <br>• Ex. HHHHHH - Martorello_009769 (Dec. 5, 2015 email exchange in which Martorello asks how the valuation will change if the probability of impact from Operation Chokepoint or rulemaking is set to 49% and valuation expert responds: "The value is well above 100million even with a CSRP of 50%.") <br>• Ex. TTTTTT - Martorello_011255 (Mar. 10, 2017 email from Martorello detailing how Operation Chokepoint and potential CFPB rule were mitigated well before the sale) <br>• ECF 821-7 Cowhey Rep. at 15 (estimating value of Combined Business—i.e., Bellicose Capital LLC and LVD Tribal Acquisition Company LLC—in January 2016 at $189,307,000) |
| "Since the beginning of my relationship with LVD, I understood that LVD had always intended to | Stmt. of Position at 45 n.26 | • Ex. I - Dowd 11/13/18 Dep. at 36:2–22 (███████████████████████████████████████████) <br>• Ex. I - Dowd 11/13/18 Dep. at 180:24–181:22 |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| utilize my consulting services to assist them to build their valuable IP and to better understand how to run a successful online consumer lending business." Martorello Decl. ¶ 47 | | ( █████████ )<br>• Ex. I - Dowd 11/13/18 Dep. at 186:2–12 ( ███████████ )<br>• Ex. I - Dowd 11/13/18 Dep. at 191:24–192:13 ( ███████████ )<br>• Ex. I - Dowd 11/13/18 Dep. at 193:14–194:2 ( ███████████ )<br>• Ex. I - Dowd 11/13/2018 Dep. at 202:17–203:12 ( ███████████ )<br>• Ex. CCCCCC - Hazen 9/28/17 ¶¶ 4–5 ("After the 2008 recession, after making significant cuts to government programs and services due to drastically decreased casino revenue, the LVD Tribal Council began to explore other options to support its goals of self-sufficiency and self-determination. LVD developed a comprehensive economic development strategy to build a more diversified economy. … The LVD Tribal Council decided to start tribal online lending businesses to bring revenue to LVD that would advance the public health, safety, and welfare of LVD's citizens through provision of essential governmental services.")<br>• Ex. CCCCCC - Hazen 9/28/17 Aff. ¶ 8 ("To learn the lending industry, Red Rock contracted with Bellicose…")<br>• Ex. CCCCCC - Hazen 9/28/17 Aff. ¶ 20 ("With its newly formed tribal businesses, LVD bought Bellicose to acquire its intellectual property related to online lending, as well as its existing data, software, and corporate goodwill.")<br>• Ex. BBB - Hazen 10/16/17 Dep. at 41:12–19 ("Q. And what was the tribe purchasing for $300 million? A. The intellectual property of Bellicose which included the existing software and data and the expertise to run a successful business. Q. Why did you need the expertise of Bellicose to run Big Picture Loans? A. The tribe was still learning the business.")<br>• Ex. G - Mansfield 1/18/2019 Dep. at 47:9–22 (testifying that Tribe entered into arrangement with |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | outside service providers because "Any time you start a new business, you -- you don't have expertise in it. You don't understand how to -- to run it properly. So that's why you pay a service provider to help you learn this business.")<br>• Ex. D - Rosette 6/29/20 Dep. at 207:16–208:4 ( ▮▮▮▮▮▮▮ )<br>• Ex. F - Weddle 5/20/2019 Dep. at 75:17–78:6 (testifying that LVD wanted a consumer lending business for a long time because "the tribe is very geographically isolated, lacks sources of reliable revenue, is not sufficiently located near a population sufficient to support significant gaming, for example. And they wanted to establish a long-term business that the tribe could grow over a number of years, and they wanted to do that in the right way by having a consumer protective code in place that would allow them to do that.")<br>• Ex. F - Weddle Dep. at 116:11–117:16 ("[t]he model that many tribes follow is to hire the best service provider they can to help them learn a business, develop their internal capacity, grow it over time, and then eventually they don't need that service provider anymore")<br>• Ex. F - Weddle 5/20/2019 Dep. at 227:6–229:6 (testifying that Tribe had a long-term vision for lending business, which was discussed in 2011 at the Tribal council meeting, to create upward mobility for LVD members)<br>• Ex. F - Weddle 5/20/2019 Dep. at 239:3–240:7 (testifying that LVD decided to purchase Bellicose because tribes frequently acquire businesses: "it's a way by which tribes very quickly acquire capacity and expertise by purchasing it rather than growing it in-house over a longer period of time.")<br>• Ex. C - Williams 11/13/17 Dep. at 200:23–201:2 ("[R]eally looking at what this business is capable of doing for the Tribe, for our future generations to come. . . it's the focus of our future.")