# EXHIBIT PPPPPP

Message

| | |
|---|---|
| **From**: | Peter Barden [pbarden@oladc.org] |
| **Sent**: | 7/29/2014 1:08:01 PM |
| **To**: | OLA Contact [/o=First Organization/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=307cf77e0d624e389080360bff78a5a9-olaco] |
| **Subject**: | OLA Daily Clips |



## The Wall Street Journal: High-Risk Merchants List Dropped by FDIC

A U.S. bank regulator, under fire from lawmakers, will no longer list specific high-risk merchants that banks should monitor carefully, such as escort services, coin dealers and payday lenders.

Since 2008, the Federal Deposit Insurance Corp. has warned banks to keep close watch over payment firms that work with certain merchants over concerns about fraudulent or illicit behavior. Banks earn money by charging fees to such payment firms, which in turn provide thousands of merchants with access to the U.S. financial system.

On Monday, the FDIC said it would delete references to specific business categories in its official publications, but said banks should still take caution in handling transactions for payment firms, due to the potential risk of illegal activity. The Wall Street Journal

## American Banker: How FDIC's Withdrawal of 'Hit List' Affects Operation Choke Point

The Federal Deposit Insurance Corp. caught most everyone off guard Monday by abruptly withdrawing its list of potentially high-risk merchants that it said warranted extra attention by banks processing their transactions.

For the past year, the list, which includes payday lenders, debt collectors, coin dealers, pornography companies and others, has been at the focal point of a government effort to cut fraudulent merchants off from the payment system. The Justice Department had appeared to partly rely on it for its Operation Choke Point, which to date has subpoenaed at least 50 banks and payment processing firms.

The FDIC said it abandoned the list because it had been misunderstood by banks and the world at large. Officials said it was meant to assist banks in identifying potential risky activity, but acknowledged some banks had interpreted it as a blanket ban on working with certain kinds of companies. American Banker

MARTORELLO_032879

**Full Text**

## The Wall Street Journal: High-Risk Merchants List Dropped by FDIC

A U.S. bank regulator, under fire from lawmakers, will no longer list specific high-risk merchants that banks should monitor carefully, such as escort services, coin dealers and payday lenders.

Since 2008, the Federal Deposit Insurance Corp. has warned banks to keep close watch over payment firms that work with certain merchants over concerns about fraudulent or illicit behavior. Banks earn money by charging fees to such payment firms, which in turn provide thousands of merchants with access to the U.S. financial system.

On Monday, the FDIC said it would delete references to specific business categories in its official publications, but said banks should still take caution in handling transactions for payment firms, due to the potential risk of illegal activity.

The regulator's move comes amid criticism by lawmakers and some business groups that legitimate businesses have been harmed by an effort by Washington to stamp out fraud against consumers. A trade group for payday lenders has said more than 80 banks have ended business relationships with that industry as a result of the regulatory crackdown.

As part of a probe dubbed "Operation Choke Point," the Justice Department has issued more than 50 subpoenas and has opened at least 15 civil and criminal investigations into whether banks and payment-processing firms helped enable fraudulent activity.

Critics say the FDIC's list of 30 risky categories of businesses is tantamount to an official list of targeted businesses.

FDIC officials decided to delete references to specific business categories in an effort to eliminate the misperception that specific categories of businesses are barred from doing business with banks, FDIC spokesman Andrew Gray said. Banks, "are neither prohibited nor discouraged from providing services to any customer" that complies with the law, Mr. Gray said.

The FDIC revised four official publications issued since 2008, deleting references to specific business categories that make financial transactions through payment-processing firms. Scott Talbott, chief lobbyist for the Electronic Transactions Association, which represents payment processors, praised the move but said his group "will continue to work with all federal agencies to ensure that Operation Choke Point is brought to end and the focus of law enforcement activity is on fraudulent merchants and not innocent payments companies."

In a hearing earlier this month, Rep. Patrick McHenry (R., N.C.) called the FDIC publication a "government hit list."

While the regulator will no longer warn about specific kinds of businesses, officials say banks will be held responsible for monitoring their customers' activities.

Some businesses "may pose greater risk for suspicious or illegal activity," said Richard Osterman, the FDIC's acting general counsel, in a House hearing earlier this month. "there is a real risk for the bank, because it can be held legally responsible for facilitating those activities and transactions."

## American Banker: How FDIC's Withdrawal of 'Hit List' Affects Operation Choke Point

The Federal Deposit Insurance Corp. caught most everyone off guard Monday by abruptly withdrawing its list of potentially high-risk merchants that it said warranted extra attention by banks processing their transactions.

