EXHIBIT 3

# AMENDED AND RESTATED
# OPERATING AGREEMENT
# OF
# BELLICOSE CAPITAL, LLC
A Delaware Limited Liability Company

THIS AMENDED AND RESTATED **OPERATING AGREEMENT (this "Agreement") is made and** entered into as of July 1, 2014, by and among the Members whose signatures appear on Schedule A, as may be amended from time to time, which shall be, and remain after subsequent amendment, part and parcel of this Agreement.

Whereas, the Members of the Company entered into an Operating Agreement dated January 1, 2014 (the **"Original Agreement")**, and subsequently entered into an Amended and Restated Operating Agreement made **effective retroactive to January 1, 2014 ("Amended Agreement")** in order to clarify certain errors and ambiguities contained in the Original Agreement;

Whereas the Company now wishes to further amend and restate the Amended Agreement; and

Whereas, this Agreement is intended to govern the relationships among the Company, its Manager and its Members.

In consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

## SECTION I
## ORGANIZATION & FORMATION

A.    Formation. The Company has been organized as a Delaware limited liability company under and pursuant to the Delaware Limited Liability Company Act **(the "Act")** by the filing of Articles of Organization **("Articles") with the** State of Delaware Division of Corporations, on October 9, 2013, as required by the Act.

B.    Name. **The name of the Company shall be "Bellicose** Capital, LLC". **Upon proper notice and filing** with the State of Delaware Division of Corporations, the Company may conduct its business under one or more assumed names.

C.    Purpose. The purpose of the Company is to operate any lawful business permitted by the law of the State of Delaware or any other State, Territory or Commonwealth in which it is registered to do business. The Company shall have all the powers necessary or convenient to affect any purpose for which it is formed, including all powers granted by the Act. The Company is authorized to apply for any and all tax exemptions and other benefits for which it may be eligible, including without limitation, benefits provided by the Department of Economic Development and Commerce of the Commonwealth of Puerto Rico.

D.    Duration. The Company shall continue in existence perpetually, beginning on the date of filing of the Articles, unless terminated by law or dissolved and terminated pursuant to this Agreement.

E.    No Partnership. The Members intend that the Company not be a partnership (including, without limitation, a limited partnership) or joint venture, that no Member be a partner or joint venturer for any purposes other than federal, state and territorial tax purposes, and this Agreement may not be construed to suggest otherwise.

MARTORELLO_000299

F.      Registered Office, Resident Agent and Place of Business. The registered office and principal place of business of the Company shall be at **203 Galeria De Artes y Ciencias I, Dorado, Puerto Rico** or such other place or places as the Manager may hereafter determine. The Resident Agent of the Company for service of process in Delaware shall be Incorporating Services, Ltd., 3500 South Dupont Highway, Dover, DE 19901.

## SECTION II
## MEMBERS, MEMBERSHIP INTEREST & CLASSES

A.      Definitions.

(i) **"Act" shall mean the** Delaware Limited Liability Company Act, Title 6 of the Delaware Code, as in effect in the State of Delaware and as amended from time to time. Reference to any section of the Act shall be deemed to refer to a similar provision in any amendment to the Act. To the extent the Company redomiciles, it may be required to amend and restate this Agreement in accordance with the laws of its new domicile.

(ii) "Additional Member" shall mean any Member admitted, to the Company after the date of this Agreement as provided for in Section II D.

(iii) "Capital Account" shall mean the account maintained for each Member described in Section III of the Agreement.

(iv) "Capital Contribution" shall mean, with respect to any Member, the total amount of contributions by all the Members or any class of Members or any one Member, as the case may be (or the predecessor holders of the interests of such Members), to the capital of the Company in cash, property, or services for an interest in the Company, valued at fair market value without deduction of selling, organization, or other expenses; and shall include all such contributions to the capital of the Company whenever made.

(v) **"Class" or "Classes":** Membership Interests may include voting interest, economic interest and equity interest, and may be divided into separate Classes in the sole discretion of the Manager, which Classes and Membership Interests shall have such rights and preferences as the Manager shall determine, including (without limitation) different fee, expense and allocation structures and different voting privileges. The Manager shall cause separate and distinct records to be kept with respect to Company Property associated with each Class. Certain classes of the Company shall entitle a Member to participate only in the future profits, losses and/or appreciation of the Company Property allocated to a particular Class of Membership Interest. The designation of Class and rights of any Member, shall be designated by the Manager, and shall either be described herein in this Agreement, or made pursuant to an ancillary agreement among the Company and the proposed Member.  All Classes of Membership Interest shall be shown on Schedule A, attached hereto and made a part hereof, as amended from time to time.

(vi) **"Company Property" or "Property"** each shall mean the real property and any other assets or property (tangible or intangible, personalty or real, choate or inchoate, fixed or contingent) of the Company, including all earnings and proceeds which may arise therefrom from time to time.

(vii) **"Economic Interest" shall mean a Member's** share of the **Classes'** future net profits and net losses specifically associated with a particular Class pursuant to this Agreement. Economic Interests shall be non-voting interests. It is the intention of the parties hereto that all Economic Interests shall be deemed **to be "profits interests" of the Company in accordance with Rev. Proc. 93**-27 and 2001-43 and that the Economic Interest holders are only entitled to participate in the future net profits and or net losses of the Company accruing after each Member's date of execution of this Agreement and are not entitled to participate in profits or losses related to the sale of assets or equity.

2

(vii) **"Equity Interest" shall mean a Member's** share of the value upon a sale or liquidation of the Company, its subsidiaries, or the asset(s) specifically associated with a particular Class of Equity Interest and set forth in section II C below.

(viii) "Initial Capital Contribution" shall mean, with respect to any Member, the initial contribution by such Member to the capital of the Company as set forth on Schedule A hereto.

(ix) "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, or any corresponding provision or provisions of succeeding laws. The term "Internal Revenue Code" shall be abbreviated as "IRC" or "Code".

**(x)** "Member**" shall mean each of the persons or entities holding a Membership Interest in the** Company and each of the persons or entities who may hereafter become a Member holding a Membership Interest. Members' rights to participate in the management and affairs of the Company, to share in the profits, gains or losses of the Company, to share in the value upon sale or liquidation of the asset(s) associated with a particular Class of Membership Interest, or to vote at meetings of the Members shall be determined pursuant to this Agreement, or to any ancillary agreements between the Member and the Company executed contemporaneously with this Agreement, or to any resolutions of the Members executed in connection with the issuance of a new class of interests.

(xi) "Membership Interest**" shall mean a Member's** voting interest, economic interest and/or equity interest in a particular Class, including the right to vote associated with such Membership Interest, if any, and such other rights and privileges that the Member may enjoy by being such a Member.

B.      Members.  The Members are set forth on Schedule A hereto, and shall include any other person hereafter admitted to the Company as a Member **as provided in this Agreement.  The term "Members" shall** not include any person who has ceased to be a member of the Company.

C.      Classes.  The following Classes have been designated by the Manager as of the Effective Date of this Agreement:

(i)      Class A Membership Interest.  Class A Membership Interest shall be the membership interest in the Company not otherwise designated to any other Class of Membership Interest.

(a) Class A Voting Interest: Class A Voting Interest shall be the only Class of Membership entitled to vote on any and all matters presented to the Company for Member approval. Class A Voting Interest shall not include an Economic Interest or an Equity Interest.

(b) Class A Economic Interest: **Class A Economic Interest shall be a Class A Member's economic interest in the Company's** future net profits and net losses pursuant to this Operating Agreement and the Act, as more particularly set forth in Schedule A to this Operating Agreement as the same may be amended from time to time by the Class A Members holding Class A Voting Interest, but shall not include any right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any decision of the Class A Members holding Class A Voting Interest, nor shall it include an Equity Interest.

