_____, 2016

## SECURED PROMISSORY NOTE

FOR VALUE RECEIVED, Tribal Economic Development Holdings, LLC (hereinafter "Borrower") an entity wholly owned and operated by the Lac Vieux Desert Band of Lake Superior Chippewa Indians, a federally recognized Indian tribe ("Tribe") and formed pursuant to the laws of the Tribe, unconditionally promises to pay, in the aggregate, to Eventide Credit Acquisitions, LLC, a Delaware limited liability company (hereinafter "Lender"), without any counterclaim, setoff, or deduction whatsoever, Borrower's Obligation (as defined below), provided Borrower shall pay at such other place as Lender may designate to Borrower in writing from time to time, the principal sum equal to the Acquisition Amount ("Note Amount"), together with as is from time to time outstanding and unpaid, from the date of the advance of the principal evidenced hereby, at an interest rate of 1.8% per annum or such other minimum interest rate required under United States tax regulations (the total of which is the "Borrower's Obligation"). All principal and interest shall be paid in lawful money of the United States of America which shall at the time of payment be legal tender in payment of all debts and dues, public and private.

This Secured Promissory Note is made and delivered by Borrower in connection with the acquisition through merger of Bellicose Capital, LLC, a Delaware limited liability company (the "Company") by Borrower's subsidiary, LVD Tribal Acquisition Company, LLC, pursuant to that certain Agreement and Plan of Merger, executed on September 14, 2015 and effective as of even date herewith among, Borrower, Bellicose Capital, LLC, Eventide Credit Acquisitions, LLC ("ECA") (the "Merger Agreement") and effective as set forth therein. Borrower and Lender may each be referred to as "Party" and collectively as "Parties."

## ARTICLE I - TERMS AND CONDITIONS

1.1    Definitions.  The following terms shall have the meanings as follows and any other capitalized terms used but not defined herein shall have the respective meanings set forth in the Loan and Security Agreement, or if not defined therein, other applicable Transaction Document.

a.    "Bad Debt" shall mean Consumer Loans more than sixty (60) days past due.

b.    "Gross Revenues" shall mean all revenues of any nature derived directly or indirectly from the operation of Borrower and the Subsidiaries plus any bad debt recovery of Borrower or Subsidiaries minus the sum of charge backs and bad debt charge offs.

c.    "Loan and Security Agreement" shall mean that certain Loan and Security Agreement executed by Borrower for the benefit of Lender in the amount of Borrower's Obligations, dated as of the date hereof.

DEPO EXHIBIT 8
Deponent_____
Date_____ Rptr____
WWW.DEPOBOOK.COM

CONFIDENTIAL

MARTORELLO_000128

d.     "Merger Agreement" shall mean that meaning set forth in the second introductory paragraph of this Agreement.

e.     "Net Cash Available" shall mean as calculated in Section 1.2.

f.     "Prudent Operator" means the standard of care equal to that degree of diligence, skill, prudence and foresight, which is reasonably and ordinarily exercised by experienced market participants engaged in the same line of business under the same or similar circumstances, and the actions resulting from such standard of care being in compliance with the applicable laws and the Transaction Documents.

g.     "Transaction Documents" shall mean this Note, the Loan and Security Agreement, the Parental Guarantee and Sovereign Immunity Waiver and such other agreements, documents, and instruments, together with any and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions and modifications thereof.   All of the terms and provisions of the Transaction Documents are incorporated herein by reference.

1.2     Payment of Principal and Interest. Interest shall be computed hereunder based on a three hundred sixty (360) day year and paid for the actual number of days elapsed for any whole or partial month in which interest is being calculated. Principal and accrued and unpaid interest on this Note shall be payable monthly on the 15th day of the calendar month (each a "Payment Date"), with the amount of each payment equal to the amount of Net Cash Available (as hereinafter defined), if any, beginning on the last day of each calendar month preceding the Payment Date (each a "Calculation Date"). On each Payment Date, Borrower shall pay to Lender an amount equal to the Net Cash Available which payment shall be first applied to Lender's costs associated with an Event of Default (if any) permitted under the terms of the Transaction Documents, then to a reduction of the principal balance of this Note, and then to unpaid interest.  If any Payment Date is not a Business Day, such payment shall be due and payable on the Business Day immediately prior to such Payment Date.  As used herein, "Net Cash Available" shall be an amount calculated as follows:

(a)     Gross Revenues deposited in Borrower's and Subsidiaries' accounts.

(b)     Minus the following:

1.     A monthly distribution to the Tribe equal to two percent (2%) of the Gross Revenues until such time as fifty percent (50%) of the Note Amount has been repaid at which time the percentage shall increase from two percent (2%) to four (4%) ("Monthly Distribution"), except that in an Event of Default, the distribution under this provision shall be reduced to zero.

