

FILED
JUL 1 2 2021
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

LULA WILLIAMS, et al.,

     Plaintiffs,

v.                          Civil Action No. 3:17-cv-461

BIG PICTURE LOANS, LLC, et al.,

     Defendants.

### MEMORANDUM OPINION

This Memorandum Opinion address an objection tendered by Defendant Matt Martorello in opposition to PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION OF CLAIMS AGAINST DEFENDANT MATT MARTORELLO ("Motion for Class Certification") (ECF No. 967). The objection, which is laid out in Martorello's OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AGAINST MATT MARTORELLO ("Response Memorandum") (ECF No. 1007), argues that the proposed class members waived their right to serve as class representatives. Plaintiffs responded to that objection in PLAINTIFFS' REPLY IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION AGAINST DEFENDANT MATT MARTORELLO ("Reply Memorandum") (ECF No. 1055). And, on June 29, 2021, the Court heard argument on, inter alia, the objection in question.

Having considered all of the submitted information, including the information set forth on the record during the hearing on June 29, 2021, the Court finds that the proposed

class members did not waive their right to participate in a class action against Defendant Matt Martorello ("Martorello"). The remainder of the Court's analysis of Plaintiffs' Motion for Class Certification will be addressed in a separate memorandum opinion.

## I. BACKGROUND

The facts surrounding this lawsuit have been recounted by this Court on numerous occasions. See, e.g., MEM. OP., ECF No. 944. For the purposes of deciding the enforceability of the class action waiver (which is primarily a question of contract interpretation), it suffices here to provide only a brief summary of the broader merits dispute. The relevant text of the loan contract is provided in the Appendix.

This case is one of four similar, but distinct, actions[1] "arising out of a so-called 'Rent a Tribe' scheme allegedly orchestrated by Matt Martorello ('Martorello'), members of his family, companies that he controls, and investors who allegedly funded the scheme (the 'Martorello Defendants')" along with two "entities formed under the tribal laws of the Lac View Band of

---

[1] In addition to this case, i.e., Williams, et al. v. Big Picture Loans, LLC, et al., 3:17-cv-461 (E.D. Va.) ("Williams"), the other related cases are (1) Renee Galloway, et al. v. Big Picture Loans, LLC, et al., 3:18-cv-406 (E.D. Va.) ("Galloway I"), (2) Renee Galloway, et al. v. Martorello, et al., 3:19-cv-314 (E.D. Va.) ("Galloway II"), and (3) Renee Galloway, et al. v. James Williams, Jr., et al., 3:19-cv-470 (E.D. Va.) ("Galloway III").

Lake Superior Chippewa Indians ('LVD')," i.e., "Big Picture
Loans, LLC ('Big Picture') and Ascension Technologies, Inc.
('Ascension') (collectively sometimes referred to as the 'Tribal
Defendants')." Williams v. Big Picture Loans, LLC, 3:17-cv-461,
2020 U.S. Dist. LEXIS 216792, 2020 WL 6784352, at *1-2 (E.D. Va.
Nov. 18, 2020) (Payne, J.). The term "Rent-a-Tribe" refers to
the practice of so-called payday lenders partnering with Native
American tribes "in an effort to cloak the payday lenders in the
sovereign immunity of Native American tribes, and, in so doing,
to preclude enforcement of the interest rate caps in state usury
laws." See MEM. OP. at 4, ECF No. 944. Plaintiffs' basic
contention across all four cases is that Martorello (and the
now-dismissed Tribal Defendants) were involved in such a scheme.

The lending operations evolved over time, but they began
with the use of a so-called tribal lending entity named Red Rock
Lending, LLC ("Red Rock") which used Bellicose, LLC, a non-
tribal entity owned and operated by Martorello, to handle the
lending operations and the servicing of loans. For reasons that
need not be discussed here, around 2013, Red Rock, Bellicose,
and another corporate entity were restructured into a new
lending entity — i.e., Big Picture.

