IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



LULA WILLIAMS, et al.,

    Plaintiffs,

v.                          Civil Action No. 3:17-cv-461

BIG PICTURE LOANS, LLC, et al.,

    Defendants.

**MEMORANDUM OPINION**

This Memorandum Opinion addresses PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION OF CLAIMS AGAINST DEFENDANT MATT MARTORELLO ("Motion for Class Certification") (ECF No. 967) in which Plaintiffs, on behalf of themselves and all other similarly situated individuals, request that this Court certify their claims against Defendant Matt Martorello ("Martorello"). Martorello opposes class certification on four main grounds: (1) Plaintiffs waived the ability to pursue a class action;[1] (2) the class members are not readily ascertainable; (3) common issues do not predominate; and (4) a class action is not a superior method of bringing suit. OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AGAINST MATT MARTORELLO

---

[1] A separate Memorandum Opinion supplies the reasons for overruling Martorello's objection to class certification on the ground that the proposed class representatives (as well as all of the proposed class members) waived their right to participate in a class action. See MEM. OP., ECF No. 1106.

("Response Memorandum"), ECF No. 1007. Notwithstanding Martorello's arguments in opposition, for the reasons that follow, Plaintiffs' Motion for Class Certification will be granted.

## I. BACKGROUND

### A. Statement of Facts

The facts surrounding this lawsuit have been recounted by the Court on numerous occasions. <u>See, e.g.</u>, MEM. OP., ECF No. 944. The facts of this case are, therefore, presumed known, and it suffices here to provide only a brief summary.

This case is one of four similar, but distinct, actions[2] "arising out of a so-called 'Rent a Tribe' scheme allegedly orchestrated by Matt Martorello ('Martorello'), members of his family, companies that he controls, and investors who allegedly funded the scheme (the 'Martorello Defendants')" along with two "entities formed under the tribal laws of the Lac View Band of Lake Superior Chippewa Indians ('LVD')," <u>i.e.</u>, "Big Picture Loans, LLC ('Big Picture')[3] and Ascension Technologies, Inc.

---

[2] In addition to this case, <u>i.e.</u>, <u>Williams, et al. v. Big Picture Loans, LLC, et al.</u>, 3:17-cv-461 (E.D. Va.) ("<u>Williams</u>"), the other related cases are (1) <u>Renee Galloway, et al. v. Big Picture Loans, LLC, et al.</u>, 3:18-cv-406 (E.D. Va.) ("<u>Galloway I</u>"), (2) <u>Renee Galloway, et al. v. Martorello, et al.</u>, 3:19-cv-314 (E.D. Va.) ("<u>Galloway II</u>"), and (3) <u>Renee Galloway, et al. v. James Williams, Jr., et al.</u>, 3:19-cv-470 (E.D. Va.) ("<u>Galloway III</u>").

[3] The LVD's lending operations evolved over time, but they began with the use of a so-called tribal lending entity named Red Rock

2

('Ascension') (collectively sometimes referred to as the 'Tribal Defendants')." <u>Williams v. Big Picture Loans, LLC</u>, 3:17-cv-461, 2020 U.S. Dist. LEXIS 216792, 2020 WL 6784352, at *1-2 (E.D. Va. Nov. 18, 2020) (Payne, J.).   The term "Rent-a-Tribe" refers to the practice of so-called payday lenders partnering with Native American tribes "in an effort to cloak the payday lenders in the sovereign immunity of Native American tribes, and, in so doing, to preclude enforcement of the interest rate caps in state usury laws." <u>See</u> MEM. OP. at 4, ECF No. 944.

Plaintiffs are all Virginia citizens who took out small-dollar high-interest loans from one of two LVD-affiliated entities (i.e., Red Rock or its successor Big Picture). Plaintiffs' basic argument is that the loans from these entities were made in violation of Virginia's usury laws, and Martorello, who is not a member of any Native American tribe, was both the de facto head and primary beneficiary of the LVD's lending operations.   PLS.' MEM. IN SUPP. OF RENEWED MOT. FOR CLASS CERTIFICATION OF CLAIMS AGAINST DEF. MATT MARTORELLO ("Prelim. Approval Mem.") at 27, ECF No. 968.

---

Lending, LLC ("Red Rock") which used Bellicose, LLC, a non-tribal entity owned and operated by Martorello, to handle the lending operations and the servicing of loans.   For reasons that need not be discussed here, around 2013, Red Rock, Bellicose, and another corporate entity were restructured into a new lending entity — i.e., Big Picture.

**B. Plaintiff's Claims**

Plaintiffs are pursuing five claims against Martorello:

- First, Plaintiffs are seeking declaratory judgment that the choice of law and forum-selection provisions in their loan contracts are void and unenforceable under Virginia law and Virginia's "well-established public policy."  Compl. ¶ 94, ECF No. 1.

- Second, Plaintiffs allege that Martorello violated 18 U.S.C. § 1962(c) of the RICO statute (which prohibits the collection of unlawful debt).  Compl. ¶¶ 103-104, ECF No. 1.  Plaintiffs seek actual damages, treble damages, costs, and attorney's fees.  Compl. ¶ 109, ECF No. 1.

- Third, Plaintiffs allege that Martorello violated 18 U.S.C. § 1962(d) of the RICO statute (by conspiring to violate 18 U.S.C. § 1962(c)).  Compl. ¶ 117, ECF No. 1.  Plaintiffs seek actual damages, treble damages, costs, and attorney's fees.  Compl. ¶ 118, ECF No. 1.

- Fourth, Plaintiffs allege that Martorello violated Virginia's usury law, namely Va. Code § 6.2-305(A).  Compl. ¶¶ 127-28, ECF No. 1.  Plaintiffs seek damages "equal to the total amount of interest paid in excess of 12% plus twice the amount of such usurious interest that was paid in the two years preceding [the] filing of this action, attorney's fees, and costs."  Compl. ¶ 128, ECF No. 1.

