# EXHIBIT QQQ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-mc-_____

JENNIFER WEDDLE,

       Movant,

v.

LULA WILLIAMS,
GLORIA TURNAGE,
GEORGE HENGLE,
DOWIN COFFY, and
MARCELLA P. SINGH,
on behalf of themselves and all others similarly situated,

       Respondents.

## AFFIDAVIT OF JENNIFER WEDDLE IN SUPPORT OF MOTION TO QUASH

Jennifer Weddle, being duly sworn, states as follows:

1. My name is Jennifer Weddle. I am above the age of eighteen years and am competent to testify to the matters stated in this affidavit.

2. Since 2000, I have been a member of the Colorado bar, Attorney No. 32068. I am also admitted to practice in tribal courts, before the U.S. Supreme Court and before this District Court and the Tenth Circuit, as well as the Fourth, Sixth, Eighth, Ninth, and DC Circuits. I am a shareholder in the Denver office of Greenberg Traurig, LLP ("Greenberg Traurig") and the Co-Chair of Greenberg Traurig's nationwide American Indian Law Practice, a role I have held since I joined the firm in 2009.

3. My eighteen-year practice has focused extensively on tribal economic development and complex regulatory and jurisdictional issues affecting tribal and non-tribal



clients. This work includes U.S. Supreme Court and other federal appellate litigation, corporate and transaction work, and advice on regulatory matters, including advocacy before federal and state agencies.

4.  I have significant experience representing American Indian tribes, tribal entities and companies working with tribes in a wide variety of economic development contexts including but not limited to tourism, real estate development, gaming, minerals development, manufacturing, agriculture and consumer lending.

5.  The Subpoena issued to me in *Williams et al. v. Big Picture Loans, LLC et al.*, No. 3:17-cv-00461 (E.D. Va.) implicates my and Greenberg Traurig's representation of not only named Defendants in the Complaint in that case, but also Greenberg Traurig's work in dozens of other matters, many not involving named Defendants at all, but nonetheless involving dozens of Greenberg Traurig attorneys, current and former. This Subpoena was never served on me or Greenberg Traurig. A process server handed the Subpoena to a Denver office secretary, who is not my secretary, on November 29, 2018 when I was out of state on client business. No one contacted me or Greenberg Traurig regarding any authorization to accept service.

6.  Since 2011, Greenberg Traurig has represented, with respect to a variety of different matters, entities with respect to which Mr. Matt Martorello is or was a principal, including Bellicose Capital, LLC ("Bellicose Capital"), SourcePoint VI, LLC, ("SourcePoint") and Eventide Credit Acquisitions, LLC. Over an eight-year period, Greenberg Traurig has been retained on 11 different matters involving entities in which Mr. Martorello is or was a principal, nine of which were multi-year representations, each involving numerous Greenberg Traurig attorneys, in all more than two dozen attorneys, current and former.

2

7. The Subpoena also implicates Greenberg Traurig's current representation of Mr. Martorello individually in *Cumming et al. v. Big Picture Loans, LLC et al.*, No. 5:18-cv-03476 (N.D. Cal.), a class-action lawsuit with allegations nearly identical to those that the issuers of the Subpoena assert in their Eastern District of Virginia litigation.

8. While the Subpoena indicates it is issued to me, the cover letter accompanying it indicates the issuers would "like to review [my] company's records relevant to this action." Regardless of whether the Subpoena is intended to be personal to me or to be a subpoena upon my law firm, I have no responsive documents that are personal or unrelated to my employment by Greenberg Traurig.

9. I could not comply with the Subpoena's demands without divulging information that is protected by the attorney-client privilege or by my duty of confidentiality to certain clients.

10. In addition, compliance with the Subpoena would impose an undue burden on me, dozens of current and former attorneys at Greenberg Traurig, and Greenberg Traurig support staff.

11. First, without date limitations whatsoever, the Subpoena demands six categories of documents "pertaining to tribal lending" without defining "tribal lending" in any manner. The vast majority of the hundreds of matters I have worked on in my 18-year career involve monies borrowed by or lent to tribes and tribal entities, ranging from multi-million-dollar casino financings to housing construction contracts to environmental studies associated with multistate energy infrastructure.

12. But even if Greenberg Traurig were to assume from the context of the Subpoena issuers' Complaint that they seek the firm's production of documents related to tribal consumer lending, meaning tribes' economic development involving offering consumer credit of any sort, that too would be unduly burdensome.

