# **Exhibit GGG**



November 30, 2012

Alpha Credit Resources, LLC
152 West 57th Street, 54th Floor
New York, New York 10019

Re: *$10,000,000 Loan and Security Agreement*

Ladies and Gentlemen:

This opinion letter is being furnished to you in connection with the transactions contemplated by that certain (i) Loan and Security Agreement of even date herewith (the "**Loan Agreement**") by and between Red Rock Tribal Lending, LLC, a limited liability company (the "**Borrower**"), formed under the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "**Tribe**"), and Alpha Credit Resources, LLC, a Delaware limited liability company (the "**Lender**"), (ii) guaranty of even date herewith (the "**Guaranty**") provided by SourcePoint VI, LLC, a US Virgin Islands limited liability company ("**Guarantor**"), in favor of Lender, and (iii) indemnity agreement of even date herewith (the "**Indemnity**") by Guarantor and Matthew Martorello ("**Martorello**" and, together with Guarantor, "**Indemnitor**") in favor of Lender. All capitalized terms used herein without definition have the respective meanings ascribed to them in the Loan Agreement.

For purposes of our opinions set forth below, we have examined originals or copies, certified or otherwise identified to our satisfaction, of such documents, corporate records, certificates of public officials and other instruments as we have deemed necessary or appropriate as a basis for the opinions set forth herein, including, without limitation:

(i) The Loan Agreement;

(ii) The promissory note of even date herewith delivered by the Borrower in favor of the Lender in connection with the Loan Agreement (the "**Note**");

(iii) The Guaranty;

(iv) The security agreement of even date herewith by and between Guarantor and Lender (the "**Security Agreement**");

(v) The intercreditor agreement of even date herewith by and between Iron Fence Investments, Inc., a US Virgin Islands corporation ("**Iron Fence**") and Lender (the "**Intercreditor Agreement**");

(vi) The priorities agreement of even date herewith by and among Obsidian Armor

Alpha Credit Resources, LLC
November 30, 2012
Page 2

Fund, LLC, a Delaware limited liability company ("***Obsidian***"), Iron Fence and Lender (the "***Priorities Agreement***");

(vii)   the deposit account control agreement of even date herewith by and among Chippewa Valley Bank, Borrower and Lender (the "***DACA***"); and

(viii)   The Indemnity Agreement.

For purposes hereof, the Loan Agreement, Note, Guaranty, Security Agreement, Intercreditor Agreement, Priorities Agreement, DACA and Indemnity Agreement are each individually referred to herein as a "***Loan Document***" and, collectively, as the "***Loan Documents***."

In our examination and in rendering the opinions expressed below, we have assumed and relied upon, with your permission, the following:

(a)   the accuracy and completeness of all representations and warranties contained in the Loan Documents with respect to the factual matters set forth therein;

(b)   the authenticity and completeness of all documents, corporate records, certificates and other instruments reviewed by us;

(c)   that photocopy, electronic, certified, conformed, facsimile and other copies of original documents, corporate records, certificates and other instruments reviewed by us conform to such original documents, records, certificates and other instruments;

(d)   each of the parties to each of the Loan Documents (i) is duly organized, validly existing and in good standing under the laws of all jurisdictions where such party is formed and/or conducting its businesses or otherwise required to be so qualified, (ii) has filed all required franchise tax returns, if any, and paid all required taxes, under applicable laws, (iii) holds all necessary licenses, authorizations, approvals and permits (governmental or otherwise) required for the conduct of its business, the execution and delivery of each of the Loan Documents to which it is a party, and the consummation and performance of the transactions contemplated thereby, (iv) has full power and authority to execute, deliver and perform its obligations and exercise its rights under each of the Loan Documents to which it is a party, and (v) has duly authorized, executed and delivered each of the Loan Documents to which it is a party;

(e)   each of the Loan Documents constitutes the legal, valid and binding obligation of each party thereto (other than the Borrower in the case of the Loan Agreement and Note, the Guarantor in the case of the Guaranty and the Security Agreement, Iron Fence in the case of the Intercreditor Agreement, the Priorities Agreement and the DACA, Obsidian in the case of the Priorities Agreement, and the Indemnitor in the case of the Indemnity), enforceable against such party in accordance with its terms;

(f)   each of the Loan Documents and the other agreements and documents to be entered into and delivered in connection therewith reflect the entire agreement of the parties thereto with

Alpha Credit Resources, LLC
November 30, 2012
Page 3

respect to the subject matter thereof, and there are no other agreements (written or oral) between such parties which are at variance with the Loan Documents and such other agreements and documents;

(g) there has not been any mutual mistake of fact or misunderstanding, fraud, duress or undue influence in connection with the negotiation, preparation and execution of any of the Loan Documents;

(h) the rights and remedies set forth in the Loan Documents will be exercised reasonably and in good faith and were granted for good, valuable and adequate consideration and without intent to hinder, delay or defeat any rights of any creditors, or holders of equity interests in, any of the parties to the Loan Documents; and

(i) Borrower and Guarantor have "rights" in and to the collateral described in the Loan Agreement and the Security Agreement and that value has been given within the meaning of Article 9 of the New York Uniform Commercial Code ("*NYUCC*") consistent with and sufficient for purposes of such agreements, and the same will be true of any additional items of collateral acquired or arising after the date hereof.

