**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

LULA WILLIAMS, *et al.*,

               Plaintiffs,

    v.

BIG PICTURE LOANS, LLC, *et al.*,

               Defendants.

Case No. 3:17-cv-00461-REP

**REDACTED VERSION**

**MOTION TO SET ASIDE ALL TRANSFERS AND CONVEYANCES TO THE**
**MARTORELLO 2018 CHILDREN'S TRUST AND THE RLM 2018 FAMILY TRUST**

Pursuant to § 55.1-404 of the Virginia Code and Rule 69(a) of the Federal Rules of Civil Procedure, Plaintiffs request this Court to set aside the fraudulent conveyances and voluntary transfers made by Defendant Matt Martorello to the Martorello 2018 Children's Trust and the RLM 2018 Family Trust (collectively, the "Family Trusts"). In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

On March 12, 2018, this Court denied Martorello's motion to dismiss and rejected his one perceived legal defense, *i.e.*, that tribal law applied to the loans. ECF No. 117. Six months later, Martorello established two trusts, the Martorello 2018 Children's Trust and the RLM 2018 Family Trust[1] to hinder the collection of his assets—knowing that it was only a matter of time before a massive judgment was entered against him for his substantial and central involvement in the usurious tribal lending scheme at issue in this case. ████████████████████████

████████████████████████████████████████████████████████

---

[1] The initials "RLM" stand for "Rebecca L. Martorello," who is the wife of Mr. Martorello.

███████████████████████████████████████████████████

██████████████████████████████

On the same date as their creation, Martorello transferred a significant amount of his assets to the trusts, including his interest in another online lending company, Braviant, LLC, which he founded in 2014. ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

"Virginia law permits courts to set aside two types of transfers: constructive fraudulent transfers and actual fraudulent transfers." *United States v. Kotzev*, 2022 WL 212702, at *3 (E.D. Va. Jan. 24, 2022). Although the elements are slightly different from each of these theories, the "default remedy under both statutes is to declare the conveyance void as to the complaining creditor and then to [return the assets to] the transferor for a judicially administered 'ratable distribution' of the conveyed funds between competing creditors." *Grayson v. Westwood Buildings L.P.*, 300 Va. 25, 50 (2021) (cleaned up and citations omitted). To obtain this remedy, a creditor is not required to institute a proceeding against the recipient of the fraudulent or voluntary conveyance. Instead, the Virginia Code contains a section entitled "Authority of court to set aside," which provides that a court "may set aside a fraudulent conveyance or voluntary transfer pursuant to § 55.1-400 or 55.1-401… either <u>on motion of the creditor</u> or on its own motion, provided that

all parties who have an interest in the property subject to the conveyance or transfer are given notice of the proceeding." Va. Code Ann. § 55.1-404 (emphasis added).

As detailed below, the factual record unequivocally shows that Martorello's establishment and conveyance of assets to the Family Trusts satisfy each of the elements of Virginia's fraudulent and voluntary conveyance statutes. Accordingly, Plaintiffs request the Court to enter an order: (1) setting aside all transfers and conveyances to the Martorello 2018 Children's Trust and the RLM 2018 Family Trust; (2) freezing all assets held by the Martorello 2018 Children's Trust and the RLM 2018 Family Trust; and (3) requiring Martorello to deposit all assets held by the trusts with the Court or an escrow agent.

## MATERIAL FACTS

**A.      The Commencement of this Litigation and Martorello's Motion to Dismiss.**

1.      On June 22, 2017, Plaintiffs commenced this class action case against Martorello for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO) and Virginia's usury laws. *See generally* Dkt. 1.

2.      On September 29, 2017, Martorello filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12. Dkt. 36. Among other things, Martorello's motion argued that "the Supreme Court of Virginia's holding in *Settlement Funding, LLC, v. Von Neumann-Lillie*, requires that Plaintiffs' claims, *in their entirety*, must be dismissed" because of the tribal choice-of-law provision in the loan contracts. Dkt. 37 at 16. (emphasis in original).

3.      On March 12, 2018, the Court denied Martorello's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 and found that the Plaintiffs adequately alleged that "the choice-of-law and forum-selection provisions of the agreements at issue are void and unenforceable under Virginia law." Dkt. 119 at 1.