<br>• Ex. K - Red Rock-Bellicose Servicing Agreement § 4.2.1, MARTORELLO_ 026256 at 026268, (discussing training to be provided by SPVI and requiring SPVI to |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | provide credit-modeling data and risk-assessment strategies for Red Rock but not underlying formulas)<br>• Ex. PP - ROSETTE_REVISED_037655 ( ███████ )<br>• Ex. DDDD - CM0000620 ( ███████ )<br>• Ex. EEEE - ROSETTE_REVISED_045532 ( ███████ )<br>• Ex. FFFF - ROSETTE_REVISED_043977 ( ███████ )<br>• Ex. GGGG - ROSETTE_REVISED_045806 ( ███████ )<br>• Ex. HHHH - CM0000286 & 297 ( ███████ )<br>• Ex. OO - ROSETTE_REVISED_045131 (June 7, 2012 email documenting transfer of authority to co-managers to negotiate debt settlements as part of lending business)<br>• Ex. WW - ROSETTE_REVISED_045533 ( ███████ )<br>• Ex. IIII - ROSETTE_REVISED_037729 ( ███████ )<br>• Ex. ZZ - ROSETTE_REVISED_014047 (Nov. 2, 2012 email listing lending activities performed in office on LVD reservation)<br>• Ex. JJJJ - ROSETTE_REVISED_044773 ( ███████ ) |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | ██████ ) <br> • Ex. TT - ROSETTE_REVISED_030201 (████████ ) <br> • Ex. KKKKKK - LVD-DEF00017139 (██████████████ ) <br> • Ex. KKKK - ROSETTE_REVISED_044130–044131 (████████████████████ ) <br> • Ex. LLLL - ROSETTE_REVISED_029171 (Aug. 19, 2014 email stating compliance manager is impressive and "the Tribe will absolutely benefit from her participation as a DCTF employee") <br> • Ex. MMMM - ROSETTE_REVISED_046799 (███████████ ) <br> • Ex. NNNN - ROSETTE_REVISED_045267 (Aug. 24, 2014 email from Wichtman to Martorello: "I have tribal leaders in my ear eager to learn") <br> • Ex. OOOO - ROSETTE_REVISED_037429 (███████ ) <br> • Ex. FFF - LVD-DEF00017855 (████████ ) <br> • Ex. BBBBB - LVD-DEF00016838 (███████████ ) <br> • Ex. EEEEE - LVD-DEF00006043 (███████████ ) <br> • Ex. FFFFF - LVD-DEF00022840 (████████ |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | Weaver, McFadden, Dowd and Justin Martorello to LVD's Co-Managers beginning May 2014 to March 2015) <br>• Ex. PPPP - ROSETTE_REVISED_031665 (█████ ███████████████████████████ ██) <br>• Ex. QQQQ - ROSETTE_REVISED_006609 (██████ ████████████████████████ ███) <br>• Ex. RRRR - LVD-DEF00023021 (██████ ███████████████████████ █) <br>• ECF 821-7 - Cowhey Rep. at 16 (estimating value of LVD's equity in its intellectual property, including its procedures, systems, customers lists and brands at $24,729,000 as of the date of sale) <br>• ECF 821-2 - Henson Rep. at 4 ("Noteworthy parallels exist between the development of tribal gaming enterprises and online lending. When tribes initially entered the highly-regulated gaming industry, they did not have the capital, managerial talent, or technical skills to start and operate successful casino businesses. As a result, tribal governments sought outside expertise to help them manage their gaming enterprises, as well as to provide technological solutions associated with many popular gaming products (such as electronic bingo and slot machines). In addition to facilitating tribal gaming operations, outside experts also trained tribal employees, so that tribes were better positioned to manage their enterprises themselves. These circumstances are mirrored in the similarly highly-regulated online lending industry, as tribes formalized contractual relationships with outside experts to facilitate their entry into a new industry.") <br>• ECF 821-6 - Morgan Rep. at 7–8 (explaining that, in the context of gaming, tribes often partner with non-tribal service providers "because they d[o] not have the required knowledge and capital" to enter the business, and that "Once a tribe had gained enough gaming knowledge, they were able to function without the non-tribal company and operate, control, and regulate every aspect of their own casinos.") <br>• ECF 821-6 - Morgan Rep. at 13 ("The Sales and |

| Martorello Statement | Cite in Pl.s' Brief | Proof that Statement Is True |
|---|---|---|
| | | Service agreements together position [LVD] to utilize a common business development technique in other tribal industries. … [T]he tribes used their partnership relationships to gain experience, knowledge and capital. After gaining the necessary knowledge, the tribes no longer needed a partner and were able to increase their profitability by eliminating the need for a partner. The increased profits are key to fulfilling [LVD]'s socio-economic goals for its membership.")<br>• ECF 821-6 - Morgan Rep. at 14 ("In my professional opinion, the [LVD]'s lending business was following the same evolutionary path as most tribal gaming and tribal government contracting businesses. The Sales Agreement represents [LVD]'s effort to manage all aspects of its business operations without the need for a partner.")<br>• ECF 821-6 - Morgan Rep. at 28 ("tribes follow an evolutionary cycle when entering into a new industry. They create the entity, often partner with another company to help learn the business and then generally are incentivized to completely take over a business without any partners or with partners in limited roles.") |