For the past year, the list, which includes payday lenders, debt collectors, coin dealers, pornography companies and others, has been at the focal point of a government effort to cut fraudulent merchants off from the payment system. The Justice Department had appeared to partly rely on it for its Operation Choke Point, which to date has subpoenaed at least 50 banks and payment processing firms.

The FDIC said it abandoned the list because it had been misunderstood by banks and the world at large. Officials said it was meant to assist banks in identifying potential risky activity, but acknowledged some banks had interpreted it as a blanket ban on working with certain kinds of companies.

While it's too early to know the full impact of the FDIC's move, it does have several potentially significant implications, including a surprising one for the Consumer Financial Protection Bureau. Following are three takeaways from the FDIC's action:

**1. The FDIC is trying to take itself off the front lines**

It's tough to remember that, officially speaking, the FDIC is not part of Operation Choke Point. The bank regulator first issued its list of high-risk firms that may do business through third-party processors in 2011, roughly a year before DOJ's initiative.

Yet the industry and lawmakers have seen the FDIC and Justice Department as working in lock-step - and the FDIC's list has been a key reason why. Partly, that is because DOJ has pointed to the list several times, both in its subpoenas to banks and in response to industry concerns.

As the controversy over Operation Choke Point has continued to build, the FDIC has been under increasing pressure to justify the list and why certain industries are on it.

Operation Choke Point "effectively transformed the FDIC guidance on high-risk businesses into an implicit threat of a federal investigation," wrote Rep. Darrell Issa, chairman of the House Oversight Committee, in a June 9 letter to the FDIC. "The FDIC has been intimately involved in Operation Choke Point since its inception."

MARTORELLO_032881

At a hearing two weeks ago, Rep. Patrick McHenry, R-N.C., hammered an FDIC official on the subject.

"You've put out this list and it says, 'Don't do business,'" McHenry said. "That's what the banks have heard."

By dropping the list, the FDIC is likely hoping it can put daylight between itself and the Justice Department.

"Those things just put all this attention and light on the FDIC's guidance and its history, including that list of businesses," said Richard Riese, the senior vice president for the Center for Regulatory Compliance at the American Bankers Association. "It was just a list of examples; it wasn't a list therefore that was capped. It became problematic."

## 2. What happens next depends on FDIC examiners.

On the one hand, many in the industry were pleased by the FDIC's move on Monday, viewing it as a significant victory in their effort to fight back against what they see as governmental overreach.

Yet the list has been public for three years and some worry that field examiners won't be so quick to forget it ever existed.

"This is the next development," said Lisa McGreevy, president and chief executive of the Online Lenders Alliance. "The list was there. While it's no longer officially there anymore, it will now take some period of time to work through the examiner ranks to figure out what does this mean?"

Camden Fine, president of the Independent Community Bankers of America, said that "just because the list is gone does not necessarily mean that examiner pressure at the field level is gone."

Fine said that he is pleased that the list has been withdrawn, but added that "field examiners have 1,000 ways to cut community bankers without leaving any marks."

## 3. The CFPB is likely watching closely

While the FDIC and DOJ are under fire for how their scrutiny of payment processors has hurt payday lending, another regulator is waiting in the wings with its own agenda targeting that industry.

The CFPB is due to release long-awaited rules this year restricting payday lending. Several observers saw the unprecedented lobbying effort directed at Operation Choke Point as a warning to the consumer agency, lest its proposal go too far.

"The CFPB should heed what has transpired at the FDIC and at the DOJ - and Congress'

MARTORELLO_032882

reaction," said Fine. "If the FDIC had not pulled back, Congress would have played a much heavier hand."

Yet some analysts said the CFPB has already moved slower than was originally expected to write payday rules. They noted the agency has held hearings and appears cognizant of the potential to inadvertently cut off access to credit. They also said it was a mistake to compare Operation Choke Point with the normal rule-writing process.

"The CFPB has gone as cautiously as it could relate to payday regulations," said Edward Mills, a policy analyst at FBR Capital Markets. "It's a lot different to decide what the right regulation of a product is. It's another thing when you decide even though the product is legal, we just don't like it. That's what gets a little bit scary... You are never really on the right side of history when you support government blacklisting."



This email was sent to contact@onlinelendersalliance.org by pbarden@oladc.org |
Update Profile/Email Address | Rapid removal with SafeUnsubscribe™ | Privacy Policy.



Online Lenders Alliance | P.O. Box 320130 | Alexandria | VA | 22320

MARTORELLO_032883