(c) Class A Equity Interest:  Class A Equity Interest shall be entitled to the value of the Company upon sale or liquidation, the gain or losses from the sale of some or all of the companies assets, and the sharing in liabilities pursuant to this Operating Agreement and the Act, as more particularly set forth in Schedule A to this Operating Agreement as the same may be amended from time to time by the Manager, but shall not include any right to participate in the management or affairs of the Company, including the right to

3

MARTORELLO_000301

vote on, consent to or otherwise participate in any decision of the Class A Members holding Class A Voting Interest, nor shall it include an Economic Interest.

(ii)     <u>Class B Membership Interest</u>.  Class B Membership Interest shall be the membership interest in the Company based solely upon the value and profitability of the subsidiary entity, **SourcePoint VI, LLC**. <u>No other</u> net profits, net losses, or distributions or value upon sale or liquidation attributable to the Company or any of its other subsidiaries shall be payable, under any circumstances, to the Class B Membership Interest holders, as are set forth in <u>Schedule A</u> to this Agreement as the same may be amended from time to time by the Manager.  Class B Membership Interest <u>shall not include</u>, under any circumstances, any right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any decision of the Company; the right to vote on any matter presented to the Class A Members holding Class A Voting Interest; or any decision whatsoever regarding the Class B Membership Interest or the subsidiary entity: SourcePoint VI, LLC.

(a) <u>Class B Economic Interest</u>: Class B Economic Interests shall only be entitled to the net profits and net losses derived solely from the wholly owned subsidiary of the Company, SourcePoint VI, LLC, from the applicable issue date set forth on Schedule A. Class B Economic Interest shall not include any right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any decision of the Class A Members holding Class A Voting Interest, nor shall it include an Equity Interest.

(b) <u>Class B Equity Interest</u>.  Class B Equity Interest shall be entitled to the value of the Class B Membership Interest only, which shall be based solely upon the value of the subsidiary entity, SourcePoint VI, LLC and/or some or all of its assets and liabilities, upon sale or liquidation, but shall not include any right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any decision of the Class A Members holding Class A Voting Interest, nor shall it include an Economic Interest.

(iii)     <u>Class C Membership Interest</u>.  Class C Membership Interest shall be the membership interest in the Company based solely upon the value and profitability of the subsidiary entity, **Green Key Technologies, LLC**.  <u>No other</u> net profits, net losses, or distributions or value upon sale or liquidation attributable to the Company or any of its other subsidiaries shall be payable, under any circumstances, to the Class C Membership Interest holders, as are set forth in <u>Schedule A</u> to this Agreement as the same may be amended from time to time by the Manager.  Class C Membership Interest <u>shall not include</u>, under any circumstances, any right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any decision of the Company; the right to vote on any matter presented to the Class A Members holding Class A Voting Interest; or any decision whatsoever regarding the Class C Membership Interest or the subsidiary entity: Green Key Technologies, LLC.

(a) <u>Class C Economic Interest</u>: Class C Economic Interests shall only be entitled to the net profits and net losses derived solely from the wholly owned subsidiary of the Company, Green Key Technologies, LLC, from the applicable issue date set forth on Schedule A. Class C Economic Interest shall not include any right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any decision of the Class A Members holding Class A Voting Interest, nor shall it include an Equity Interest.

(b) <u>Class C Equity Interest</u>.  Class C Equity Interest shall be entitled to the value of the Class C Membership Interest only, which shall be based solely upon the value of the subsidiary entity, Green Key Technologies, LLC and/or some or all of its assets and liabilities, upon sale or liquidation, but shall not include any right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any decision of the Class A Members holding Class A Voting Interest, nor shall it include an Economic Interest.

CONFIDENTIAL

MARTORELLO_000302

D.      Representations and Warranties of the Members.  As of the date on which any person becomes a Member, such person severally (and not jointly) hereby represents and warrants, as to itself and no other Member, to, and covenants with, the Company and each of the other Members that: (i) such person understands that the offer and sale or other transfer of the Membership Interest to such person have not been registered under the Securities Act or the securities laws of any state or territory, and further understands that such Membership Interest has not been approved or disapproved by the Securities and Exchange Commission or any other federal or state agency; (ii) such person understands that there are substantial restrictions on the transfer of Membership Interests, including without limitation, that Membership Interests may not be transferred except as permitted by this Section II; (iii) such person has carefully reviewed and understands this Agreement in its entirety; (iv) the Manager has not made and hereby makes no warranties or representations to such person other than those set forth in this Agreement.

E.      Membership Interests; Additional Membership Interests. Ownership of the Company shall be divided into and represented by Membership Interests.  The Class and types of Membership Interests of the Members are set forth on Schedule A.  The Manager is expressly authorized to provide for the issuance from time to time of additional Membership Interests for such consideration, and with rights, privileges, preferences, qualifications, limitations and restrictions as shall be stated and expressed in the resolution or resolutions adopted by the Manager providing for the issuance of additional Membership Interests and as may be permitted by the Act.  The Manager shall reflect the issuance of any additional Membership Interest and, if applicable, the admission of a new Member, pursuant to an amendment to Schedule A, which such amendment shall not be required to be executed by any other Member.

F.      Transfer of Membership Interests.  Subject to the limitations of transferability set forth herein in this Agreement, Members may transfer any or all of their Membership Interest to any person or persons, at any time and from time to time.  Subject to the provisions of this Section, Members may assign their Membership Interest in the Company in whole or in part. The assignment of a Membership Interest does not itself entitle the assignee to participate in the management and affairs of the Company or to become a Member. Such assignee is entitled only to receive the distributions of cash and other property and the allocations of income, gains, losses, deductions, credits or similar items to which its assignor would have been entitled to, and such assignee shall only become an assignee of a Membership Interest and not a substituted Member. An assignee of Membership Interest shall be admitted as a substitute Member and shall be entitled to all the rights and powers of the assignor only if the Manager consents in writing. If admitted, the substitute Member, has to the extent assigned, all of the rights and powers, and is subject to all of the restrictions and liabilities of the Members.

H.      Right of First Refusal.  Before any Membership Interest (**"Interest"**) held by any Member is sold or otherwise transferred (including, but not limited to transfer by gift, operation of law, or pursuant to Section II H below) the Company shall have an uncontested and irrevocable right of first refusal to purchase the Interest on the following terms and conditions:

(i)      **The selling Member shall deliver to the Company a written notice stating: (a) the Member's** bona fide intention to sell or otherwise transfer such Interest; (b) the name of the proposed purchaser or other **transferee ("Proposed Transferee"); (c) the percent of Interest to be transferred to each Proposed Transferee;** (d) the bona fide cash price or other consideration to be exchanged for the **Interest ("Offered Price"); and (e)** the terms and conditions of the proposed transfer.

(ii)      At any time within forty-five (45) days after receipt of this notice, the Company may, by written notice to the selling Member, elect to purchase all, or any part of the Interest at Fair Market Value (as defined in Section J below) or at the Offered Price, whichever price is lower.

(iii)      The right of first refusal shall not terminate upon any transfer of Interest.

5

(iv)     The right of first refusal shall be freely assignable by the Company at any time and in its sole discretion.

(v)      Any transfer done without adherence to this Section II F shall be void.