2.     In addition to the Monthly Distribution, a one-time reinvestment amount equal to 1.3 million dollars ($1,300,000), and a monthly reinvestment amount thereafter of two percent (2%) of Gross Revenues shall be paid to the Tribe which shall be reinvested by the Tribe in growing the loan portfolio which shall stay in equity within

CONFIDENTIAL

MARTORELLO_000129

Borrower or a Subsidiary conducting lending until the termination of this Agreement except that in an Event of Default, the reinvestment amount under this provision shall be reduced to zero.

3.      All interest accrued and scheduled principal payments on any Senior Debt per the terms of the respective debt instrument, and any debt balancing requirements.

4.      Expenses:
(a)      Ordinary and necessary business expenses that would be reasonably accrued by a Prudent Operator incurred by Borrower or a Subsidiary relative to the operation of the Business incurred from vendors with no affiliation to the Tribe or any Tribal member provided that all work output provided by non-affiliated entities shall not exceed the market price and market service level under which a Prudent Operator would acquire such services.

(b)      Ordinary and necessary business expenses that would be reasonably accrued by a Prudent Operator relative to operation of the Business incurred by Borrower or a Subsidiary or charged by a vendor affiliated with the Tribe, any Tribal entity or any Tribal member capped by the historical labor costs charged to Borrower or a Subsidiary by previous service providers (calculated by examining the labor costs for the same calendar month in the previous year) plus an annual escalator of five percent (5%), or if a further increase is required for expansion activities, then pursuant to a budget approved by Lender.  Borrower agrees that any transaction between it or any Subsidiary and an affiliated entity of the Tribe or Tribal member shall not exceed reasonable market rates.  Borrower agrees that it and each Subsidiary shall have a fiduciary duty to the Lender to ensure that neither Borrower nor any Subsidiary or affiliates shall undermine the Parties' intent to maximize the cash flows directed to retire the Note as soon as possible .  Notwithstanding the forgoing, nothing in this provision shall limit the reasonable expansion of the Business of the Borrower or any Subsidiary (which the Parties agree does not cause a Material Adverse Effect on the Business) and is a natural evolution of the Business based on industry climate and norms.  To ensure that any such expansion does not affect payments under this Note, such expansion shall follow a budget approved by the Lender.

5.      Non-deductible expenses (to be deducted from the Tribal distribution or reinvestment portion at Borrower's choice) include:

(a)      any tax, fine or other fee including licensing charged by the Tribe except as reasonably required for licensure or regulatory oversight by the Tribal Financial Services Regulatory Authority (the "Authority") or fines or fees assessed against Borrower or a Subsidiary by the Authority except for fines levied against a Subsidiary for the actions of a non-affiliated vendor capped at twenty-five thousand dollars ($25,000) per year;

CONFIDENTIAL                                                                    MARTORELLO_000130

(b)     any award of attorneys fees under the Dispute Resolution provisions of any Transaction Document; and

(c)     any ordinary and necessary expenses not agreed to in Section 4 above and in excess of an aggregate of twenty-five thousand dollars ($25,000)per year , unless otherwise agreed by the Parties, shall be a non-deductible expense.

It shall be considered an Event of Default under the Transaction Documents, if the non-deductible expenses exceed the Tribal distribution or accumulated reinvestment portion.

6.     Reserves allowed to maintain portfolio size as set for in Section 4.4 of the Loan Agreement and Security Agreement, except that in an Event of Default, the amount reserved under this provision shall be reduced to zero.

(c)     Each payment above shall be accompanied by a schedule showing how such payment was calculated. The Lender shall have the right to inspect Borrower's and any Subsidiary's books and records to determine and/or verify the payments due under this Note during regular business hours and upon reasonable notice to Borrower or the respective Subsidiary.

(d)     There shall be a true-up payment to Lender on the first 15th following the date of Close, reflecting the payment that would have been due to any Lender's subsidiary under the Servicing Agreement with Lender's affiliate acquired by Borrower for services provided up to and including the date of Close.

1.3     Term. The term of this Note is seven (7) years from execution.  At the expiration of the term, the remaining balance is forgiven.

1.4     Prepayment. This Note may be prepaid at any time in whole or in part with no prepayment penalty.

1.5     Security. This indebtedness evidenced by this Note, the Transaction Documents, and the obligations created thereby are secured by the Collateral.

1.6     Event of Default. An "Event of Default" shall be deemed to exist upon the occurrences of any item listed in Section 6.1 of the Loan and Security Agreement. Upon the occurrence of an Event of Default, the indebtedness evidenced hereby, including all sums advanced or accrued hereunder or under any other Transaction Document, and all unpaid interest accrued thereon shall, at the option of Lender, at once become due and payable and may be collected forthwith. The remedies of Lender in this Note or in the other Transaction Documents shall be cumulative and concurrent, and may be pursued singly, successively, or together, at Lender's discretion as limited by Section 2.3. In the event this Note, or any part hereof, is collected by or through an attorney-at-law, Borrower agrees to pay all reasonable costs of collection, including, but not limited to, reasonable attorneys' fees.