The loan contracts at issue in this Opinion are the loan
contracts by which Plaintiffs received high-interest small-
dollar loans from either Red Rock or Big Picture. See Ex. 1,

ECF No. 1055-1.[2] A very high percentage of the payments on those loan contracts made their way to Martorello through a rather byzantine corporate structure.

Martorello's objection is based on the "class action waiver" in the "Waiver of Jury Trial" provision of the contract; however, that heading is misleading because the "Waiver of Jury Trial" provision actually contains, for disputes arising from the loan contract: (1) an agreement that the LVD's Tribal Dispute Resolution Procedure will be the "sole and exclusive dispute resolution mechanism"; (2) a waiver of the right to a trial by jury; (3) language consenting to the jurisdiction of the LVD; (4) a waiver of the right to serve as a class action representative or to participate in a class; and (5) a waiver of the right to pursue "litigation or arbitration." See Ex. 1 at 6, ECF No. 1055-1. This Opinion will use the term "waiver" or "class action waiver" to refer to all of the waivers contained in the discussion of the several provisions because that is how the parties have presented them.

---

[2] Martorello refers to an ostensibly identical loan contract in his response brief (ECF No. 734-1), but that version of the contract has one fewer page than Plaintiffs' version. Compare Ex. 1, ECF No. 734-1 with Ex. 1, ECF No. 1055-1. In any case, Martorello appears to accept that the sample loan contract in ECF No. 1055-1 is an accurate and representative copy of the loan contracts from both lenders over the relevant class period (i.e., 2013-2019). See Hearing Tr. 65:21-24, 90:19-91:6, ECF No. 1104; see also Hearing Tr. 40:2-41:14, ECF No. 1104.

## II. DISCUSSION

Deciding whether the class action waiver applies to block Plaintiffs' ability to serve as class action representatives involves two distinct questions: does the class action waiver apply to claims against Martorello? And, if it does, is the waiver, nevertheless, unenforceable? For the reasons set forth below, the Court finds that the waiver does not apply to Martorello, and even if it did, the waiver is unenforceable.[3]

### A. Does the waiver of class certification apply to Martorello?

Martorello asserts that the class action waivers apply to him,[4] a non-party to the loan agreement, for two reasons.[5]

---

[3] "Ordinarily, it is preferable to articulate a single basis for decision and, conversely, to refrain from making alternative holdings." Amato v. City of Richmond, 875 F. Supp. 1124, 1139 (E.D. Va. 1994) (Payne, J.). However, because these issues are highly amenable to appeal — particularly at this stage in the litigation, "this case presents one of those unusual circumstances where it is appropriate to articulate an alternative ground of decision." Id.

[4] Martorello's Response Memorandum did not explain how this argument related to the Rule 23 factors governing class certification. See Fed. R. Civ. P. Rule 23(a)-(b). At oral argument, Martorello's counsel clarified that the waiver arguments related to the adequacy of the class representatives under Rule 23(a)(3) and the superiority of the class action vehicle under Rule 23(b)(3). Hearing Tr. 62: 2-13, ECF No. 1104.

[5] Martorello's Response Memorandum also attempted to argue that he could enforce the contract because he was a "servicer," but at oral argument, both parties expressly denied that Martorello was a servicer. Hearing Tr. 55:16-56:7, 94:2-3, ECF No. 1004.

First, the class action waivers apply to "disputes and claims related to or arising under this Agreement[,]" and according to Martorello, Plaintiffs' claims constitute disputes arising under the loan agreement. Ex. 1 at 6, ECF No. 1055-1. And, second, the class action waivers apply to "related third parties" (a defined term in the contract), and Martorello asserts that he is a related third party by virtue of being an "affiliated entity" and an "alleged agent." Resp. Mem. at 4, ECF No. 1007. Neither argument is persuasive.