- Finally, Plaintiffs allege that Martorello was unjustly enriched because he received payments from illegal and unenforceable loan contracts.  Compl. ¶¶ 137-139, ECF No. 1.  Plaintiffs seek all amounts repaid on loans with Big Picture or Red Rock.  Compl. ¶ 139, ECF No. 1.

Counts II through V are the subject of this Opinion.

**C. Proposed Classes**

Proposed Class Counsel,[4] representing Plaintiffs, who are the Proposed Class Representatives,[5] propose the following classes:

**Big Picture RICO Class:** All Virginia consumers who entered into a loan agreement with Big Picture where a payment was made from June 22, 2013 to December 20, 2019.

> **Big Picture Usury Sub-class:** All Virginia consumers who paid any principal, interest, or fees on their loan with Big Picture from June 22, 2015 to December 20, 2019.

> **Big Picture Unjust Enrichment Sub-class:** All Virginia consumers who paid any amount on their loan with Big Picture from June 22, 2014 to December 20, 2019.

**Red Rock RICO Class:** All Virginia consumers who entered into a loan agreement with Red Rock where a payment was made from June 22, 2013 to December 20, 2019.

> **Red Rock Usury Sub-class:** All Virginia consumers who paid any principal, interest, or fees on their loan with Red Rock from June 22, 2015 to December 20, 2019.

> **Red Rock Unjust Enrichment Sub-class:** All Virginia consumers who paid any amount on their

---

[4] That is, Amy Leigh Austin, Craig Carley Machiando, Kristi Cahoon Kelly, Andrew Joseph Guzzo, Beth Ellen Terrell, Casey Shannon Nash, Eleanor Michelle Drake, Elizabeth Anne Adams, James Wilson Speer, Jennifer Rust Murray, John Albanese, Leonard Anthony Bennett, Matthew William Wessley, and Michael Allen Caddell. Prelim. Approval Mem. at 27, ECF No. 968.

[5] That is, Lula Williams, Gloria Turnage, George Hengle, Dowin Coffy, and Felix M. Gillison, Jr. (represented by Marcella P. Singh, the administrator of the Estate of Felix M. Gillison, Jr.). Prelim. Approval Mem. at 27, ECF No. 968.

> loan with Red Rock from June 22, 2014 to
> December 20, 2019.

Prelim. Approval Mem. at 24, ECF No. 968.   At bottom, all proposed class members are (or were) Virginia citizens who took out loans with interest rates above 12% from entities affiliated with the LVD tribe (i.e., Big Picture or Red Rock) and who made payments on those loans.   Prelim. Approval Mot. at 22, ECF No. 968.

## D. Martorello's Involvement Over Time

For nearly every argument Martorello makes in opposition to class certification, Martorello asserts that, because his role in the lending scheme changed between 2013 and 2019, the class members will be situated differently vis-à-vis each other across different time periods, and those differences between class members will result in a need for a series of complicated mini-trials to determine which class members can recover.[6]  Not so.

Shortly after the Fourth Circuit's decision in Williams v. Big Picture Loans, LLC, 929 F.3d 170 (4th Cir. 2019), the Plaintiffs alleged that Martorello and others had made material misrepresentations to this Court and the Fourth Circuit on which this Court and the Fourth Circuit had relied in making their

---

[6] This "non-uniformity" argument is addressed in Martorello's positions on (1) ascertainability, Resp. Mem. at 32-33, ECF No. 1007; (2) commonality, id. at 35-42; (3) predominance (unjust enrichment), id. at 44, 47; (4) predominance (RICO), id. at 46; and (5) superiority, id. at 49.

respective decisions.  At Martorello's request, this Court subsequently held a hearing on the alleged misrepresentations; thereafter received briefing; and then issued an opinion finding that several material misrepresentations had been made to the Court.  MEM. OP. at 8, ECF No. 944 ("November 18 Opinion").  For a detailed description of all of the facts, see the November 18 Opinion (ECF No. 944).

As explained fully in the November 18 Opinion, there is substantial (and largely unrebutted) evidence that, throughout the relevant class periods, Martorello had de facto control of Red Rock and Big Picture's lending operations.  To begin, there is unrebutted evidence that Martorello was both highly instrumental and heavily involved in the LVD's entrance into the business of payday lending.  Nov. 18 OP. at 9-12, ECF No. 944. And, contrary to what the LVD and Martorello previously represented, there is proof that Martorello was functionally in charge of the lending business and the Tribal "managers" were "rather meaningless."  Nov. 18 OP. at 13-15, 20, ECF No. 944. And, even after the LVD restructured the lending operations to avoid regulatory scrutiny, the evidence strongly shows that Martorello was still running the show.  Nov. 18 OP. at 15, ECF No. 944 ("Efforts were made to create the appearance of the Tribe's involvement but the Tribe had no substantive involvement.").  "[E]xcept for a few cosmetic changes . . ., the

LVD lending operation by way of Big Picture continued as it had under the Red Rock structure." Nov. 18 OP. at 22-23, ECF No. 944.

Notwithstanding that Martorello's Response Memorandum was filed after the November 18 Opinion was issued, the Response Memorandum fails to take any of the Court's findings into account and continues to advance some of the very same misrepresentations addressed in the November 18 Opinion.[7]

On the current record, no credence can be given to Martorello's arguments challenging class certification on the ground that, because of his changing roles, Plaintiffs' claims will not be susceptible to class-wide proof. Certainly, Martorello's conclusory assertions do not overcome the Plaintiffs' evidence that disproves the need for the "mini-trials" that Martorello's arguments attempt to conjure.