13. Specifically, I have worked on more than 70 different matters relating to tribal consumer lending (many of which are also multi-year representations involving dozens of Greenberg Traurig lawyers from offices across the United States, as well as international offices). I have worked on approximately eight matters involving the Lac Vieux Desert Band of Lake Superior Chippewa Indians, ("the Tribe), the owner of the corporate defendants listed in the Complaint. Half of those matters do not involve Mr. Martorello or entities with respect to which he is or was a principal in any way, but do involve dozens of Greenberg Traurig lawyers from across the country and indeed, numerous international office attorneys as well. Because demand for production No. 4 of the Subpoena requests any documents in my possession "pertaining to tribal lending," I reviewed a sample of these dozens of matters, and they contain thousands of documents each, and some, tens of thousands of documents each. Even if my colleagues and I could review one document per minute for purposes of assessing relevance and preparing a privilege log, it would take months to review all of the documents and it would be impossible to do without hiring an e-discovery vendor, as most files are electronic. And it would cost Greenberg Traurig at least several hundred thousand dollars to accomplish, based on the numerosity of our files and our experience with e-discovery vendors handling similarly gargantuan projects for litigation clients. Most of these documents from firm files belong to

Case 1:18-mc-00225-RBJ-KLM   Document 1-1   Filed 12/13/18   USDC Colorado   Page 6 of 9

dozens of different clients not associated with Mr. Martorello or any with which he is or was associated or any entities named in the Subpoena or the Complaint.

14. In addition to the more than 100,000 documents in client files that would be responsive to the Subpoena, documents I have as a result of my participation in volunteer bar activities would also be implicated, and require further burden on additional third-party organizations. Specifically, and for example, I served as President of the National Native American Bar Association ("NNABA") in 2016-2017 and otherwise as a NNABA officer and board member for many years prior to and subsequent to my term as President. I was also the President of the National Native American Bar Association Foundation. I also served as Chair of the 800+-member Federal Bar Association Indian Law Section from 2011-2013 and likewise as an officer and board member thereof for many years prior and subsequently to my two terms as Chair. I also served as President of the Colorado Indian Bar Association from 2009-2012, and was otherwise an officer thereof for an additional eight years. With all of those bar association capacities, I have thousands of communications "pertaining to tribal lending," whether understood broadly or narrowly under the Subpoena, and likewise communications with Indian law practitioners named in demand for production No. 6 of the Subpoena. This includes communications relative to continuing legal education activities I organized, chaired or presented at, articles I wrote or edited for professional publications and bar association board and membership communications. In addition, I have been a frequent speaker on tribal consumer lending, including as an adjunct professor for the University of Colorado School of Law and guest lecturer or speaker at numerous law school classes at Harvard Law School, the University of Denver Sturm College of Law, Arizona State University Law School, as well as other law

5

schools, CLE events of the American Bar Association and other bar and legal education organizations, industry conferences and inter-tribal association gatherings. Another example of the overbreadth of the Subpoena is that, by demanding production of documents for basically the subject-matter of a significant portion of my career (and that of many other lawyers), it implicates confidential peer reviews of federal judicial nominees which I have as a result of my service as the Tenth Circuit Representative on the American Bar Association Standing Committee in the Federal Judiciary (e.g., involving nominees who adjudicated tribal consumer lending matters or represented litigants in tribal consumer lending cases). Simply put, demand for production No. 4 of the Subpoena encompasses many thousands of additional documents broadly "pertaining to tribal lending" in my possession which are not my documents or Greenberg Traurig's documents; they are confidential bar association documents I have as a result of my professional activities.

15. With respect to demand for production No. 6, the issuers seek communications between myself and two attorneys active in the Indian Law space, Ms. Karrie Wichtman and Mr. Rob Rosette. I have engaged in very frequent communications with both attorneys throughout the course of my career on numerous matters "pertaining to tribal lending," again whether understood broadly or narrowly under the Subpoena, but the vast majority of those communications relate to other firm clients not including Mr. Martorello or any of the entities named in the Subpoena or the Complaint. The vast majority of responsive documents in my possession have nothing whatsoever to do with the Subpoena issuers' litigation.

16. Greenberg Traurig has been instructed by the holder of the privileged documents which might have anything do to with the Subpoena issuers' litigation not to produce privileged

6

documents. Any production under the Subpoena would require us to violate Colorado Rule of Professional Responsibility 1.6. That includes but is not limited to Greenberg Traurig's ongoing litigation defense of Mr. Martorello in *Cumming*.

FURTHER AFFIANT SAYETH NOT.

_Jennifer Weddle_
Jennifer Weddle

STATE OF Colorado       )
                        ) ss:
COUNTY OF Denver        )

SUBSCRIBED and sworn to before me on this 10th day of December, 2018 by Jennifer Weddle.

```
    SEAL
AMBER R BUSTOS
 NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20084022782
MY COMMISSION EXPIRES JULY 27, 2020
```

_Amber R. Bustos_
Notary Public

My commission expires July 27, 2020