Except as expressly set forth herein, we have not undertaken any independent investigation, examination or inquiry to determine the existence or absence of any facts (and have not caused the review of any court files or indices) and no inference as to our knowledge concerning any facts should be drawn as a result of our representation of any parties in connection with the transactions contemplated by the Loan Documents.

Based upon the foregoing, and in reliance thereon, and subject to the exceptions, qualifications and limitations set forth herein, we are of the opinion that:

1. (a) Each of the Loan Agreement and the Note is a valid and binding obligation and agreement of the Borrower, enforceable against the Borrower in accordance with its terms under the Applicable Laws of the State of New York; (b) each of the Guaranty and the Security Agreement is a valid and binding obligation and agreement of the Guarantor, enforceable against the Guarantor in accordance with its terms under the Applicable Laws of the State of New York; (c) each of the Intercreditor Agreement and the Priorities Agreement is a valid and binding obligation and agreement of Iron Fence, enforceable against Iron Fence in accordance with its terms under the Applicable Laws of the State of New York; (d) the Priorities Agreement is a valid and binding obligation and agreement of Obsidian, enforceable against Obsidian in accordance with its terms under the Applicable Laws of the State of New York; and (e) the Indemnity is a valid and binding obligation and agreement of the Indemnitor, enforceable against the Indemnitor in accordance with its terms under the Applicable Laws of the State of New York.

2. The Loan Agreement and the Security Agreement are effective to create, in favor of the Lender, valid security interests (the "*UCC Security Interests*") under the New York Uniform Commercial Code (the "*NYUCC*") in the rights of the Borrower and the Guarantor, respectively, in such of the collateral described in the Loan Agreement and Security Agreement in which security interests can be created under Article 9 of the NYUCC.

DEN 98080088v1

CONFIDENTIAL

ROSETTE_REVISED_003838

Alpha Credit Resources, LLC
November 30, 2012
Page 4

3. To the extent the Collateral Account (as such term is defined in the Loan Agreement) constitutes a "deposit account" within the meaning of Section 9-102(a)(29) of the NYUCC and to the extent Chippewa Valley Bank is a "bank" within the meaning of Section 9-102(a)(8) of the NYUCC, the security interest of the Lender in such Collateral Account will be a perfected security interest upon execution and delivery of the DACA.

The foregoing opinions are subject to the following exceptions, qualifications and limitations:

A. Our opinions are limited solely to laws of the State of New York, the laws of the United States of America, and the rules and regulations adopted thereunder, that, in our experience, are normally applicable to transactions of the same or similar nature as those contemplated by the Loan Documents (the "***Applicable Laws***"). For purposes of illustration, and not limitation, Applicable Laws do not include and we express no opinion with regard to laws relating to: (i) pollution or protection of the environment; (ii) zoning, land use, building or construction; (iii) occupational safety and health or other similar matters; (iv) labor and employee rights and benefits; (v) the regulation of utilities; (vi) antitrust and trade regulation; (vii) tax; (viii) securities regulation; (ix) copyrights, patents and trademarks; (x) banking and insurance; (xi) bankruptcy; (xii) laws and policies concerning emergencies and criminal and civil forfeiture laws; (xiii) statutes of general application to the extent they provide for criminal prosecution (e.g., mail fraud and wire fraud statutes); and (xiv) in the case of each of the foregoing, all rules and regulations promulgated thereunder or administrative or judicial decisions with respect thereto. In addition, Applicable Laws do not include, and we express no opinion with regard to, any laws, rules, regulations or ordinances of any county, town, municipality or similar political subdivision or any agency or other instrumentality thereof. Without limiting the generality of the foregoing, we express no opinion as to the effect of the law of any jurisdiction other than the State of New York wherein enforcement of any Loan Document may be sought that limits the rates of interest legally chargeable or collectible.

B. All opinions expressed herein with respect to the enforceability of the Loan Documents are limited by and subject to (i) bankruptcy, insolvency, reorganization, receivership, moratorium and other laws affecting creditors' rights generally (including, without limitation, the effect of statutory and other law regarding fraudulent conveyances, fraudulent transfers and preferential transfers), and (ii) general equitable principles, including the exercise of judicial discretion and the application of principles of equity, good faith, fair dealing, reasonableness, conscionability and materiality (regardless of whether the applicable agreements are considered in a proceeding in equity or at law).