**B.** **Six Months After the Court's Decision on the Motion to Dismiss, Martorello Established the Martorello 2018 Children's Trust and the RLM 2018 Family Trust to "Maximize Creditor Protection."**

4.      As evidenced by his concessions prior to trial, Martorello never seriously contested that his substantial and central involvement in the usurious lending enterprise was a violation of RICO. *See, e.g.*, Dkt. 1345 (Martorello's acknowledgement that he "did not contest Plaintiffs' assertion that 'Martorello had high-level involvement in the facilitation of the' enterprise. Dkt No. 1241 at p. 28.  Given the Court's rulings that the loans are governed by the 'law of the Commonwealth of Virginia,' Dkt. No. 1328, and that a good-faith defense is not available as a defense to liability under 18 U.S.C. § 1962(d), *id.*, Defendant concedes there are no remaining triable issues of fact on Plaintiffs' § 1962(d) claim.").

5.      Thus, shortly after the Court's decision on the motion to dismiss that indicated the likelihood that he would lose on his primary defenses, Martorello created two trusts, the Martorello 2018 Children's Trust and the RLM 2018 Family Trust, on August 23, 2018. *See generally* Exs 1 and 2.

6.      ███████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████

7.      ███████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

8. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████

**C.**   **Martorello, as Trustee of Both the Martorello 2018 Children's Trust and the RLM 2018 Family Trust, Has Unfettered Discretion Under the Terms of the Trust.**

9. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███ ██████ ████ █ ████ ████ ████ █ ████ ████ ████ ██ █

█████████████████████████████████

10. ████████████████████████████████████████

████████████████████████████████████████

█████████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
███████████████████

█████████████████████████

11. ████████████████████████████████████████

████████████████████████████████████████

███████████

12. ████████████████████████████████

5

13. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

**D.   Martorello Funds the Family Trusts with Cash, As Well As His Earning from Another Online Lending Company, Braviant, LLC.**

**1.   Conveyances to the Martorello 2018 Children's Trust.**

14. ████████████████████████████████████████████████████

████████████████████████████████████████████████████[2]

15. ████████████████████████████████████████████████████

---

[2] Martorello will claim that this cash did not come from him, but rather, from one of his asset protection trusts, Capstone Irrevocable Trust. However, as this Court has explained: "Courts throughout the nation have rejected these attempts to impede their jurisdiction and to avoid compliance with their orders." *Galloway v. Martorello*, 2023 WL 5229231, at *11 (E.D. Va. Aug. 14, 2023). In doing so, "courts have sent a clear message: American citizens cannot evade American court orders by squirreling their money away into offshore asset protection trusts." *Id*. In other words, Martorello cannot use his other efforts to hinder collections—the overseas asset protection trusts—to avoid liability for their portion of the fraudulent transfers to domestic asset protection trusts like the Family Trusts.

16. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

17. ████████████████████████████████████
██████████████████████████████████████

18. ██████ █ ██ ████ ███ ████ ██ ████ ██ █
████████████████████████████████████████
████████

19. ████████████████████████████████████
████████████████████████████████████████
██████████████████████████

20. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

21. ████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████

22. ████████████████████████████████████
███████████████

23. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



24.

25.

³ *Id.*

26.

27.

---

³ Notably, this date is after the lien created by the Judgment would lapse under Texas law, where Martorello resides, preventing Plaintiffs from even obtaining the payment on the Note in 2038. *See* Tex. Prop. Code § 52.006(a) (providing that judgment liens lapse after 10 years from recording). It is also after the time to enforce the judgment in this Court would lapse under Virginia law. Va. Code Ann. § 8.01-251.A. (providing ten-year enforcement period for judgments issued after July 1, 2021).

28. ████████████████████████████████████████

████ ███ ███ ████ ██ ███ ████ ████ ████ ████ ████ ██ █ ███

██████████████████████████████████████████████

█████████████████████████

29. ████████████████████████████████████████

██████████████████████████████████████████████

30. ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████

31. ████████████████████████████████████████

████ ███ ███ ████ █ ██ ████ ████ ████ ████ ████ ██ ██ █

█████████████████

32. ████████████████████████████████████████

██████████████████████████████████████████

33. ████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

**2.      Conveyances to the RLM 2018 Family Trust.**

34. ████████████████████████████████████████

██████████████████████████████████████

35. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

36. ████████████████████████████████████████

████████████████████████████████

37. ███████████████████████████████████████

38. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

39. ████████████████████████████████████████

██████████████████████████████

40. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████ ██████████████████

█████████████████████████████

41. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████



42.