I.      <u>Mandatory Repurchase</u>.  The Manager, in his sole and absolute discretion, may require a Member to sell all **or a portion of the Interest of such Member, on not less than fourteen (14) days' notice (a "Mandatory Repurchase").  Such Mandatory Repurchase shall become effective on the date (the "Repurchase Date")** specified in such notice.  A Member who is so required to sell its Interest pursuant to this Section shall receive the Fair Market Value of the Interest, computed as of the date on which such Mandatory Repurchase shall become effective (a Member whose Interest is repurchased pursuant to this Section is referred to herein as a **"Repurchased Member").**

J.      <u>Payments in Connection with Mandatory Repurchase</u>.

(i)      Within 30 days after a Repurchase Date there shall be paid or distributed to a Repurchased Member an amount in cash, or, in the discretion of the Manager, in securities selected by the Manager, or, in the discretion of the Manager, partly in cash and partly in securities selected by the Manager, equal in value to not less than 90% of the estimated Fair Market Value of the Interest being repurchased. Within 30 days after the Manager has determined the Fair Market Value of the Interest being redeemed or repurchased as of such date, the Company shall pay to the Repurchased Member in cash, or, in the discretion of the Manager, in securities selected by the Manager, or, in the discretion of the Manager, partly in cash and partly in securities selected by the Manager, the amount of the excess, if any, of the Fair Market Value of the redeemed or repurchased Interest over the amount so paid.

a.      **"Fair Market Value" shall mean the value of the Interest, as applicable, as determined by Manager using reasonable valuation criteria, all in the Manager's sole discretion.**

b.      **The Company's assets will be valued from time to time in the discretion of the** Manager.  In those cases where an exchange-**based pricing mechanism is unavailable, the Manager or Manager's** representative will develop an assessment of Fair Market Value, which will be reviewed and approved by the Manager whose consent shall not be unreasonably withheld.  In the absence of bad faith, such determination, as approved by the Manager, shall be conclusive.  Fair Market Value shall reflect any declared but unpaid distributions with respect to the Interest.

(ii)     If, in the discretion of the Manager, the assets of the Company are committed in such a manner as not to reasonably permit immediate withdrawal of such assets, then, on the applicable Repurchase Date (the "Repurchase Effective Date"), the Manager may adopt a deferred payment system in accordance with the following:

a.      The Manager will attempt to liquidate, as of the earliest date on or after the Repurchase Effective Date upon which the Company is permitted to do so or on which market conditions make same feasible, from the Company's investments, such portion thereof as is allocable to the Interest of the Repurchased Member;

b.      Within 30 days following the Repurchase Effective Date, the Repurchased Member will be entitled to receive an amount equal to the Repurchased Member's percentage of all cash and the fair market value of all liquid securities held directly by the Company with respect to any applicable Interest; provided, however, that any such amount shall be subject to the provisions of this Section;

6

MARTORELLO_000304

     c.     The balance due to the Repurchased Member shall be paid from time to time, within 30 days after the Company receives the proceeds from the liquidation of the previously illiquid portion of the Company's investments, but only to the extent that such proceeds plus the Repurchased Member's percentage of cash and the fair market value of liquid securities held by the Company with respect to any applicable Membership exceed such Member's percentage of the Company's liabilities and any amount retained pursuant to this Section with respect to any applicable Membership; provided, however, that in any event, at least 80% of the amount due a Repurchased Member shall be paid within one year following the Redemption Effective Date; and

     d.     The Fair Market Value of the Interest attributable to a Repurchased Member shall be subject to an adjustment equal to a credit or charge for the Repurchased Member's percentage of the increase or decrease in the net asset value of the Company's investments with respect to any applicable Interest from the Redemption Effective Date through the date on which final payment of such Repurchased Member's percentage is made.

K.    <u>Involuntary Transfers</u>.  In the event of an Involuntary Transfer of any Interest to any person, the transferee (which term, as used herein, shall include any and all transferees and subsequent transferees of the initial transferee) shall take and hold such Interest subject to this Agreement and to all the obligations and restrictions upon the transferor, and shall observe and comply with this Agreement and with such obligations and restrictions.  As used in this Section II, **the term "Involuntary Transfer" shall mean any transaction,** proceeding or action by or in which a Member or other person is involuntarily deprived or divested of any right, title or interest in or to any Interest (including without limitation, a seizure under levy of attachment or execution, transfer to a trustee in bankruptcy or receiver or other officer or agency pursuant to a statute pertaining to escheat **or abandoned property, a Member's death or the appointment of a guardian with respect** to a Member).

L.    <u>Admission of New Members</u>.  No person shall be admitted as a Member of the Company unless: (i) the Manager shall have consented in writing to the admission of such person as a new Member; (ii) the person has executed and delivered all documents reasonably deemed appropriate by the Manager to reflect such **person's admission as a Member, and its agreement to be bound by this Agreement; and (iii) such person** has paid all expenses connected with its admission.

## SECTION III
## CAPITAL ACCOUNT

A.    <u>Capital Account</u>.  **A capital account ("Capital Account") shall be maintained for** the Members, and any additional Members in accordance with the provisions of this Section and subject to any ancillary agreements entered into between the Company and the Members.

     (i)     Increases in Capital Account.  The Capital Account of the Members shall be increased by:

     a.     The fair market value of the Members**' initial capital contri**bution and any additional capital contributions by the Members to the Company.  If any property, other than cash, is contributed to or distributed by the Company, the adjustments to Capital Accounts required by Treasury Regulation Section 1.704-1(b)(2)(iv)(d), (e), (f) and (g) and Section 1.704-1(b)(4)(i) shall be made.

     b.     The Members**' share of the increase in the tax basis of Company property, if any,** arising out of the recapture of any tax credit.

     c.     Allocations to the Members of profit.

CONFIDENTIAL    MARTORELLO_000305

      d.     **The Members' share of** Company income or gain (including income and gain exempt from income taxation) as provided under this Agreement, or otherwise by Regulation Section 1.704-1(b)(2)(iv).

      e.     **The Members' share of t**he amount of Company liabilities that are assumed by the Members.

    (ii)     Decreases in Capital Account.  The Capital Account of the Members shall be decreased by:

      a.     **The Members' share of t**he amount of money distributed to the Members of the Company pursuant to any provision of this Agreement.

      b.     **The Members' share of t**he fair market value of property distributed to the Members by the Company (net liabilities secured by such distributed property that such Members are considered to assume or take subject to Code Section 752).

      c.     Allocations to the Members of losses.

      d.     Allocations to the Members of deductions, expenses, Nonrecourse Deductions and net losses allocated to it pursuant to this Agreement, and the Members**' share of Company expenditures which** are neither deductible nor properly chargeable to Capital Accounts under Code Section 705(a)(2)(B) or are treated as such expenditures under Treasury Regulation Section 1.704-1**(b)(2)(iv)(i). "Nonrecourse Deductions"** shall have the meaning set forth in Treasury Regulation Section 1.704-2.

      e.     **The Members' share of t**he amount of any liabilities of the Members that are assumed by the Company.

## SECTION IV
## ALLOCATIONS AND DISTRIBUTIONS

A.    <u>Allocations</u>.

    (i)     Allocations shall be made at such times as the Manager shall deem, in his sole discretion, to the Members listed and described on <u>Schedule A</u> attached hereto in accordance with the terms and rights of their interests.  Except as may be expressly provided otherwise in this Section IV or agreed to among the parties, and subject to the provisions of Sections 704(b) and 704(c) of the Code, the net income, net loss, or gains of the Company for each year of the Company shall be allocated to the Members, in accordance with the rights attributable to their respective interests.