CONFIDENTIAL

MARTORELLO_000131

# ARTICLE II - GENERAL CONDITIONS

2.1   No Waiver; Amendment. No failure to accelerate the debt evidenced hereby after an Event of Default, acceptance of a partial or past due payment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Lender thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder.  No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change, or affect the original liability of Borrower and its Subsidiaries under this Note, either in whole or in part, unless Lender agrees otherwise in writing except as provided in Section 1.3. This Note may only be amended by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, or discharge is sought.

2.2   Waivers. Presentment for payment, demand, protest and notice of demand, protest, and nonpayment, notice of intent to accelerate maturity, notice of acceleration of maturity, and all other notices are hereby waived by Borrower.

2.3 Limited Waiver Of Sovereign Immunity. Section 8 of the Loan and Security Agreement is incorporated by reference herein *mutatis mutandis*.

2.4   Unconditional Payment. Subject to and as limited by Section 1.2 and 1.3, Borrower is and shall be obligated to pay principal, interest, and any and all other amounts which become payable hereunder or under the other Transaction Documents absolutely and unconditionally and without any abatement, postponement, diminution, or deduction and without any reduction for counterclaim or setoff.

2.5   Further Assurances. Borrower and any Subsidiary shall execute and acknowledge (or cause to be executed and acknowledged) and deliver to Lender all reasonable documents and take all reasonable actions, reasonably required by Lender from time to time to confirm the rights created under this Note and the other Transaction Documents, to protect its rights in the Collateral.  Provided, however, that no such further actions, assurances, and confirmations shall increase, modify, or change Borrower's or any Subsidiary's obligations under this Note or under the other Transaction Documents.

2.6   Miscellaneous. The terms and provisions hereof shall be binding upon and inure to the benefit of Borrower, its Subsidiaries and Lender and their respective permitted successors and assigns. Assignment of any rights and obligations of this Note may only be assigned with the prior written consent of the Parties, not to be unreasonably withheld. As used herein, the terms "Borrower," "Subsidiary" and "Lender" shall be deemed to include their respective permitted successors and assigns. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural and vice versa. Titles of articles and sections are for convenience only and in no way define, limit, amplify, or describe the scope or intent of any provisions hereof. Time is of the essence with respect to all provisions of this Note and the other Transaction Documents. This

CONFIDENTIAL                                                                     MARTORELLO_000132

Note and the other Transaction Documents contain the entire agreement between the Parties hereto relating to the subject matter hereof and thereof, and all prior agreements relative hereto and thereto which are not contained herein or therein are terminated. If any provision under this Note or the application thereof to any entity, person, or circumstance shall be invalid, illegal, or unenforceable to any extent, the remainder of this Note and the application of the provisions hereof to other entities, persons or circumstances shall not be affected thereby and shall be enforced to the fullest extent permitted by law.

2.7    NO ORAL AGREEMENTS. THIS WRITTEN AGREEMENT IS THE FINAL EXPRESSION OF THE AGREEMENT BETWEEN BORROWER AND LENDER AND MAY NOT BE CONTRADICTED BY EVIDENCE OR ANY PRIOR OR CONTEMPORANEOUS ORAL AGREEMENT BETWEEN BORROWER AND LENDER. BORROWER AND LENDER HEREBY AFFIRM THAT THERE IS NO UNWRITTEN ORAL CREDIT AGREEMENT BETWEEN BORROWER AND LENDER WITH RESPECT TO THE SUBJECT MATTER OF THIS WRITTEN AGREEMENT.

2.8    Payments & Notice.  Payments will be made through mutually agreeable electronic arrangements.  Any written Notices shall be sent to the Parties at the address set forth in Section 7.12 of the Loan and Security Agreement.

2.9    Counterparts.  This Note may be executed in multiple counterparts.  Delivery by any party of an executed counterpart of a signature page to this Note by telecopier, facsimile or portable document format (pdf) shall be effective as delivery of a manually executed counterpart hereof.

[signature page follows]

CONFIDENTIAL

MARTORELLO_000133

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Note to be effective as of the day and year first written above.

**TRIBAL ECONOMIC DEVELOPMENT HOLDINGS, LLC**

By: _Michelle Hazen_
Name: Michelle Hazen
Title: Co-Manager


**BIG PICTURE LOANS, LLC**

By: _Michelle Hazen_
Name: Michelle Hazen
Title: Co-Manager, Board of Directors


**ASCENSION TECHNOLOGIES, LLC**

By: _Brian McFadden_
Name: Brian McFadden
Title:  President

CONFIDENTIAL

MARTORELLO_000134