## 1. The waiver cannot apply to strangers to the contract.

First, it is axiomatic that a contract is only binding on the parties to the contract, absent certain limited exceptions. 13 WILLISTON ON CONTRACTS § 37.1 (4th ed.) ("The mere fact of entering into a contract gives rise to a relationship between or among the contracting parties known as 'privity.' Under the traditional common-law rule, only parties in privity of contract could sue on the contract[.]") (footnote omitted); see also Privity of Contract, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so."). Martorello admits, as he must, that he was not a party to the loan contracts. See Resp. Mem. at 3, ECF No. 1007. And, he provides no explanation for why the general rule of privity of contract would not apply merely because of the subject matter of

6

Plaintiffs' lawsuit. Martorello cannot, therefore, claim a right to enforce any part of the loan contract purely because the current suit is a dispute or claim arising from the loan contract.

**2. Martorello is not a related third party.**

Of course, it is possible that third-parties can be made beneficiaries of a contract. 13 WILLISTON ON CONTRACTS § 37.1 (4th ed.). And, if a third-party is a beneficiary of a contract, the third-party may claim its benefits. However, to do that, the third party must be designated a beneficiary in the contract. 13 WILLISTON ON CONTRACTS § 37.29 (4th ed.). Martorello was not so named and thus cannot claim third-party beneficiary status unless he is a "related third party" under the loan agreement.

For the reasons that follow, Martorello is not a "related third party" within the meaning of the loan contract. The loan contract states:

> For purposes of this Waiver of Jury Trial provision and Tribal Dispute Resolution Procedure provision above, the words 'dispute' and 'disputes' are given the broadest possibly meaning and include, without limitation, . . . (h) all claims asserted by You individually against Us and <u>any of Our **employees, agents,** directors, officers, shareholders, governors, managers, members, parent company or **affiliated entities** (hereinafter collectively referred to as **'related third parties'**)</u>, including claims for money damages and/or equitable or injunctive relief;

Ex. 1 at 6, ECF No. 1055-1 (emphasis added).[6] The phrase

"related third parties" subsequently appears six times in the

loan contract and is never redefined or used in a manner that

would contradict this definition.  In his Response Memorandum,

Martorello asserts that he was both an "agent" and an

"affiliated entity." Resp. Mem. at 4, ECF No. 1007.  Martorello

argues that he and the companies "he managed were 'affiliated

entities' because they provided consulting and servicing

assistance to the Tribal Lender prior to the sale of Bellicose."

Resp. Mem. at 4, ECF No. 1007 (footnote omitted).  And,

according to Martorello, he should be viewed as an "agent"

because of Plaintiffs' own arguments.[7] Resp. Mem. at 4, ECF No.

---

[6] The fact that several provisions of the loan contract specify
exactly to which non-parties they apply (e.g., managers,
shareholders, etc.) further undermines Martorello's prior
argument that the waiver is over a "subject matter category"
that could apply to him despite his lack of privity.

[7]   At oral argument, counsel for Martorello stated, arguably
for the first time, that Martorello was an agent because he was
a consultant.  Hearing Tr. 94:24-25, ECF No. 1104; see also
Resp. Mem. at 4, ECF No. 1007 (arguing that Martorello-managed
companies were consultants to the Tribe's business and that
Martorello and his companies were 'affiliated entities' because
they provided consulting services to the Tribal Lender prior to
the sale of Bellicose).  This argument was based on a separate
clause in the same Waiver of Jury Trial provision which states
that the waiver applies to "(a) all claims, disputes or
controversies involving the parties to this Agreement and Our
employees, servicers, and agents, including but not limited to
consultants, banks, payment processors, software providers, data
providers and credit bureaus[.]"  Ex. 1 at 6, ECF No. 1055-1
(emphasis added).  Arguments presented for the first time at
oral argument will not be considered.  First Tennessee Bank Nat.

1007 ("Plaintiffs allege[d] (incorrectly) that Martorello and businesses he managed were agents behind the entire lending business."). Martorello is mistaken on all counts.