## II. DISCUSSION

A class can be certified if plaintiffs show that the four requirements of Fed. R. Civ. P. 23(a) are met <u>and</u> that the class fits the requirements of at least one of the class types outlined in Fed. R. Civ. P. 23(b). <u>Branch v. Gov't Emples. Ins.</u>

---

[7] For example, Martorello asserts that his role in the LVD's "lending business declined considerably over time, <u>and ceased</u> after Martorello's 2016 sale of Bellicose to the Tribe." Resp. Mem. at 38 (emphasis added), ECF No. 1007. The evidence of record shows otherwise. Nov. 18 OP. at 22-23, ECF No. 944. And, Martorello's Response Memorandum offers no viable evidence to disprove that showing.

Co., 323 F.R.D. 539, 544 (E.D. Va. 2018).  The Court's analysis for each requirement must be "rigorous." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011).  And, plaintiffs bear the burden of demonstrating that all of the Rule 23 requirements have been satisfied. Branch, 323 F.R.D. at 545.

## A. Rule 23(a) Analysis

Under Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1. Ascertainability

Although not self-evident on the face of Fed. R. Civ. P. 23, it is inherent in the concept of class certification that there must be a "readily identifiable" set of putative class members. EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014).  This is sometimes referred to as the "ascertainability" requirement. Id.  Plaintiffs need not be able to identify each and every class member at the time of class certification, but class members must be identifiable by reference to objective criteria without "extensive and individualized fact-finding or 'mini-trials[.]'" Id. (citation omitted).

9

Here, Plaintiffs assert that they can readily identify the class through objective, electronic data analysis of data that will be voluntarily provided by Big Picture and Ascension once the class has been certified. Prelim. Approval Mot. at 26, ECF No. 968. Specifically, Plaintiffs explain that:

> Identification of the class members involves a handful of discrete steps: (1) determining whether a consumer had a loan with Big Picture and/or Red Rock, (2) for all such consumers, determining whether they had a Virginia address when they executed the loan, and (3) identifying any payments made by those consumers from June 22, 2013 to December 20, 2019.

Prelim. Approval Mot. at 26, ECF No. 968.

Martorello, nevertheless, attacks the ascertainability of the proposed class on four grounds: (1) the loan information is largely under Tribal control, and neither party will have access to it until after the class is certified; (2) even if the loan information were provided, because Martorello's involvement in the lending scheme changed over time, mini-trials will be needed to understand each proposed class members' claims as to Martorello himself (as opposed to any other defendant); (3) mini-trials would be needed to determine if proposed class members have already released their rights, have already recovered, or have been estopped from recovering as a result of the Galloway III settlement; and (4) mini-trials would be needed to determine if proposed class members' claims are time-barred

10

because of the statute of limitations.  Resp. Mem. at 30-34, ECF No. 1007.  These arguments are not persuasive.

First, the requirement that a class be readily identifiable does not mean that Plaintiffs must present the Court (or Martorello) with a list of each and every proposed class member at the time of class certification.  EQT, 764 F.3d at 358.  And, while the parties are not presently in possession of the detailed loan data for each of the proposed class members, that is not to say that they are totally ignorant of the likely candidates for class membership.  The putative class members in this case are a subset of the class members defined by the Galloway III settlement (and the proposed class counsel in this case were also class counsel in Galloway III).  Prelim. Approval Mem. at 26-27, ECF No. 968.  As part of the Galloway III settlement, the Tribal Defendants turned over "the majority of the information" Plaintiffs would need to identify the class members.  Prelim. Approval Mem. at 27, ECF No. 968; see also Ex. 51 ¶ 3, ECF No. 968-51 (describing the customer loan data turned over to the Settlement Administrator in Galloway III).  Furthermore, the Tribal Defendants have already agreed to turn over the necessary data if the Court certifies the class in this case.  Ex. 52, ECF No. 968-52 (showing counsel for the Tribal Defendants agreeing, on behalf of Ascension and Big Picture, to

11

turn over the necessary loan data once a class has been certified in this case).

The cases Martorello cites to defend his position are clearly distinguishable. Unlike in Marcus v. BMW of N. Am., LLC, the third parties with possession of the data (i.e., Big Picture and Ascension) have ready access to the necessary data and have voluntarily agreed to turn it over to Plaintiffs if this Court certifies the proposed class. 687 F.3d 583, 594 (3d Cir. 2012). Unlike in Supler v. FKAACS, Inc., it is, in fact, possible to determine who the class members would be. 2012 WL 5430328, at *4, *9 (E.D.N.C. Nov. 6, 2012). And, unlike in Carrera v. Bayer Corp., 727 F.3d 300, 308-09 (3d Cir. 2013), Plaintiffs are not basing their ascertainability arguments on hypothetical data that may or may not exist or relying on class members to self-identify themselves through affidavits. Rather, Plaintiffs propose to use objective factors (i.e., whether an individual had a loan with a given company, whether that individual's home address was in Virginia when the loan was executed, and whether any loan payments were made after June 22, 2013) to analyze data that they have confirmed exists (and that they have confirmed they will have access to),[8] and that data is

---

[8] Martorello attempts to argue that "[w]ithout the loan records, the only way to identify the class members is to seek documents and testimony regarding loan and payment details from each putative class member. This is exactly the type of

comparable to data that they successfully have used in a related case before this Court. Prelim. Approval Mem. at 26-27, ECF No. 968; PLS.' REPLY IN SUPP. OF RENEWED MOT. FOR CLASS CERTIFICATION AGAINST DEF. MATT MARTORELLO ("Reply Mem.") at 18-19, ECF No. 1055. Thus, contrary to what Martorello implies in his briefs, Plaintiffs are not just spitballing here.

Furthermore, the fact that Martorello will not have access to the loan data until after certification is not a violation of his due process rights. Martorello asserts that "forcing" him "to defend against certification of a class where the loans are unavailable is contrary to ascertainability, fairness, and due process." Resp. Mem. at 31, ECF No. 1007. Not so. "The due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward." Mullins v. Direct Digital, LLC, 795 F.3d 654, 670 (7th Cir. 2015). So long as Martorello has an opportunity to challenge each purported class member's claim to recover against him specifically (as opposed to any other defendant),

---

individualized review that renders a class not ascertainable." Resp. Mem. at 32, ECF No. 1007. The operative phrase, of course, is "without the loan records." If, for some reason, the loan records are not turned over by Big Picture and Ascension, the Court can reconsider its class certification decision. See Fed. R. Civ. P. 23(c)(1)(C).