C. We express no opinion as to the validity, binding effect or enforceability of Section 16 of the Guaranty or any provisions in the Loan Documents which purport to: (i) delay or restrict access to legal or equitable remedies; (ii) provide for remedies under certain circumstances where another remedy has already been elected; (iii) deny a party who has materially failed to render or offer performance required by a contract the opportunity to cure that failure unless permitting a cure would unreasonably hinder the aggrieved party from making substitute arrangements for performance or it was important in the circumstances to the aggrieved party that performance

Alpha Credit Resources, LLC
November 30, 2012
Page 5

occur by the date stated in the contract; (iv) appoint any person as attorney-in-fact or agent for the Company; (v) release, exculpate or exempt a party from, or require indemnification of a party for, liability for its own action or inaction, to the extent the action or inaction involves negligence, gross negligence, recklessness, willful misconduct or unlawful conduct; (vi) waive, extend or shorten applicable statutes of limitations; (vii) require that all amendments, modifications or waivers be in writing in order to be effective; (viii) provide for liquidated damages; (xiii) establish evidentiary standards or to shift evidentiary burdens of proof; (ix) confer, waive or consent to the jurisdiction of any court for the enforcement of any person's rights and remedies; (x) permit or require enforcement of the balance of a contract where an essential provision in the contract has been deemed unenforceable; (xi) limit the liability or fiduciary duties of any director or officer of the Company beyond what is permissible under Applicable Law; (xii) permit amendment of the applicable agreement without the consent of all parties to such agreement; (xiii) waive any right granted, or any obligation required, by constitutional, common or statutory law, including the right to personal service of process, a jury trial or the obligations of good faith, fair dealing, diligence and reasonableness, which may be unenforceable as against public policy; and (xiv) waive sovereign immunity.

D. To the extent that any opinion relates to the enforceability of the choice of New York law and choice of New York forum provisions of the Loan Documents, our opinion is rendered in reliance upon Sections 5-1401 and 5-1402 of the New York General Obligation Law and is subject to the qualifications that such enforceability may be limited by constitutional and public policy considerations of any jurisdiction, other than the courts of the State of New York, in which enforcement of such provisions, or of a judgment upon an agreement containing such provisions, is sought.

E. We call to your attention that the choice of New York law on the basis of Section 5-1401 of the New York General Obligation Law is only relevant insofar as litigation is brought to enforce the Loan Documents in the courts of the State of New York, and we have also assumed that there is a basis for jurisdiction in such courts.

F. We express no opinion regarding the creation of any security interest in any insurance policies.

G. In the case of property that becomes collateral after the date hereof, Section 552 of the Federal Bankruptcy Code limits the extent to which property acquired by a debtor after the commencement of a case under the Federal Bankruptcy Code may be subject to a security interest arising from a security agreement entered into by the debtor before the commencement of such case.

H. Other than as set forth in opinion paragraph 3 above, we express no opinion as to the perfection of any security interests or liens created by the Loan Documents or the value, validity or effectiveness for any purpose of any Collateral described in the Loan Agreement or the Security Agreement, and we express no opinion whatsoever regarding the priority of any liens or security interests.

I. We call your attention to the fact that the DACA states that it is governed by

Alpha Credit Resources, LLC
November 30, 2012
Page 6

Wisconsin law. We have not examined the question of what law would govern the interpretation or enforcement of such agreement and our opinions in opinion paragraph 3 are based on the assumption, for purposes of such opinions, that the internal laws of the state of New York and the federal laws of the United States of America would govern the provisions of such agreement and the trasnactions contemplated thereby.

Our opinions set forth in this letter are based upon the facts in existence and laws in effect on the date hereof and we expressly disclaim any obligation to update our opinions herein, regardless of whether changes in such facts or laws come to our attention after the delivery hereof.

Our opinions contained herein are rendered solely in connection with the execution and delivery of the Loan Documents by the Borrower, the Guarantor, the Indemnitor, Iron Fence and Obsidian, as applicable, and may not be relied upon in any manner by any person other than the Lender or for any other purpose. Our opinions herein shall not be quoted or otherwise included, summarized or referred to in any publication or document, in whole or in part, for any purpose whatsoever, or furnished to any person other than the Lender, except as may be required by applicable law or regulation.

Very truly yours,

*Greenberg Traurig*

GREENBERG TRAURIG, LLP

DEN 98080088v1

GREENBERG TRAURIG, LLP • ATTORNEYS AT LAW • WWW.GTLAW.COM

CONFIDENTIAL

ROSETTE_REVISED_003841