<sup>4</sup> *Id.*

43.

44.

45.

46.

47.

48.

49.

50.

---

[4] Again, this was intentionally set after a potential judgment lien from this case would lapse under Texas law, and also after the time to enforce a judgment under Virginia law.

# ARGUMENT

## I.   The Facts Surrounding Martorello's Conveyances to the Family Trusts Establish the Elements of Actual Fraudulent Transfer Under Virginia Law.

"Virginia law permits courts to set aside two types of transfers: constructive fraudulent transfers and actual fraudulent transfers." *United States v. Kotzev*, 2022 WL 212702, at *3 (E.D. Va. Jan. 24, 2022). As to the latter, "Virginia Code § 55.1-400 codifies the principles of fraudulent conveyances and provides:

> Every (i) gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, (ii) action commenced or order, judgment, or execution suffered or obtained, and (iii) bond or other writing given with intent to delay, hinder, or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers, or other persons or their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

Va. Code. Ann. § 55.1-400. Broken down, under § 55.1-400, "a party must establish the following elements: (1) a conveyance, (2) that was given with the intent to delay, hinder, or defraud creditors, (3) who were lawfully entitled to the subject of the conveyance, and (4) the purchaser either did not provide valuable consideration or had knowledge of the fraud or the fraudulent intent of the immediately prior grantor." *Kotzev*, 2022 WL 212702 at *3 (citing *C.F. Trust v. Peterson*, 1999 WL 33456231, at *7 (E.D. Va. Jan. 8, 1999) (citing *Balzer & Assocs. v. The Lakes on 360, Inc.*, 463 S.E.2d 453, 455 (Va.1995)). Here, each of these elements is easily satisfied.

### 1.   It cannot be disputed that Martorello conveyed assets to the Family Trusts.

As to the first element, the record establishes that on August, 23, 2018, Martorello conveyed assets to the Martorello 2018 Children's Trust and the RLM 2018 Family Trust. First, the record establishes that on August 23, 2018, Martorello funded the Martorello Children's Trust ████████████████████████████████████. Ex. 1 at MM_FRE408__00016982. On this

same day, the record further shows that Martorello funded the RLM 2018 Family Trust ████

████████████████████████. Ex. 2 at MM_FRE408__00017032.

Second, the record further establishes ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████

████ ██ ██ ████████ ██ ██ ██ ████████ ██ ██ ██

████████████████ Accordingly, it cannot be disputed that Martorello conveyed assets to

the Family Trusts.

2. **All of the "badges of fraud" are satisfied by Martorello's conveyances to the Family Trusts.**

The second element of an actual fraudulent transfer requires proof that the conveyance was "given with the intent to delay, hinder, or defraud creditors." *Kotzev*, 2022 WL 212702 at *3 (citing *C.F. Trust*, 1999 WL 33456231 at *7 (citing *Balzer*, 463 S.E.2d at 455)). "With respect to the second element, fraudulent intent may be established circumstantially through so-called 'badges of fraud.'" *Kotzev*, 2022 WL 212702, at *3; *Hutcheson v. Sav. Bank of Richmond*, 129 Va. 281, 291 (1921) (explaining that the "evidence of fraud must be sufficient to satisfy the conscience of the court, but may and generally must be circumstantial."). Typically, the badges of fraud include:

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; (6) fraudulent incurrence of indebtedness after the conveyance...[;] (7) close relationship of the parties; and (8) insolvency of the grantor.

*Kotzev*, 2022 WL 212702 at *3 (citing *C.F. Trust*, 1999 WL 33456231 at *8). Virginia courts have also considered whether "security is taken for the purchase money," or "unusual length of credit." *In re Laines*, 352 B.R. 397, 403 (Bankr. E.D. Va. 2005) (citing *Hutcheson v. Sav. Bank of Richmond*, 129 Va. 281, 291, 105 S.E. 677, 681 (1921)).