    (ii)     Net profits, net losses, or any other items allocable to any period shall be determined by the Manager, in his discretion, using any permissible method under Code Section 706 and the related Treasury Regulations and in accordance with the rights attributable to their respective interests.

    (iii)     Acknowledgement.  The Members are aware of the income and other tax consequences of the allocations in or referred to by this Section IV and hereby agree to be bound by the provisions of this Section IV in reporting the share of items of Company income, gain, loss, deduction and expense for tax purposes.

    (iv)     Determination by Manager of Certain Matters.  All matters not expressly provided for by the terms of this Agreement concerning the manner in which capital accounts and allocations are computed shall be determined in good faith by the Manager, in his reasonable discretion, whose determination shall be final and conclusive as to all the Members.  In the event the Manager determines that it is prudent to modify the manner in which capital accounts or any allocations under this Agreement are computed in order to comply with Section 704(b) of the Code and Treasury Regulations thereunder, the Manager shall make such

CONFIDENTIAL

MARTORELLO_000306

modification.  In the event that unanticipated events might otherwise cause this Agreement not to comply with such law, the Manager, consistent with the prior sentence, shall make such modifications as he deems reasonable.

B.      <u>Allocations for Tax Purposes</u>.  Except as otherwise provided in and after giving effect to Section IV A, as of the end of each fiscal year, items of Company income, gain, loss, deduction and expense, shall be allocated among the Members pursuant to this Section IV B and as otherwise agreed to in writing by the parties for federal income tax purposes.  In accordance with Code Section 704(c) and the related Treasury Regulations, income, gain, loss and deduction with respect to any property contributed to the capital of the Company, solely for tax purposes, will be allocated among the Members so as to take account of any variation between the adjusted basis to the Company of the property for federal income tax purposes and the initial Book Value of the property.  If the Book Value of any C**ompany asset is adjusted under clause "b." of the definition of Book** Value, subsequent allocations of income, gain, loss and deduction with respect to that asset will take account of any variation between the adjusted basis of the asset for federal income tax purposes and its Book Value in the same manner as under Code Section 704(c) and the related Treasury Regulations.  Any elections or other decisions relating to allocations under this Section IV B will be made in any manner that the Manager determines reasonably reflects the purpose and intention of this Agreement.  The allocations in or referred to by this Section IV B are solely for federal, state, territorial and local income tax purposes and shall not affect, or in any way be taken into account in co**mputing, any Member's capital account or share of net profit or net loss or** other items described in this Agreement.

C.      <u>Acknowledgement</u>.  The Members are aware of the income and other tax consequences of the allocations in or referred to by this Section IV and hereby agree to be bound by the provisions of this Section IV in reporting their shares of items of Company income, gain, loss, deduction and expense for tax purposes.

D.      <u>Certain Tax Related Definitions</u>.  For the purposes of this Agreement, unless the context otherwise requires:

        (i)      **"Adjusted Capital Account Deficit" means, with respect to any Member, the deficit balance, if any, in such Member's capital account as of the end of the relevant fiscal year or other period, after giving** effect to the following adjustments.

                a.      Credit to such capital account any amounts which such Member is obligated to restore or is deemed to be obligated to restore pursuant to the penultimate sentence of Treasury Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5);

                b.      Debit to such capital account the item described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6); and

                c.      Credit and debit to such capital account, in the sole and absolute discretion of the Manager, any other items required or permitted under Section 704(b) of the Code and Treasury Regulations thereunder.

        (ii)      **"Book Value" means with respect to any asset, the asset's adjusted basis for federal income** tax purposes, except as follows:

                a.      the initial Book Value of any asset contributed by a Member to the Company shall be **the asset's gross fair market value at the time of the contribution;**

                b.      the Book Value of all Company assets shall be adjusted to equal their respective gross fair market values, as determined by the Manager in his reasonable judgment:

9

MARTORELLO_000307

1.      if any adjustment is necessary or appropriate to reflect the relative economic interests of the Members in the Company as of (x) the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a *de minims* capital contribution, or (y) the distribution by the Company to a Member of more than a *de minims* amount of Company property as consideration for an interest in the Company;

2.      As of the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g); and

3.      Whenever else allowed under Treasury Regulations Section 1.704-1(b)(2)(iv)(f) or Proposed Treasury Regulations Section 1.704-1(b)(2)(iv)(s).

c.      The Book Value of any Company asset distributed to any Member will be the gross fair market value of the asset on the date of distribution; and

d.      The Book Value of Company assets will be increased or decreased to reflect any adjustment to the adjusted basis of the assets under Code Section 734(b) or 743(b), but only to the extent that the adjustment is taken into account in determining capital accounts under Treasury Regulations Section 1.704-1(b)(2)(iv)(m), provided that Book Values will not be adjusted hereunder to the extent that the Manager **determines that an adjustment under clause "b." is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment under this clause "d."**

e.      After the Book Value of any asset has been adjusted under this Section IV F(ii) above, Book Value will be adjusted by the depreciation taken into account with respect to the asset for purposes of computing net profit and net loss.

(iii)    **"Treasury Regulations" means the Income Tax** Regulations promulgated under the Internal Revenue Code, as such regulations may be amended from time to time (including corresponding provisions of successor regulations).

E.      <u>Distributions</u>.

(i)     The Manager, in his sole and absolute discretion, may at any time cause the Company to distribute to Members in accordance with their respective Interest any cash available for distribution with respect to each Interest. The Manager shall reserve the right to make distributions to certain Classes of Interests and not to others, as well as certain Members and not to others.

(ii)    The Manager, in his sole and absolute discretion, may use the capital accounts of any Member and any class or type of Membership Interest for purposes that it deems appropriate, including funding or investing in companies related or unrelated to the Company subsidiary associated with a particular type of Membership Interest, and no interest or other benefits shall accrue to the Member whose capital account is so used.

(iii)   Distributions made pursuant to this Section IV E will be calculated separately for each Interest and will be distributed to the Members participating in that Interest based on their respective Interest, as applicable.

(iv)    The Members agree to be bound by all the provisions of this Section IV in reporting their share of Company income and loss for income tax purposes.

F.      <u>Distributions upon Liquidation of the Company</u>.

10

MARTORELLO_000308

(i)      At the termination of the Company and after the Company has satisfied or provided for the **satisfaction of all the Company's debts and other obligations, the Company's assets will be distributed to the** Members and any dissociated members whose interests have not been previously redeemed first, in discharge of their respective capital interests; and then, in proportion to the respective Membership Interest, as applicable. Assets will be distributed only to Members holding Equity Interests in the Company, unless so determined by the Manager in his sole and absolute discretion.

(ii)      If the Company lacks sufficient assets to make the distributions described in the foregoing paragraph, the Company will make distributions in proportion to the amount of the respective capital interest of the Members and any dissociated members whose interests have not been previously redeemed, and all in accordance with each **Member's respective Membership Interest**.

## SECTION V
## MANAGEMENT OF THE COMPANY

A.      The business and affairs of the Company shall be managed by or under the direction of the Manager, who may exercise all powers of the Company and do all such lawful acts and things as are not by statute, the Articles, or by this Agreement directed or required to be exercised and done by the Members having a right to vote.  The Manager of the Company shall be: <u>MBM Services, LLC</u>.

B.      Without prejudice to such general powers, but subject to the same limitations, it is hereby expressly declared that the Manager shall have the following powers:

(i)      to conduct, manage and control the business and affairs of the Company and to make such rules and regulations therefor not inconsistent with the law, the Articles or this Agreement, as the Manager shall deem to be appropriate;

(ii)      to appoint and remove at his pleasure the Officers (if any), agents and employees of the Company, prescribe their duties and fix their compensation;

(iii)      to appoint boards or committees in accordance with Section K of this Article.