At this point it is appropriate to clarify that the loan contract explicitly states that the words "We," "Us," "Our," and "Lender" all refer to one of the two tribal lenders, i.e. Big Picture or Red Rock. Ex. 1 at 3, ECF No. 1055-1. Thus, the phrases "Our . . . agent" and "Our . . . affiliated entities" refer to the lender's (i.e., Big Picture or Red Rock's) agent or affiliated entity, not the agent or affiliated entity of the LVD or any other entity involved in the loan scheme. And, the term "affiliated entity" is not defined in the loan contract. See Ex. 1, ECF No. 1055-1.

### a. Martorello is not an "affiliated entity."

Martorello is not an affiliated entity of either lender (i.e., Red Rock or Big Picture Loans). In his Response Memorandum, Martorello argued, without any citation to the record, that he and his companies were "affiliated entities" to Red Rock and Big Picture Loans because he and his companies

---

Ass'n v. Global Title, LLC, 3:09-cv-550, 2010 WL 5187834, *1 (Nov. 16, 2010) (citing North Carolina Alliance for Transp. Reform, Inc. v. U.S. Dept. Of Transp., 713 F. Supp. 2d 491, 510 (M.D.N.C. 2010)). Even if the Court were prepared to consider such an argument, counsel for Martorello were not able to identify specific portions of the record that would show that Martorello was a consultant (and therefore an agent) of either lender. Hearing Tr. 94:24-95:14, 152:1-8, ECF No. 1104.

"provided consulting and servicing assistance to the Tribal Lender prior to the sale of Bellicose." Resp. Mem. at 4, n.3, ECF No. 1007 (footnote omitted).

At oral argument, counsel for Martorello argued, for the first time, that evidence of the alleged affiliate relationship can be found in the servicing agreement between Red Rock (the lender) and Bellicose (a Martorello company). Hearing Tr. 150:9-151:14, ECF No. 1104. Because the argument was presented for the first time at oral argument, it cannot be considered. First Tennessee Bank Nat. Ass'n v. Global Title, LLC, 3:09-cv-550, 2010 WL 5187834, *1 (Nov. 16, 2010) (citing North Carolina Alliance for Transp. Reform, Inc. v. U.S. Dept. Of Transp., 713 F. Supp. 2d 491, 510 (M.D.N.C. 2010)). But, even if it were considered, it would fail.

In the 2011 servicing agreement, the term "affiliate" is defined in reference to the "Enterprise" (i.e., Red Rock) and the "Servicer" (i.e., Bellicose):

> "Affiliate" means as to Servicer or Enterprise, any corporation, partnership, limited liability company, joint venture, trust, department or agency or individual controlled by, under common control with, or which controls, directly or indirectly Servicer or Enterprise. "Control" means (i) ownership, control, or power to vote twenty five percent (25%) or more of the outstanding shares of any class of voting securities, directly or indirectly or acting through one (1) or more persons, (ii) control in any manner over the election of a majority of the directors, trustees, or general partners (or individuals exercising similar functions), or (iii)

10

the power to exercise, directly or indirectly, a
controlling influence over management or policies."

Ex. 5 at 5, ¶ 2.1, ECF No. 968-5 (emphasis added); accord

Affiliate, BLACK'S LAW DICTIONARY (11th ed. 2019). Both parties

agree that under the aforementioned definition, Martorello would

be an "affiliate." Hearing Tr. 151:11-20, ECF No. 1104.

However, they differ on how that definition of "affiliate"

compares to the term "affiliated entity" in the loan contract.

Martorello argues that the term "entity" can include a natural

person, Resp. Mem. at 4, n.3, ECF No. 1007, and thus, appears to

be saying that the term "affiliated entity" is equivalent to the

term "affiliate" as used in the 2011 servicing agreement.

Plaintiffs argue that the term "affiliated entity," as opposed

to the term "affiliate," is more naturally read to refer to a

corporate entity that is related to Red Rock or Big Picture

through some kind of control relationship. See Reply Mem. at

14-18, ECF No. 1055.

Because there is no definition of "affiliated entity" in

the contract, the Court must look to the common and ordinary

meaning the term, which can include referring to dictionary

definitions. Nationwide Mut. Ins. Co. v. Overlook, LLC, 785 F.