13

his due process rights have not been violated. See Mullins, 795 F.3d at 671.  To hold that Martorello would suffer a due process violation if he were not given "[t]he specific loan information for each proposed class member (including residency, date of borrowing; payment histories; and balances)[,]" Resp. Mem. at 31, ECF No. 1007, would run contrary to the Fourth Circuit's clear explanation of the ascertainability requirement.  See EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) ("The plaintiffs need not be able to identify every class member at the time of certification.").

Martorello's second and third challenges to ascertainability can be more quickly dispensed with.[9] Martorello's second argument against the ascertainability of the class is that, because his involvement in the lending scheme changed over time, mini-trials will be needed to understand whether each putative class member has a claim against Martorello himself (as opposed to any other defendants).  As discussed above in Part I.D, there is no evidence that Martorello's role in the LVD's lending scheme materially changed over time, and as discussed later in Part II.B.1, Plaintiffs'

---

[9] Martorello also repeats these two arguments again in a section of his Response Memorandum titled "THE CLASS DEFINITION FAILS BECAUSE MANY PROPOSED MEMBERS WERE NOT INJURED BY MARTORELLO." Resp. Mem. at 47, ECF No. 1007.  The arguments in that section fail for the same reasons.

theory of the case lends itself to class-wide proof on all four of Plaintiffs' legal theories.

Martorello's third claim (i.e., that mini-trials would be needed to ascertain whether proposed class members have already waived their right to recover by joining the Galloway III settlement) is also clearly incorrect. No proposed class member has released their rights to pursue a suit against Martorello; the Galloway III settlement, by its terms, applied to 25 enumerated defendants (none of which were Martorello). MEM. OP., Galloway III, 3:19-cv-470, ECF No. 114 (E.D. Va. Dec. 18, 2020).

Martorello's fourth and final attack on ascertainability (i.e., that mini-trials will be needed to ascertain whether proposed class members' claims are barred by the statute of limitations) will require more analysis.

### *Statute of Limitations*

With respect to Plaintiffs' usury and unjust enrichment claims, Martorello asserts that the claims of some proposed class members may be barred by the statute of limitations. Resp. Mem. at 34, ECF No. 1007. According to Martorello, because class members took out loans at different times with different payment schedules, the Court would essentially need to have complex mini-trials to determine which class members are still eligible to recover. Plaintiffs respond that having

15

separate subclasses – with separate class periods – for both the usury and unjust enrichment claims will avoid any statute of limitations issues.

The class period for the proposed usury subclasses runs from June 22, 2015 to December 22, 2019. Prelim. Approval Mem. at 24, ECF No. 968. The statute of limitations for a claim based on a violation of Virginia state usury law is two-years after the last scheduled loan payment or the date of payment of the loan in full – whichever comes first. Va. Code. Ann. § 6.2-305. Because the case was filed on June 22, 2017 (i.e., two years after June 22, 2015), even the members of the proposed class who were making payments on their loans as far back as June 22, 2013 fall within the statute of limitations period.

Similarly, the class period for the proposed unjust enrichment subclasses runs from June 22, 2014 to December 20, 2019. The statute of limitations for a claim based on a violation of Virginia's unjust enrichment law is three years from accrual. Hengle v. Asner, 433 F. Supp. 3d 825, 893 (E.D. Va. 2020); see also 12A Michie's Jurisprudence § 12 (Limitation of Actions) (2021). As with the usury claim, because this case was filed on June 22, 2017 (i.e., three years after June 22, 2014), even the members of the proposed class who made payments on their loans as far back as June 22, 2014 fall within the statute of limitations period.

16

There are, therefore, no statute of limitations problems for the usury or unjust enrichment subclasses even though Plaintiffs entered into loan contracts at different times.

### 2. Numerosity

There is no bright-line threshold at which point a class is so numerous that joinder of all members is impracticable. Brown v. Transurban USA, Inc., 318 F.R.D. 560, 566 (E.D. Va. 2016). Whether joinder is impracticable is a fact-specific inquiry that depends not only on the number of class members but also on the circumstances of the case. Soutter v. Equifax Info. Servs., LLC, 307 F.R.D. 183, 199 (E.D. Va. 2015). "'Courts consider a number of factors in considering whether joinder is practicable including the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion.'" Soutter, 307 F.R.D. at 199 (quoting Adams v. Henderson, 197 F.R.D. 162, 170 (D. Md. 2000)).

Here, the numerosity requirement is easily met; the putative class consists of at least 12,530 individuals. Prelim. Approval Mem. at 26, ECF No. 968. Joinder of over 12,000 individuals would undoubtedly be impracticable. See Soutter, 307 F.R.D. at 199 (granting class certification for a class of approximately 1,000 consumers); see also William B. Rubenstein, 1 Newberg on Class Actions § 3:11 (5th ed. 2021) ("No specific

17

number alone is determinative of whether numerosity is present, but joinder is generally deemed practicable in classes with fewer than 20 members and impracticable in classes with more [than] 40 members.").

### 3. Commonality

The commonality requirement necessitates that there be common questions of law or fact among the class members such that common treatment is "necessary and beneficial."[10] Jeffreys v. Communs. Workers of Am., 212 F.R.D. 320, 322 (E.D. Va. 2003); Fed. R. Civ. P. 23(a)(2) (emphasis added). Accordingly, class members need not have suffered a violation of the same law. Branch v. Gov't Emples. Ins. Co., 323 F.R.D. 539, 546 (E.D. Va. 2018). And, "a class action will not be defeated solely because of some factual variances in individual grievances." Jeffreys, 212 F.R.D. at 322. As long as claims "arise from the same isolated set of facts," differences in the extent of each class member's injuries or damages will not prevent a finding that commonality exists." Jeffreys, 212 F.R.D. at 322.