Virginia courts have long acknowledged that "[p]roof of a single badge of fraud 'may be sufficient to stamp [a] transaction as fraudulent." *White v. Llewellyn*, 857 S.E.2d 388, 391 (2021) (emphasis added) (quoting *Hickman v. Trout*, 83 Va. 478, 491, 3 S.E. 131 (1887)). Further, when a transaction is "between parties related by blood or affinity," it is "more closely scrutinized." *In re Laines*, 352 B.R. at 404. For example, "[t]ransactions between husband and wife must be closely scrutinized to assure that they are fair and honest and not merely contrivances resorted for the purpose of placing the husband's property beyond the reach of his creditors." *Id*. And "[i]f the

14

plaintiff establishes a *prima facie* case of fraud by demonstrating one or more of the[] badges, the burden shifts to the defendant to 'establish the bona fides of the transaction.'" *Kotzev*, 2022 WL 212702 at *3 (quoting *First Nat. Bank of Bluefield v. Pressley*, 176 Va. 25, 28 (1940)). To establish the bona fides of a transaction, the grantor must prove "the fairness of the transaction by strong and clear evidence that repels the conclusion to which the opposing party's badges of fraud 'irresistibly lead.'" *Llewellyn*, 857 S.E.2d at 393 (quoting *Hickman's Ex'r v. Trout*, 83 Va. at 491).

Here, every badge of fraud is unquestionably satisfied (or otherwise inapplicable) by the creation and funding of the Family Trusts. ████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████  ██████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████ *Id.*

    **a.**    ***Martorello retained an interest in the transferred property.***

Beyond this express statement, moreover, all of the badges of fraud are either present or inapplicable. First, Martorello has retained significant interest in the transferred property through the terms of the Trust Agreements. ████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████  ████████████████████

 Each

of these features demonstrates that Martorello retained a significant interest in the trust property,

including the ability to use them for the maintenance and support of his family and thus, himself.

Indeed, nothing prevents the assets from being transferred back to him—in exchange for another

sham promissory note—under the terms of the Trust Agreements.[5]

### b. *Martorello made the transfers while being pursued for an antecedent debt.*

Second, it is undisputed that Martorello made the conveyances when there was "pursuit of

the transferor or threat of litigation by his creditors at the time of the transfer." *Kotzev*, 2022 WL

212702 at *3 (citation omitted); *see also Frazier v. Cooke*, 2017 WL 5560864, at *8 (E.D. Va.

Nov. 17, 2017) ("Here, Plaintiffs allege that the property was transferred after notice of a potential

suit and legal liability. Therefore, Plaintiffs established a prima facie cause of action for fraudulent

conveyance."). As the docket reflects, Plaintiffs commenced this class action case against

Martorello on June 22, 2017. *See generally* Dkt. 1. On March 12, 2018, the Court denied

Martorello's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12. Dkt. 119 at 1. Then, six months

after the Court denied Martorello's motion to dismiss, Martorello created the trusts and transferred

the assets on August 23, 2018.

---

[5] For example, nothing in the Trust Agreements would prevent Martorello from loaning on all the assets to himself in exchange for a promissory note payable after a lengthy amount of time. The Trust Agreements would also allow Martorello to loan the trust money to one of his dozens of entities, which he could then use to pay himself.

      *c.*      ***There was severely inadequate consideration for the transfers.***

Third, there was a "gross inadequacy of consideration" for the conveyances as the only thing received by Martorello ███ ████████ ████ █████ █ ██. Ex. 7 at MM_FRE408_00017063. █████████████████

███████████████, courts have repeatedly found that "a promise of far-off future" performance does not constitute "consideration deemed valuable in law." *Kotzev*, 2022 WL 212702 at *3; *In re Newman*, 11 B.R. 628, 633 (Bankr. S.D.N.Y.) (finding that a promissory note payable "over a period of nearly 37 years, with an interest rate at 7% per annum" was a fraudulent transfer), *aff'd*, 15 B.R. 658 (S.D.N.Y. 1981); *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1070 (9th Cir. 2013) (affirming district court's determination that found that "reduced notes and unsecured debts of dubious value"); *In re Mastro*, 465 B.R. 576, 620 (Bankr. W.D. Wash. 2011) (finding that a $12 million-dollar promissory note was a sham because "no advances were made after its execution"); *Broz v. Commissioner*, 137 T.C. 46, 61, 2011 WL 3875059 (2011) (explaining that a taxpayer "has not made an economic outlay" if "the lender is a related part and if repayment of the funds is uncertain."); *Karr v. Comm'r*, 924 F.2d 1018, 1025 (11th Cir. 1991) (affirming a tax court's decision that a promissory note "not due for twenty-five years" was a sham transaction because "the obligation to pay was too contingent to meet the standards for accruability.").