(iv)      to borrow money and incur indebtedness for the purposes of the Company, and to cause to **be executed and delivered therefor, in the Company's name, promissory notes, bonds, debentures, deeds of** trust, mortgages, pledges, hypothecations, or other evidences of debt and securities therefor;

(v)      to amend this Agreement, with the consent of the Members holding 51% of the Class A Voting Interests;

(vi)      to make all other arrangements and do all things which are necessary or convenient to the conduct, promotion or attainment of business, purposes or activities of the Company.

C.      The Manager shall hold office until his successor is elected and qualified, or his earlier death, dissolution, resignation or removal.

D.      A vacancy in the Manager shall be deemed to exist in case of the death, dissolution, resignation or removal of a Manager, if the authorized number of Managers is increased, or if the Members fail, at any meeting of Members at which any Manager or Managers are to be elected by those Members with Class A Voting Interest, to elect the full authorized number of Managers to be voted for at such meeting.  Unless the Members shall have elected a Manager to fill a vacancy, vacancies may be filed by (i) a majority of the Managers then in office, whether or not less than a quorum, or by a sole remaining Manager, or (ii) failing the election of a Manager pursuant to clause (i), by the Members with Class A Voting Interest.

11

MARTORELLO_000309

E.      Any Manager may be removed, with or without cause, by the vote of Members holding not less than a majority of Class A Voting Interests represented and voting at a duly held meeting at which a quorum is present (which Members voting affirmatively also constitute at least a majority of the required quorum), or, in lieu of a meeting, by way of written consent of Members holding fifty-one percent (51%) of the Class A Voting Interests.

F.      No Manager shall receive any compensation for serving as a Manager, except that (i) a Manager shall receive such compensation as is otherwise determined by the Members holding Class A Voting Interest, and (ii) a Manager shall be reimbursed for reasonable and necessary expenses.

G.      Except as expressly set forth in this Agreement or required by law, no Manager shall be personally liable for any debt, obligation or liability of the Company, whether arising in contract, tort or otherwise, solely by reason of being a Manager of the Company.

H.      <u>Compensation and Fees</u>.

(i)      No Member shall be paid any fee or other compensation whatsoever for services as a Manager or otherwise, whether ordinary or extraordinary, foreseen or unforeseen, rendered to or for the benefit of the Company, except as otherwise provided in this Section.

(ii)      The Manager shall be paid such compensation for his services as shall be set forth by the majority holders Class A Voting Interest.

I.      <u>Certain Related Party Transactions Permitted</u>.   The Company may (i) employ or retain a Member or a person directly or indirectly related to or affiliated with an Member to render or perform a service on behalf of the Company, and/or (ii) contract to purchase property from a Member or a person directly or indirectly related to or affiliated with a Member, provided that the charges made for services rendered and materials furnished by such Member, person or persons must be reasonable and competitive with those charged by others in the same line of business and not so related.

J.      <u>No Resignation</u>.   Except pursuant to an authorized transfer of its entire Membership Interest in accordance with this Agreement, no Member shall have the right to resign from the Company as a Member prior to the dissolution and winding up of the Company without the prior written consent of the Manager. Any Member which purports to resign from the Company in violation of the foregoing provision or which has ceased for any reason to be a Member shall be liable to the Company and the other Members for any damages sustained by reason of such resignation or cessation.

K.      <u>Boards and Committees</u>. The Manager may appoint individuals to serve on boards or committees to **assist the Manager in overseeing certain aspects of the Company's operations, including but not limited to appointing a board to oversee the Company's** legal and regulatory compliance. The manner of functioning of said boards and committees will be as set forth by the Manager in a separate written resolution.

L.      <u>Indemnity</u>. Neither the Manager nor any of **the Company's officers, directors, partners, employe**es, agents, affiliates, successors or assigns shall be liable to the Company or the Members for any loss or damage incurred by reason of any act performed or omitted in connection with the activities of the Company or in dealing with third parties on behalf of the Company, unless such act or omission was taken or omitted by such Manager or such other persons as noted above, in bad faith, and such act or omission constitutes fraud, gross negligence or willful breach of fiduciary duty.

The Company, its receiver or its trustee, shall indemnify and save harmless the Manager and its officers, directors, partners, employees, agents, Affiliates, successors and assigns, including any guarantors of Company

12

MARTORELLO_000310

obligations (each of the foregoing being a "Covered Person"), from any claim, liability, loss, judgment or damage incurred by them by reason of any act performed or omitted to be performed in connection with the activities of the Company or in dealing with third parties on behalf of the Company, including costs and attorneys' fees (which attorneys' fees may be paid as incurred) and any amounts expended in the settlement of any claims of liability, loss or damage provided that the act or omission of the Covered Person is not found by a final, non-appealable ruling of a court of competent jurisdiction to have resulted from an act or omission of the Covered Person taken in bad faith and that constitutes fraud, gross negligence or willful breach of fiduciary duty by the Covered Person.  The Company shall advance all sums required to indemnify and hold each Covered Person harmless as provided herein from the initiation of any claim against such Covered Persons, subject to acknowledgment in writing by such Covered Person of the obligation to reimburse the Company in the event that, following the entry of a final, non-appealable judgment, it is determined that the Company was not obligated to indemnify such Person pursuant to this Agreement.  All judgments against the Company and a Covered Person, wherein the Covered Person is entitled to indemnification, must first be satisfied from Company assets before the Covered Person shall be responsible for such obligations.  The Company shall not pay for any insurance covering liability of a Covered Person for actions or omissions for which indemnification is not permitted hereunder; provided, that nothing contained herein shall preclude the Company from purchasing and paying for such types of insurance, including extended coverage liability and casualty and worker's compensation, as would be customary for any person owning comparable property and engaged in a similar business or from naming the Manager and any Covered Person as additional insured parties thereunder. The provisions of this Section shall survive the termination of the Company.

## SECTION VI
## MEETING OF MEMBERS

A.    Meetings and Voting.  Notwithstanding anything to the contrary herein, only Members owning Class A Voting Interests in the Company, which confer voting rights, shall be entitled to vote with regards to any issue concerning the Company. Neither an assignee nor transferee may vote any Class A Voting Interest unless such assignee or transferee is admitted as a Member with voting rights.  Furthermore, Members who only hold Economic Interests or Equity Interests in the Company shall not be entitled to vote on any issues concerning the Company.

B.    Special Meetings.  Special meetings of the Members may be called at any time by the Manager and shall be called at the written request of the holders of a majority of the Class A Voting Interest then outstanding and entitled to vote thereat. The meeting may be dispensed with if all Members who would have been entitled to vote on such action if such meeting was held consent in writing to the action to be taken.

C.    Place of Meetings.  All meetings of the Members shall be held in the Commonwealth of Puerto Rico at the principal office of the Company, or at such other places as shall be designated in the notices or waivers of notice of such meetings and may be held telephonically.

D.    Notice of Meetings.

(i)    Except as otherwise provided by statute, written notice of each meeting of the Members, stating the time when and the place where it is to be held, shall be served either personally, by mail, or by email or other electronic communication,, not less than ten (10) or more than fifty (50) days before the meeting, upon each Member of record entitled to vote at such meeting, or the Member's designated agent, and to any other member to whom the giving of notice may be required by law.  Notice of a meeting shall also state the purpose or purposes for which the meeting is called, and shall indicate that it is being issued by, or at the direction of, the person or persons calling the meeting. If mailed, such notice shall be directed to each such Member entitled to vote at the Member's address as it appears on the records of the Members of the Company, unless he or she has previously notified the Manager of the Company in writing that notices intended for the Member to be

13

MARTORELLO_000311

mailed to the **Member's agent and/or some other address, in which case, it shall be mailed to the person and** address designated in such request.