Supp. 2d 502, 518 (E.D. Va. 2011). The common and ordinary

meaning of "affiliate" is essentially what the 2011 servicing

agreement stated, i.e., "A corporation that is related to

another corporation by shareholdings or other means of control;
a subsidiary, parent, or sibling corporation," and in certain
contexts, the term "affiliate" could include an individual.
Affiliate, BLACK'S LAW DICTIONARY (11th ed. 2019). However, the
common and ordinary meaning of "entity" is "an organization
(such as a business or governmental unit) that has a legal
identity apart from its members or owners."[8] Although both
"affiliate" and "entity" can sometimes refer to individuals, the
common and ordinary meaning of "affiliated entity" refers to a
business organization, not an individual. And, at least one
court that has had occasion to consider the plain and ordinary
meaning of "affiliated entities" has come to the same
conclusion.[9] Under this reading, the term "affiliated entities"
cannot refer to Martorello.

---

[8] Entity, BLACK'S LAW DICTIONARY (11th ed. 2019); accord Entity,
MERRIAM-WEBSTER.COM, https://www.merriam-
webster.com/dictionary/entity (last visited July 6, 2021); but
see Entity, AMERICAN HERITAGE DICTIONARY,
https://www.ahdictionary.com/word/search.html?q=entity (last
visited July 6, 2021) (using "entity" in a sentence to refer to
an individual).

[9] See Bd. of Trustees of Leland Stanford Junior Univ. v. Agilent
Techs., Inc., No. 18-CV-01199-VC, 2019 WL 4729602, at *1 (N.D.
Cal. Aug. 13, 2019) ("If one company owns another, those
companies are affiliated entities in the ordinary sense of the
term."); see also Silva v. Butori Corp., No. CV-19-04904-PHX-
MTL, 2020 U.S. Dist. LEXIS 81367, *12 (D. Ariz., May 8, 2020)
(referring to the Black's Law and Merriam Webster definitions of
"affiliate" and "affiliated," respectively, to determine the
plain and ordinary meaning of the term "affiliated entity").

### b. Martorello is not an "agent" of either lender.

Additionally, Martorello is not an agent of either lender. To begin, notwithstanding Martorello's assertions to the contrary, Resp. Mem. at 4, ECF No. 1007, Plaintiffs never alleged that Martorello was an agent of the LVD (quite the opposite actually). See, e.g., Compl. ¶ 3, ECF No. 1 (describing Martorello as the mastermind behind the LVD's lending operations). And, in any case, the loan contract uses "agent" to refer to an agent of the lender, not the LVD. Martorello has not pointed the Court to any evidence in the record that he was an agent of Red Rock or Big Picture.

Based on the loan contract and the parties' written and oral arguments, the "Waiver of Jury Trial" provision, which includes the class action waiver, does not apply to Martorello.

## B. Is the waiver valid and enforceable?

Even if the "Waiver of Jury Trial" provision somehow could be construed to apply to Martorello, the waiver is, nevertheless, unenforceable. According to Plaintiffs, this is because of the prospective waiver doctrine. Although the prospective waiver doctrine has most commonly been associated with arbitration agreements, the rationale behind the doctrine supports its application in contexts beyond mandatory arbitration agreements.

From its origins in Mitsubishi Motors Corp. v. Soler
Chrysler-Plymouth, Inc., the prospective waiver inquiry has
focused on whether a party has waived, in advance, its right to
pursue federal statutory remedies. 473 U.S. 614, 637 n.19
(1985) ("[I]n the event the choice-of-forum and choice-of-law
clauses operated in tandem as a prospective waiver of a party's
right to pursue statutory remedies for antitrust violations, we
would have little hesitation in condemning the agreement as
against public policy."). Though decisional law has been
concentrated on mandatory arbitration claims, it is the waiver
of important federal rights that is at issue, not merely the
suitability of arbitral forums. Am. Exp. Co. v. Italian Colors
Rest., 570 U.S. 228, 240 (2013) (Kagan, J. dissenting)
("[C]ourts will not enforce a prospective waiver of the right to
gain redress for an antitrust injury, whether in an arbitration
agreement or any other contract."). This understanding is
reflected in the recent cases of the Fourth Circuit examining
the enforceability of various Tribal lending contracts.
Hayes v. Delbert Servs. Corp., 811 F.3d 666, 673 (4th Cir. 2016)
("This arbitration agreement fails for the fundamental reason
that it purports to renounce wholesale the application of any
federal law to the plaintiffs' federal claims."); Dillon v. BMO
Harris Bank, N.A., 856 F.3d 330, 335 (4th Cir. 2017) ("These
terms throughout the underlying loan agreement further