Plaintiffs have met their burden of showing that commonality exists among the proposed classes. The proposed

---

[10] In a class action brought under Rule 23(b)(3) the commonality requirement will be "subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." Lienhart v. Dryvit Sys., 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting Amchem Prods. v. Windsor, 521 U.S. 591, 609 (1997)). Nevertheless, the inquiries are distinct.

class members' claims are all based on the same tribal lending scheme, and in particular, on "the same conduct, practice, and procedure on the part of Martorello." Prelim. Approval Mem. at 27, ECF No. 968. The class members, therefore, share a common set of legal and factual questions. According to Plaintiffs, these include:

> (1) whether their interest rates violate Virginia's usury laws; (2) whether the choice-of-law provision in their loan agreements bar[s] enforcement of Virginia's usury laws; (3) whether the relationship between the various participants constitutes an enterprise as defined under RICO; (4) whether Martorello participated or operated in the management of the enterprise; (5) whether Martorello had knowledge of and agreed to the overall objective of the enterprise; and (6) whether the amounts paid by each consumer are recoverable against Martorello.

Prelim. Approval Mem. at 27-28, ECF No. 968. Moreover, several courts have found that commonality existed in comparable cases where class members brought suits challenging various tribal lending schemes. See Inetianbor, et al. v. Cashcall, Inc., et al., 13-6066-CIV-COHN/SELTZER (S.D. Fla., Sept. 19, 2016), Ex. 53, ECF No. 968-53; Macdonald v. CashCall, Inc., 333 F.R.D. 331, 342-43 (D.N.J. 2019). The same is true here.

## 4. Typicality

The typicality requirement necessitates that the claims of the representative plaintiffs be typical of those of the class. The typicality requirement does not require that the class representative's claims be identical to those of the class, but

19

the representative's claims "cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of [her] own individual claim.'" Branch v. Gov't Emples. Ins. Co., 323 F.R.D. 539, 547 (E.D. Va. 2018) (quoting Deiter v. Microsoft Corp., 436 F.3d 461, 466-67 (4th Cir. 2006)) (alteration in original). A class representative must generally be part of the class and have "the same interest and suffer the same injury as the class members." Deiter, 436 F.3d at 466. "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" Id. (citation omitted).

The Court finds that the typicality requirement has been met. The Plaintiffs and proposed class representatives are Lula Williams, Gloria Turnage, George Hengle, Dowin Coffy, and Felix M. Gillison, Jr. (represented by Marcella P. Singh, the administrator of the Estate of Felix M. Gillison, Jr.).[11] See Prelim. Approval Mem. at 27, ECF No. 968. Plaintiffs are indeed

---

[11] Martorello objects to having the deceased Felix M. Gillison represent the class by way of his estate's administrator, Marcella P. Singh. Because the Court interprets this as a challenge to the representativeness of Singh, not whether Gillison's claims are typical of those of the class, the Court will confine its analysis of Singh's suitability as a class representative to the representativeness prong.

part of the proposed classes,[12] and all five Plaintiffs, as well as the proposed classes, obtained loans, with interest rates above 12%, from either Big Picture or Red Rock (i.e., the two lending entities affiliated with the LVD tribe).[13]   Prelim. Approval Mem. at 27, ECF No. 968.   Therefore, the proposed class representatives suffered the same injury and have the same basic legal claims as those of the proposed class members.   The only difference across class members would be the actual damages they are asserting which will not preclude a finding of typicality. Accordingly, as go the claims of the five Named Plaintiffs, so go the claims of the class.

### 5. Representativeness

The representativeness requirement ensures that the class will be adequately represented by the named plaintiffs and class counsel.   Branch v. Gov't Emples. Ins. Co., 323 F.R.D. 539, 548-49 (E.D. Va. 2018).   The requirement is satisfied "when: (1) the

---

[12] Williams and Turnage would be part of the Big Picture Loans RICO Class and the Usury and Unjust Enrichment Sub-classes. DECL. KRISTI KELLY ¶¶ 16-17, ECF No. 968-54.   Hengle would be part of the Red Rock RICO Class and the Usury and Unjust Enrichment Sub-classes.   DECL. KRISTI KELLY ¶ 18, ECF No. 968-54.   Coffy would actually be a part of all six classes.   DECL. KRISTI KELLY ¶ 19, ECF No. 968-54.   And, Gillison would only be a part of the Red Rock RICO class.   DECL. KRISTI KELLY ¶ 20, ECF No. 968-54.

[13] "Williams' loan was subject to an APR of 649.8%; Turnage's loan had an APR of 693.2%; Hengle's loan had an APR of 607.5%; Coffy's loan had an APR of 607.5%; and Gillison, Jr.'s loan had an APR of 627.2%."   Prelim. Approval Mem. at 22, ECF No. 968.

named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." Brown v. Transurban USA, Inc., 318 F.R.D. 560, 567 (E.D. Va. 2016) (internal quotation marks omitted).

The Court finds that the representativeness requirement is satisfied for both the proposed Class Representatives and proposed Class Counsel. As noted under the analysis of the commonality and typicality factors, Plaintiffs' interests are in line with those of the broader classes, and Plaintiffs were, in fact, already named as class representatives in a related case. See Galloway III, 3:19-cv-470, ORDER ¶ 5, ECF No. 115. Accordingly, the Court finds that the proposed Class Representatives will adequately represent the interests of the class (including Felix Gillison, Jr. who will be discussed further below).