As one court has explained, "[f]actors demonstrating that the debt was a sham and not genuine are: no arm's length negotiations occurred between the parties; the loan did not require security, guaranty, or collateral; the note did not state when interest had to be paid; [the obligor] made no payment on the loan for a significant period of time." *Graffia v. Comm'r*, 2013 WL

4789771, at *13 (T.C. Sept. 9, 2013), *aff'd*, 580 F. App'x 474 (7th Cir. 2014). Here, all of these factors are present with respect to the promissory notes at issue.

First, they were not at arm's length as Martorello was both the "seller" and "purchaser" of the interests giving rise to the creation of the notes. Second, no collateral or security was given. Third, although the promissory note provides for a time when interest must be paid, there is no evidence that any such interest has been paid to Martorello. And finally, the terms of the note do not require payment for 20 years, which is conveniently <u>after</u> the ten-year limitation on the enforcement of judgments under both Virginia and Texas law. Va. Code Ann. § 8.01-251; Tex. Prop. Code § 52.006.

The "freedom to arrange one's affairs," in sum, "does not include the right to engage in financial fantasies with the expectation" that "courts will play along." *Saviano v. Commissioner*, 765 F.2d 643, 654 (7th Cir.1985). Instead, government agencies and "courts are empowered, and in fact duty-bound, to look behind the contrived form of transactions to their economic substance[.]" *Id*. And here, the undisputed evidence shows that there was a gross inadequacy of consideration because the Family Trusts paid *nothing in real value* in exchange for their interests, ███████████████████████████████████████████. There are no economic realities to these transactions; instead, they are just circular documents signed by Martorello as "seller" and "purchaser" of the interests.

### d.   The transfers were between family members.

Fourth, it is undisputed that Martorello transferred the assets to close family members. In *Kotzev*, this Court found that a niece and nephew of the debtor qualified as "recipients with whom [the debtor] share[d] close familial ties." *Kotzev*, 2022 WL 212702 at *5. Here, the recipients are

even closer as they are Martorello's wife and children (both of whom were infants at the time of the transfer).

### e.   The transfers rendered Martorello insolvent.

And finally, Martorello now claims to be insolvent as a result of these transfers (as well as his other foreign transfers at issue in the Motion to Repatriate. Dkt. 1409). For example, in Plaintiffs' first set of post-judgment discovery requests, they asked Martorello to identify all accounts, foreign and domestic, in which he has any interest and the balance of those accounts. In response, ██████████████████████████████████████████████████ ████████████████████████████████████████ Martorello has such little available assets because— ████████████████████████████ ████████████████████████████████ —Martorello has offloaded all of these assets to hinder the collection of a judgment in this case.

### 3.   Plaintiffs and Class Members were creditors of Martorello on August 23, 2018.

The third element of a fraudulent transfer requires a party to establish that they "were lawfully entitled to the subject conveyance." *Kotzev*, 2022 WL 212702 at *3. As the Virginia Supreme Court has explained, "a bona fide claim of a debt need not be reduced to judgment, and thus, 'obtaining a judgment against a party is not a prerequisite to establishing creditor status." *Grayson*, 300 Va. at 54. In other words, "potential tort claimants can be considered creditors if the putative debtor has adequate notice of the claim." *Luria v. Bd. of Directors of Westbriar Condo. Unit Owners Ass'n*, 277 Va. 359, 366 (2009).

The "key consideration in establishing creditor status is whether there was actual notice of a specific potential claim." *Id.*; *see also Frazier*, 2017 WL 5560864 at *8 ("Virginia courts have held that potential tort claimants can be considered creditors if the putative debtor has adequate

notice of the claim."). Here, it cannot be disputed that Martorello had actual notice of the Plaintiffs' class claims as the transfers occurred on August 23, 2018, which was 14 months after the commencement of the case and 6 months after this Court denied Martorello's motion to dismiss.