(ii)     Notice of any meeting need not be given to any person who may become a Member of record after the mailing of such notice and prior to the meeting, or to any Member who attends such meeting in person or by proxy, or to any Member who, in person or by proxy, submits a signed waiver of notice either before or after such meeting. Holders of non-voting Classes of Membership Interest shall only be permitted to attend Member meetings if they receive advance written permission of the Manager, which permission the Manager may withhold in his sole discretion.

(iii)     Whenever the vote of the Members at a meeting thereof is required or permitted to be taken in connection with any Company action, by any Section of this Agreement, the meeting and vote of the Members may be dispensed with, if all other Members who would have been entitled to vote upon the action if such meeting were held, shall consent in writing to such Company action being taken.

(iv)     Whenever any notice is required to be given under the provisions of this Section, or under the provisions of the Articles, a waiver thereof in writing, signed by the person or persons entitled to said notice, whether before or after the time stated in said notice, shall be deemed equivalent thereto.

E.     <u>Quorum</u>.  Except as otherwise provided herein, or by the applicable provisions of the Delaware Code, or in the Articles, at all meetings of the Members of the Company, the presence at the commencement of such meetings in person or by proxy of any number of Members holding of record a majority of the total number of the Class A Voting Interests of the Company then issued and outstanding and entitled to vote shall be necessary and sufficient to constitute a quorum for the transaction of any business.  The withdrawal of any Member holding Class A Voting Interests after the commencement of a meeting shall have no effect on the existence of a quorum after a quorum has been established at such meeting.

F.     <u>Voting</u>.

(i)     Except as otherwise provided by the Articles, any Company action to be taken by vote of the Members shall be authorized by a majority of votes cast at a meeting of Members at which a quorum is present by the holders of Class A Voting Interest.

(ii)     Each Member entitled to vote or to express consent or dissent without a meeting, may do so by proxy; provided, however, that the instrument authorizing such proxy to act shall have been executed in writing by the Member or the Member's attorney in fact thereunto duly authorized in writing.  No proxy shall be valid after expiration of eleven (11) months from the date of its execution, unless the person executing same directs in said proxy that it shall continue in force for a longer period of time.  Such instrument shall be exhibited to the Manager at the meeting and shall be filed with the records of the Company.

(iii)     Class A Voting Interest registered in the name of another entity, if entitled to be voted, may be voted by the President (or the equivalent) of said entity or a proxy appointed by the President of such other entity, unless some other person has been appointed to vote such shares pursuant to a by-law or a resolution of the board of directors (or the equivalent) of such other entity, in which case such person may vote such Class A Voting Interest. Any fiduciary may vote Class A Voting Interest registered in the name of such entity as such fiduciary, either in person or by proxy.

(iv)     Any resolution in writing, signed by all the Class A Voting Interest, shall be and constitute action by such members to the effect therein expressed, with the same force and effect as if the same had been duly passed by fifty-one percent (51%) of the Class A Voting Interests at a duly called meeting of members of such resolution.

14

MARTORELLO_000312

## SECTION VII
## EXCULPATION OF LIABILITY; INDEMNIFICATION

A.     <u>Liability of Members to the Company and One Another</u>.  No Member shall be liable for the debts, liabilities, contracts, or any other obligation of the Company, except to the extent expressly provided herein or under Delaware law, or as expressly provided otherwise.  No Member shall be liable for the debts or liabilities of any other Member.  With respect to the Company and its business and the enterprise established by this Agreement, no Member shall be liable, responsible or accountable in damages or otherwise to the Company or any other Member for any act performed by it (i) within the scope of the authority conferred on it by this Agreement and in good faith; (ii) based on the good faith opinion of legal counsel or other appropriate expert; or (iii) otherwise made in good faith.

B.     <u>Indemnification</u>.

        (i)     Except as otherwise provided in this Section, the Company shall indemnify the Member and may indemnify any employee or agent of the Company who was or is a party or is threatened to be made a party to a threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative, and whether formal or informal, other than an action by or in the right of the Company, by reason of the fact that such person is or was an Member, employee or agent of the Company, against expenses, including attorneys **' fees, judgments, penalties, fines and amounts paid in settlement actually and reasonably** incurred by such person in connection with the action, suit or proceeding, if the person acted in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner that such person reasonably believed to be in the best interests of the Company and with respect to a criminal action or proceeding, if such person had no reasonable cause to believe such **person's conduct was** unlawful.

        (ii)     To the extent that any Member, employee or agent of the Company has been successful on the merits or otherwise in defense of an action, suit or proceeding or in defense of any claim, issue or other matter in the action, suit or proceeding, such person shall be indemnified against actual and reasonable **expenses, including attorneys' fees, incurred by such person in connection with the action, suit or proceeding** and any action, suit or proceeding brought to enforce the mandatory indemnification provided herein.

        (iii)     Any indemnification permitted under this Section, unless ordered by a court, shall be made by the Company only as authorized in the specific case upon a determination that the indemnification is proper under the circumstances because the person to be indemnified has met the applicable standard of conduct and upon an evaluation of the reasonableness of expenses and amounts paid in settlement. This determination and evaluation shall be made by a majority vote of the Members who are not parties or threatened to be made parties to the action, suit or proceeding. Notwithstanding the foregoing to the contrary, no indemnification shall be provided to any manager, employee or agent of the Company for or in connection with the receipt of a financial benefit to which such person is not entitled, voting for or assenting to a distribution to the Members in violation of this Agreement or the Act, or a knowing violation of law.

## SECTION VIII
## DISSOLUTION AND LIQUIDATION

A.     <u>Dissolution</u>.  The Company shall dissolve and its affairs shall be wound up on the first to occur of the following:

        (i)     The written consent of the Members holding at least fifty-one percent of the Class A Voting Interests;

15

    (ii)    The entry of a decree of judicial dissolution of the Company under Section 1801(4) of the Act or a judicial determination under Section 1805(5) of the Act.

    (iii)    The sale of all or substantially all of the assets of the Company.

The death, insanity, retirement, resignation, expulsion, bankruptcy, or dissolution of any Member, or the occurrence of any other event that terminates the continued membership of a Member in the Company, shall not cause a dissolution of the Company.

B.    <u>Liquidation</u>.  On dissolution of the Company, the Manager shall act as liquidator.  The liquidator shall proceed diligently to wind up the affairs of the Company and make final distributions as provided herein and in the Act.  The costs of liquidation shall be borne as a Company expense.  Until final distribution, the liquidator shall continue to manage the Company with all of the power and authority of the Manager.

## SECTION IX
## CONFIDENTIALITY; NON-DISCLOSURE; NON-SOLICITATION; AND NON-COMPETE

Each Member of the Company shall be required to execute, prior to the issuance of any interest in the Company, a separate confidentiality, non-disclosure, non-solicitation and non-compete agreement.

## SECTION X
## BOOKS AND RECORDS

A.    <u>Access to Books and Records</u>.  Upon the written request stating the reason for such request of any holder of Class B or Class C Membership Interest for purposes reasonably related to the interest of that person as a Member, the Manager shall permit said Member the right, upon reasonable notice for the purposes reasonably related to the interest of the person as a Member, to (i) inspect during normal business hours any of the Company records maintained by the Company that were created on or after the date said Member acquired his/her Membership Interest; and (ii) obtain from the Manager, promptly after their becoming **available, a copy of the Company's federal, state, and local income tax or information returns for each Fiscal** Year.