illustrate that the choice of law provision in the arbitration agreement 'disavow[s] the application of all state and federal law' and 'unambiguously forbids an arbitrator from even applying the applicable law.'"); Gibbs v. Haynes Invs., LLC, 967 F.3d 332, 340-41, 343-44 (4th Cir. 2020) (describing a tribal loan contract as problematic because consumers were functionally prohibited from enforcing the federal RICO statute); Gibbs v. Sequoia Capital Operations, LLC, 966 F.3d 286, 294 (4th Cir. 2020) ("In summary, because the effect of the choice-of-law provisions is to stymie the vindication of the federal statutory claims that the borrowers seek to enforce, they amount to a prospective waiver and render the delegation provisions unenforceable."). Therefore, where a provision of a contract mandates an alternative dispute resolution procedure that amounts to a substantive waiver of federally protect rights, the provision is unenforceable. See Hayes v. Delbert Servs. Corp., 811 F.3d 666, 674-75 (4th Cir. 2016).

When viewed in the context of the Tribal Financial Services Regulatory Authority Code (the "Code") and the loan agreement as a whole, the "Waiver of Jury Trial" provision clearly amounts to a substantive waiver of federally protected rights. Although there is no express renunciation of federal law, the net result of the loan contract is that the consumers have no meaningful

15

way to vindicate their federal rights.   This is demonstrated by

the following provisions:

o  The governing law of the contract, by its terms, is "the
   laws of the Lac Vieux Desert Band of Lake Superior
   Chippewa Indians ('Tribal law'),[10] including but not
   limited to the Code as well as applicable federal law."
   Ex. 1 at 5, ECF No. 1055-1.

o  The Code states that the lender must "conduct business in
   a manner consistent with the principles of federal
   consumer protection law, including, without limitation"
   ten enumerated federal consumer financial protection laws
   or regulations.[11]   Ex. 6 ¶ 6.2, ECF No. 1055-6 (emphasis
   added).

o  The Tribal Dispute Resolution Procedure is the sole
   method of resolving any disputes any under the contract.
   Ex. 1 at 5, ECF No. 1055-1 ("All disputes shall be solely
   and exclusively resolved pursuant to the Tribal Dispute
   Resolution Procedure set forth in Section 9 of the Code .
   . . .") Ex. 1 at 5, ECF No. 1055-1.  This sentiment is
   repeated at least four times in the contract.  See Ex. 1
   at 6 ¶ 2(c), ECF No. 1055-1 ("YOU CONSENT TO THE
   JURISDICTION OF THE TRIBE AND HAVE READ AND AGREE TO BE
   BOUND SOLELY BY THE TRIBAL DISPUTE RESOLUTION PROCEDURE
   FOUND IN THE CODE[.]"); Ex. 1 at 6 ¶ 4, ECF No. 1055-1
   ("All disputes arising out of, relating to, or in
   connection with this Agreement shall be finally settled
   under the Tribal Dispute Resolution Procedure."); Ex. 1
   at 7, ECF No. 1055-1 ("You acknowledge and agree that
   this Agreement is subject solely and exclusively to the
   Tribal law and jurisdiction of the Lac Vieux Desert Band
   of Lake Superior Chippewa Indians."); Ex. 1 at 7, ECF No.
   1055-1 ("[T]he Tribal Dispute Resolution Procedure is the
   sole and exclusive forum for resolving disputes and/or
   claims arising from or relating to this Agreement.").