Proposed Class Counsel have extensive experience with class actions, consumer financial protection law, and tribal lending operations. See DECL. KRISTI C. KELLY ¶¶ 4-6, 8-13, ECF No. 968-54; DECL. LEONARD A. BENNETT ¶¶ 4-7, 9-17, 19-23, ECF No. 968-55; DECL. MICHELLE DRAKE ¶¶ 3-9, 11-12, ECF No. 965-56; DECL. BETH E. TERRELL ¶¶ 2-6, ECF No. 968-57; DECL. MATTHEW W.H. WESSLER ¶¶ 2-10, ECF No. 968-58; DECL. MICHAEL A. CADDELL ¶¶ 3-19, 22-33, ECF No. 968-59. The Court has already found them

22

competent in a related case, Galloway III, 2020 WL 7482191, at *8 (E.D. Va. Dec. 18, 2020), and the Court reaffirms that finding here.

### Adequacy of Administrator

Martorello challenges the appointment of Marcella Singh, administrator of Felix Gillison, Jr.'s estate, as a class representative on the ground that Singh has almost no first-hand knowledge of the facts of the case. Resp. Mem. at 49, ECF No. 1007. The Court does not find this argument persuasive for several reasons. First, Martorello consented to the substitution of Marcella P. Singh for Felix Gillison, Jr. following Gillison's death in June 2018. ORDER, ECF No. 200; see also MEM. IN SUPP. OF MOT. TO SUBSTITUTE PARTY, ECF No. 187. Second, allowing an estate administrator to serve as a class representative in place of a deceased plaintiff is a generally accepted practice.[14] See Rubenstein, 1 Newberg on Class Actions § 3.71 (5th ed.); but see Chappelle v. E.I. Du Pont de Nemours & Co., 75 F.R.D. 74, 79 n.10 (E.D. Va. 1977) (Merhige, J.)

---

[14] Some courts (though, to the Court's knowledge, none in this circuit) have only allowed an executor to serve as a class representative where (1) the beneficiaries of the estate consent to the administrator's participation in the lawsuit and (2) the executor assumes the costs of litigation personally so that the estate will not bear the costs. Rubenstein, 1 Newberg on Class Actions § 3.71 (5th ed.). The Court will decline to apply that test in this case because it has no bearing on the substance of the Defendant's argument.

(finding administrator of a deceased plaintiff's estate inadequate to serve as a class representative in a Title VII discrimination suit for "obvious reasons"[15]).    Third, on the facts of this case, it is not even clear what Martorello finds lacking in Singh's testimony.[16]    A class representative's knowledge of the case "need not be robust."    Rubenstein, 1 Newberg on Class Actions § 3:67 (5th ed.).    "It is hornbook law . . . that '[i]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.'"    Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 430 (4th Cir. 2003) (citation omitted).    Plaintiffs' claims have never been based on any personal interactions with Martorello or any personalized knowledge of the internal workings of the LVD's lending operations, see Compl., ECF No. 1;

---

[15] With respect to Judge Merhige, the Court does not find the reasons obvious.

[16] If the Court has the deposition transcript of Marcella Singh, the Court is not aware of it.    The Court only knows of what Martorello reports regarding Singh's testimony.    See Resp. Mem. at 49, ECF No. 1007 ("Ms. Singh is also not an adequate class representative because she has virtually no knowledge—firsthand or otherwise—of any facts relating to this case. Ex. QQ, Singh Dep. Tr. at 12:17–25, 20:8–17, 18:19–19:8, 22:18–22. Her lone source of information, records she obtained through Plaintiffs' counsel, id. at 23:1–7, is insufficient.").

that information has come from discovery. Named Plaintiffs'
personal narratives have generally been confined to the fact
that they (1) applied for and received a loan from either Red
Rock or Big Picture — with an interest rate well above 12% and
(2) made payments on that loan.[17]   See, e.g., GEORGE HENGLE
DECL., ECF No. 190-20. Moreover, Plaintiffs have represented to
the Court that Singh, along with the other proposed class
representatives, has actively participated in the management of
the case. See DECL. KRISTI KELLY ¶ 14, ECF No. 968-54. Under
the circumstances, the Court finds that Marcella Singh, acting
as the administrator of the estate of Felix Gillison, Jr., is an
adequate class representative.

## B.  Rule 23(b)(3) Analysis

In addition to satisfying the Rule 23(a) factors, a class
must fit into one of the three Rule 23(b) class types. Fed. R.
Civ. P. 23(b). Here, the class is purported to be a Rule
23(b)(3) class. Class certification under Rule 23(b)(3) is
appropriate if (1) questions of law or fact common to class
members predominate over any questions affecting only individual
members, and (2) a class action is superior to other available
methods for fairly and efficiently adjudicating the controversy.
Fed. R. Civ. P. 23(b)(3).

---

[17] As noted in the discussion of ascertainability, that
information can also be verified with the LVD's loan records.

The Rule 23(b)(3) analysis will sometimes overlap with the merits of the underlying case, but "[t]hat cannot be helped." Branch v. Gov't Emples. Ins. Co., 323 F.R.D. 539, 545 (E.D. Va. 2018) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)).  However, "'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" Branch, 323 F.R.D. at 545 (quoting Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013)).

### 1. Predominance

Rule 23(b)'s inquiry into whether common questions of law or fact predominate over individual issues is distinct from the Rule 23(a) commonality requirement in that the predominance inquiry is more demanding.  Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013).  The more demanding standard is a function of the more "adventuresome" nature of Rule 23(b)(3) relative to Rules (b)(1) and (b)(2): Rule 23(b) "allows class certification in a much wider set of circumstances but with greater procedural protections."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362 (2011).

The predominance inquiry is fundamentally qualitative. Gunnells v. Healthplan Servs., 348 F.3d 417, 429 (4th Cir.

26

2003).  That is to say, the predominance inquiry "is not simply a matter of counting common versus noncommon questions and checking the final tally."  Soutter v. Equifax Info. Servs., LLC, 307 F.R.D. 183, 214 (E.D. Va. 2015).  Rather, a court must look at the relationship between the common questions and the individual questions in the context of the case as whole.  Krakauer v. Dish Network, LLC, 925 F.3d 643, 658 (4th Cir. 2019).  "An individual question is one where a 'member of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will be sufficient for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"  Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036 (2016).  So long as the overarching issue in a case is common to the class, class certification is still appropriate even if there are some individual issues (e.g., damages) that will need to be resolved.  Krakauer, 925 F.3d at 658; Ealy v. Pinkerton Gov't Servs., 514 Fed. Appx. 299, 305 (4th Cir. 2013).