> **4.     The Family Trusts Did Not Provide Valuable Consideration and Had Knowledge of the Fraud.**

The fourth and final consideration under the fraudulent transfers analysis is whether the safe harbor in § 55.1-400 applies. This safe harbor provides that: "[t]his section shall not affect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor." Va. Code. Ann. § 55.1-400. In other words, a transfer will be void if "the purchaser either did not provide valuable consideration or had knowledge of the fraud or the fraudulent intent of the immediately prior grantor." *Kotzev*, 2022 WL 212702, at \*3 (emphasis added). And while either of these scenarios will suffice, both are clearly present here.

For starters, the safe harbor does not apply because there is not a bona fide purchaser as contemplated by § 55.1-400. ████████████████████████████ ██████████████████████████████████████ This transaction was not an arm's length transaction by two independent parties who have no relationship with each other, but instead, an arm-in-arm transaction completed alone by Martorello.

Given the one-dimensional nature of the transaction, it should thus be no surprise that the promissory notes have all the hallmarks of sham documents created to hinder the collection of Martorello's assets. Those hallmarks include: (1) the lack of arm's length negotiation/the close relationship between the parties; (2) Martorello's exclusive and unfettered discretion in exercising continued oversight, power, and management of the assets; (3) the lack of security or collateral for

the notes; and (4) the 20-year time frame of the promissory note. For this reason alone, the safe harbor cannot save Martorello and the Family Trusts.

But even if this Court finds that the consideration was somehow valuable at law, it does not pass the second requirement of the safe harbor, which considers whether the purchaser "had knowledge of the fraud or the fraudulent intent of the immediately prior grantor." *Kotzev*, 2022 WL 212702 at *3. To establish this requirement, "it is not necessary to prove that the grantee had positive knowledge of the grantor's fraudulent intent. *Hutcheson v. Sav. Bank of Richmond*, 129 Va. 281, 291 (1921). Instead, "[i]t is sufficient to prove that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the minds of persons of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the facts from which the law imputes fraud to the grantor." *Id*.

In this instance, it cannot be disputed that the Family Trusts had knowledge of the facts and circumstances as the transactions were consummated by Martorello as both the "seller" and "purchaser." Put differently, there is not a situation where the Court must examine a family member or business partner's knowledge of the facts because it was Martorello on both sides of the transaction. Martorello, as the fraudulent conveyer, obviously had knowledge of the facts and never even seriously contested that his substantial and central involvement in the usurious lending enterprise was a violation of RICO. *See, e.g.*, Dkt. 1345 (Martorello's acknowledgement that he "did not contest Plaintiffs' assertion that 'Martorello had high-level involvement in the facilitation of the' enterprise." Dkt No. 1241 at p. 28.)" And as the purchaser (albeit on behalf of the Family Trusts), Martorello possessed this same knowledge.

\*\*\*

If there was ever a case of a fraudulent conveyance, it is this case. Unquestionably, there is clear and convincing evidence that after the Court's denial of the motion to dismiss, Martorello attempted to shield his assets by transferring them on paper—but not in reality—to the Family Trusts. Because these transfers brazenly wear the badges of fraud, Plaintiffs request the Court to enter an order: (1) setting aside all transfers and conveyances to the Martorello 2018 Children's Trust and the RLM 2018 Family Trust; (2) freezing all assets held by the Martorello 2018 Children's Trust and the RLM 2018 Family Trust; and (3) requiring Martorello to deposit all assets held by the trusts with the Court or an escrow agent within 5 days.

## II.    In Addition and the Alternative, the Facts Surrounding Martorello's Conveyances to Establish the Elements of Virginia's Voluntary Conveyance Statute.

Virginia Code § 55.1-401 codifies the principles of voluntary conveyances and provides:

> Every gift, conveyance, assignment, transfer, or charge that is not upon consideration deemed valuable in law, or that is upon consideration of marriage by an insolvent transferor or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts were contracted at the time such gift, conveyance, assignment, transfer, or charge was made but shall not, on that account merely, be void as to creditors whose debts have been contracted, or as to purchasers who have purchased, after such gift, conveyance, assignment, transfer, or charge was made. Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

Va. Code Ann. § 55.1-401. Broken down, this section establishes that a "'voluntary conveyance is void as to a prior creditor' when three elements are met." *Kotzev*, 2022 WL 212702 at *3 (quoting *Hudson v. Hudson*, 249 Va. 335, 340 (1995)). Those elements are: "(1) the transfer was not made upon consideration deemed valuable in law ...; (2) the transfer was made by an insolvent transferor, or by a transferor who was rendered insolvent by the transfer; and (3) the transferor's debt to the creditor was contracted before the time of the transfer." *Kotzev*, 2022 WL 212702 at *3 (quoting *Hudson*, 249 Va. at 340).