B.    <u>No Access to Information</u>.  Notwithstanding any right of access to the books and records of the Company that may be applicable, under no circumstances shall any books or records be deemed to include any books and records concerning the information deemed to be covered by the agreements executed pursuant to Section IX, and all non-voting Classes and Interests hereby irrevocably waive any access whatsoever to any of said information.  All non-voting Classes and Interests hereby covenant and agree that it is unreasonable and otherwise improper under all circumstances to demand access to said information.

## SECTION XI
## MISCELLANEOUS PROVISIONS

A.    <u>Section Headings</u>.  The Section headings and numbers contained in this Agreement have been inserted only as a matter of convenience and for reference, and in no way shall be construed to define, limit or describe the scope or intent of any provision of this Agreement.

B.    <u>Severability</u>.  The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

CONFIDENTIAL    MARTORELLO_000314

C.    <u>Amendment</u>.  This Agreement may be amended or revoked at any time, in writing, with the consent of the Manager or a vote of the Members holding fifty-one percent (51%) of the outstanding Class A Voting Interests. No change or modification to this Agreement shall be valid unless in writing and signed by the Manager or the Members entitled to vote.

D.    <u>Binding Effect</u>. Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and shall inure to the benefit of the parties, and their respective distributees, heirs, successors and assigns.

E.    <u>Governing Law</u>.  Regardless of the place where this Agreement may be executed by the Member, the rights and obligations of the Member, and any claims and disputes relating thereto, shall be subject to, governed by, construed and enforced in accordance with the laws of the State of Delaware.

F.    <u>Power of Attorney</u>.  Each Member hereby appoints the Manager to exercise the rights set forth in this Section XI F, acting individually, as the true and lawful representative of such Member and attorney-in-fact, in such Member's name, place and stead, to:

(i)    Complete or correct, on behalf of such Member, all documents to be executed by such Member in connection with such Member's subscription for an Interest, including, without limitation, filling in or amending amounts, dates, and other pertinent information.

(ii)    Make, execute, sign, acknowledge, swear to, and file: (i) any and all instruments, certificates, and other documents which may be deemed necessary or desirable to effect the winding-up and termination of the Company; (ii) any business certificate, fictitious name certificate, amendment thereto, or other instrument, agreement, or document of any kind necessary or desirable to accomplish the business, purpose and objectives of the Company, or required by any applicable federal, state, territorial, tribal or local law;  (iii) any counterpart of this Agreement to be entered into pursuant to this Agreement and any amendment to which such Member is a signatory; (iv) any amendments to this Agreement; (v) all certificates and other instruments conforming with this Agreement that are necessary or appropriate to qualify, continue and terminate the Company as a foreign limited liability company in all such jurisdictions in which the Company may conduct its business; (vi) any and all certificates, documents, and other instruments necessary or desirable for purposes of applying to and complying with the Puerto Rico Department of Economic Development and Commerce tax incentives program; (vii) all other filings with agencies of the federal government, of any state, territorial, tribal or local government, or of any other jurisdictions, which the Manager considers necessary or desirable to carry out the purposes of this Agreement and the business of the Company.

(iii)    This power of attorney granted pursuant to this Section XI F is a special power of attorney coupled with an interest and is irrevocable and shall survive the death, disability, or cessation of the existence as a legal entity of a Member; and shall survive the delivery of an assignment by a Member of the whole or any portion of its interest in the Company, except that, when the assignee thereof has been approved by the Manger for admission to the Company as a Member, the power of attorney shall survive the delivery of such assignment for the sole purpose of enabling the Manger to execute, acknowledge, and file any instrument necessary to effect such substitution.

G.    <u>Waiver of Certain Rights</u>.  All holders of non-voting Classes of Membership Interest irrevocably waive any right they may have to maintain any action for dissolution of the Company or for partition of the property of the Company.

H.    <u>Arbitration</u>.

(i)    Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its

CONFIDENTIAL

MARTORELLO_000315

Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The prevailing party shall recover its costs and expenses of arbitration and the collection of the award, including its reasonable attorney fees.

(ii)     Solely upon agreement of the parties, the parties may dispense with administration by the American Arbitration Association and agree to self-administer any dispute or, alternatively, agree to have the dispute administered by any other agreed upon organization/tribunal and pursuant to any other agreed upon rules.

(iii)     Any self-administered arbitration shall be conducted in English before an arbitrator chosen by the parties and who shall reside in the Commonwealth of Puerto Rico.  Any certified mediator in Puerto Rico shall be deemed to have the minimum qualifications to arbitrate the dispute.  The parties shall split the **arbitrator's fees, including any required** prepayment deposit.  The arbitration shall be governed by the **Commercial Rules of the American Arbitration Association ("AAA") including the Fast Track/Expedited** Procedures except as modified herein.  Within 10 days of the written notice and a demand for arbitration, the parties shall provide to each other the names of 3 persons residing in Puerto Rico, who would be acceptable as arbitrators.  If the parties agree on any person, that person shall be chosen as the arbitrator.  If the agreed upon person declines to act as the arbitrator for any reason, the parties shall have 5 days to submit alternate names.  If the parties are unable to agree on an arbitrator within 25 days of the written notice and demand for arbitration, either party may proceed with AAA administered arbitration pursuant to clause (a) above.  If an arbitrator is agreed upon, the final arbitration hearing shall commence within 120 days of the arbitrator being chosen. The arbitrator shall hold an initial hearing, which may be held telephonically, and shall enter a scheduling order. The parties may, but are not required, to mediate the case prior to the final hearing.  The parties may modify these rules to the extent there is agreement by the parties to do so. The decision of the arbitrator shall be final and binding.  Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

I.     <u>Entire Agreement</u>.   This Agreement, including Schedules, supersedes all previous Operating Agreements entered into by the Company.

[SIGNATURES TO FOLLOW ON SCHEDULE A]

18

**SCHEDULE A**
**OF**
**THE AMENDED AND RESTATED OPERATING AGREEMENT**
**OF**
**BELLICOSE CAPITAL, LLC**

**MEMBER LISTING/INTEREST/PERCENTAGE INTEREST**

| Interest | Voting Interest | Date Issued | Economic Interest | Date Issued | Equity Interest | Date Issued |
|---|---|---|---|---|---|---|
| **Class A Membership Interest:** Member: | | | | | | |
| Alpha Tau Capital, LLC | 1,000 Units (100%) | 1/1/2014 | 700 Units (70%) | 1/1/2014 | 1,000 Units (100%) | 1/1/2014 |
| MBM Services, LLC | 0 Units (0%) | | 300 Units (30%) | 1/1/2014 | 0 Units (0%) | |
| **Class B Membership Interest:** Member: | | | | | | |
| Alpha Tau Capital, LLC | N/A | | 600 Units (60.0%) | 1/1/2014 | 855 Units (85.5%) | 1/1/2014 |
| MBM Services, LLC | N/A | | 255 Units (25.5%) | 1/1/2014 | 0 Units (0%) | |
| Justin Martorello | N/A | | 100 Units (10.0%) | 1/1/2014 | 100 Units (10.0%) | 1/1/2014 |
| Brian McFadden | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| James Dowd | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| Simon Liang | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| **Class C Membership Interest:** Member: | | | | | | |
| Alpha Tau Capital, LLC | N/A | | 800 Units (80%) | 1/1/2014 | 800 Units (80%) | 1/1/2014 |
| Justin Martorello | N/A | | 200 Units (20%) | 1/1/2014 | 200 Units (20%) | 1/1/2014 |

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on and as of the date first above written.