_____

[10] Neither party has submitted any Tribal law (that is, other
than the Code) for this Court's consideration.

[11] Notably, the list of federal consumer financial protections,
while not exhaustive, does not include the federal RICO statute
which Plaintiffs are suing under in this case.

o "The Tribal Dispute Resolution Procedure has been created by the Tribe as a courtesy to consumers and is the sole and exclusive dispute resolution mechanism for disputes and claims related to or arising under this Agreement." Ex. 1 at 6, ECF No. 1055-1 (emphasis added).

o Under the Tribal Dispute Resolution Procedure, consumers must first lodge an informal complaint with the lender. Ex. 1 at 6, ECF No. 1055-1. The lender will then investigate the complaint and respond. Id. If the consumer is unhappy with the lender's response, the consumer can initiate a Formal Dispute Resolution by requesting that the Tribal Financial Services Regulatory Authority ("Authority") review the lender's decision. Id. The Authority will decide if the consumer can have a hearing or not and will ultimately render its own decision. Id. An Authority decision may be appealed to the Tribal Court, id., but the scope of the Tribal Court's review is roughly that of a federal court reviewing a federal agency's decision. See Ex. 6 at 29, ECF No. 1055-6. And, the Tribal Court's decision may not be appealed. Ex. 6 at 30, ECF No. 1055-6.

o Under the Tribal Dispute Resolution Procedure, "[a] person's complaint to the Lender shall be considered similar in nature to a petition for redress submitted to a sovereign government, without waiver of sovereign immunity and exclusive jurisdiction, and does not create any binding procedural or substantive rights for a petitioner." Ex. 1 at 6, ECF No. 1055-1 (emphasis added).

o The Tribe and the Lender (i.e., Big Picture or Red Rock) both "express" their "intention" "to fully preserve, and not waive either in whole or in part, exclusive jurisdiction, sovereign immunity, and any other rights, titles, privileges and immunities to which they are entitled." Ex. 1 at 6, ECF No. 1055-1.

o The loan contract also waives a consumer's right to a trial by jury, the right to serve as a class representative, and the right to arbitration. Ex. 1 at 6, ECF No. 1055-1.

o The contract then explicitly adds that "NO LITIGATION OR ARBITRATION IS AVAILABLE[.]" Ex. 1 at 6, ECF No. 1055-1.

In conjunction, these provisions operate to functionally waive a consumer's right to vindicate federally protected statutory rights. Here, as in Hayes v. Delbert Servs. Corp., the animating purpose of these provisions is to allow the making of consumer loans free from the strictures of federal law. 811 F.3d 666, 676 (4th Cir. 2016). And, as in Gibbs v. Haynes Invs., LLC, the practical effect of these provisions is that "tribal law preempts the application of any contrary law – including contrary federal law." 967 F.3d 332, 342 (4th Cir. 2020). In short, the system set up here prevents borrowers from effectively vindicating any federal statutory claim. Indeed, the remedial procedures outlined in the contract are courtesies, not rights. See, e.g., Ex. 1 at 6, ECF No. 1055-1 ("A person's complaint to the Lender shall be considered similar in nature to a petition for redress submitted to a sovereign government, without waiver of sovereign immunity and exclusive jurisdiction, and does not create any binding procedural or substantive rights for a petitioner."). Taken together, these provisions violate the prospective waiver rule.[12]

---

[12] Neither party requested severance of any part of the loan contract, but in any case, because these issues are pervasive throughout the loan contract, there would be no way to sever the offending provisions. See Dillon v. BMO Harris Bank, N.A., 856 F.3d 330, 335 (4th Cir. 2017).

## CONCLUSION

For the foregoing reasons, the Court finds that the waiver does not apply to Martorello, and even if it did, the waiver is, nevertheless, unenforceable. Martorello's objection to class certification on the waiver theory will be rejected.

It is so ORDERED.

_____ /s/ _____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 12, 2021