Here, Plaintiffs assert that common issues predominate because Plaintiffs' claims are entirely based on standardized loan contracts and standardized conduct by Martorello.

First, as a general matter, Courts have found that the predominance factor has been met in comparable cases, albeit in unpublished opinions.  See, e.g., Inetianbor, et al. v. Cash

Call Inc., et al., 13-60066-CIV, at *3, *22 (Dec. 23, 2020), ECF
No. 958-53 (finding predominance met where plaintiff's legal
claims were against an alleged tribal lender and based on
violation of Florida's usury statute and Florida's Deceptive and
Unfair Trade Practices Act); Upshaw v. Ga. Catalog Sales, Inc.,
206 F.R.D. 694, 700-01 (M.D. Ga. 2002) (finding predominance met
in a payday lending case where plaintiffs' claims were based on
statute usury laws and RICO, defendants' conduct was
substantially the same with respect to all members of the class,
and defendants' primary defense applied to the class as a
whole). For example, in Purdie v. Ace Cash Express, Inc., the
court found that the predominance standard was met because of
(1) "the standardized nature of the payday loan transactions",
(2) "the uniform manner in which Defendants made, processed, and
collected on the loans", (3) the fact that "few variations exist
in the claims or the factual bases underlying the legal claims",
and (4) "the legal claims and theories asserted," namely
violations of "the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c)& (d), the
Truth in Lending Act ("TILA"), 15 U.S.C. § 1602 et seq., the
Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 et
seq., the Fair Debt Collection Practices Act ("FDCPA"), 15
U.S.C. § 1692, et seq., state statutes regulating small loans,
the Texas Deceptive Trade Practices Act[, and] other state

28

consumer protection laws." 2003 U.S. Dist. LEXIS 22547, at *5, *13-14 (N.D. Tex. Dec. 11, 2003). As in those cases, here, there is strong and unrebutted evidence that Martorello's conduct was substantially the same with respect to all proposed class members.

Furthermore, as Plaintiffs correctly point out, "[c]ourts, when faced with class certification in RICO claims, often find that 'common issues predominate over individualized ones.'" Solomon v. Am. Web Loan, 2020 U.S. Dist. LEXIS 112782, *9 (E.D. Va. June 26, 2020) (Morgan, J.) (quoting Robinson v. Fountain Title Group Corp., 257 F.R.D. 92, 94 (D. Md. 2009)). This is due to the elements of the federal RICO statute and the proof necessary to make out a RICO claim. Williams v. Mohawk Indus., 568 F.3d 1350, 1357-58 (11th Cir. 2009).

And finally, although, for all of Plaintiffs' claims, damages for each proposed class member would need to be calculated on an individual basis, those damages could likely be calculated straight from the loan records that Plaintiffs anticipate receiving from Big Picture and Ascension (as opposed to damages for claims like emotional distress which might require extensive evidence for all individuals involved). Under these circumstances, Plaintiffs have met their burden to show that the predominance requirement is met, despite Martorello's many many arguments to the contrary.

29

Martorello attacks the predominance requirement on six, overlapping, grounds. Plaintiffs respond that the Defendant is misstating the law or the facts in all of these arguments, and they are correct.

### a. Tracing Proposed Class Members' Payments

First, with respect to Plaintiffs' usury and unjust enrichment claims, Martorello argues that Plaintiffs cannot show that Martorello uniformly received loan payments from all of the proposed class members for the entire class period. Resp. Mem. at 36, 44, ECF No. 1007. According to Martorello, this is because loan payments were directly received by various tribal lending entities and only then passed to Martorello in a formula based on the total profitability of the lender.[18] Resp. Mem. at 36, ECF No. 1007. Therefore, says Martorello, "[t]he issue of whether specific interest payments . . . ever reached Martorello over the class period requires individualized analysis and does not predominate through the class period." Resp. Mem. at 35-36, ECF No. 1007.

To be clear, it is undisputed that, over time, substantial parts of the loan payments passed from Red Rock and Big Picture to Martorello through various entities. See Hearing Tr. 107:19-25, ECF No. 1104. Martorello is simply trying to argue that

---

[18] And, to further complicate matters, as the LVD's lending operations evolved so did the path by which money made its way from consumer loan payments to Martorello's financial accounts.

Plaintiffs have no way of knowing which borrower's repayments made their way into Martorello's pocket because Martorello was paid based on the overall profitability of the lending operation.  Hearing Tr. 107:19-108:4, ECF No. 1104.  Martorello may very well be right that Plaintiffs cannot track the dollars paid by each individual class member straight into Martorello's financial accounts.  However, that is not how Plaintiffs propose to prove that Martorello received payments on usurious loans. Rather, Plaintiffs propose to look to the contracts between each lender (i.e., Red Rock and Big Picture) and the Martorello Defendants to show that between 2013 and 2016, Martorello received 98% of Red Red's gross revenue from loans, and between 2016 and 2020, Martorello received 95% of Big Picture's gross revenue from loans.  That, says Plaintiffs, is sufficient to show that Martorello was receiving payments on usurious loans, and therefore, being unjustly enriched.  See Reply Mem. at 21-24, ECF No. 1055.

The Court agrees with Plaintiffs.  Based on the proof that Plaintiffs propose to offer, it is clear that common facts will predominate and those facts are highly susceptible to class-wide proof.