For the same reasons explained above, each of the three elements are satisfied. First, the only consideration provided was promissory notes that have all the hallmarks of a sham transaction. Again, those hallmarks include: (1) the lack of arm's length negotiation/the close relationship between the parties (including Martorello as both the "seller" and "purchaser"); (2) Martorello's exclusive and unfettered discretion in exercising continued oversight, power, and management of the assets; (3) the lack of security or collateral for the notes; (4) the creation of them after the commencement of this litigation, including shortly after the Court's ruling on the motion to dismiss; and (5) the 20-year time frame of the promissory note. As explained above, there is no economic reality to these transactions between Martorello "as the seller" and Martorello "as the purchaser" on behalf of the Family Trusts.

Second, Martorello now claims to be insolvent because of the offloading of his assets to the Family Trusts, as well as the foreign trusts. To establish an individual is insolvent, there must be " 'insufficient property to pay all his debts, meaning that 'both the value of the debtor's assets and the amount of his liabilities must be established.'" *Kotzev*, 2022 WL 212702 at \*4 (quoting *Hudson*, 249 Va. at 340). Here, Martorello's RICO violations resulted in a judgment exceeding $43 million (excluding attorneys' fees which will be determined after the appeal). But now, Martorello apparently only has a few thousand dollars. Accordingly, there should be no dispute that Martorello's debt exceeded his assets after the conveyance of the cash and his interests in Braviant to the Family Trusts.

Finally, as explained above, "a bona fide claim of a debt need not be reduced to judgment, and thus, 'obtaining a judgment against a party is not a prerequisite to establishing creditor status." *Grayson*, 300 Va. at 54 (2021) (citation omitted). Thus, "potential tort claimants can be considered creditors if the putative debtor has adequate notice of the claim." *Luria v. Bd. of Directors of*

23

*Westbriar Condo. Unit Owners Ass'n*, 277 Va. 359, 366 (2009). Here, Martorello unquestionably had notice of the claims because Plaintiffs had filed the lawsuit more than a year before the transfers to the Family Trusts.

**III.   All Parties with an Interest in the Transfer will Receive Notice Through Counsel or via Facsimile, Certified Mail and/or electronic mail.**

Here, Martorello is the current Trustee of both Family Trusts. He was also the "Original Trustor" of the Family Trusts ("the Original Trustor is married to Rebecca L. Martorello"). Ex. 1 at MM_FRE_00016937; Ex. 2 at MM_FRE408_00016988. Additionally, Mr. Martorello's asset protection lawyer, Leslie Giordani, is currently listed as the Protector of both Family Trusts. The beneficiaries of the Family Trusts are Rebecca Martorello and Mr. Martorello's children. Plaintiffs will notify all of these interested parties of this motion and file supplemental proof of the same.

<u>**CONCLUSION**</u>

The factual record unequivocally shows that Martorello's establishment and conveyance of assets to the Family Trusts satisfy each of the elements of Virginia's fraudulent and voluntary conveyance statutes. Accordingly, Plaintiffs request the Court to enter an order: (1) setting aside all transfers and conveyances to the Martorello 2018 Children's Trust and the RLM 2018 Family Trust; (2) freezing all assets held by the Martorello 2018 Children's Trust and the RLM 2018 Family Trust; and (3) requiring Martorello to deposit all assets held by the trusts with the Court or an escrow agent.

Respectfully submitted,
**PLAINTIFFS**

By:  *Kristi C. Kelly*_____
  Kristi Cahoon Kelly (VSB #72791)
  Andrew Joseph Guzzo (VSB #82170)
  Matthew G. Rosendahl (VSB #93738)
  KELLY GUZZO, PLC

3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
Telephone : (703) 424-7570
Facsimile : (703) 591-0167
E-mail:  kkelly@kellyguzzo.com
E-mail:  aguzzo@kellyguzzo.com
*Counsel for Plaintiffs*