ACCEPTED AND AGREED:

By: _____
Name: Alpha Tau Capital
By the President of its Manager, Matt Martorello
Title:  Class A, B & C Member

By: _____
Name: MBM Services, LLC
By its President, Matt Martorello
Title: Class A & B Member

By: _____
Name: Justin Martorello
Title:  Class B & C Member

By: _____
Name: Brian McFadden
Title: Class B Member

19

MARTORELLO_000317

By: _____
Name: James Dowd
Title:  Class B Member

By: _____
Name: Simon Liang
Title: Class B Member

CONFIDENTIAL

MARTORELLO_000318

## SCHEDULE A
### OF
### THE AMENDED AND RESTATED OPERATING AGREEMENT
### OF
### BELLICOSE CAPITAL, LLC

### MEMBER LISTING/INTEREST/PERCENTAGE INTEREST

| Interest | Voting Interest | Date Issued | Economic Interest | Date Issued | Equity Interest | Date Issued |
|---|---|---|---|---|---|---|
| **Class A Membership Interest: Member:** | | | | | | |
| Alpha Tau Capital, LLC | 1,000 Units (100%) | 1/1/2014 | 700 Units (70%) | 1/1/2014 | 1,000 Units (100%) | 1/1/2014 |
| MBM Services, LLC | 0 Units (0%) | | 300 Units (30%) | 1/1/2014 | 0 Units (0%) | |
| **Class B Membership Interest: Member:** | | | | | | |
| Alpha Tau Capital, LLC | N/A | | 600 Units (60.0%) | 1/1/2014 | 855 Units (85.5%) | 1/1/2014 |
| MBM Services, LLC | N/A | | 255 Units (25.5%) | 1/1/2014 | 0 Units (0%) | |
| Justin Martorello | N/A | | 100 Units (10.0%) | 1/1/2014 | 100 Units (10.0%) | 1/1/2014 |
| Brian McFadden | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| James Dowd | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| Simon Liang | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| **Class C Membership Interest: Member:** | | | | | | |
| Alpha Tau Capital, LLC | N/A | | 800 Units (80%) | 1/1/2014 | 800 Units (80%) | 1/1/2014 |
| Justin Martorello | N/A | | 200 Units (20%) | 1/1/2014 | 200 Units (20%) | 1/1/2014 |

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on and as of the date first above written.

ACCEPTED AND AGREED:

By: _____
Name: Alpha Tau Capital
By the President of its Manager, Matt Martorello
Title:  Class A, B & C Member

By: _____
Name: MBM Services, LLC
By its President, Matt Martorello
Title: Class A & B Member

By: _____
Name: Justin Martorello
Title:  Class B & C Member

By: _____
Name: Brian McFadden
Title: Class B Member

19

CONFIDENTIAL

MARTORELLO_000319

## SCHEDULE A
## OF
## THE AMENDED AND RESTATED OPERATING AGREEMENT
## OF
## BELLICOSE CAPITAL, LLC

### MEMBER LISTING/INTEREST/PERCENTAGE INTEREST

| Interest | Voting Interest | Date Issued | Economic Interest | Date Issued | Equity Interest | Date Issued |
|---|---|---|---|---|---|---|
| **Class A Membership Interest: Member:** | | | | | | |
| Alpha Tau Capital, LLC | 1,000 Units (100%) | 1/1/2014 | 700 Units (70%) | 1/1/2014 | 1,000 Units (100%) | 1/1/2014 |
| MBM Services, LLC | 0 Units (0%) | | 300 Units (30%) | 1/1/2014 | 0 Units (0%) | |
| **Class B Membership Interest: Member:** | | | | | | |
| Alpha Tau Capital, LLC | N/A | | 600 Units (60.0%) | 1/1/2014 | 855 Units (85.5%) | 1/1/2014 |
| MBM Services, LLC | N/A | | 255 Units (25.5%) | 1/1/2014 | 0 Units (0%) | |
| Justin Martorello | N/A | | 100 Units (10.0%) | 1/1/2014 | 100 Units (10.0%) | 1/1/2014 |
| Brian McFadden | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| James Dowd | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| Simon Liang | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| **Class C Membership Interest: Member:** | | | | | | |
| Alpha Tau Capital, LLC | N/A | | 800 Units (80%) | 1/1/2014 | 800 Units (80%) | 1/1/2014 |
| Justin Martorello | N/A | | 200 Units (20%) | 1/1/2014 | 200 Units (20%) | 1/1/2014 |

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on and as of the date first above written.

ACCEPTED AND AGREED:

By: _____
Name: Alpha Tau Capital
By the President of its Manager, Matt Martorello
Title: Class A, B & C Member

By: _____
Name: MBM Services, LLC
By its President, Matt Martorello
Title: Class A & B Member

By: _____
Name: Justin Martorello
Title: Class B & C Member

By: _____
Name: Brian McFadden
Title: Class B Member

19

CONFIDENTIAL

MARTORELLO_000320

By: _____
Name: James Dowd
Title:  Class B Member

By: _____
Name: Simon Liang
Title: Class B Member

20

MARTORELLO_000321

SCHEDULE A
OF
THE AMENDED AND RESTATED OPERATING AGREEMENT
OF
BELLICOSE CAPITAL, LLC

MEMBER LISTING/INTEREST/PERCENTAGE INTEREST

| Interest | Voting Interest | Date Issued | Economic Interest | Date Issued | Equity Interest | Date Issued |
|---|---|---|---|---|---|---|
| **Class A Membership Interest:** Member: | | | | | | |
| Alpha Tau Capital, LLC | 1,000 Units (100%) | 1/1/2014 | 700 Units (70%) | 1/1/2014 | 1,000 Units (100%) | 1/1/2014 |
| MBM Services, LLC | 0 Units (0%) | | 300 Units (30%) | 1/1/2014 | 0 Units (0%) | |
| **Class B Membership Interest:** Member: | | | | | | |
| Alpha Tau Capital, LLC | N/A | | 600 Units (60.0%) | 1/1/2014 | 855 Units (85.5%) | 1/1/2014 |
| MBM Services, LLC | N/A | | 255 Units (25.5%) | 1/1/2014 | 0 Units (0%) | |
| Justin Martorello | N/A | | 100 Units (10.0%) | 1/1/2014 | 100 Units (10.0%) | 1/1/2014 |
| Brian McFadden | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| James Dowd | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| Simon Liang | N/A | | 15 Units (1.5%) | 7/1/2014 | 15 Units (1.5%) | 7/1/2014 |
| **Class C Membership Interest:** Member: | | | | | | |
| Alpha Tau Capital, LLC | N/A | | 800 Units (80%) | 1/1/2014 | 800 Units (80%) | 1/1/2014 |
| Justin Martorello | N/A | | 200 Units (20%) | 1/1/2014 | 200 Units (20%) | 1/1/2014 |

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on and as of the date first above written.

ACCEPTED AND AGREED:

By: _____
Name: Alpha Tau Capital
By the President of its Manager, Matt Martorello
Title:  Class A, B & C Member

By: _____
Name: MBM Services, LLC
By its President, Matt Martorello
Title: Class A & B Member

By: _____
Name: Justin Martorello
Title:  Class B & C Member

By: _____
Name: Brian McFadden
Title: Class B Member

19

CONFIDENTIAL

MARTORELLO_000322

By: _____
Name: James Dowd
Title:  Class B Member

By: _____
Name: Simon Liang
Title: Class B Member

20

CONFIDENTIAL

MARTORELLO_000323