### b. Martorello's Allegedly Changing Role

Next, Martorello makes the same basic argument three times: because of his changing role over time, class members will be

31

situated differently vis-à-vis each other over the class period with respect to several elements of Plaintiffs' claims. These elements include (1) whether Martorello participated in the collection of unlawful debt in the same manner over the relevant class periods, Resp. Mem. at 41, 46, ECF No. 1007; (2) whether Martorello participated in the conspiracy to collect unlawful debt in the same manner over the relevant class periods, Resp. Mem. at 46, ECF No. 1007; and (3) whether "Martorello committed or authorized any intentional tort(s) on behalf of the lender," Resp. Mem. at 39, ECF No. 1007. As noted in Part I.D, the Court does not credit Martorello's arguments that Martorello played only a minor, supporting role in the LVD's lending operations or that his role changed meaningfully between June 22, 2013 and December 22, 2019. Martorello was the de facto head of the LVD's lending operations at all relevant times. At trial, Plaintiffs would, nevertheless, still need to prove that Martorello was sufficiently involved in the LVD's lending operations to be liable under each of Plaintiff's four legal theories for the duration of the relevant class periods, but facts surrounding Martorello's involvement will be highly amenable to class-wide proof.

### c. Proximate Cause and Plaintiffs' RICO Injuries

With respect to Plaintiffs' RICO claims, Martorello argues that, because he was never really in charge of the LVD's lending

32

operations, he could not have "proximately caused" harm to Plaintiffs. Resp. Mem. at 41, ECF No. 1007. Whether Martorello caused the class members' injury is a merits question to be resolved at a later stage. Martorello has not credibly explained why the facts surrounding "proximate cause" would create individualized issues.

### d. Injury to Plaintiffs/Benefit Conferred

With respect to Plaintiffs' unjust enrichment claims, Martorello also attempts to argue that some Plaintiffs did not confer a benefit on Martorello because they paid back less than they received on their loans.[19] Plaintiffs' respond that, under Virginia law, a contract with an interest rate above the legal limit (here 12%) is void. Hearing Tr. 48:4-10, ECF No. 1104. To make out a claim for unjust enrichment under Virginia law, a plaintiff must show that he or she (1) conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) the defendant accepted or retained the benefit "under circumstances that 'render it inequitable for the defendant to retain the benefit without paying for its value.'"

---

[19]   Martorello also repeats a version of this argument in a section of his Response Memorandum titled "THE CLASS DEFINITION FAILS BECAUSE MANY PROPOSED MEMBERS WERE NOT INJURED BY MARTORELLO," but there, the argument appears to apply to more than just unjust enrichment claims. Resp. Mem. at 46, ECF No. 1007. The distinction will not save the argument. If the loan contracts were usurious, they were void, and any payment on them was an injury to Plaintiffs.

Microstrategy, Inc. v. Netsolve, Inc., 368 F. Supp. 2d 533, 536
(E.D. Va. 2005) (quoting Nossen v. Hoy, 750 F. Supp. 740, 744-45
(E.D. Va. 1990)). Under Virginia law, "[a]ny contract made in
violation of [Virginia's usury laws] is void and no person shall
have the right to collect, receive, or retain any principal,
interest, fees, or other charges in connection with the
contract." Va. Code. Ann. § 6.2-303(F). So, says Plaintiffs,
any money paid on a void contract could constitute a benefit for
the purposes of an unjust enrichment. Hearing Tr. 48:4-10, ECF
No. 1104. The Court agrees. Moreover, Martorello has not
explained why the Plaintiffs are not correct.

### 2. Superiority

The superiority element requires that a class action be
superior to other available methods for fairly and efficiently
adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).
Relevant factors include: "(A) the class members' interests in
individually controlling the prosecution or defense of separate
actions; (B) the extent and nature of any litigation concerning
the controversy already begun by or against class members; (C)
the desirability or undesirability of concentrating the
litigation of the claims in the particular forum; and (D) the
likely difficulties in managing a class action." Fed. R. Civ.
P. 23(b)(3). Although the factors in Rule 23(b)(3)(A)-(D)
theoretically apply to predominance and superiority, most courts

34

use the factors exclusively for the superiority analysis. Rubenstein, 2 <u>Newberg on Class Actions</u> § 4.64 (5th ed.).

A class action would clearly be a superior method of fairly and efficiently adjudicating this case. First, the key factual issues for each putative class member would be the same, with only damage amounts changing from person to person. Reply Mem. at 35, ECF No. 1055. Second, there are 12,530 putative class members, and re-litigating the same issues even 100 times would be an unnecessary and untenable burden on the judicial system.[20] Third, it is not likely that class members' individual damages, which are tied to their relatively small-dollar loans, would be enough to justify bringing individual lawsuits. <u>Soutter v. Equifax Info. Servs., LLC</u>, 307 F.R.D. 183, 218 (E.D. Va. 2015) (quoting Calvin v. Home Loan Ctr., Inc., 236 F.R.D. 387, 396 (N.D Ill. May 10, 2006)) ("[T]here is a strong presumption in favor of finding superiority" where "the alternative to a class action is likely to be no action at all for the majority of class members."). Under these circumstances, a class action is both fair and efficient.

Martorello asserts that a class action would not be superior due to manageability issues. Resp. Mem. at 48, ECF No. 1007. Martorello bases this challenge on two arguments. First,

---

[20] This case (not to mention its brethren) has now been litigated for four years and involves over 1,000 electronic filings.

he appears to be arguing that there is a risk that a significant number of proposed class members <u>could</u> bring suits individually. <u>See</u> Resp. Mem. at 48, ECF No. 1007.  But, as noted above, the Court does not find that likely.  Second, Martorello asserts, as he has before, that there will be intraclass differences due to his "ever-shifting, relationships, and responsibilities over time."  As noted in Part I.D, the Court does not find that argument credible.

**CONCLUSION**

For the foregoing reasons, PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION OF CLAIMS AGAINST DEFENDANT MATT MARTORELLO (ECF No. 967) ("Preliminary Approval Motion") will be granted.

It is so ORDERED.

/s/   REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July _19_, 2021